1  PERRIE M. WEINER (SBN 134146)
   perrie.weiner@dlapiper.com
2  EDWARD D. TOTINO (SBN 169237)
   edward.totino@dlapiper.com
3  MONICA D. SCOTT (SBN 286109)
   monica.scott@dlapiper.com
4  **DLA PIPER LLP (US)**
   2000 Avenue of the Stars, Suite 400 North Tower
5  Los Angeles, CA  90067-4704
   Telephone:  310.595.3000
6  Facsimile:  310.595.3300

7  Attorneys for Defendant
   SIX CONTINENTS HOTELS, INC.

8

9              **UNITED STATES DISTRICT COURT**

10           **NORTHERN DISTRICT OF CALIFORNIA**

11

12  LAURA MCCABE and LATROYA          CASE NO.  C12-4818-NC
    SIMPSON, individually and on behalf of
13  similarly situated individuals,      **DEFENDANT SIX CONTINENTS
                                         HOTELS, INC.'S OPPOSITION TO
14                    Plaintiffs,        PLAINTIFFS' MOTION FOR CLASS
                                         CERTIFICATION**
15        v.
                                         *[Filed concurrently with Declarations of
16  SIX CONTINENTS HOTELS, INC.; and     Monica D. Scott, Linda Golden, John Eyre,
    DOES 2 through 10, inclusive,        Jeff Buchanan, Jim Emery, Wendell Regala,
17                                       Marvyn S. Llamas, Candice Fortner;
                    Defendants.          Jacqueline Mazyck; Michael Weber; Antone
18                                       Nisson; Jerry Holland; Shadman Isaacs; Gina
                                         Speck; Evidentiary Objections to the
19                                       Declaration of Randall Snyder; Request for
                                         Judicial Notice]*
20
                                         Hearing:
21                                       Date:         September 24, 2014
                                         Time:         1:00 p.m.
22                                       Place:        Courtroom A, 15th Floor

23                                       Complaint Filed:    July 8, 2012
                                         FAC Filed:          July 19, 2012
24                                       SAC Filed:          Oct. 11, 2013
                                         Trial Date:         None
25

26

27

28

EAST\78977251.5

DLA PIPER LLP (US)
   LOS ANGELES

**SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .............................................................................................. 1

II.  RELEVANT FACTUAL BACKGROUND ...................................................... 3

    A.   Plaintiff LaTroya Simpson ..................................................................... 3

    B.   Plaintiff Laura McCabe ......................................................................... 3

    C.   Putative Class Member Christy Sarabia ................................................. 5

    D.   Six Continents' Call Recording System ................................................. 6

    E.   Six Continents' Phone Systems ............................................................. 9

    F.   Six Continents' Reservation Systems .................................................. 10

    G.   Relevant Statutes ................................................................................. 10

III. PLAINTIFFS' BURDEN AT THE CLASS CERTIFICATION STAGE ........ 12

IV.  THE PROPOSED CLASSES ARE NOT ASCERTAINABLE ...................... 12

    A.   Proposed Classes Are Complex, Confusing, And Inadequate .............. 14

    B.   Plaintiffs Propose No Feasible Way To Determine Who Called Six Continents ............................................................................................ 16

    C.   Plaintiffs Propose No Way To Determine Caller Residency ................ 17

    D.   Plaintiffs Propose No Feasible Way To Determine A Caller's Location ............. 18

    E.   Plaintiffs Propose No Feasible Way To Determine Whether A Caller Used A Cordless Phone ....................................................................... 20

    F.   Plaintiffs Propose No Feasible Way To Determine If A Call Was Recorded ...... 22

V.   PLAINTIFFS CANNOT SATISFY RULE 23(A) AND 23(B) ...................... 24

    A.   Plaintiffs Cannot Prove That Any Questions Of Law Or Fact Are  Common Or Predominate Over Individualized Issues .......................... 24

        1.   Whether A Putative Class Member Consented To Recording ................. 25

        2.   Whether The Call Was Answered On A Specified Device ...................... 28

        3.   Whether A Class Member's Claim Is Time-Barred ................................. 29

        4.   What Law Applies .................................................................................. 30

        5.   Whether A Class Members Call Was Recorded, Whether A Class Member Is A California Resident, And Whether a Class Member Was  In California At The Time Of The Call .......................................... 30

    B.   Plaintiffs Are Not Typical .................................................................... 31

    C.   Neither Plaintiffs Nor Their Counsel Are Adequate ............................ 31

    D.   A Class Action Is Neither Superior Nor Manageable .......................... 33

VI.  CONCLUSION .............................................................................................. 35

DLA PIPER LLP (US)
LOS ANGELES

**SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**FEDERAL CASES**

4

*Agne v. Papa John's Int'l, Inc.*,
    286 F.R.D. 559 (W.D. Wash. 2012) ................................................................. 26

5

6

*Alaska v. Suburban Propane Gas Corp.*,
    123 F.3d 1317 (9th Cir. 1997)........................................................................... 31

7

*Anagnostellis v. Pitney Bowes, Inc.*,
    2013 WL 8840335 (C.D. Cal. Mar. 5, 2013) ............................................... 29, 30

8

9

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    2014 WL 60097 (N.D. Cal. Jan. 1, 2014) ......................................................... 31

10

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013)....................................................................... 15

11

12

*Banks v. Nissan N. Am.*,
    ---F.R.D.---, 2013 WL 6700299 (N.D. Cal. Dec. 19, 2003) ............................. 14

13

14

*Barry v. Funk*,
    146 F.3d 1003 (D.C. Cir. 1998) ........................................................................ 27

15

16

*Bateman v. American Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010).............................................................................. 34

17

*Bible v. Rio Properties, Inc.*,
    246 F.R.D. 614 (C.D. Cal. 2007) ...................................................................... 17

18

19

*Bodner v. Oreck Direct, LLC*,
    2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) .............................................. 32, 33

20

21

*Boundas v. Abercrombie & Fitch, Stores, Inc.*,
    280 F.R.D. 408 (N.D. Ill. 2012) ........................................................................ 14

22

*Campiti v. Walonis*,
    611 F.2d 387 (1st Cir. 1979) ............................................................................. 27

23

24

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (2013)............................................................................. 19, 21, 33

25

*Deitz v. Comcast Corp.*,
    2007 WL 2015440 (N.D. Cal. July 11, 2007) .............................................. 12, 13

26

27

*DG ex rel Strickland v. Devaugh*,
    594 F.3d 1188 (10th Cir. 2010).......................................................................... 24

28

DLA PIPER LLP (US)
LOS ANGELES

**SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

*Dioquino v. Sempris, LLC*,
  2012 WL 6742528 (C.D. Cal. Apr. 9, 2012) ............................................................. 24, 29, 35

*Ebin v. Kangadis Food, Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ......................................................................................... 14

*Forcellati v. Hypand's, Inc.*,
  2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ........................................................................ 14

*Galvan v. KDI Distrib, Inc.*,
  2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ...................................................................... 15

*Gartin v. S&M Nu Tech, LLC*,
  245 F.R.D. 429 (C.D. Cal. 2007) .................................................................................. 31, 33

*Gragg v. Orange Cab Co.*,
  2014 WL 794266 (W.D. Wash. Feb. 27, 2014) ................................................................... 15

*Griggs-Ryan v. Smith*,
  904 F.2d 117 (1st Cir. 1990) ............................................................................................... 27

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 32

*Hernandez v. Chipolte Mexican Grill, Inc.*,
  2013 WL 6332002 (C.D. Cal. Dec. 2, 2013) ...................................................................... 20

*In re Chocolate Confectionary Antitrust Litig.*,
  289 F.R.D. 200 (M.D. Pa. 2012) ........................................................................................ 15

*In re Google Inc. Gmail Litig.*,
  2014 WL 1102660 (N.D. Cal. Mar. 16, 2014) ................................................................... 27

*Jackson v. Collections Acquisition Co.*,
  2013 WL 5592603 (E.D. Mo. Oct. 9, 2013) ....................................................................... 25

*Jonczyk v. First Nat'l Capital Corp.*,
  2014 WL 1689281 (C.D. Cal. Jan. 22, 2014) ..................................................................... 17

*Jovel v. Boiron, Inc.*,
  2014 WL 1027874 (C.D. Cal. Feb. 27, 2014) .................................................................... 32

*Kline v. Coldwell, Banker Co.*,
  508 F.2d 226 (9th Cir. 1974) .............................................................................................. 34

*Mazur v. EBay, Inc.*,
  257 F.R.D. 563 (N.D. Cal. 2009) ................................................................................. 13, 21

*McCrary v. The Elations Co.*,
  2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ..................................................................... 14

- iii -

**SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

*Minnesota Pub. Util. Comm'n v. Fed. Commc'n Comm'n*,
  483 F.3d 570 (8th Cir. 2007).............................................................. 28

*Montantes v. Inventure Foods*,
  2014 WL 3305578 (C.D. Cal. July 2, 2012) .......................... 12, 20

*O'Connor v. Boeing N. Am.*,
  311 F.3d 1139 (9th Cir. 2002)....................................... 29, 30

*O'Connor v. Boeing N. Am., Inc.*,
  184 F.R.D. 311 (C.D. Cal. 1998) .......................................... 15

*Patel v. City of Los Angeles*,
  738 F.3d 1058 (9th Cir. 2013)........................................... 17

*Quesada v. Banc of America Inv. Serv. Inc.*,
  2013 WL 623288 (N.D. Cal. Feb. 19, 2003).............................. 30

*Ratner v. Chemical Bank*,
  54 F.R.D. 412 (S.D.N.Y. 1972) ........................................... 34

*Red v. Kraft Foods, Inc.*,
  2011 WL 4599833 (C.D. Cal. Sept. 29, 2011).............................. 14

*Rowden v. Pacific Parking Sys.*,
  282 F.R.D. 581 (C.D. Cal. July 2, 2012) ......................... 33, 34, 35

*Ryan v. Jersey Mike's Franchise Sys.*,
  2014 WL 1292930 (S.D. Cal. Mar. 28, 2014) ......................... 32

*Sethavanish v. ZonePerfect Nutrition Co.*,
  2014 WL 580696 (N.D. Cal. Feb. 3, 2014)......................... 15, 33

*Shaw v. BAC Home Loans Serv., LP*,
  2011 WL 6934434 (S.D. Cal. Dec. 29, 2011)...................... 12, 13

*Simpson v. Vantage Hospitality Group, Inc.*,
  2012 WL 6025772 (N.D. Cal. Dec. 4, 2012) .......................... 12

*Spencer v. Beavex, Inc.*,
  2006 WL 6500597 (S.D. Cal. Dec. 15, 2006).......................... 13

*TelTech Sys. Inc. v. Barbour*,
  866 F. Supp. 2d 571 (S.D. Miss 2011).............................. 18

*Tidenberg v. Bidz.com*,
  2010 WL 135580 (C.D. Cal. Jan. 7, 2010) ......................... 19, 35

*Torres v. Nutrisystem, Inc.*,
  289 F.R.D. 587 (C.D. Cal. Apr. 8, 2013)....................... 11, 25, 27

*United States v. Amen*,
   831 F.3d 373 (2nd Cir. 1987)................................................................. 27

*United States v. Davis*,
   ---F.3d ---, 2014 WL 2599917 (11th Cir. June 11, 2014) ...................... 19

*United States v. Lanoue*,
   71 F.3d 966 (1st Cir. 1995) ................................................................... 26

*Vonage Holdings Corp. v. Nebraska Pub. Serv. Comm'n*,
   564 F.3d 900 (8th Cir. 2009).................................................................. 28

*Wal-Mart Stores, Inc. v. Dukes*,
   — U.S. — , 131 S. Ct. 2541 (2011) ................................................. 12, 24

*Webb v. Carter's*,
   272 F.R.D. 489 (C.D. Cal. 2011) ........................................................... 25

*Welling v. Alexy*,
   155 F.R.D. 654 (N.D. Cal. 1994) ........................................................... 32

*White v. FIA Card Serv., N.A.*,
   2013 WL 756292 (S.D. Cal. Feb. 26, 2013) ..................................... 11, 26

*Williams v. Poulos*,
   11 F.3d 271 (1st Cir. 1993) ................................................................... 27

*Young v. Hilton Worldwide, Inc.*,
   2014 WL 3434117 (C.D. Cal. July 11, 2014) ................................... 2, 11

**STATE CASES**

*Cho v. Seagate Tech. Holdings*,
   177 Cal. App. 4th 734 (2009).................................................................. 15

*Coleman v. First Am. Home Buyers Protection Corp.*,
   Case No., BC420436 (L.A. Super. Ct., Aug. 27, 2012).................... 16, 17

*Duran v. U.S. Bank Nat'l Assoc.*,
   59 Cal. 4th 1 (2014) .............................................................................. 33

*Hataishi v. First American Home Buyers Protection Corp.*,
   223 Cal.App.4th 1454 (2014)........................................................... passim

*Henderson v. For-Shor Co.*,
   757 P.2d 465 (Utah Ct. App. 1988) ....................................................... 30

*Kearney v. Salomon Smith Barney, Inc.*,
   39 Cal. 4th 95 (2006) ........................................................ 11, 18, 19, 30

*Lee v. Dynamex*,
    166 Cal. App. 4th 1325 (2008)................................................................. 13

*Sevidal v. Target Corp.*,
    189 Cal. App 4th 905 (2010)................................................................. 16

**STATUTES**

Cal. Civ. Proc. Code § 340(a) ...................................................................... 29

Cal. Civ. Proc. Code § 1985.3...................................................................... 19

Cal. Pen. Code § 272(b)(1) ..................................................................... 11, 26

Cal. Pen. Code § 632........................................................................... passim

Cal. Pen. Code § 632.7........................................................................ passim

Cal. Pen. Code § 637.2..................................................................... 10, 29

Cal. Pen. Code § 637.5..................................................................... 11, 26

Cal. Pub. Util. Code § 239 ................................................................... 9, 28

Cal. Pub. Util. Code § 710 ................................................................... 9, 28

Section 2 of Stats. 1990, c. 696 (A.B. 3456)......................................... 10

**RULES**

Fed. R. Civ. Proc. 23 ........................................................................ passim

**SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

DLA PIPER LLP (US)
LOS ANGELES

Plaintiff Six Continents Hotels, Inc. ("Six Continents") submits the following Opposition to Plaintiffs Laura McCabe and LaTroya Simpson's Motion for Class Certification ("Motion").

## I.    INTRODUCTION

Plaintiffs state in their Motion that "[t]his is a simple case." (Motion, 1:3.) It is anything but and Plaintiffs know that. Indeed, in their stipulation filed on June 30, 2014 requesting increased page limits, Plaintiffs asserted that additional pages are needed "[g]iven the numerous complex issues that will be raised by Plaintiffs' Motion." (Docket No. 78; 2:6-9.) Similar twisting and misrepresenting of the evidence and the law infects Plaintiffs' entire Motion.

As an initial matter, Six Continents is not aware of *any* case brought under Penal Code Section 632.7 ("Section 632.7") that has ever been certified as a class action on a contested motion. Nor does Six Continents know of any case brought under Section 632 (Section 632.7's sister statute) that has been certified as a class and proceeded to trial instead of being decertified or otherwise resolved. This is because there are numerous individualized issues that must be analyzed to determine California Invasion of Privacy Act ("Privacy Act" or "CIPA") claims making them inappropriate for class treatment. Notably, the California Court of Appeal in *Hataishi v. First American Home Buyers Protection Corp.*, 223 Cal.App.4th 1454 (2014), agreed that an action much like this one should not be certified. Plaintiffs here know that *Hataishi* seals their fate as their counsel unsuccessfully attempted to have *Hataishi* depublished. The Court should reject Plaintiffs' request that it take the unprecedented step of certifying a Section 632.7 class and deny Plaintiffs' Motion for the following reasons:

First, in a failed attempt to avoid individualized issues, Plaintiffs propose two confusing, complex, and unworkable class definitions each containing eight (8) subparts. These definitions make the classes unascertainable. It is not possible, much less administratively feasible, to determine who is in the proposed classes. Incredibly, while Plaintiffs submit a declaration from a purported expert saying that "the proposed members of the class in this case can be definitively and clearly ascertained . . . [using] a straightforward and highly accurate administrative process," that "expert" admitted at deposition that he *did not even know* what the proposed classes were.[1]

---

[1]    Declaration of Monica D. Scott ("Scott Decl."), Ex. AA, Snyder Depo., 6:9-18.

Second, common questions of law or fact do not predominate.  The numerous individual issues that must be examined for each class member include whether the class member consented to recording and whether the class member's call was answered on a device covered by Section 632.7.  Importantly, a survey conducted by Professor Linda Golden, the consumer expectations expert relied upon by the *Hataishi* court, revealed that over 88% of people who have called hotel companies expect that their toll free calls to businesses may be recorded.  If a person makes a call expecting that the call may be recorded, he or she has consented to recording.  Determining whether any particular class member consented to recording requires an individualized analysis making class treatment wholly inappropriate.

Third, Plaintiffs are not typical and neither they nor their counsel are adequate.  Both Plaintiffs were solicited to bring this action by a newspaper ad placed by their counsel.  Neither Plaintiff used a cordless phone so they cannot be members of the cordless subclass.  Both Plaintiffs (presumably after coaching by their counsel) claim to be in the 12% minority that do not believe toll-free calls to businesses may be recorded.  Further, there is no evidence that Plaintiff Simpson's calls were recorded and, if they were, her recording claim would be time-barred.  And Plaintiff Simpson is a serial plaintiff who filed multiple telephone recording class actions but did not keep track of any of them.  This case is the type of attorney-initiated and driven class action litigation that warrants denial of class certification.

Finally, a class action is neither superior nor manageable here.  Given the ascertainability problems and individualized issues described above, this case cannot proceed on a class basis while still comporting with due process.  There is no way trial could be managed.  Moreover, given the $10 billion in statutory damages that Plaintiffs seek in the absence of any actual harm, even a 5% error rate in determining which persons or calls are to receive statutory damages would amount to a $500 million error, and the error rate is likely to be much higher than 5%.  Moreover, the conduct at issue was never intended to be covered by the statute.[2]

Accordingly, Six Continents requests that the Court deny the Motion with prejudice.

---

[2]     *Young v. Hilton Worldwide, Inc.*, 2014 WL 3434117, at *2 (C.D. Cal. July 11, 2014).

DLA Piper LLP (US)
Los Angeles

**SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

## II.   RELEVANT FACTUAL BACKGROUND

### A.   <u>Plaintiff LaTroya Simpson</u>

Plaintiff Simpson alleges that "from February through July 2011 and in September 2011" she called "1-888-HOLIDAY" from California using her cell phone.  (Second Amended Complaint ("SAC"), ¶ 15.)  Plaintiff Simpson further alleges that she called "1-888-HOLIDAY" to "inquire about hotel rates and/or to make reservations."  (*Id*.)  Six Continents' records indicate that it received two phone calls from a number purportedly belonging to Plaintiff Simpson.  The first call, made on June 3, 2011 never reached an agent.  The second call, also made on June 3, 2011, appears to have been answered by an agent in the Baguio, Philippines call center.  Six Continents has no recording of any of Plaintiff Simpson's alleged calls nor does it have any other records indicating that either call was recorded.[3]  Plaintiff Simpson testified that she did not know if her calls were recorded and refused to answer questions about *why* she believed her calls were recorded or *when* or *how* she found out her calls were recorded.[4]  Further, Plaintiff Simpson could not recall the details of either call and maintained that she called Six Continents three (3) times while Six Continents records indicate receiving only two (2) calls.[5]

Plaintiff Simpson also testified that she was solicited by Plaintiffs' counsel via a newspaper ad to become a plaintiff in at least **<u>seven</u>** (7) call-recording class actions against multiple hotel companies.  Despite being a named plaintiff in numerous call recording class actions, Plaintiff Simpson could not answer any questions about the other cases she was involved in nor was she aware that several of the cases had been dismissed.[6]

### B.   <u>Plaintiff Laura McCabe</u>

Plaintiff McCabe alleges that "[d]uring the period from 2010 through June 2012" she "called 1-888-211-9874 numerous times from California" using her cell phone.  (SAC, ¶ 14.)  "On at least four occasions, believed to be November 11, 2011, January 22, 2012, February 3, 2012, and February 10, 2012, McCabe's calls were routed to one of [Six Continents'] call centers

---

[3]   Scott Decl., Ex. A, IHG_00012-14; Declaration from John Eyre ("Eyre Decl."),¶ 4.
[4]   Scott Decl., Ex. F, Simpson Depo., 20:19-23; 21:5-7; 32:24-33:8.
[5]   Simpson Depo., 32:6-8; 45:20-46:7; 48:18-49:21.
[6]   Simpson Depo., 26:4-24; 36:3-43:14.

in the Philippines and recording without any warning. . . ."  (SAC, ¶ 14.)

While Six Continents' records indicate that it received nine (9) phone calls from a number purportedly belonging to Plaintiff McCabe during the alleged class ("Class") period[7], there are only four (4) call recordings:  November 11, 2011, January 22, 2012, February 3, 2012, and February 10, 2012.  Six Continents has no recordings of any of Plaintiff McCabe's other calls nor can it tell if those calls were recorded.[8]

The first call, made on November 11, 2011, was answered by an agent in the Manila, Philippines call center.[9]  Plaintiff McCabe admitted, during her deposition, that she placed the call while she was in Atlanta, Georgia.[10]  The second call, made on January 22, 2012 was answered by an agent in the Baguio call center.[11]  Plaintiff McCabe did not identify herself or provide any identifying information to the agent during this call.[12]  The third call, made on February 3, 2012 did not reach an agent.[13]  Finally, Plaintiff McCabe's fourth call, made on February 10, 2012, was answered by an agent in the Manila call center.[14]  Plaintiff McCabe did not identify herself or provide any identifying information to the agent during this call.[15]

While Plaintiffs assert that Ms. McCabe was present in California for five (5) calls: March 20, 2011, April 10, 2011,[16] January 21, 2012, February 3, 2012, and February 9, 2012.  (Motion, 7:21-23), Plaintiff McCabe's location when she made the aforementioned five (5) calls was difficult to assess because she travels frequently and could not recall the details or circumstances surrounding the calls (which Plaintiff McCabe asserted were to make reservations for work).[17]

---

[7]   As defined by Plaintiffs in their Notice of Motion.  (1:8-22.)
[8]   Scott Decl., Ex. A, IHG_00402-405; Eyre Decl., ¶ 5.  For the Court's convenience, Six Continents lodged recordings of Plaintiff McCabe's four calls with the Court on July 30, 2014. (IHG_00001-4.)
[9]   Scott Decl., Ex. A, IHG_00402-403; Eyre Decl., ¶ 5.
[10]   Scott Decl., Ex. G, McCabe Depo., 105:20-22.
[11]   Scott Decl., Ex., A, IHG_00402-403; Eyre Decl., ¶ 5.
[12]   McCabe Depo., 107:23-111:25.
[13]   Scott Decl., Ex. A, IHG_00402-405; Eyre Decl., ¶ 5.
[14]   Scott Decl., Ex. A, IHG_00402-405; Eyre Decl., ¶ 5.
[15]   Scott Decl., Ex. A, IHG_00402-405; McCabe Depo., 116:1-117:7.
[16]   Six Continents has no record of an April 10, 2011 call from a number purportedly belonging to Plaintiff McCabe.  (Scott Decl., Ex. A, IHG_00402-405.)  Rather, Six Continents has records for an April 7, 2011 call.  (*Id.*)  Because Plaintiffs refer elsewhere in their Motion to an "April 7, 2011" call (*e.g.*, Motion 6:12), Six Continents is assuming that this reference to an "April 10, 2011" call is a typo.
[17]   McCabe Depo., 10:16-11:1; 19:4-6; 22:13-19; 71:18-79:16.

**SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**

The deposition of an individual who worked for Plaintiff McCabe's employer, Alonna Lea, was required because the documents submitted by Plaintiff McCabe, (Grover Declaration ("Grover Decl."), Exs. O-P), were insufficient to determine Plaintiff McCabe's whereabouts on the days in question. The deposition of Ms. Lea and her subsequent document production revealed that Plaintiff McCabe was actually in Ohio for her April 2011 call, and not in California as she claims.[18] Notably, Plaintiff McCabe also testified that while she lived in Las Vegas for two years, she had a cellular phone number with a San Diego area code. (McCabe Depo., 9:1-10:6.) Finally, like Plaintiff Simpson, Plaintiff McCabe was solicited via a newspaper ad to file this action and refused to answer questions about *when* or *how* she first learned she may have been recorded by Six Continents. (*Id.* at 17:4-9; 36:8-14; 81:21-82:5.)

### C. <u>Putative Class Member Christy Sarabia</u>

While not a named plaintiff, Plaintiffs' counsel requested that Six Continents provide records of calls made by Ms. Christy Sarabia. (Gover Decl., Ex. J; Rogs 7-8.) Six Continents complied and, as a result, Ms. Sarabia was deposed in this action.

Six Continents' records indicate numerous calls from a number belonging to Ms. Sarabia, only one of which was made during the Class period.[19] Ms. Sarabia made calls concerning group reservations as well as reservations on behalf of other persons as part of her job as tournament director for a non-profit baseball organization.[20] Ms. Sarabia did not give her name or other personal identifying information on the vast majority of her calls.[21] Many of the calls were not recorded or, if there was a recording, the recording was not of Ms. Sarabia.[22]

---

[18]   Scott Decl., Ex. I, documents produced by A. Lea. Plaintiffs' counsel **did not** provide any cell-site location data or other information from Plaintiff McCabe's cellular phone provider which might have shown Plaintiff McCabe's locations on the dates in question as they assert can be done for putative class members. (Motion, 29:1-7.) And Plaintiff McCabe's cellular telephone bills produced in this litigation by Plaintiffs did not show where Plaintiff McCabe was when she placed calls to Six Continents. (Grover Decl., Ex. N.) Ms. Lea also contradicted Plaintiff McCabe's testimony as to important facts surrounding Plaintiff McCabe's calls to Six Continents, specifically concerning who made Ms. McCabe's travel arrangements. (*Compare* McCabe Depo., 22:15-23:7 *with* Scott Decl., Ex. H, Lea Depo., 25:11-26:11.)

[19]   IHG_09484. For the Court's convenience, Six Continents lodged recordings of Ms. Sarabia's calls with the Court on July 30, 2014. (IHG_09464-09488).

[20]   Scott Decl., Ex. J, Sarabia Depo., 16:19-17:7; 22:20-23:8; 31:18-32:13; 70:23-71:8; IHG_09488.

[21]   *See, e.g.*, IHG_09488; IHG_09479-09484; IHG_09472-09476.

[22]   *See, e.g.*, IHG_09487; IHG_09468; Sarabia Depo., 78:20-79:3.

**SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

### D.    Six Continents' Call Recording System

Calls made to Six Continents' U.S. toll-free reservation numbers may be answered at call centers located in: (1) Salt Lake City, Utah; (2) Charleston, South Carolina; (3) Guragon, India; (4) Baguio, Philippines; (5) Manila, Philippines; or (5) Birmingham, England.  (SAC, ¶ 1; Scott Decl., Ex. K, Randall Depo., 39:22-40:3.)  For quality assurance purposes, Six Continents records some calls.  (*Id*. at 44:9-50:17.)  Any recordings are made using a system called Verint Impact 360.  (*Id*. at 43:2-11.)  Prior to July 18, 2012, only calls routed to the Birmingham call center received a verbal notification that calls may be recorded.  (*Id*. at 126:24-127:2.)

While it may be true that for each agent work station that was set up for recording the "goal" was to "record each call," the reality is that Six Continents did not record all calls for a variety of reasons.  (Scott Decl., Ex. L, Floor Depo., 43:2-7.)  First, the hardware (*i.e.*, the servers) underlying Impact 360 is "very old," causing routine failures.  (*Id*. at 28:4-29:7.)  When the servers go down, calls cannot be recorded.  (*Id*.)  Because Six Continents records only for quality assurance purposes, maintaining and repairing the servers is not considered "mission-critical."  (*Id*.)  Thus, when the servers fail, they are not repaired immediately.  (*Id*.)

Second, Impact 360 is not a perfect system and even when the servers are running, calls are not recorded for a variety of reasons.  For instance, some calls are simply not recorded even if an attempt to record was made.  The audio recording of Ms. Sarabia's October 30, 2012 call, simply says "no packets were received for this call."[23]  And the recording may not be a recording of the caller, but of Six Continents' agents speaking to one another.[24]

---

[23]    IHG_09468; Scott Decl., Ex. B, Emery Depo., 64:3-65:7; 78:15-79:19.  Another example is when a call cannot be properly recorded due to static or another technical problem. (IHG_09480.)  Yet another instance is when only portions of calls are recorded.  (IHG_09479.)  When this happens, the call time may be noted as several minutes long but when the call is played, it may be very short with several remaining minutes of "dead air."  (IHG_09474; Emery Depo., 60:8-12.)

[24]    IHG_09487; Sarabia Depo., 78:20-79:3.  Some of the technical issues effecting Impact 360's ability to record are documented in certain emails sent to verintsupport.com, (Scott Decl., Ex. C, IHG_09310; IHG_09336; IHG_09337-9338; IHG_09341-9342; IHG_09343; IHG_09344-9345; IHG_09346-9347; IHG_09356; IHG_09360; IHG_09380; IHG_09387-9388; IHG_09401; IHG_09403-9404; IHG_09409-9410), as well as in the concurrently filed Team Manager Declarations.  (Declaration of Candice Fortner ("Fortner Decl."), ¶ 3; Declaration of Jacqueline Mazyck ("Mazyck Decl.") ¶ 3; Declaration of Michael Weber (Weber Decl."), ¶ 3; Declaration of Antone Nisson ("Nisson Decl."), ¶ 3; Declaration of Jerry Holland ("Holland Decl."), ¶ 3; Declaration of Shadman Isaacs ("Isaacs Decl."), ¶ 3.)

1    Third, Six Continents did not have enough Impact 360 licenses to cover all agent stations

2    during the applicable time period.  (Floor Depo., 47:5-21; Declaration of Jeff Buchanan

3    ("Buchanan Decl."), ¶¶ 2-5.)  As a result, some calls were not recorded because the stations were

4    not set up to record.  (*Id*.)  During the applicable time period, Six Continents had 1,804 Impact

5    360 licenses and approximately 2,233 agent stations.  (*Id*.)  It is not possible to discern from Six

6    Continents' records which stations were set up to record/not set up to record during the Class

7    period.  (Emery Depo., 20:7-20; 23:5-13.)

8        In short, it is impossible for Six Continents (or anyone else) to determine whether any call

9    was recorded unless and until it can locate the recording and listen to it.  (Randall Depo., 58:22-

10   59:1 ("*unless I listen to a call, I wouldn't know if there is a recording there nor not*.") (emphasis

11   added); Emery Depo., 79:5-22.)  The Motion disingenuously implies that Six Continents records

12   every single call (it does not) and misleadingly quotes from deposition transcripts, including

13   failing to cite to corrections submitted by the deponents, to imply that calls are recorded "100%"

14   of the time.[25]  This is simply not the case.

15       Further, contrary to Plaintiffs' assertions, Impact 360 cannot identify callers.  Impact 360,

16   in some circumstances, captures the automatic identification number ("ANI" or phone number) of

17   callers.  But Impact 360 cannot and does not capture the ANI of callers with "blocked" or

18   "restricted" numbers.  (Eyre Decl., ¶ 10.)  Nor does Impact 360 capture or retain any name or

19   address information of the callers.  (*Id*., at ¶ 11.)  Indeed, the only way to determine the identity

20   of a caller using Impact 360 is if the caller identified himself or herself during the call and Six

21

22   [25]    For instance, Plaintiffs cite to the deposition transcript of Mr. Randall at 58:14-23, for the
     proposition that Six Continents can get a count of all recordings, implying that all calls are
23   recorded.  (Motion, 8:12-26.)  Plaintiffs conveniently leave out the actual answer given by
     Mr. Randall on the very next line, in which he specifically states: "*I can get a count of attempted
24   recordings, but unless I listen to the call, I wouldn't know if there's a recording there or not*."
     (Randall Depo., 58:22-59:1.)  Further, Plaintiffs also cite to Mr. Randall's transcript at 59:13-21,
25   where Mr. Randall specifically states: "*I can get a count of what the system appears to have
     recorded*."  (Motion, 8:26; Randall Depo, 59:13-16.)  In addition, Plaintiffs cite extensively to the
26   deposition transcript of Mr. Emery at 37:5-21 and 73:13-14 for the proposition that all calls were
     recorded.  *See, e.g*., Motion, 8:26-28; 9:22-28; 10:23-28.  But Plaintiffs conveniently fail to cite to
27   Mr. Emery's final transcript where he clarified that the "database of calls that were recorded"
     actually means the "database of call that were *attempted* to be recorded,"  (Emery Depo, 37:7-8,
28   Emery Errata Sheet) and that "call was not recorded" means "call was not *attempted* to be
     recorded."  (Emery Depo, 73:13-14, Emery Errata Sheet.)

1    Continents is able to locate the recording and listen to it.[26]

2            Additionally, also contrary to Plaintiffs' contentions, Impact 360 cannot easily generate

3    reports of all recorded calls. (Motion, 9:1-17.) As referenced above, Impact 360 has some

4    information about calls that were attempted to be recorded during a small portion of the proposed

5    Class period, but merely because a call is identified in Impact 360 does not mean that it was

6    recorded. (Randall Depo., 58:22-59:1; 59:13-21.) In fact, even generating reports of all calls

7    attempted to be recorded would have to be done *agent by agent* at every call center, as there is no

8    single report for this. (*Id*. at 70:10-25.) The system simply was not designed for that purpose.[27]

9            Finally, Plaintiffs mischaracterize the accessibility of call recordings stored on Six

10   Continents' archive, which is <u>not searchable</u>. (Emery Depo., 46:14-48:12.) Indeed, all of the

11   applicable recordings for the Class period that happen to exist would be stored on Six Continents'

12   archive. (Motion, 1:11-22; Emery Depo., 46:14-48:12.) Plaintiffs inaccurately assert that Six

13   Continents has a record of *all* recorded calls going back to December 2011, (Motion, 9:11-12),

14   but this is not true. (Emery Depo., 78:15-79:15.) Plaintiffs propose no practical way to locate,

15   retrieve, and listen to calls stored on the archive. And Plaintiffs' supposed expert has no

16   experience with call recording systems. [28]

---

[26]    Randall Depo., 132:6-133:6. Plaintiffs further mischaracterize Kevin Randall's testimony on this point, citing to his statement that "30-40 percent" of callers provide their credit card number during their calls with Six Continents, implying that Class member identities can be discerned from listening to calls. (*See, e.g*., Motion, 8:26-27.) Again, Plaintiffs fail to cite to Mr. Randall's errata sheet, where he appropriately corrected his answer to "***No, a material number of our calls are from clients with credit cards on file***." (Scott Decl., Ex. K, Randall Errata Sheet.) Accordingly, more often than not, callers *do not* identify themselves at all during their calls. (IHG_09488; IHG_09479-09484; IHG_09472-09476; McCabe Depo., 107:23-111:25.) Indeed, Plaintiff McCabe's calls show this.

[27]    Further, Plaintiffs imply that Impact 360's "historical contact reports" and "recorded contact reports" contain information helpful to Plaintiffs' Motion. (Motion, 9:16.) These reports do <u>not</u> contain lists of callers/ANIs/date of calls, *etc*. Rather, the "historical contact report" simply lists the *number* of calls which are attempted to be recorded and the "recorded contacts report" simply contains a bar graph showing the *volume* of calls attempted to be recorded. (Scott Decl., Ex. E, IHG_09490-91.) Neither of these reports provides the detailed information Plaintiffs imply.

[28]    Scott Decl., Ex. AA, Snyder Depo., 47:9-48:6. The process for locating a call on the archive requires one to figure out which acquisition module the call was recorded on, the channel, the date and time of the recording, and then manually search the archive to see if the recording can be located. (Emery Depo., 46:14-48:12.) Once the recording is located, it must then be manually moved back to the Impact 360 "portal" where it can actually be played. (*Id*.) It takes significant time to locate, retrieve, and listen to a single call, let alone hundreds of thousands or

1

### E.   Six Continents' Phone Systems

2   All of Plaintiffs' phone calls referenced above in Sections II.A-B, if answered by an agent,

3   were answered in either the Manila or Baguio call centers.[29]  Agents in the Baguio call center

4   answer incoming calls on their computers using Voice-Over Internet Protocol ("VoIP").[30]

5   Similarly, agents in the Manila and Guragon centers also answered calls on VoIP.[31]  Calls routed

6   to the Salt Lake and Charleston call centers were not answered on VoIP during the proposed

7   Class Period.  (Eyre Decl., ¶ 8).  In short, all calls answered in Baguio, Guragon, and many in

8   Manila were *not* answered on cellular telephones, cordless telephones or landline telephones.

9   As detailed in the expert report of Dr. Ronald Brown attached to the Scott Declaration,

10   there are significant technical differences between VoIP and landline telepones.  (Scott Decl., Ex.

11   M, Brown Report,§ 2.2.)  Nor is VoIP a cordless phone or cellular phone.  Rather, calls answered

12   by VoIP devices such as computers (as used in Baguio) and session initiation protocol ("SIP")

13   devices (as used in Manila) receive communications via data packets and not analog signals like

14   landline telephones.  California recognizes that VoIP is a different technology, one that is not

15   regulated by the California Public Utilities Commission.  *See* Cal. Pub. Util. Code §§ 239, 710.

16   As a result, calls answered using VoIP, like Plaintiffs' calls, do not fall under Section 632.7,

17   though they may be covered by Section 632.

18   Calls to Six Continents are distributed to call centers and agents via a call distribution

19   system called Genesys.  Some, but not all information, from Genesys is captured by and housed

20   in another system called "Info Mart" (*i.e*., ANI, call time, agent ), which is stored in Six

21   Continents' Enterprise Data Warehouse.  Importantly, there is *nothing* in Genesys, Info Mart or

22   the Enterprise Data Warehouse to indicate whether or not a call was recorded, nor does any of

23   these systems interface with Impact 360 or the database/archive of recordings.[32]

24

---

25   millions as Plaintiffs propose.  (Declaration of Jim Emery, ("Emery Decl."), ¶¶ 2-3.)

[29]   Eyre Decl., ¶¶ 4-5; Scott Decl., Ex. A, IHG_00402-405; IHG_00012-14.

26   [30]   Eyre Decl., ¶ 6; Declaration of Wendell Regala ("Regala Decl."), ¶ 2.

[31]   All Manila calls were answered on VoIP after June 29, 2011.  (Eyre Decl., ¶ 7.)  Prior to

27   June 29, 2011, agents in Manila answered calls using various different methods, including VoIP.

(*Id*.)  How the calls were answered varied agent by agent.  (*Id*.)

28   [32]   Scott Decl., Ex. D, Bazley Depo., 27:17-28:13; Emery Decl., ¶ 4.  Notably, the ANI

information in Info Mart is for calls *received*, as a result the ANI information does not necessarily

1

### F.     Six Continents' Reservation Systems

Holidex contains certain reservation information regarding hotel guest reservations.  The only information that is required to make a reservation is the guest's name.[33]  As a result, Holidex does not contain, as Plaintiffs imply, full contact information (*i.e.*, name, address, phone number, credit card information, etc.) for every guest who stayed with Six Continents.  (Motion, 10:10-13.)  More importantly, Holidex is a completely separate system and is in no way connected to Impact 360 or any database of recorded calls.  And the information in Holidex is about the guest, not the person who called Six Continents.  Six Continents' Magic system supports Six Continents' loyalty program.  Similar to Holidex, Magic is completely separate from, not connected to, and has no interface with, Impact 360 or records of recorded calls.[34]

### G.     Relevant Statutes

The Privacy Act makes the recording of certain communications unlawful without consent.  Section 632.7 prohibits the intentional interception or receiving and recording without consent of certain cellular radio telephone and cordless telephone communications transmitted between specified devices.  *See* Cal. Penal Code § 632.7(a).[35]

The purpose of the Privacy Act was to "put a stop to unethical industrial espionage and spying operations in California," and to provide legal recourse to parties whose "telephone communications have been *maliciously invaded by persons not intended to receive those communications*."[36]  Recording of calls for quality assurance was always intended to be exempt from the statute.  *Id.*  Section 632.7 was designed to prevent people from using radio scanners to intercept and record wireless signals.[37]  The statue was not aimed at restricting the recording of

---

correspond to calls that actually *reached* a Six Continents' agent.  (Bazley Depo., 40:6-11.)

[33]     Bazley Depo., 14:12-15:1.

[34]     Emery Decl., ¶ 4.

[35]     Section 637.2 creates a private right of action for violation of the Privacy Act and provides that "Any person who has been injured . . . may bring an action against the person who committed the violation for the greater of the following amounts: (1) Five thousand dollars ($5,000). [or] (2) Three times the amount of actual damages, if any, sustained by the plaintiff." Cal. Penal Code § 637.2.

[36]     Scott Decl., Ex. R, 3/1/67 Press Release from Jesse Unruh, Speaker of the California Assembly and author of Assembly Bill 860); Section 2 of Stats. 1990, c. 696 (A.B. 3456) (emphasis added).

[37]     (Scott Decl., Ex. P, 8/23/1991 Letter from Michael S. Sands to Hon. Phil Isenberg and Hon. Lloyd Connelly).  The impetus for Section 632.7 was an incident where someone used a

1   calls for quality assurance purposes, the only reason for recording here.[38]

2       Throughout the Motion Plaintiffs mischaracterize the Privacy Act and what is required to

3   demonstrate a Section 632.7 violation.  First, Plaintiffs claim that the Privacy Act requires

4   individuals and business alike to inform all parties to a call, at the outset, that the call will be

5   recorded.  (*See, e.g.*, Motion, 4:3-10; 21:3.)  Neither Section 632.7 nor any other section of the

6   Privacy Act requires this.  Plaintiffs' standard is simply not the law as recently confirmed by the

7   California Court of Appeal when analyzing the Privacy Act: "nothing suggests that recording a

8   conversation without advising the other party constitutes a *per se* violation of the statute."[39]

9       Second, Plaintiffs also imply that express consent is required under Section 632.7,

10  (Motion, 1:14-17; 3:9-14; 26:14-27:6), which is simply not accurate.  The term "express consent"

11  is not found in Section 632.7.  The California Legislature knows how to use the term "express

12  consent" and uses it specifically when it sees fit.  *See, e.g.*, Cal. Penal Code §§ 272(b)(1); 637.5.

13  It did not use the phrase "express consent" in Section 632.7.

14      Third, Plaintiffs incorrectly assert that the "only requirement contained in Section 632.7 is

15

16    scanner to eavesdrop upon a cordless phone call between businessmen interested in buying the
    Sacramento Kings NBA franchise, recorded that call, and offered to sell the recording.  (*Id*).

17  Upon being notified of this incident, Assembly Member Connelly authored AB 2465, which
    became Penal Code section 632.7.  In his Author's Statement of Intent, Assembly Member

18  Connelly stated that the statute was needed because persons using cellular or cordless phones do
    not "reasonably anticipate that their conversations will be *both* intercepted *and* recorded."  (Scott

19  Decl., Ex. Q, Assembly Bill No. 2465: Author's Statement of Intent) (emphasis in original).
    [38]   Randall Depo., 44:9-50:17; *Young*, 2014 WL 3434117, at *2 (granting judgment on the

20  pleadings and dismissing Section 632.7 complaint with prejudice because, among other reasons,
    Section 632.7 does not prohibit "service-observing" of calls).

21  [39]    *Hataishi*, 223 Cal. App. 4th at 1467; *see also Torres v. Nutrisystem, Inc.*, 289 F.R.D.
    587, 592 (C.D. Cal. Apr. 8, 2013) ("[i]t is likely that some class members expected their calls to

22  be recorded, even if they did not hear the Disclosure").  Plaintiffs further assert that the California
    Supreme Court in *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 (2006), "held" that

23  "consumers have an objectively reasonable expectation that their conversations will not be
    recorded unless the business adequately advises 'all parties to a telephone call, at the outset of the

24  conversation, of its intent to record the call.'"  (Motion, 4:7-10.)  The California Supreme Court
    *never* made any such a ruling.  All the California Supreme Court stated in *Kearney* is that a

25  company who advises all parties to a phone call, at the outset of the conversation, of its intent to
    record the call would <u>not</u> violate Section 632.  *Id*. at 118; s*ee also White v. FIA Card Serv., N.A.*,

26  2013 WL 756292, at *5 (S.D. Cal. Feb. 26, 2013) (declining "to create a verbal disclosure
    requirement that is not expressly provided by [Section 632] itself").  Indeed, the California

27  Supreme Court recognized that there could be an expectation of recording absent a verbal
    advisement but stated that that expectation could not be assumed without evidence in the record.

28  *See Kearney*, 39 Cal.4th at 118 n. 10.

1   that there was a communication."  (Motion, 3:18-19.)[40]  As discussed below in Section IV,

2   Section 632.7 has numerous requirements.  *See, e.g., Hataishi,* 223 Cal. App. 4th at 1469 ("the

3   trier of fact must first determine what type of telephone was used to receive the subject call.")[41]

4   Accordingly, Plaintiffs' characterization of Section 632.7 is patently misleading.

5          Keeping the actual elements of Section 632.7 in mind, as demonstrated below, a class

6   should not be certified in this action.

7   **III.   PLAINTIFFS' BURDEN AT THE CLASS CERTIFICATION STAGE**

8          Plaintiffs bear the burden of demonstrating all of Rule 23(a)'s requirements as well as at

9   least one requirement listed under Rule 23(b).  *Wal-Mart Stores, Inc. v. Dukes,* — U.S. — , 131

10  S. Ct. 2541, 2549 (2011).  Since Plaintiffs seek to certify Classes under Rules 23(a) and 23(b)(3),

11  Plaintiffs must prove with evidence sufficient to withstand a "rigorous analysis" that the questions

12  of law or fact common to class members predominate over any questions affecting only

13  individual members, and that a class action is superior to other available methods for fairly and

14  efficiently adjudicating the controversy.  *Dukes,* 131 S. Ct. at 2551; Fed. R. Civ. Proc. 23(b)(3).

15  Plaintiffs have not and cannot meet this burden.

16  **IV.   THE PROPOSED CLASSES ARE NOT ASCERTAINABLE**

17         "As a threshold matter, and apart from the explicit requirements of Rule 23, the party

18  seeking class certification must demonstrate that an identifiable and ascertainable class exists.

19  The class definition should be 'precise, objective, and presently ascertainable.'"[42]  Further, "[t]he

---

20  [40]     Plaintiffs' citation to *Simpson v. Vantage Hospitality Group, Inc.,* 2012 WL 6025772, at

21  *7 (N.D. Cal. Dec. 4, 2012), as the source of this quote is misleading because the *Simpson* court
    made that statement in the context of analyzing whether Section 632.7 required a "confidential

22  communication."  *Id.*  Six Continents is not arguing, nor has it ever argued, that Section 632.7
    requires "confidential communications."

    [41]     Plaintiffs relegate *Hataishi* to a mere footnote and incorrectly assert that it is a "pure § 632

23  case."  (Motion, 26:25-27.)  It is not.  *See Montantes v. Inventure Foods,* 2014 WL 3305578, at

24  *6 (C.D. Cal. July 2, 2012) (noting that the California Court of Appeal's statement in *Hataishi*
    regarding Section 632.7 "was an alternative basis for denial of plaintiff's request to leave to

25  amend the complaint.").  "'Under California law, "when a decision is based on two separate
    grounds, neither is dictum, rather, each ground is equally valid and constitutes an alternative
    holding in support of the judgment.'"  *Id.* at *6.

26  [42]     *Shaw v. BAC Home Loans Serv., LP,*  2011 WL 6934434, at *2 (S.D. Cal. Dec. 29, 2011)
    (denying class certification and finding plaintiff's class definition involving Californians with

27  BAC modified home loans "imprecise and overbroad," in part, because the definition
    oversimplified the loan modification process); *Deitz v. Comcast Corp.,* 2007 WL 2015440, at *8

28  (N.D. Cal. July 11, 2007) (finding that proposed class was "ill-defined and not clearly

1   class definition 'must be sufficiently definite so that it is *administratively feasible* to determine

2   whether a particular person is a class member."[43]  Although objective criteria may exist for

3   determining class membership, class certification is unwarranted in situations where applying

4   those criteria would be "'excessively complex,' rather than "'sufficiently facile.'"[44]

5          Here, Plaintiffs propose that the Court certify the following two classes ("Classes"):

6          All California residents who, at any time from March 1, 2011 through and including
          July 17, 2012, used a cellular telephone with a California area code while located in
7          California to call a toll-free number operated by Defendant and whose calls were
          routed to any of Defendant's English-speaking call centers and were recorded by
8          Defendant without notice (the "Cellular Class"); and

9          All California residents who, at any time from March 1, 2011 through and including
          July 17, 2012, used a cordless telephone with a California area code while located in
10         California to call a toll-free number operated by Defendant and whose calls were
          routed to any of Defendant's English-speaking call centers and were recorded by
11         Defendant without notice (the "Cordless Class")  (Notice of Motion, 1:11-22.)

12  Neither of these proposed Classes is ascertainable.

13         Plaintiffs' conclusory assertion that the Classes "can be ascertained from Defendant's

14  records" is insufficient.  *See Deitz*, 2007 WL 2015440 at *8.  Indeed, Plaintiffs effectively admit

15  that the Class members cannot be identified by Defendant's records by arguing that they can be

16  ascertained through third-party records and "self-identification" (Motion, 16:7-19:2).  The

17  proposed Classes require **eight** (8) factors to be analyzed for each prospective Class member to

18  determine if he or she is in either Class: (1) whether the individual is a California resident;

19  (2) whether the call was made between March 1, 2011 through July 17, 2012; (3) whether the

20  individual used a cellular or cordless phone with a California area code; (4) whether the

21  individual was located in California at the time he or she made the call; (5) whether the individual

22  called a "toll-free" number "operated by Defendant;" (6) whether the call was routed to one of

23  five "English-speaking" call centers; (7) whether the individual's phone call with Six Continents

24

25  ascertainable" when determining who the class members are required "answering numerous
    individual fact-intensive questions").
26  [43]    *Shaw*, 2011 WL 6934434, at *2; *see also Mazur v. EBay, Inc.*, 257 F.R.D. 563, 567 (N.D.
    Cal. 2009) ("class must be sufficiently definite").
27  [44]    *Spencer v. Beavex, Inc.*, 2006 WL 6500597, at *9 (S.D. Cal. Dec. 15, 2006); *Lee v.
28  Dynamex*, 166 Cal. App. 4th 1325, 1334 (2008) ("[c]lass members are 'ascertainable' where they
    may be readily identified without unreasonable time or expense by reference to official records").

1    was recorded (8) without "notice."  These eight (8) factors, which make the proposed Classes

2    unascertainable and unworkable, are each discussed in detail below as well as in Section V.

3    Notably, Plaintiffs' expert, Randall Snyder, admitted at deposition that although he says in his

4    declaration that the Classes are ascertainable, that actually is not true.  Indeed, Mr. Snyder ***did not***

5    ***even know what the proposed Class definitions were when he signed his declaration***.  (Scott

6    Decl., Ex. AA, Snyder Depo., 6:9-18.)

7         A.     **Proposed Classes Are Complex, Confusing, And Inadequate**

8         As a preliminary matter, Plaintiffs attempt to avoid commonality and predominance

9    problems by crafting their Classes in such a way that the individualized issues are reduced

10   (though not eliminated) once a person is determined to be a member of the Class.  But by doing

11   so, Plaintiffs create confusing and complex Classes which prevent the Court and Class members

12   from figuring out who is actually in either Class.

13        Plaintiffs could have proposed a simple class definition such as: "all persons in California

14   who called 1-888-HOLIDAY or 1-888-211-9874."[45]  But they knew that such a class, on its face,

15   would require the examination of numerous individualized for each class member, *e.g.*, whether a

16   cordless or cellular phone was used to make the call, whether the call was recorded, *etc*.  In a

17   failed attempt to avoid this, Plaintiffs defined their Classes in such a complex way that these

18   individualized issues must be determined **before** an individual is granted membership.  Each

19   putative Class member has to wade through eight (8) different factors before Class membership is

20   determined.  This is improper.[46]

21        Further, individuals cannot self-identify (as Plaintiffs suggest)[47] by examining either Class

---

22   [45]    Plaintiff Simpson alleges she called 1-888-HOLIDAY, (SAC ¶ 15), while Plaintiff
     McCabe alleges she called 1-888-211-9874.  (SAC ¶ 14.)

23   [46]    *See Red v. Kraft Foods, Inc.*, 2011 WL 4599833, at *8 (C.D. Cal. Sept. 29, 2011) ("[t]he
24   proposed class is ascertainable in the sense that there are objective criteria for determining who its
     members are, but not in the sense that they could actually ever be determined.")

     [47]    Motion, 15:14-15; 18:5.  The case law cited by Plaintiffs in support of self-identification
25   is distinguishable from the case here.  For instance, *Banks v. Nissan N. Am.*, ---F.R.D.---, 2013
     WL 6700299, at *7 (N.D. Cal. Dec. 19, 2003) involved a vehicle defect, which makes it easy for
26   putative class members to self-identify, particularly when the courts in this circuit have held that
     "proof of manifestation of a defect is not a prerequisite to class certification."  Such is not the
27   case here.  Similarly, *Ebin v. Kangadis Food, Inc*., 297 F.R.D. 561, 567 (S.D.N.Y. 2014),
     *McCrary v. The Elations Co*., 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13,2014), *Forcellati v.*
28   *Hypand's*, Inc., 2014 WL 1410264, at *7-8 (C.D. Cal. Apr. 9, 2014), *Boundas v. Abercrombie &*

definition because they will not know what each factor means, much less whether they meet each factor. Plaintiffs acknowledge that "[a] class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics *sufficient to allow a member of that group to identify himself or herself as having a right to recover based on that description*." (Motion, 14:13-15 *citing McCrary v. The Elations Co*., 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13,2014) (emphasis added). But that will not work here. For instance, individuals will not know whether the toll-free number they called was answered by a call center "operated by Defendant" as many franchised hotels operate their own toll-free numbers apart from Six Continents. (Randall Depo., 138:14-24.) Six Continents is a "90% plus" franchised organization. (*Id*.) Further, individuals will not know whether their call was recorded. (*See* Section IV.F.) The authority cited by Plaintiffs, including *Astiana v. Kashi Co*., 291 F.R.D. 493, 500 (S.D. Cal. 2013), and *Gragg v. Orange Cab Co*., 2014 WL 794266, at *1 (W.D. Wash. Feb. 27, 2014), does not apply here.[48] As a result, neither Class, based Plaintiffs' own authority, is sufficiently ascertainable.[49]

---

[48] *Fitch, Stores, Inc*., 280 F.R.D. 408, 417-418 (N.D. Ill. 2012); *O'Connor v. Boeing N. Am., Inc*., 184 F.R.D. 311, 327-328 (C.D. Cal. 1998), and *Galvan v. KDI Distrib, Inc*., 2011 WL 5116585, at *4-5 (C.D. Cal. Oct. 25, 2011), are also inapposite because the putative class members in these cases only had to answer one question (either: 1) Did they purchase the product at issue? or 2) Did they receive the product at issue? or 3) Did they live or work near a nuclear testing facility?), which is necessarily within their personal knowledge and is not the case here. Further, *In re Chocolate Confectionary Antitrust Litig*., 289 F.R.D. 200, 220-221 (M.D. Pa. 2012), is also inapplicable as it is an antitrust case where the court specifically noted that "plaintiffs are not tasked with the duty to prove actual antitrust impact [at the class certification stage]."

[48] In *Astiana*, putative class members only had to answer one question (did they purchase one of ten (10) specific Kashi food products?) and did not have the same difficulty figuring out if they were part of either Class as is the case here. *See also Sethavanish v. ZonePerfect Nutrition Co*., 2014 WL 580696, at *5-6 (N.D. Cal. Feb. 3, 2014) (finding *Astiana* not persuasive and noting "even though here is no requirement that a named plaintiff identify all class members at the time of certification, that does not mean that a named plaintiff need not present some method of identifying absent class members to prevail on a motion for class certification."). *Gragg* did not even address ascertainability as it involved <u>outbound</u> text messages, ensuring that defendant had (at some point in time) putative class members' phone numbers. *Gragg* is further inapplicable as *Gragg* involved express consent and did not discuss consent as an individualized issue as it is in this case, (*see* Section V.A.1), the *Gragg* court noted "defendants made no attempt to show that express consent is a defense to liability under the act." 2014 WL 794266 at *4. Perhaps the *Gragg* defendant had no consent argument available.

[49] *See also Cho v. Seagate Tech. Holdings*, 177 Cal. App. 4th 734, 747 (2009) (class definition "ambiguous" and inadequate because class members could erroneously conclude that they are not part of the class).

**B.**   **Plaintiffs Propose No Feasible Way To Determine _Who_ Called Six Continents**

Plaintiffs' Classes are not ascertainable because Plaintiffs propose no feasible way of identifying who actually called.  While Impact 360 may have information regarding the phone number used to make some of the calls to Six Continents, neither Impact 360, nor any other Six Continents' system can determine _who_ actually made the phone call.[50]  (Randall Depo., 65:11-15.)  Anyone living, working, or visiting the location could have used the phone to make a call, particularly with respect to cordless phones.  Indeed, Plaintiff Simpson issued several subpoenas to Metro PSC for phone records for cell phone numbers belonging to her mother and son because, as she testified, it was unclear _which_ phone she used to make the calls at issue here.  (Scott Decl., Ex, S; Simpson Depo., 16:7-17:15; 22:4-6.)  Plaintiffs' proposed method of using a phone number to "reverse look up" an individual's name and address (Motion, 16:13-20), even if possible, does not address this problem because the person whose name the phone is assigned to or whose name appears on the bill may not be the person who called.[51]  And Plaintiffs' proposed expert is not an expert on reverse phone searches.  (Snyder Depo., 101:18-102:22; 103:7-14; 107:10-110:18.)

Further, Plaintiffs' proposed method of using phone numbers to "cross-check" the number against databases such as Holidex is unworkable.  (Motion, 15:25-16:4.)  First, there is no interface between Impact 360 and any Six Continents' system containing guest identification information.  (Emery Decl., ¶ 4.)  This is the precise reason a similar proposed class was found to be unascertainable in _Coleman v. First Am. Home Buyers Protection Corp._, Case No., BC420436, (L.A. Super. Ct., Aug. 27, 2012), which became the _Hataishi_ case when the class representative was replaced.  In _Coleman_, plaintiffs proposed identifying class members by first identifying call recordings and then using the phone numbers associated with those recordings to "reverse

---

[50]     Six Continents will not have any telephone number information for calls made from blocked numbers.  (Eyre Decl., ¶ 10.)

[51]     _See, e.g., Sevidal v. Target Corp._, 189 Cal. App 4th 905, 920 (2010) (noting that the ability to pull identifying information regarding customers from defendant's records insufficient to establish ascertainability because records "would not provide the necessary information to determine the identity of the putative class members").

**SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

1  lookup" class member names using defendant's customer information database.  *Id*. at 6.  The

2  *Coleman* court found that this proposal "f[ell] short of showing a means of identifying contact

3  information for purposes of notice" because of the call recording systems and customer databases

4  were "separate systems" with no integrating "user interface."  *Id*. at 6-7.  The *Coleman* court

5  denied class certification.  *Id*.  at 16.  The same is true here.[52]

6        Second, even if possible to "cross-check" such information, the guest information in

7  systems such as Holidex contain information about the individual who actually stayed at a Six

8  Continents' hotel, not the individual who made the call.  For example, Ms. Sarabia made group

9  reservations for work and, as a result, these reservations were not made under her name.  Indeed,

10  Ms. Sarabia is heard discussing *other people's* reservations on some of her call recordings.[53]

11        Third, and most notable considering Plaintiffs claim to be concerned with their and the

12  putative Class members' privacy rights, hotel guest information is deemed ***private***.  *See Patel v.*

13  *City of Los Angeles*, 738 F.3d 1058, 1065-1065 (9th Cir. 2013).  Indeed, where hotel records are

14  actually needed in litigation, personally-identifying guest information like that sought by

15  Plaintiffs is redacted.  *See, e.g., Bible v. Rio Properties, Inc.*, 246 F.R.D. 614, 620 (C.D. Cal.

16  2007).  Accordingly, Plaintiffs' proposed method of scouring reservation information for contact

17  information violates the privacy rights of the individuals whose privacy rights Plaintiffs purport to

18  protect, many of whom are not even potential putative Class members.

19      **C.**    **Plaintiffs Propose No Way To Determine Caller Residency**

20        Plaintiffs' Motion is devoid of any method whatsoever, let alone an administratively

21  feasible one, to determine a caller's residency.[54]  First, area codes cannot be used as a proxy for

22  residency.  For example, Plaintiff McCabe testified that she maintained a cell phone with a San

---

23  [52]    Moreover, it is important to note that Six Continents' customer contact information

24  systems, such as Holidex, in many cases has only have limited information, such as the guest's name, as that is what is required to make a reservation. (Bazely Depo., 14:12-15:1.)  Further, as evidenced by Plaintiff McCabe and Ms. Sarabia's call recordings, more often than not, callers did

25  not even identify themselves on the call. (*See, e.g.*, McCabe Depo., 107:23-111:18; 113:14-114:22; 116:1-117:3; IHG_09488; IHG_09479-09484; IHG_09472-09476.)

26  [53]    Sarabia Depo., 16:19-17:7; 22:20-23:8; 31:18-32:13; 70:23-71:8; IHG_09488.

27  [54]    *See Jonczyk v. First Nat'l Capital Corp.*, 2014 WL 1689281, at *4 (C.D. Cal. Jan. 22, 2014) (dismissing non-California resident's Section 632 and 632.7 claims with prejudice because

28  "[i]n enacting the [Privacy Act], the California Legislature specifically stated that its intent was to 'protect the right of privacy of people of *this state*'") (emphasis in original).

1   Diego area code for two years while she lived in Nevada.  (McCabe Depo., 9:1-10:6.)  Further,

2   due to modern technology and practices individuals often have a phone number with an area code

3   that does not match the state where they live.  Indeed, a study conducted using 2009 government

4   data determined that about 15% of individuals with cell phone numbers with California area

5   codes did not live in California.[55]  Accordingly, 15% of the proposed putative Class members

6   could be residents of an entirely different state than his or her phone area code.

7        Second, the determination of whether an individual is a "resident" of California requires

8   an individualized analysis of each and every putative Class member.[56]  Six Continents' cannot

9   determine the residency of callers.  (Randall Depo., 65:11-15.)

10       **D.    Plaintiffs Propose No Feasible Way To Determine A Caller's Location**

11       Section 632.7 does not apply to persons who were located outside California when they

12  called, only to California residents located in California when they placed their calls to Six

13  Continents.  *Cf. Kearney,* 39 Cal.4th at 104 ("California clearly has an interest in protecting the

14  privacy of telephone conversations of California residents while they are in California[.]").

15  Recognizing this hurdle, Plaintiffs propose that call detail records ("CDRs") and/or cell site

16  location information be subpoenaed so that putative Class member's locations at the time of their

17  calls can be determined.  (Motion, 29:4-5; Snyder Decl., ¶¶ 18-20.)

18       As a preliminary matter, Plaintiffs' characterization of the putative Class member's

19  location at the time of a call as a "damages" issue, (Motion, 28:10-11), is not only completely

---

20

21  [55]    These numbers obviously are increasing, just like the increase in wireless-only households.  *See, e.g.*, Scott Decl., Ex. U, Benjamin Skalland & Meena Khare, *Geographic*

22  *Inaccuracy of Cell Phone Samples and the Effect on Telephone Survey Bias, Variance, and Cost*, J. Surv. Stat. Methodol. 45-65, 48 (2013); Ex. V, PEW Research, Center for the People &

23  Press, p. 2 (Jan. 2014) ("as many as 10% of cell phone respondents live in a different state"); Ex. W, PEW Research Center, *Accurately Locating Where Wireless Respondents Live Requires*

24  *More Than A Telephone Number* (July 2009); Ex. X, National Center for Health Statistics, *Wireless Substitution: Early Release of Estimates from the National Health Interview Survey*,

25  January–June 2013 pp. 2-3; *TelTech Sys. Inc. v. Barbour*, 866 F. Supp. 2d 571, 575-576 (S.D. Miss 2011).

26  [56]    Black's Law Dictionary (9th ed. 2009) defines "resident" as "1.  A person who lives in a particular place," and "2. A person who has a home in a particular place.  In sense 2, a resident is

27  not necessarily either a citizen or a domiciliary."  Black's Law Dictionary (9th ed. 2009) defines "residence" as "1.  The act or fact of living in a given place for some time <a year's residence in

28  New Jersey>. — Also termed *residency*.  2.  The place where one actually lives, as distinguished from a domicile <she made her residence in Oregon>."

1    counter to the applicable law (*i.e*., *Kearney*), but is disingenuous.  It is an individualized liability

2    issue that Plaintiffs try to avoid by building it into their Class definition.  Putative Class members

3    have to establish that they called from California to have a claim under Section 632.7.

4          Plaintiffs' proposal to obtain CDR and/or cell site location information for all potential

5    putative Class members is a completely unworkable and would be a gross invasion of privacy.

6    Importantly, according to Plaintiffs' own expert, who has no actual experience in obtaining such

7    data but has used data obtained by others, most of this information is no longer available for a

8    majority the putative Class.[57]  Even if it were available, cell site location information is private

9    and protected under the law.  *United States v. Davis*, ---F.3d ---, 2014 WL 2599917, at *10 (11th

10   Cir. June 11, 2014).  Plaintiffs acknowledge this.  In fact, during this litigation Plaintiffs fought

11   tooth and nail to prevent Six Continents from obtaining unredacted copies of phone bills Plaintiffs

12   themselves subpoenaed from wireless providers.  Plaintiffs' asserted that mere phone bills (not

13   even the CDRs and/or cell site location information contemplated here) were "protected" and

14   "private" under California Civil Procedure § 1985.3.  Even if it were available, according to

15   Plaintiffs' own position throughout this litigation, individual waivers from putative class

16   members and/or compliance with California Code of Civil Procedure Section 1985.3 (requiring

17   notice to consumer) is required before such information may be obtained rendering this proposed

18   method completely inappropriate in the class action context.[58]

19         Plaintiffs' alternative proposal is to have putative Class members "self-identify" and

20   supply, as in the case of Plaintiff McCabe, "credit card statements or other receipts to demonstrate

21   their presence in California when they made calls."  (Motion, 29:6-7.)  This is unworkable on its

22   face because it requires an individual analysis of every Class member's documents and Six

23   Continents' experience with Plaintiff McCabe confirms this.  Not to mention that Six Continents

24   would be able to investigate and challenge these documents.[59]  For example, Six Continents was

---

[57]       Snyder Decl., Ex. B; *see Tidenberg v. Bidz.com*, 2010 WL 135580, at *2 (C.D. Cal. Jan. 7, 2010) (finding class definition insufficient where some of the "best evidence" of class membership was "no longer even available").

[58]       Scott Decl., Ex. S; Scott Decl., Ex. Y, April 5, 2013 letter from E. Grover to E. Totino. Each of Plaintiffs' subpoenas to certain wireless providers included signed waivers.  (Scott Decl., Ex S.)

[59]       *See Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (2013) ("[a] defendant in a class action has

1   forced to depose Ms. Lea, because the documents provided by Plaintiff McCabe, (Grover Decl.,

2   Exs. O-P), did not demonstrate Plaintiff McCabe's whereabouts for the days she called Six

3   Continents.  Through Ms. Lea, Six Continents discovered that Plaintiff McCabe was actually in

4   Ohio for her April 2011 call, and not in California as she claims.  (Scott Decl., Ex. I, documents

5   produced by A. Lea.)  Notably, Plaintiffs' counsel did not provide any cell-site location data or

6   other information from Plaintiff McCabe's cellular phone provider as they assert can be done for

7   putative Class members.  (Motion, 29:1-7.)  If counsel cannot obtain this information for Plaintiff

8   McCabe, there is no reason to believe that they can obtain it for the Class as a whole.  They

9   cannot.  In short, Plaintiffs proposed methods of determining a putative Class member's location

10   are not only impossible and unworkable, but would be a gross invasion of privacy.

### E.    Plaintiffs Propose No Feasible Way To Determine Whether A Caller Used A Cordless Phone

13        The type of phone used to call Six Continents matters because Section 632.7 only

14   prohibits the intentional interception or receiving and recording without consent of certain

15   communications between *specified* devices.[60]  Recently, the California Court of Appeal in

16   *Hataishi* confirmed that the type of phone on each end matters for demonstrating a violation of

17   Section 632.7.  *See, e.g., Hataishi,* 223 Cal. App. 4th at 1469 ("the trier of fact must first

18   determine what type of telephone was used to receive the subject call"); *see also Montantes,* 2014

19   WL 3305587, at *6 ("The court of appeal has, therefore, determined that the type of telephone

20   used on both sides of recorded communications must be proven.").  Plaintiffs know that *Hataishi*

21   is fatal to their attempt to certify this case as their own counsel unsuccessfully attempted to have

22   *Hataishi* depublished.  (Scott Decl., Ex. Z.)

---

a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this rights or masks individual issues"); *see also Hernandez v. Chipolte Mexican Grill, Inc*., 2013 WL 6332002, at *1 (C.D. Cal. Dec. 2, 2013) (noting that "[defendant] should be allowed some mechanism for confirming or contesting" putative class member's claims that they purchase conventional meat as opposed to "naturally raised" meats.)

[60]    Specifically, Section 632.7 provides in part: "[e]very person who, without the consent of all parties to a communication, intercepts or receives and intentionally records. . . a communication transmitted ***between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone***, shall be punished. . . ."  Cal. Pen. Code § 632.7 (emphasis added).

Here, all putative Class members must demonstrate that they called Six Continents using either a cellular telephone or cordless telephone in order to be part of either proposed Class. Individuals who called using landline telephones have no valid Section 632.7 claim as it is undisputed that Six Continents did not answer any calls on either a cordless or cell phone.  (Eyre Decl., ¶¶ 6-9.)  Nor have Plaintiffs proposed any sort of "landline" class.  As such, Plaintiffs' characterization of "phone type" as a "damages issue" is not accurate.  (Motion, 28:11-30:14.)  It is an individualized liability issue at the heart of this case.[61]

While there may be some imperfect methods for distinguishing cellular phones from landline phones, there is no method, nor do Plaintiffs or their expert propose a method, for distinguishing cordless from landline telephones.[62]  Six Continents does not have records showing on what type of device calls to it were made.  (Eyre Decl., ¶ 9.)

Plaintiffs assert again that putative Class members can "self-identify" through the use of "affidavits."  (Motion, 29:16-18.)  But this suggestion is an admission that such a determination cannot be made by reference to either Six Continents or any other third party records.  Also like caller location discussed above, Plaintiffs' proposed "self-identification" method is unworkable because Six Continents must be given the opportunity to cross-examine each Class member about whether or not they used a cordless phone.  *See Carrera v. Bayer Corp.*, 727 F.3d at 307; *Mazur*, 257 F.R.D. at 567-68.  Indeed, as demonstrated by Plaintiffs and Ms. Sarabia above, putative Class members often do not remember the details of calls they made years ago, which phone they used, or their whereabouts on the days in question.  (*See, e.g.*, McCabe Depo., 71:18-79:16.)  Thus, affidavits, as Plaintiffs propose, would not even be possible if putative Class members could not recall anything about the calls in the first place.

---

[61]   Like caller location discussed above, Plaintiffs' characterization of phone type as a "damages issue" is also disingenuous because they themselves built phone type into both Class definitions.  (Motion, 15:2-8.)

[62]   *See, e.g.*, Snyder Decl., ¶ 2 ("I have been asked to opine on the methodology and process where by a list of telephone numbers can be analyzed to determine which are cellular telephone numbers and which are landline telephone numbers;" Snyder Depo., 35:18-25 ("I don't know if there is a mechanism to determine if you can tell what kind of handset was used on a landline phone").

1

### F.    Plaintiffs Propose No Feasible Way To Determine If A Call Was Recorded

2

Plaintiffs erroneously contend that "Defendant's Verint Impact 360 database contains

3

information on *all recorded calls* . . . . Thus, Defendant can identify, by telephone number,

4

exactly which calls were recorded." (Motion, 15:20-24) (emphasis in original). This is simply

5

not accurate.

6

Plaintiffs' assertion that Six Continents has information on "all recorded calls" is based on

7

the false premise that if an individual called Six Continents the call was recorded. (Motion, 9:1-

8

9.) As detailed above in Section IV.F, this assertion is false. Calls were not recorded for a

9

variety of reasons, including limited licenses and server failures, (Floor Depo., 28:4-29:7) as well

10

as numerous other glitches and errors. (IHG_09468; Emery Depo., 64:3-65:7; 78:15-79:19).

11

Further, other technical issues such as excessive static, make certain calls impossible to hear let

12

alone determine who is actually on the call. (IHG_09480). Other times, Six Continents would

13

erroneously record two Six Continents' agents conversing, rather than the purported caller.[63]

14

During the applicable period, Six Continents had 1804 Impact 360 licenses and approximately

15

2233 agent stations. (Buchanan Decl.,¶¶ 2-5.) Since Six Continents did not have sufficient

16

Impact 360 licenses to cover all of its agent stations during the applicable time period, some calls

17

routed to agents were not recorded because the agents were not set up to record calls. (*Id*; Floor

18

Depo., 47:5-21.) It is not possible to discern from Six Continents records which specific agents

19

were set up to record/not set up to record during the Class period. (Emery Depo., 20:7-20; 23:5-

20

8.) In short, it is impossible for Six Continents to determine whether any call was actually

21

recorded unless and until it can locate the recording and listen to it. (Randall Depo., 58:22-59:1

22

("*unless I listen to a call, I wouldn't know if there is a recording there nor not*.") (emphasis

23

added).) And no information exists about recordings made before December 2011.

24

Indeed, Plaintiffs and Ms. Sarabia's calls demonstrate precisely why Plaintiffs' premise is

25

patently false. First, Six Continents has no call recordings for Plaintiff Simpson and cannot tell if

26

---

27

28

[63]    IHG_09487; Sarabia Depo., 78:20-79:3. Some of the technical issues effecting Impact 360's ability to record are documented in certain emails sent to verintsupport.com, (Scott Decl., Ex. C), as well as in the concurrently filed Team Manager Declarations. *See, e.g*., Fortner Decl., ¶ 3; Mazyck Decl., ¶ 3; Weber Decl., ¶ 3.

1   her calls were even recorded.  (Eyre Decl., ¶ 4.)  Indeed, Plaintiff  Simpson admitted, during her

2   deposition that she does not know whether her call was recorded.  (Simpson Depo., 54:25-56:2.)

3   Second, while Plaintiff McCabe allegedly made <u>nine</u> (9) phone calls to Six Continents, Six

4   Continents only has <u>four</u> (4) recordings of calls.  (Scott Decl., Ex. A, IHG_00402-403; Eyre

5   Decl., ¶ 4.)  Six Continents cannot determine if any of Plaintiff McCabe's other five (5) calls

6   were recorded.  (*Id.*)  Third, at least one of Ms. Sarabia's purported calls to Six Continents was

7   not a recording of her, but a recording of Six Continents' agents.  (IHG_09487; Sarabia Depo.,

8   78:20-79:3.)  Yet another one of Ms. Sarabia's alleged calls was so static-filled that it is

9   impossible to discern who is actually on the call.  (IHG_09480.)  Another did not record due to

10  packet failure.  (IHG_09468.)  Accordingly, whether a call was recorded cannot be determined

11  unless Six Continents can locate and listen to an audio recording.  (Randall Depo., 58:22-59:1.)

12          Additionally, also contrary to Plaintiffs' contentions, Impact 360 cannot generate reports

13  of all recorded calls.  (Motion, 9:1-17.)  As referenced above, Impact 360 has information about

14  some but not all calls that were *attempted* to be recorded but merely because a call is identified in

15  Impact 360 does not mean that it was recorded.[64]  (Randall Depo., 58:22-59:1.)

16          Accordingly, Plaintiffs' contention that they can use Impact 360 and/or Six Continents'

17  database of recorded calls to "identify exactly which callers, by telephone number (and often by

18  _____

19  [64]     In fact, generating information of all calls attempted to be recorded would have to be done
    *agent by agent* at every call center, there is no single report that can be done.  (Randall Depo.,

20  70:10-25.)  Further, Plaintiffs imply that Impact 360's "historical contact reports" and "recorded
    contact reports" contain putative Class member identifying information.  (Motion, 9:16.)  Despite

21  their names, these reports do not contain lists of callers/ANIs /date of calls, whether a call was
    recorded or not, *etc*.  Rather, the "historical contact reports" simply lists the number of calls

22  which are attempted to be recorded and the "recorded contacts report" simply contains a bar
    graph which shows the volume of calls attempted to be recorded.  (Scott Decl., Ex. E,

23  IHG_09490-91.)  Neither of these reports provides the detailed information Plaintiffs imply.  In
    any event, listening to hundreds of thousands of audio recordings is not a feasible method for

24  determining which putative Class members were recorded even for those calls where the data is
    available.  Even if it were, it is not logistically feasible here because the audio recordings of calls

25  made during the Class period are stored on Six Continents' archive, which is <u>not searchable</u>.
    (Emery Depo., 46:14-48:12.)  Plaintiffs propose no practical way to locate, retrieve and listen to

26  calls stored on the archive.  The process for locating a call on the archive requires one to figure
    out which acquisition model it was recorded on, the channel, the date and time of the recording,

27  and then manually search the archive to see if the recording can be located.  (*Id.*)  Once the
    recording is located, it must then be manually moved back to the Impact 360 "portal" where it can

28  actually be played.  (*Id.*)  It takes significant time to locate, retrieve, and listen to a single call, let
    alone hundreds of thousands or even millions as Plaintiffs propose.  (Emery Decl., ¶¶ 2-3.)

name and address, as discussed below), were recorded during the class period," (Motion, 8:19-21), is simply false. [65]  And Plaintiffs have not proposed any other administratively feasible method for determining if a putative Class member was actually recorded.

## V.  PLAINTIFFS CANNOT SATISFY RULE 23(a) AND 23(b)

Class certification should also be denied because Plaintiffs cannot satisfy the required Rule 23(a) and 23(b) factors as explained below.

### A.  Plaintiffs Cannot Prove That Any Questions Of Law Or Fact Are Common Or Predominate Over Individualized Issues

Commonality under Rule 23(a)(2) "requires the plaintiff to demonstrate that the class members have suffered the same injury . . . . Their claims must depend upon a common contention,…[and t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.  Indeed, "[w]hat is important to class certification 'is not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.*

If the Plaintiffs show that there are common issues of law or fact that are capable of class

---

[65]     The portion of Mr. Emery's deposition transcript cited by Plaintiffs in support of this proposition, 41:6-24, is not testimony from Mr. Emery; rather, it is a statement by Plaintiffs' counsel hypothesizing about what may be possible. (Emery Depo., 41:6-24.)  As such, it is not evidence.  In addition, both Classes are also imprecise and overbroad because they both necessarily include individuals who were not in fact recorded. *Dioquino v. Sempris, LLC*, 2012 WL 6742528, at *5 (C.D. Cal. Apr. 9, 2012) (finding proposed class "overbroad" because "Plaintiff's definitions will naturally include members who were unharmed"). *DG ex rel Strickland v. Devaugh*, 594 F.3d 1188, 1195 (10th Cir. 2010), a case cited by Plaintiffs for the proposition that a class may include individuals who have not been harmed is completely inapplicable and a misrepresentation of *DG*. (Motion, 20:24-26.)  *DG* involved the due process rights of foster children to be reasonably free from harm and imminent risk of harm while in state custody. *Id.* at 1196.  While not all children may have not been physically harmed, "all class members, by virtue of being in [ ] foster care, are subject to the purportedly faulty monitoring policies of [Oklahoma], regardless of their individual differences, therefore, all members of the class are allegedly exposed to the same unreasonable risk of harm as a result of Defendants' unlawful practices." *Id.*  The common issue in *DG* was not physical harm, but the imminent risk of harm while in state custody.  Here, the issue is whether the putative Class members had their calls recorded, not that their calls *may* have been recorded.

wide resolution under Rule 23(a)(2), then, as they have elected to proceed under Rule 23(b)(3), they must prove that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. Proc. 23(b)(3).  The "predominance inquiry under Rule 23(b) is far more rigorous [than the requirements of Rule 23(a)(2)]."  *Webb v. Carter's*, 272 F.R.D. 489, 501 (C.D. Cal. 2011).  Here, Plaintiffs' "common questions" blissfully ignore the numerous individualized issues involved in this case.[66]

### 1.   Whether A Putative Class Member Consented To Recording

Liability under Section 632.7 requires that the recording be made without consent, not "without notice" as Plaintiffs assert.  (Motion, 21:6-8.)  Consent may be implied and numerous putative Class members consented to being recorded by making the phone call to Six Continents with the expectation that the calls may be recorded.  *See Torres,* 289 F.R.D. at 592 (denying class certification in a Section 632.7 case and stating that "[i]t is likely that some class members expected their calls to be recorded, even if they did not hear the Disclosure").  According to a survey conducted by consumer expectations expert Professor Linda Golden, who was relied upon by the *Hataishi* court, **88.4%** of California residents who have called hotel or resort companies using cellular or cordless phones expect their calls may be recorded when they dial a company's toll-free number.[67]  As such, the vast majority of potential Class members expected that the calls alleged in this case may be recorded but still made the calls thereby consenting to recording.  Professor Golden's survey was not intended to and does not show that ***all*** potential Class members have this expectation, but that ***some*** do.  In order to determine the expectations of a particular Class member, that Class member would have to be examined.  Indeed, Plaintiff's own expert, Professor Itamar Simonson, who did *not* conduct a relevant survey and has *no* experience

---

[66]      Plaintiffs incorrectly assert that these individualized issues, such as caller location, telephone type, and consent, are "red herring arguments" because of Six Continents' "uniform surreptitious recording of incoming calls."  (Motion, 25:3-8.)  Plaintiffs' Motion misses the point: Six Continents did not engage in uniform conduct, which is why there are individualized issues. For instance, as discussed above in Section IV.F, Six Continents ***did not record all calls***.  Further, as discussed above in Section II.D, Six Continents used different technology to answer calls depending on the time period or the call center.  Accordingly, case law such as *Jackson v. Collections Acquisition Co*., 2013 WL 5592603, at *4 (E.D. Mo. Oct. 9, 2013), is distinguishable. (Motion, 25:24-26.)

[67]      Golden Decl., Ex. A, Expert Report of Dr. Linda Golden, p. 8, Table 1.

**SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

1   conducting surveys on privacy or recording expectations, agreed that each putative Class member

2   would have to be put on the stand and examined on the issue to determine their expectation of

3   recording.[68]

4          Plaintiffs, in the face of overwhelming evidence that a vast majority of the Class likely

5   consented to recording, baselessly attempt to argue that (1) express or informed consent is

6   required under Section 632.7, (Motion, 27:1-6), and that (2) "general public expectation is ***not***

7   equivalent to consent" and assert that Dr. Golden's report is "irrelevant."  (Motion, 27:17-28:4.)

8   With respect to Plaintiffs' first argument, there is absolutely nothing in the language of Section

9   632.7 or any case law interpreting it indicating that express or even informed consent is

10  required.[69]  Indeed, the courts have continually refused to even read a verbal notice requirement

11  into the Privacy Act, let alone an express consent requirement.  *White,* 2013 WL 756292, at *5

12  (declining "to create a verbal disclosure requirement that is not expressly provided by [Section

13  632] itself"); *Hataishi,* 223 Cal. App. 4th at 1467 ("nothing suggests that recording a conversation

14  without advising the other party constitutes a *per se* violation of the statute").  The plain language

15  of Section 632.7 governs here.  It contains no express or informed consent requirement.  The

16  California Legislature knows how to use the term "express consent" and chose not to use it in

17  Section 632.7.  *See, e.g.*, Cal. Pen. Code § 272(b)(1).[70]  Indeed, the California Legislature used

18  "express written consent" in other sections of the Privacy Act.  *See, e.g.,* Cal. Pen. Code § 637.5.

19         With respect to Plaintiffs' second argument, Six Continents is not arguing a general public

20  expectation, but rather that each Class member would have an individual expectation based on his

21  or her personal experiences.  Apart from that, Plaintiffs support their argument by citing to

22  abrogated and completely inapplicable case law, *United States v. Lanoue*, 71 F.3d 966 (1st Cir.

23  1995), in the prisoner eavesdropping context where ***notice is required*** to be posted at all

24

---

25  [68]     Scott Decl., Ex. N, Simonson Report, ¶ 16; Ex. BB, Simonson Depo., 63:24-65:2.

26  [69]     Plaintiffs fail to address the reality that most companies notify callers that their calls
    "may" be recorded, which might not be sufficient for express or informed consent.  In any event,
27  Plaintiffs acknowledge in their own SAC that "may" is sufficient.  (SAC, ¶ 35.)
    [70]     Accordingly, case law cited by Plaintiffs, such as *Agne v. Papa John's Int'l, Inc*., 286
28  F.R.D. 559 (W.D. Wash. 2012), is distinguishable as the statute at issue in *Agne*, the Telephone
    Consumer Protection Act, explicitly requires "express consent."  (Motion, 27:1-3; 20.)

1    monitored phones and each inmate is required to sign a **written waiver**. *Id*. at 981.[71]  There is no

2    notice (let alone written waiver) requirement in Section 632.7.  As such, the authority cited by

3    Plaintiffs is irrelevant to this case.

4          In any event, courts have recently confirmed that implied consent in the privacy area is an

5    "intensely factual question" that is not capable of class-wide resolution.[72]  Inquiry into whether or

6    not a Class member impliedly consented to recording involves, in part, an individual's previous

7    experiences with toll-free calls to other hotel companies or businesses.[73]  This inquiry also

8    involves examining a putative Class member's experiences with IVRs prior to being transferred

9    to an agent and whether they previously heard the recording notification as a result of being

10   routed to the Birmingham call center.  (Randall Depo., 126:24-127:2.)  Indeed, Plaintiff's own

11   expert admits that the only way to determine a particular person's expectations is to ask.  (*See,*

12   *e.g*., Simonson Report, ¶ 16; Simonson Depo., 63:24-65:2.)  As a result, whether any particular

---

14   [71]      Other authority cited by Plaintiffs in support of this argument is similarly inapplicable.
     For instance, *United States v. Amen*, 831 F.3d 373 (2nd Cir. 1987), also involved prisoner
15   telephone monitoring which requires actual notice pursuant to federal regulations.  *Id*. at 379 n. 2
     ("The Warden must provide notice to the inmate of the potential for monitoring" *citing* 28 C.F.R.
16   § 540.101); *see also Campiti v. Walonis*, 611 F.2d 387, 393-394 (1st Cir. 1979) (involving
     prisoner monitoring/interception).  By contrast, *Griggs-Ryan v. Smith*, 904 F.2d 117 (1st Cir.
17   1990), actually supports Six Continents' position case because the *Griggs-Ryan* court specifically
     stated that: "The circumstances relevant to an implication of consent will vary from case to case. .
18   . ."  Indeed, the situation in *Griggs-Ryan* is not unlike what a putative Class member might
     experience if they had previously called Six Continents and been routed to the Birmingham,
19   England call center, heard the recording notification and then called in a second time and was
     routed to one of the call centers at issue in this litigation.  (Golden Decl., Ex. A, Expert Report of
20   Dr. Linda L. Golden, p. 8, Table 1.)  Indeed, under that scenario, over 60% of callers would
     expect their call to be recorded, which is supported by the holding *Griggs-Ryan* where the court
21   found implied consent to recording when the caller was previously told that calls would be
     recorded.  904 F.2d at 118.  The same is true for *Barry v. Funk*, 146 F.3d 1003, 1011 (D.C. Cir.
22   1998), where the court refused to grant summary judgment on federal wiretapping claim because
     genuine issues existed as to whether implied consent to the interceptions had been given.  *See*
23   *also Williams v. Poulos*, 11 F.3d 271, 281-282 (1st Cir. 1993) (analyzing circumstances and facts
     surrounding monitoring of individual to determine whether or not implied consent had been
     given).
24   [72]      *In re Google Inc. Gmail Litig*., 2014 WL 1102660, at 16 (N.D. Cal. Mar. 16, 2014)
25   ("courts have consistently held that implied consent is a question of fact that requires looking at
     all of the circumstances surrounding interceptions to determine whether an individual knew her
26   communications were being intercepted"); *Torres*, 289 F.R.D. at 594 ("the issue of whether class
     members consented to the recordings [] also require[s] a detailed factual inquiry for each class
     member.").
27   [73]      *Hataishi*, 223 Cal. App 4th at 1459 ("Plaintiff also confirmed that she had participated in
28   'dozens and dozens and dozens' of telephone calls with companies where she understood her call
     could be recorded or monitored for quality assurance").

**SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

putative Class member consented to recording requires an individualized analysis.  This inquiry is inappropriate for class-wide resolution and a reason why **no** Section 632.7 (or Section 632) class has ever been certified and then proceeded to trial or been affirmed on appeal.

### 2.     Whether The Call Was Answered On A Specified Device

As detailed above in Section IV.E, Section 632.7 does not apply to any phone call involving a cellular or cordless phone, but only to the calls involving devices specified in the statute.  If those specified devices are not on each end, then Section 632.7 was not violated.  *See generally* Cal. Pen. Code § 632.7(a).[74]  Because Six Continents answered some calls on computers and other VoIP devices not covered by Section 632.7, determining **how** Six Continents answered a particular putative Class member's calls is an individualized, call-by-call issue.

As detailed in the expert report of Dr. Brown, there are significant technical differences between VoIP technology and landline telephone technology.  (Scott Decl., Ex. M, Brown Report §§ 2.2, 3.1).  VoIP devices are not landlines telephones, cellular telephones or cordless telephones.  Calls answered by VoIP devices such as computers as used in Baguio or SIP phones as used in Manila receive communications via data packets and not analog signals like landline telephones.[75]  California recognizes that VoIP is a different technology, and the California Public Utilities Commission cannot even regulate VoIP.  *See* Cal. Pub. Util. Code §§ 239, 710.  Accordingly, calls answered on VoIP devices are not covered by Section 632.7.

In this case, determining on which specific device the call was received is an individualized issue because some Six Continents' calls were answered on computers and other VoIP devices while other calls were answered using landline telephones.  As a result, whether a call was answered at one of the call centers at issue using a landline telephone or a computer or a

---

[74]     Similarly, an individual analysis is also required to determine the type of device a Class member used to make their call to Six Continents.  *See, e.g.,* Section IV.E.

[75]     Brown Report, § 3.1.  *See  also Minnesota Pub. Util. Comm'n v. Fed. Commc'n Comm'n*, 483 F.3d 570, 574 (8th Cir. 2007); *Vonage Holdings Corp. v. Nebraska Pub. Serv. Comm'n*, 564 F.3d 900, 902 (8th Cir. 2009) ("VoIP is an internet application used to transmit voice communications over a broadband internet connection.  With traditional circuit-switched telephone communications, the end-to-end geographic locations of landline-to-landline telephone communications are known, and the interstate or intrastate nature of the calls is readily determinable. . . . In VoIP-to-landline or landline-to VoIP communications . . . the VoIP part of the call can be anywhere the VoIP customer obtains broadband access to the internet").

**SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

1  SIP phone depends on the date of the call, which call center answered the call, and depending on

2  the call center, whether the particular agent was using a landline telephone or not.  This may not

3  even be possible for many calls.[76]

### 3.    Whether A Class Member's Claim Is Time-Barred

A one-year statute of limitations applies to claims for statutory penalties pursuant to

Section 637.2.  Cal. Civ. Proc. Code § 340(a); *Anagnostellis v. Pitney Bowes, Inc*., 2013 WL

8840335, at *3 (C.D. Cal. Mar. 5, 2013).  Here, Plaintiffs filed their class action complaint on

July 3, 2012,[77] so any calls made prior to July 3, 2011 are time barred.  Notably, all of Plaintiff

Simpson's calls are time-barred and three calls from Plaintiff McCabe, made in March 2011 and

April 2011 are also time-barred.  In order for purported Class members to avoid the time-bar by

availing themselves of the delayed-discovery rule, they must put forth evidence that they are

entitled to the rule's benefits.  *See O'Connor v. Boeing N. Am*., 311 F.3d 1139, 1150 (9th Cir.

2002).  This evidence must include how and when the Class member discovered the recording,

and why they could not have discovered it earlier.  *Id*. at 1157.  Accordingly, analyzing each

putative Class members' call to determine if it is time-barred creates individualized issues.[78]

---

[76]    For example, all of Plaintiffs' calls referenced above in Sections II.A-B, if answered by an agent, were answered by an agent in either the Manila or Baguio call centers.  (Eyre Decl., ¶¶ 4-5.)  Agents in the Baguio call center answer incoming calls on their computers.  (Eyre Decl., ¶ 6.)  Regala Decl., ¶ 2.)  Similarly, agents in the Manila center, after June 29, 2011, answered all calls via VoIP SIP phones.  (Eyre Decl., ¶ 7.)  Prior to June 29, 2011, agents in Manila answered calls using various methods, including VoIP SIP phones.  (*Id*.)  Calls routed to the Salt Lake and Charleston call centers were not answered using VoIP devices, while calls routed to the Guragon call center are answered on VoIP.  (*Id*., at ¶ 8.)  In short, all agents in Baguio and many agents in Manila, the largest call centers, as well as Guragon, did not use cellular phones, cordless phones or landline telephones to answer any calls at issue here.  In many cases, such as calls prior made prior to June 29, 2011 answered by the Manila call center, it will be impossible to determine on what device agents answered specific calls.  (Id., at. ¶ 7.)  Both Class definitions are also imprecise and overbroad because they both necessarily include individuals who, by virtue of having their calls answered via VoIP, do not have a Section 632.7 claim against Six Continents.  *Dioquino*, 2012 WL 6742528, at *5.

[77]    This case was originally filed in Alameda Superior Court on July 3, 2012 and then removed to federal court by Six Continents on or about September 14, 2012.  (Docket No. 1)

[78]    Plaintiffs in this case purport to avail themselves of the delayed-discovery rule, alleging that "[t]he proposed class period is March 1, 2011 through and including July 17, 2012.  March 1, 2011 is one year before the date Plaintiffs first learned that their rights under Penal Code § 632.7 were violated," (Motion, 1:26-28), but they have put forth absolutely no evidence that they are entitled to its benefits.  Notably, both Plaintiffs refused to answer any questions during their depositions about *how* they found out they were being recorded, only testifying that they were solicited by Plaintiffs' counsel via a newspaper ad.  (Simpson Depo., 20:19-23; 21:5-7; 32:24-

**SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

### 4.     What Law Applies

In addition, an individualized choice-of-law analysis will have to be done to determine whether a putative Class member may recover statutory damages.  The California Supreme Court in *Kearney* analyzed only the conflicts between California and Georgia law consent requirements, (39 Cal. 4th at 122-123), and did not analyze whether the awarding of statutory damages where there has been no injury conflicted with Georgia law.  Here, the calls at issue were answered in Utah, South Carolina, Philippines, and India.  Each has its own laws and interests which may prevent the awarding of statutory or exorbitant damages when absolutely no harm has occurred.[79] Accordingly, an individualized choice of law analysis must be conducted.

### 5.     Whether A Class Members Call Was Recorded, Whether A Class Member Is A California Resident, And Whether a Class Member Was In California At The Time Of The Call

A majority of the issues discussed above in Section IV, specifically, whether a call was recorded, whether a Class member is a California resident, and whether a Class member was located in California at the time of their call, are individualized issues rendering this case inappropriate for Class treatment.  In short, to the extent any of these factors are removed from either Class definition, they present commonality and predominance problems for Plaintiffs that cannot be fixed.[80]

---

33:8; McCabe Depo., 17:4-9; 36:8-14; 81:21-82:5.)  In this case, putative Class members who may have seen the same ad as Plaintiffs or may have had other reason to believe that their calls were recorded, such as by making a subsequent call that was answered by the Birmingham call center, cannot invoke the discovery rule.  *O'Connor*, 311 F.3d at 1147 ("the statute of limitations will begin to accrue when the plaintiff is on notice of his claims.").  It is not an issue that can be determined on a class-wide basis. *See Quesada v. Banc of America Inv. Serv. Inc.*, 2013 WL 623288, at *7 n. 10 (N.D. Cal. Feb. 19, 2003) (noting that "Plaintiff never addresses whether equitable tolling of the statute of limitations under the delayed discovery rule is suitable for determination on a class wide basis.  As such, Plaintiff has not shown that 'questions of law or fact common to class members predominate over any questions affecting only individual members' with respect to [defendant's] statute of limitations defense"); *Anagnostellis*, 2013 WL 8840335, at *3 (granting defendant summary judgment on time-barred Section 632 claim because "[t]here is simply no evidence on the record relating to how and when Plaintiff became aware of facts that led him to believe that his calls were illegally recorded.").

[79]     *See, e.g., Henderson v. For-Shor Co.*, 757 P.2d 465, 471 (Utah Ct. App. 1988); Declaration of Marvyn S. Llamas, Exs. A-B.

[80]     In addition, there is also the issue of whether a communication actual occurred.  The Court will have to determine for each call whether a communication occurred.  For instance, for several call recordings attributed to Ms. Sarabia, Ms. Sarabia was not even on call.  (IHG_09468; IHG_09487; Emery Depo., 64:3-65:7; 78:15-79:19; Sarabia Depo., 78:20-79:3.)  Yet another

### B.      Plaintiffs Are Not Typical

Plaintiffs also fail to demonstrate that their claims are typical.  To satisfy Rule 23(a)(3)'s typicality requirement, "the class representatives must possess the same interest and suffer the same injury as the class members….the plaintiff bears the burden of demonstrating that her claims are typical."  *Gartin v. S&M Nu Tech, LLC*, 245 F.R.D. 429, 434 (C.D. Cal. 2007).  Individual permutations or unique defenses applicable to the proposed representatives "precludes certification on representativeness and typicality grounds."  *Id*. at 441; *Alaska v. Suburban Propane Gas Corp*., 123 F.3d 1317, 1321 (9th Cir. 1997).

First, neither Plaintiff is typical of either proposed Class because they both testified, in stark contrast to over ***88%*** of Californians who have called hotels or resorts, that they do not believe their toll-free calls to businesses may be recorded for quality assurance purposes.  (*Compare* Golden Decl., Ex. A Expert Report of Dr. Golden, p. 8, Table 1 *with* Simpson Depo., 24:15-21 *and* McCabe Depo., 33:14-20.)  Accordingly, Plaintiffs do not possess the same interest as other putative Class members.[81]  Second, neither Plaintiff is typical of the Cordless Class because both admit that they made calls to Six Continents using cellular phones.  Motion, 6:9-7:10; *Gartin*, 245 F.R.D. at 441.  Third, neither Plaintiff is typical because neither Plaintiff had all of their calls recorded. (Motion, 6:9-7:10.)  Indeed, there is absolutely no evidence that Plaintiff Simpson was recorded at all, and even if she was recorded, her claim is now time-barred.  (Eyre Decl., ¶ 4.)  Thus, neither Plaintiff has suffered the same injury as other purported Class members.  *Gartin*, 245 F.R.D. at 434.

example is when the call is so static-filled that it is impossible to discern who was actually on the line.  (IHG_09480.)  The only way to determine whether a communication occurred is to locate, retrieve, and listen to each call, which is a time-consuming and burdensome task not possible on a class-wide basis. (Emery Decl., ¶ 4.)  Also, determining whether a putative Class member's employer, such as is the case with Ms. Sarabia, has a claim against Six Continents rather than the person calling because the calls were made at work and for work purposes, creates another individualized issue. (Scott Decl., Ex. J, Sarabia Depo., 16:19-17:7; 22:20-23:8; 31:18-32:13; 70:23-71:8; IHG_09488.)

[81]      *See Astiana v. Ben & Jerry's Homemade*, Inc., 2014 WL 60097, at *7 (N.D. Cal. Jan. 1, 2014) (noting that plaintiff's deposition testimony regarding "all natural" labeling was in "stark contrast" to defendant's consumer survey, and that plaintiff provided "no evidence" that any other consumers shared her view.)

SIX CONTINENTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION

### C.    Neither Plaintiffs Nor Their Counsel Are Adequate

Rule 23(a)(4) permits certification of a class action only if the representative parties will fairly and adequately protect the interests of the class. Fed. R. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate class representation before entry of a judgment which binds them." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Resolution of two questions determines legal adequacy:  "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Id*.  Neither Plaintiffs nor their counsel can be trusted to adequately protect the Classes' interests here.

First, neither Plaintiff is an adequate Class representative.  Plaintiff Simpson is not adequate because she is a "serial" class representative who lent her name to *seven* (7) call recording class actions all brought by the same counsel as this case.  Despite being a named plaintiff in numerous call recording class actions, Plaintiff Simpson could not answer any questions about the other cases she was involved in nor was she aware that several of the cases had been dismissed.  (Simpson Depo., at 36:3-43:14).  Since then, they have all been dismissed.[82]

Plaintiff McCabe is similarly inadequate because there are conflicting accounts of critical facts with respect to her interactions with Six Continents.  For instance, Plaintiff McCabe purported to be in California for her April 2011 call to Six Continents, while documents produced by her employer indicated she was in Ohio.[83]

Second, Plaintiffs' counsel cannot meet the threshold adequacy requirements because it is clear from the record that "plaintiffs' counsel, and not plaintiff[s], is the driving force behind this

---

[82]    Scott Decl., ¶ 4.  *See Welling v. Alexy*, 155 F.R.D. 654 (N.D. Cal. 1994) (finding plaintiff inadequate because he had "ceded control [of the case] to his lawyers.").

[83]    Scott Decl., Ex. I, documents produced from A. Lea.  *See, e.g., Ryan v. Jersey Mike's Franchise Sys.*, 2014 WL 1292930, at *8 (S.D. Cal. Mar. 28, 2014) (noting that "Plaintiff's inconsistency on critical facts raises serious concerns about his credibility and his ability to adequately represent the class").  Additionally, Ms. Lea also contradicted Plaintiff McCabe's deposition testimony as to important facts surrounding Plaintiff McCabe's calls to Six Continents, specifically concerning who made Ms. McCabe's travel arrangements for work.  (*Compare* McCabe Depo., 22:15-23:7 *with* Lea Depo., 25:11-26:11); *see also Jovel v. Boiron, Inc.*, 2014 WL 1027874, at *4-5 (C.D. Cal. Feb. 27, 2014) (finding plaintiff inadequate because of credibility issues).

action." *See, e.g., Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007). "Solicitation of clients for the commencement or continuation of a class action is improper, sufficient to warrant denial of class action certification." *Id.*; *Rowden v. Pacific Parking Sys.*, 282 F.R.D. 581, 584 (C.D. Cal. July 2, 2012) (denying class certification in action where the lawsuit "was not of [plaintiff's] own design and initiation," and where plaintiff's counsel solicited class representatives via flyers). Here, it is undisputed that both Plaintiffs were solicited to become class action representatives based upon a newspaper ad placed by Plaintiffs' counsel. (McCabe Depo., 36:8-14; Simpson Depo., 26:4-24.) This case is purely of Plaintiff's counsel's own design and initiation, further evidenced by the over **seven** (7) other virtually identical lawsuits filed against hotel companies. (Scott Decl., ¶4.) Accordingly, Plaintiffs' counsel is inadequate to represent either proposed Class.[84]

### D.     A Class Action Is Neither Superior Nor Manageable

Plaintiffs must also prove "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Proc. 23(b)(3). "Rule 23(b)(3)(D) requires a court to consider 'the difficulties likely to be encountered in the management of [the proposed] class action'"). *Gartin*, 245 F.R.D. at 441.

Here, Plaintiffs make no suggestions as to how to address the numerous individualized issues discussed above, especially those relating to recording and consent, while still comporting with due process.[85] For instance, Six Continents has the right to cross-examine each putative Class member to determine whether they consented to recording by making the toll-free call to Six Continents. (*See* Section V.A.1.) Additionally, Six Continents has the right to conduct discovery into each putative Class member's purported location during any calls at issue, as it is clear from this case, that like Plaintiff McCabe, (*see* Section II.B), putative Class members can be

---

[84]     Further, Plaintiffs' counsel cannot be trusted with confidential documents (as would be the case if either Class is certified), as they filed Six Continents' confidential documents in open court in direct contravention to the parties' stipulated protective order. (Docket No. 80-1, Grover Decl. Exs. D, E & L.)

[85]     *See Carrera*, 727 F.3d 300 at 307 ("[a] defendant in a class action has a due process right to raise individual challenges and defenses to claims"); *Sethavanish*, 2014 580696, at *5 (finding *Carrera* "persuasive"); *Duran v. U.S. Bank Nat'l Assoc.*, 59 Cal. 4th 1, 33-38 (2014) (affirming reversal and remand of class action because "the trial plan here unreasonably prevented [defendant] from supporting its affirmative defense").

1   mistaken about where they actually were and documents, such as credit card statements, are

2   insufficient.  Additionally, Six Continents is entitled to present evidence that many of the calls at

3   issue here, like Plaintiff Simpson's call and some of Plaintiff McCabe's calls, (*see* Sections II.A-

4   B), were not recorded.  Plaintiffs do not and cannot propose a method by which to address these

5   issues and others at trial.

6         Even putting aside these due process concerns, a class action is not superior in this case.

7   Plaintiffs claim that a class action is "superior" because this case "involves multiple claims for

8   relatively small individual sums, and some plaintiffs may not be able to proceed as individuals

9   because of the disparity between their litigation costs and what they hope to recover."  (Motion,

10   31: 21-32:1.)  But if each purported violation of Section 632.7 carries a statutory penalty of

11   $5,000 per call as asserted by Plaintiffs, then purported Class members like Plaintiff McCabe,

12   who alleges five (5) recorded phone calls to Six Continents, (Motion, 7:1-2), could possibly

13   receive a windfall of $25,000, which is significant and is certainly worth the "burden of litigating,

14   " particularly considering that the median household income in California is approximately

15   $60,000.[86]  Clearly, this is a significant amount worth individually litigating.  *See Rowden*, 282

16   F.R.D. at 586 (noting that where there are reasonable alternatives to class action litigation, such as

17   individual litigation, a class action is not superior).

18         On the other hand, if the penalty is $5,000 per call (which Six Continents disagrees with),

19   given the potential number of calls at issue in this class action, at least two (2) million (Motion,

20   7:20), the potential damages in this action are absolutely catastrophic, *i.e.*, over  $10 billion.[87]

---

21   [86]     *See* United States Census Bureau, California QuickFacts,

22   http://quickfacts.census.gov/qfd/states/06000.html (last visited July 21, 2014).  Indeed, approximately half of California households would have to work for more than a month to even earn $5,000.

23   [87]     The $10 billion Plaintiffs seek, in the absence of actual harm, is more than more than fifty

24   (50) times Six Continents' net assets and more than fifty (50) times Six Continents' annual comprehensive income.  (Declaration of Gina Speck, Ex. A.)  Such ruinous damages in the absence of actual harm make a class action not superior here particularly where (1) the statute at

25   issue was not intended to cover the alleged conduct, (2) the express terms of the statutory damages provision allows only $5,000 in statutory damages per action in the absence of actual

26   harm, and (3) there is no evidence that the California Legislature intended such ruinous damages for recording telephone calls for quality assurance.  *See Ratner v. Chemical Bank*, 54 F.R.D. 412

27   (S.D.N.Y. 1972); *Kline v. Coldwell, Banker Co.*, 508 F.2d 226, 235 (9th Cir. 1974) ("At some point the logic of the law leads in this situation to an ad absurdum result.  We believe this is it.");

28   *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010) (holding that

1    Even if Plaintiffs' proposed method for identifying class members is workable (it is clearly not)

2    and miraculously has a very low error rate, *e.g.* 95% accurate, this still means that approximately

3    5% of putative Class members would be misidentified.  That 5% error rate would result in over

4    $500 million in erroneous statutory damages – a 15% error rate could result in $1.5 billion in

5    erroneous statutory damages.  The actual error rate could be much greater, but this is obviously

6    not ascertainable given all of the facts already stated above.  The possibility of an error of this

7    magnitude highlights that a class action is not a superior way to resolve this dispute.  *See*

8    *Dioquino*, 2012 WL 6742528, at *5.

9        Given the likelihood of erroneous damages and other manageability issues described

10   above, a class action is simply not the superior method of resolving this dispute.  This is

11   particularly true since the recording of calls for quality assurance (service-observing) was never

12   supposed to be covered by the Privacy Act,[88] and no one has suffered any actual damages.  Courts

13   recognize that where, as here, no one in the proposed class has suffered any of the harm that a

14   statute was enacted to protect against, and where, as here, the alleged technical violation was

15   quickly corrected, and where, as here, there is nothing to suggest that the defendant acted

16   maliciously or in bad faith, it is unfair to certify a class.  *See Rowden,* 282 F.R.D. at 587.

17   Accordingly, a class action certainly is not the superior way to resolve this dispute and the Court

18   should deny Plaintiffs' Motion.

19   **VI.    CONCLUSION**

20       For all of these reasons, Six Continents respectfully requests that the Court deny

21   Plaintiffs' Motion with prejudice.  In addition, because Plaintiffs have had over two years to

22   litigate this case and made numerous strategic decisions regarding the claims asserted and the

23   Class definitions, they should not be given another bite at the proverbial apple.  *See, e.g.,*

24   *Tidenberg,* 2010 WL 135580 at *3.

25

26

27   disproportionality of damages should not be considered on class certification but reserving
     judgment on whether ruinous liability would warrant denial of class certification and noting that
     the intent of the underlying statute must be examined).

28   [88]    Scott Decl., Ex. R 07/31/67 Letter from Jesse Unruh to Gov. Ronald Regan.

1      Dated:  August  5, 2014                    **DLA PIPER LLP (US)**

2

3                                                 By  /s/ Monica D. Scott
                                                  PERRIE M. WEINER
4                                                 EDWARD D. TOTINO
                                                  MONICA D. SCOTT
5                                                 Attorneys for Defendant
                                                  SIX CONTINENTS HOTELS, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28