ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California  94103
Telephone:   (415) 543-1305
Facsimile:    (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
  **A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California  95630
Telephone:   (916) 447-0100
Facsimile:    (916) 933-5533

Attorneys for Plaintiffs
LAURA McCABE and LATROYA SIMPSON

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA MCCABE and LATROYA SIMPSON, individually and on behalf of a class of similarly situated individuals,<br><br>                  Plaintiffs,<br><br>    vs.<br><br>SIX CONTINENTS HOTELS, INC.; and DOES 2 through 10, inclusive,<br><br>                Defendants. | Case No:  3:12-cv-04818-NC<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>[Redacted and Resubmitted Pursuant to Court's Order Granting In Part and Denying In Part Plaintiffs' Motion to Seal, and Denying Defendant's Motion to Seal [Docket #87]]<br><br>Date:    September 24, 2014<br>Time:    1:00 p.m.<br>Ctrm:   A - 15th Floor<br><br>Complaint Filed:  7/3/12<br>FAC Filed:       7/19/12<br>SAC Filed:       10/11/13<br>Trial Date:      None |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on Wednesday, September 24, 2014, at 1:00 p.m. in Courtroom A, 15th Floor of the San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs LAURA MCCABE and LATROYA SIMPSON ("Plaintiffs") will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23,[1] for an order:

1.    Certifying this case as a class action;

2.    Certifying a class (the "Class") consisting of the following two subclasses of persons (referred to collectively as the "Classes") whose calls were recorded without notice:

(a)    All California residents who, at any time from March 1, 2011 through and including July 17, 2012, used a cellular telephone with a California area code while located in California to call a toll-free number operated by Defendant and whose calls were routed to any of Defendant's English-speaking call centers[2] and were recorded by Defendant without notice (the "Cellular Class"); and

(b)    All California residents who, at any time from March 1, 2011 through and including July 17, 2012, used a cordless telephone with a California area code while located in California to call a toll-free number operated by Defendant and whose calls were routed to any of Defendant's English-speaking call centers and were recorded by Defendant without notice (the "Cordless Class");

---

[1]  All "Rule" references are to the Federal Rules of Civil Procedure unless otherwise stated.

[2]  Calls to Defendant's toll-free numbers originating from U.S. areas codes were handled by six of Defendant's call centers:  Salt Lake City, Utah; Charleston, South Carolina; Gurgaon, India; Baguio, Philippines; Manila, Philippines; and Birmingham, England.  Before this lawsuit was filed, only the call center in Birmingham, England, warned callers that their calls would be recorded.  The other five English-speaking call centers recorded without notice.  The short-title "English-speaking call centers" refers to those five.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

3.      Designating Plaintiffs Laura McCabe and Latroya Simpson as Class Representatives and appointing their counsel of record, Keller Grover LLP and Law Offices of Scot D. Bernstein, A Professional Corporation, as Class Counsel.

Plaintiffs' motion is made on the following grounds:  there is an ascertainable Class that is so numerous that joinder is impractical; there are questions of law and fact common to the Class; the proposed Class Representatives have claims that are typical of those of the Class, and they and their counsel will fairly and adequately protect the interests of the Class; and common questions of law and fact predominate, rendering class action treatment the superior method for adjudication.

Plaintiffs' motion is based upon this notice, the memorandum of points and authorities in support of Plaintiffs' motion, the supporting declarations of Plaintiffs Laura McCabe and Latroya Simpson, counsel Eric A. Grover and Scot Bernstein, and expert Randall A. Snyder, and all exhibits attached thereto, the complete files and records in this case, and any oral argument and further evidence presented at the hearing or presented thereafter at the Court's request.

Dated:  August 11, 2014          **KELLER GROVER LLP**

By:  _/s/ Eric A. Grover_
ERIC A. GROVER
RACHAEL G. JUNG

*Counsel for Plaintiffs*
LAURA McCABE and LATROYA SIMPSON

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   THE CALIFORNIA INVASION OF PRIVACY ACT ................................... 3

III.  STATEMENT OF RELEVANT FACTS ..................................................... 5

    A.    Defendant Had a Policy and Practice of Recording All Calls To Its
        English-Speaking Call Centers Without Notice Or Warning ............................... 5

    B.    Plaintiffs' Calls To Defendant's Toll-Free Numbers Were Recorded
        Without Notice ....................................................................................... 6

    C.    Defendant Recorded Numerous Calls ................................................... 7

IV.   LEGAL STANDARD FOR CLASS CERTIFICATION .............................. 12

V.    CLASS MEMBERS' CLAIMS ARE NEARLY IDENTICAL AND WARRANT
     CLASS TREATMENT ........................................................................... 13

    A.    The Classes Are Clearly Ascertainable................................................ 13

        1.    Class Members Are Defined By A Set Of Common, Objective
             Characteristics ....................................................................... 14

        2.    The Universe of Potential Class Members Can Be Ascertained
             From Defendant's Records .................................................... 15

        3.    Potential Class Members Can Be Further Identified Through Third
             Party Records ........................................................................ 16

        4.    Self-Identification and Fine-Tuning....................................... 18

    B.    The Proposed Class Meets All Rule 23(a) Requirements .................... 19

        1.    The Class Is Numerous And Joinder Impracticable................ 19

        2.    Common Questions of Law and Fact Predominate................. 20

        3.    Plaintiffs' Claims Are Typical of the Class ........................... 21

        4.    Plaintiffs Will Fairly And Adequately Protect The Class' Interests........ 22

    C.    The Proposed Class Action Meets All Rule 23(b)(3) Requirements ................... 23

        1.    Common Questions of Law and Fact Predominate Over Individual
             Questions............................................................................... 23

             a)    Defendant's Uniform Policies And Practices Establish
                  Section 632.7 Violations ............................................ 24

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1

<div align="center">**TABLE OF CONTENTS**
(continued)</div>

2

3
<div align="right">**Page**</div>

4
  b)  Confidentiality Is Not Required Under Section 632.7; Thus, Individual Expectations of Privacy Are Irrelevant ........................ 25

5

6
  c)  No Inquiry Regarding Consent Is Required Because Defendant Uniformly Failed To Provide Any Notice or Disclosure of Its Unlawful Recording Practice ............................ 26

7

8
  d)  Telephone Type And Caller Location Are Damages Issues And Therefore Are Not Impediments To Class Certification ....... 28

9
  e)  Due Process Concerns Are Not Impediments To Class Certification ................................................................. 30

10

11
  2.  A Class Action Is Superior To Other Available Methods For The Fair And Efficient Adjudication Of This Case ......................... 31

12

13
  D.  The "Death Knell" Effect Of A Ruling Denying Class Certification Militates In Favor Of A Ruling That Any Denial Be Without Prejudice To Modification And Re-Filing ................................ 33

14
VI.  CONCLUSION ............................................................. 33

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div style="writing-mode: vertical;">**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861</div>

<div style="text-align:left;">
KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861
</div>

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*
731 F.3d 952 (9th Cir. 2013) .................................................................... 23

*Agne v. Papa John's Intern., Inc.*
286 F.R.D. 559 (W.D. Wash. 2012) ........................................................ 27

*Astiana v. Kashi Co.*
291 F.R.D. at 500 (S.D. Cal. 2013) ................................................ 14, 16, 17

*Banks v. Nissan North America, Inc.*
2013 WL 6700299 (N.D. Cal. Dec. 19, 2013) ........................................ 18

*Bateman v. American Multi-Cinema, Inc.*
623 F.3d 708 (9th Cir. 2010) .......................................................... 30, 31, 33

*Berry v. Funk*
146 F.3d 1003 (D.C. Cir. 1998) ............................................................... 27

*Boundas v. Abercrombie & Fitch Stores, Inc.*
280 F.R.D. 408 (N.D. Ill. 2012) .............................................................. 18

*Brown v. Defender Sec. Co.*
2012 WL 5308964 (C.D. Cal. Oct. 22, 2012) ........................................... 3

*Butler v. Sears, Roebuck and Co.*
727 F.3d 796 (7th Cir. 2013) ................................................................... 29

*Campiti v. Walonis*
611 F.2d 387 (1st Cir.1979) .................................................................... 27

*Carnegie v. Household Int'l, Inc.*
376 F.3d 656 (7th Cir. 2004) ................................................................... 32

*Celano v. Marriott Int'l Inc.*
242 F.R.D. 544 (N.D. Cal. 2007) ............................................................ 19

*Chavez v. Blue Sky Natural Beverage Co.*
268 F.R.D. 365 (N.D. Cal. 2010). ........................................................... 30

*Cole v. Asurion Corp.*
267 F.R.D. 322 (C.D. Cal. 2010) ............................................................ 22

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*DG ex rel. Stricklin v. Devaughn*
   594 F.3d 1188 (10th Cir. 2010)................................................................. 18, 20, 22

*Dilts v. Penske Logistics, LLC*
   267 F.R.D. 625 (S.D. Cal. 2010)..................................................................... 2, 29

*Ebin v. Kangadis Food Inc.*
   287 F.R.D. 561 (S.D.N.Y. 2014) ........................................................................ 18

*Forcellati v. Hyland's, Inc.*
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ...................................................... 18

*Galvan v. KDI Distrib. Inc.*
   2011 WL 5116585 (C.D. Cal. Oct 25, 2011) ..................................................... 18

*Gragg v. Orange Cab Co., Inc.*
   2014 WL 794266 (W.D. Wash. Feb. 27, 2014) ............................... 16, 17, 18, 24

*Griggs-Ryan v. Smith*
   904 F.2d 112 (1st Cir. 1990) ............................................................................. 27

*Guido v. L'Oreal, USA, Inc.*
   284 F.R.D. 468 (C.D. Cal. 2012) .................................................................... 2, 29

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998)....................................................... 13, 20, 22, 23

*Hanon v. Dataproducts Corp.*
   976 F.2d 497 (9th Cir. 1992)............................................................................. 22

*Hartley v. Suburban Radiologic Consultants, Ltd.*
   2013 WL 5467300 (D. Minn. Sept. 30, 2013) .................................................. 25

*Hataishi v. First American Home Buyers Protection Corp.*
   223 Cal. App. 4th 1454 (2014) ........................................................................ 26

*Holloway v. Full Spectrum Lending*
   2007 WL 7698843 (C.D. Cal. June 26, 2007) .................................................. 32

*In re Chocolate Confectionary Antitrust Litig.*
   289 F.R.D. 200 (M.D. Pa. Dec. 7, 2012) ......................................................... 18

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*
   268 F.R.D. 652 (S.D. Cal. 2010)................................................................. 13

*In re Rubber Chemicals Antitrust Litig.*
   232 F.R.D. 346 (N.D. Cal. 2005)................................................................. 19

*In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*
   722 F.3d 838 (6th Cir. 2013)................................................................. 20, 24

*Jackson v. Collections Acquisition Co.*
   2013 WL 5592603 (E.D. Mo. Oct. 9, 2013) ................................................ 25

*Kavu, Inc. v. Omnipak Corp.*
   246 F.R.D. 642 (W.D. Wash. 2007) ........................................................... 19

*Kight v. Cashcall*
   200 Cal.App.4th 1377 (2011) ............................................................... 26, 28

*Lewis v. Costco Wholesale Corporation, et al.*
   Case No. LA CV12-04820 JAK (AJWx)(2012) (C.D. Cal. October 5, 2012) .............. 3, 25

*Leyva v. Medline Indust. Inc.*
   716 F.3d 510 (9th Cir. 2013)................................................................. 2, 29

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
   244 F.3d 1163 (9th Cir. 2001)................................................................. 32

*Mazza v. Am. Honda Motor Co., Inc.*
   666 F.3d 581 (9th Cir. 2012) ................................................................. 20

*McCrary v. Elations Co., LLC*
   2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ........................................... 14, 18

*Medrano v. WCG Holdings, Inc.*
   2007 WL 4592113 (C.D. Cal. Oct. 15, 2007) ............................................... 17

*Mims v. Stewart Title Guar. Co.*
   590 F.3d 298 (5th Cir. 2009)................................................................. 18

*Moeller v. Taco Bell Corp.*
   220 F.R.D. 604 (N.D. Cal. 2004)............................................................. 23

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**TABLE OF AUTHORITIES**
(continued)

Page

*O'Connor v. Boeing N. Am., Inc.*
    184 F.R.D. 311 (C.D. Cal. 1998) ................................................................................ 18

*Parra v. Bashas', Inc.*
    536 F.3d 975 (9th Cir. 2008) ..................................................................................... 20

*Reynoso v. South County Concepts*
    Case No. SACV 07-0373-JVS (RCx) (C.D. Cal. Oct. 26, 2007) ................................ 17

*Rodriguez v. Hayes*
    591 F.3d 1105 (9th Cir. 2010) ............................................................................. 20, 22

*Simpson v. Fireman's Fund Ins. Co.*
    231 F.R.D. 391 (N.D. Cal. 2005) ............................................................................... 22

*Simpson v. Vantage Hospitality Group, Inc.*
    2012 WL 6025772 (N.D. Cal. Dec. 4, 2012) ............................................................ 3, 21

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ................................................................................ 13, 23

*Stephen v. Enterprise Rent-A-Car*
    235 Cal.App.3d 806 (1991) ........................................................................................ 33

*United States v. Amen*
    831 F.2d 373 (2d Cir.1987) ........................................................................................ 27

*United States v. Lanoue*
    71 F.3d 966 (1st Cir.1995) .................................................................................... 27, 28

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ................................................................................ 12, 31

*Valley Drug Co. v. Geneva Pharms., Inc.*
    350 F.3d 1181 (11th Cir. 2003) .................................................................................. 23

*Walters v. Reno*
    145 F.3d 1032 (9th Cir. 1998) .................................................................................... 20

*Whitlock v. FSL Management, LLC*
    2013 WL 5656100 (W.D. Ky. Oct. 16, 2013) ............................................................ 29

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Williams v. Poulos*
    11 F.3d 271 (1st Cir. 1993) ........................................................................... 27

*Wolin v. Jaguar Land Rover N. Am., LLC*
    617 F.3d 1168 (9th Cir. 2010)................................................................. 31, 32

*Zeisel v. Diamond Foods, Inc.*
    2011 WL 2221114 (N.D. Cal. June 7, 2011) ............................................... 30

**State Cases**

*Amchem Products, Inc. v. Windsor*
    521 U.S. 591 (1997).................................................................................. 24, 32

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*
    133 S.Ct. 1184 (2013).............................................................................. passim

*Comcast Corp. v. Behrend*
    133 S.Ct. 1426 (2013).............................................................................. 24, 29

*Deposit Guar. Nat'l Bank v. Roper*
    445 U.S. 326 (1980)......................................................................................... 13

*Flanagan v. Flanagan*
    27 Cal.4th 766 (2002) ............................................................................. 3, 4, 26

*Kearney v. Salomon Smith Barney, Inc.*
    39 Cal.4th 95 (2006). .......................................................................... 3, 4, 26, 28

*Ribas v. Clark*
    38 Cal.3d 355 (1985) ......................................................................................... 4

*Richmond v. Dart Industries, Inc.*
    29 Cal.3d 462 (1981) ....................................................................................... 13

*Sanders v. Am. Broad. Cos., Inc.*
    20 Cal.4th 907 (1999) ........................................................................................ 4

*Wal–Mart Stores, Inc. v. Dukes*
    131 S.Ct. 2541 (2011) ................................................................................ 12, 20

# TABLE OF AUTHORITIES
### (continued)

**Page**

**Statutes**

California Constitution, Article I ................................................................. 1

California Penal Code
  § 630 ................................................................................................... 3
  § 632 ............................................................................................ 3, 25, 26
  § 632.5 ................................................................................................ 26
  § 632.6 ................................................................................................ 26
  § 632.7 ........................................................................................... passim
  § 637.2 ................................................................................... 2, 21, 22, 29

Florida Statutes
  § 934.03 ................................................................................................ 6
  § 943.10 ................................................................................................ 6

Maryland Courts and Judicial Proceedings
  § 10-402 ................................................................................................ 6
  § 10-410 ................................................................................................ 6

Nevada Revised Statutes
  § 200.610 .............................................................................................. 6
  § 707.900 .............................................................................................. 6

New Hampshire Revised Statues
  § 570 .................................................................................................... 6

Revised Code of Washington
  § 19.190 .............................................................................................. 17

**Other Authorities**

Black's Law Dictionary (9th ed. 2009) ...................................................... 27

**Rules**

Federal Rules of Civil Procedure
  Rule 23(a) ..................................................................................... passim
  Rule 23(b)(3) ................................................................................. passim

**Treatises**

7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure
  §1778 .................................................................................................. 24

Manual for Complex Litigation (4th)
  § 21.222 .............................................................................................. 14

Newberg on Class Actions
  § 3.3 ................................................................................................... 14
  § 4.54 .................................................................................................. 29

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is a simple case in which Defendant's *uniform policy and practice* of recording telephone calls without notice violated California law, resulting in a statutory minimum damage obligation to many people.  Thus, common issues predominate.  Indeed, they are virtually the only issues with respect to both liability and damages.  The numerous members of the Classes will be identifiable largely through business records, making the Classes ascertainable.  The named Plaintiffs' experiences were essentially identical to the experiences of the other Class members, making Plaintiffs' claims typical.  And Plaintiffs and their counsel have prosecuted and will continue to prosecute this case vigorously, satisfying the adequacy requirement.  This is a textbook example of a case that is appropriate for class certification.

The California Constitution, in its first 100 words, lists the right to privacy as an inalienable right of all Californians.[3]  For 45 years, California has required "two-party consent" to record a telephone conversation.  As part of California's strong and longstanding Constitutional privacy protection, the California Invasion of Privacy Act ("CIPA" or "Privacy Act"), at Penal Code § 632.7[4], requires individuals and businesses alike to inform *all* parties to a call, *at the call's outset*, that the call will be recorded.

**Common Issues – Liability.**  Common liability issues are present here because Defendant's *uniform policy and practice* throughout the "class period"[5] was to record, without notice, all calls that were routed to Verint-licensed work stations at its English-speaking call centers.  Defendant has admitted that it did ***not*** provide any such warning or notice to callers until July 18, 2012, ***after*** this lawsuit was filed.

---

[3]  *See* Cal. Const., Art. I, §1.

[4]  All "§" references are to the California Penal Code unless otherwise specified.

[5]  The proposed class period is March 1, 2011 through and including July 17, 2012.  March 1, 2011 is one year before the date Plaintiffs first learned that their rights under Penal Code § 632.7 were violated.  Defendant began providing callers to the English-speaking call centers with a call recording warning on July 18, 2012.  Grover Decl., Ex. A [Randall Depo] at 72:9-24, 74:10-20; Grover Decl., Ex. H at 11:16-19.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1   **Common Issues – Damages.**  While individual variations in damages do not stand as an

2   obstacle to certification,[6] it still merits mention that the Class uniformly seeks the identical

3   statutory minimum damages provided for in § 637.2 for each telephone conversation recorded

4   without notice.  The only damages issue that anyone could assert to be "individual" will be the

5   number of telephone calls each Class member placed to Defendant using a cellular or cordless

6   telephone from a location within California, which will simply be multiplied by the statutory

7   minimum damages to arrive at the damages owed to each Class member.  That number can be

8   addressed at the claims administration stage, meaning that there will be no individual damages

9   issues for the Court to resolve.[7]

10   **Ascertainability.**  Through discovery, Defendant has identified its English-speaking call

11   centers and the records and reports which identify the conversations that were recorded.  Those

12   historical call records, together with Defendant's various other business records and those of third

13   parties, are sufficient to identify the complete universe of potential putative Class members whose

14   privacy rights were violated by Defendant's unlawful conduct.  The Class is clearly ascertainable.

15   **Typicality.**  Plaintiffs McCabe's and Simpson's claims are typical of – and in essence

16   identical to – those of the other putative Class members.  Plaintiffs seek to certify two subclasses

17   of individuals who used cellular or cordless telephones with a California area code to call one of

18   Defendant's toll-free numbers while in California, were transferred to one of the English-

19   speaking call centers, and were recorded without notice – i.e., callers whose experience was the

20   same as theirs.  Because the statute treats cellular and cordless callers identically, the core factual

21   and legal issues relating to Defendant's potential liability for its statutory violations are the same

22   for the members of both Classes, making this case particularly suitable for class treatment and

23   resolution.  Thus, this case meets the requirements of typicality and common-issue predominance.

24

25

26

27   [6] *Leyva v. Medline Indust. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013).

28   [7] Even complex damage issues do not stand as an obstacle to certification.  *Id.  See also Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 639-640 (S.D. Cal. 2010); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 479 (C.D. Cal. 2012).

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1

2

3

**Adequacy.**  The proposed Classes will be represented by experienced counsel who have prosecuted this action vigorously on behalf of the Classes and will continue to do so.  Plaintiffs are well-qualified to serve as Class representatives.

4

5

6

7

This case meets all Rule 23(a) and 23(b)(3) requirements for class certification.  Plaintiffs therefore ask the Court to certify this case as a class action, certify the two proposed Classes, designate Plaintiffs as Class representatives, and appoint Keller Grover LLP and Law Offices of Scot D. Bernstein, A Professional Corporation, as Class Counsel.

8

## II.   THE CALIFORNIA INVASION OF PRIVACY ACT

9

10

11

12

13

14

CIPA (§ 630 *et seq.*) is a "broad, protective, invasion-of-privacy statute" enacted in 1967 to address "a serious and increasing threat to the confidentiality of communications resulting from then recent advances in science and technology that had led to the development of new devices and techniques for eavesdropping upon and recording such private communications."[8]  In lieu of obtaining express consent, one can record a telephone conversation ***only*** if all parties know that the call is being recorded.[9]

15

16

17

18

19

In 1992, § 632.7 was enacted to broaden CIPA's protection beyond hardwired landline telephones to include protection for cellular and cordless telephone communications.[10]  Unlike § 632, which applies to hardwired landline telephones, § 632.7 is ***not*** limited to confidential communications and "grants a wider range of protection."[11]  Indeed, "the *only* requirement contained in Section 632.7 is that there was a communication."[12]

20

Specifically, § 632.7 imposes liability upon:

21

22

23

Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone,

24

25

26

27

28

[8]  *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 115 (2006) ("*Kearney*").
[9]  Penal Code § 632(b).
[10]  Pen. Code § 632.7.
[11]  *Brown v. Defender Sec. Co.*, 2012 WL 5308964, at *5 (C.D. Cal. Oct. 22, 2012), citing *Lewis v. Costco Wholesale Corporation, et al.*, Case No. LA CV12-04820 JAK (AJWx)(2012) (C.D. Cal. October 5, 2012) and *Flanagan v. Flanagan*, 27 Cal.4th 766, 776 (2002) ("*Flanagan*").
[12]  *Simpson v. Vantage Hospitality Group, Inc.*, 2012 WL 6025772, at *6 (N.D. Cal. Dec. 4, 2012).

two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone.[13]

As a whole, CIPA "protects against intentional, nonconsensual recording of telephone conversations regardless of the content of the conversation or the type of telephone involved."[14] "A person may reasonably expect privacy against the electronic recording of a communication, even though he or she had no reasonable expectation as to confidentiality of the communication's contents."[15]  In the business call context, the California Supreme Court has held that consumers have an objectively reasonable expectation that their conversations will ***not*** be recorded unless the business adequately advises "all parties to a telephone call, at the outset of the conversation, of its intent to record the call."[16]

CIPA plays a crucial role in protecting the privacy rights of California residents.  Secret monitoring and recording "denies the speaker an important aspect of privacy of communication – the right to control the nature and extent of the firsthand dissemination of his statements."[17]  A party to a telephone call can adjust his statements and how he says them if he knows that his conversation might be recorded.  When the entire communication is secretly recorded, the unaware party is stripped of that control.

Further, businesses can gain unfair advantage by "selectively disclosing recordings when disclosure serves the company's interest, but not volunteering the recordings' existence (or quickly destroying them) when they would be detrimental to the company."[18]  For these reasons, "California must be viewed as having a strong and continuing interest in the full and vigorous application of the provisions of [CIPA] prohibiting the recording of telephone conversations without the knowledge or consent of *all* parties to the conversation."[19]

---

[13] Pen. Code § 632.7.
[14] *Flanagan*, 27 Cal.4th at 776.
[15] *Sanders v. Am. Broad. Cos., Inc.*, 20 Cal.4th 907, 915 (1999) (emphasis added) ("*Sanders*").
[16] *Kearney* 39 Cal.4th at 118.
[17] *Ribas v. Clark*, 38 Cal.3d 355, 361 (1985) ("*Ribas*").
[18] *Kearney*, 39 Cal.4th at 126.
[19] *Id.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

III.    **STATEMENT OF RELEVANT FACTS**

Plaintiffs obtained information through discovery regarding Defendant's English-speaking call centers, its handling and recording of incoming calls to those five call centers, its telephone and call recording systems, the storage and retention of caller information and call recordings in Defendant's various databases, and the reports that can be generated and/or information that can be culled from Defendant's various systems.    This information was obtained both through responses to written discovery and through depositions of the following employees of Defendant:

- Kevin Randall, Vice President of Reservations and Customer Care, and Defendant's designated "Person Most Knowledgeable," was deposed July 2, 2013;

- George Floor, Director of Contact Center Support, was deposed September 19, 2013;

- Michael Gardner, Senior Systems Engineer, was deposed September 19, 2013;

- Maria Bazley, Senior Consultant, Analytics, was deposed January 16, 2014; and

- Jim Emery, Senior Systems Engineer, was deposed January 28, 2014.

As described below, the testimony of Defendant's witnesses clearly establishes that (1) Defendant had a uniform policy and practice of recording, without notice, all incoming telephone calls routed to its Verint-licensed stations at its English-speaking call centers during the class period, and (2) Defendant maintains records containing caller and call recording information, which will make it possible to identify the universe of potential putative Class members.[20]

A.    **Defendant Had a Policy and Practice of Recording All Calls To Its English-Speaking Call Centers Without Notice Or Warning**

Defendant owns numerous hotel and reward club toll-free numbers.  Consumers call those numbers for various purposes, including making hotel reservations for Holiday Inn hotels and all

---

[20] As discussed in Section III.D, Defendant had some limited number of work stations that did not record calls because those stations were not licensed to do so by Verint, the provider of the call recording technology.   Because all calls that were recorded can be positively identified by historical information retained by the Verint or Genesys Info Mart systems, these exceptions create very few false negatives or false positives, if any, in identifying potential Class members and thus are a non-issue from an ascertainability standpoint.  For ease of expression throughout this motion, when we refer to recording of "all calls" or the like, we are referring to calls handled by Defendant's Verint-licensed work stations.   For each licensed work station at Defendant's English-speaking call centers, "[t]he goal is to record *each call*." Grover Decl., Ex. B [Floor Depo] at 43:2-7; Ex. E [Emery Depo] at 27:3-28:16 (the Verint template was set to "*record 100 percent of their calls*").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

of Defendant's other hotel brands.[21]   During the class period, Defendant operated six call centers to which all calls from within the United States to any of Defendant's numerous toll-free numbers were routed.[22]   Of those six, until July 18, 2012, only callers routed to the call center in Birmingham, England, received a warning that their calls would be recorded.[23]   All callers to the other five (short-titled as the "English-speaking call centers") were recorded without warning[24] **because there was a concern that a warning would reduce call volume.**[25]

## B. Plaintiffs' Calls To Defendant's Toll-Free Numbers Were Recorded Without Notice

Plaintiff McCabe was a member of one of Defendant's reward programs and often called its toll-free rewards number using her cellular telephone.[26]   McCabe's telephone records and Defendant's internal records have identified at least eight calls from McCabe to Defendant during the period from March 1, 2011 through June 2012 (March 18, 2011; March 20, 2011; April 7, 2011, November 11, 2011; January 23, 2012; February 10, 2012; and June 23, 2012)[27], and

---

[21] All of Defendant's toll-free reservation and reward club telephone numbers are referred to collectively as "toll-free numbers."   Numerous toll-free numbers operated by Defendant and related to Holiday Inn and its other brands, including Holiday Inn Express, Crowne Plaza Hotels and Resorts, Intercontinental Hotels and Resorts, Staybridge Suites Hotels, Candlewood Suites Hotels and Hotel Indigo, connect incoming callers to Defendant's English-speaking call centers. Grover Decl., Ex. A [Randall Depo] at 39:23-40:7, 92:7-94:13, 125:21-126:23.

[22] Grover Decl., Ex. A [Randall Depo] at 38:12-18, 39:17-40:7.  Those call centers were located as stated in footnote 2.  Grover Decl., Ex. A [Randall Depo] at 33:19-34:10.

[23] Grover Decl., Ex. B [Floor Depo] at 36:20-38:4.  Like CIPA, English law requires adequate notice and all-party consent before recording a telephone conversation.  *See, e.g.,* Telecommunications Regulations 2000; Grover Decl., Ex. C [Gardner Depo] at 78:24-80:16. From well before the start of the Class period, Defendant complied with English law by implementing a simple, automated warning at the call outset to warn all callers to its Birmingham call center that their calls would be recorded.  Ex. A [Randall Depo] at 74:10-25.  Only 0.3% of the total California calls were handled by the Birmingham call center.  *See* fns. 35 and 36, *infra.*

[24] Grover Decl., Ex. A [Randall Depo] at 99:18-20, 101:3-102:2.

[25] Despite analogous U.S. laws in at least four states besides California (*see* Fla. Stat. ch. 934.03 and 943.10, Md. Code. Ann., Cts. & Jud. Proc. §§ 10-402, 10-410, Nev. Rev. Stat. §§ 200.610, et seq. and 707.900 and N.H. Rev. Stat. §§ 570-A:2 (1-a) and 570-A:11), Defendant declined to implement a similar warning in the U.S. because "[t]here was a concern that a recording like that would reduce call volume."  Grover Decl., Ex. B [Floor Depo] at 38:3-4.

[26] Grover Decl., Ex. F [McCabe Depo] at 56:13-25, 78:19-23; Ex. M at 4:9-5:15.

[27] Grover Decl., Ex. J at 6:14-7:20.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Defendant has been able to retrieve four of the recordings.[28]  McCabe was present in California for at least five of those telephone calls.[29]

On June 3, 2011, Plaintiff Simpson made two successive calls to 888-HOLIDAY, one of Defendant's toll-free numbers, using her cellular telephone while at home in Carmichael, California.[30]  According to Defendant's records, after 20 seconds of being in the automated IVR system, the first of the calls was dropped and/or Plaintiff Simpson hung up before she was connected with an agent.[31]  But Defendant's records show that the second call at 6:18 p.m. was routed to Baguio, Philippines.[32]  Although Defendant asserts, as discussed below, that it does not have the actual recordings dating back before sometime in late 2011, the call was placed at a time when that English-speaking call center recorded all calls without notice.[33]

Both Plaintiffs were unaware that their telephone calls to Defendant were being recorded and never consented to any such recordings.[34]

### C.    Defendant Recorded Numerous Calls

From March 1, 2011 through July 17, 2012, Defendant's English-speaking call centers and its Birmingham, England, call center received the following numbers of calls:[35]

| Contact Center | Salt Lake City, Utah | Charleston, South Carolina | Manila, Philippines | Baguio, Philippines | Gurgaon, India | Birmingham, United Kingdom |
|---|---|---|---|---|---|---|
| Total Calls Received | 6,819,696 | 6,159,297 | 4,746,216 | 7,854,403 | 184,600 | 65,482 |
| Calls Received from | 893,390 | 215,641 | 383,026 | 595,706 | 10,812 | 6,197 |

---

[28] Grover Decl. Ex. J at 6:14-7:20; Ex. N at MCCABE-HOLIDAY INN-0030, 40, 42, 54, 69, 78, 80.  Defendant produced four audio recordings of McCabe at IHG_00001-00004.

[29] McCabe was present in California for calls on March 20, 2011, April 10, 2011, January 21, 2012, February 3, 2012 and February 9, 2012.  Grover Decl., Ex. O; Ex. P at MCCABE-HOLIDAY INN-0107,108, 110, 111, 117, 118, 119; McCabe Decl., ¶ 3.

[30] Grover Decl., Ex. G [Simpson Depo] at 21:3-9, 56:6-12; Ex. I at 6:7-19; Simpson Decl., ¶ 3.

[31] Grover Decl., Ex. I at 6:7-19.

[32] Id.

[33] Grover Decl., Ex. A [Randall Depo] at 101:3-13.  Defendant admits that Plaintiff Simpson's 6:18 p.m. call on June 3, 2011 was routed through one of the Philippines call centers.  Grover Decl., Ex. I at 6:7-19.

[34] Grover Decl., Ex. M at 4:13-15; Ex. Q at 4:23-24.

[35] Grover Decl., Ex. J at 8:17-24, 9:14-26.

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

| California Area Codes[36] | | | | | | |
|---|---|---|---|---|---|---|

### D.    Class Members Can Be Identified Through Defendant's Systems and Records

Defendant uses an array of computer, software and telecommunications systems to track customers, reservations and the like.  Because those systems serve different business purposes of Defendant, they have some inherent redundancy that will help to assure that the minimal information necessary to identify callers will be available for the vast majority of Class members. We will describe those systems in this section but first must emphasize the conclusion: Defendant's systems will make it possible to identify the entire universe of potential Class members by telephone number and, in many cases, by name, address and email address.  This Class is ascertainable.

**Verint Impact 360.**  Verint Impact 360 is Defendant's call recording system, and is used at each of the English-speaking call centers.[37]  The Verint system maintains a database containing searchable data for ***all recorded*** incoming telephone calls at least as far back as December 2011 – although Defendant is not sure how much further back it can run historical reports.[38]  This searchable information includes the date, time, and duration of each call, the call center and agent that handled the call, and the telephone number from which the caller dialed in (referred to in Defendant's records as "ANI," an abbreviation for "automatic identification number").[39]  Only recorded calls maintain a unique identifier in the database.  Thus, Defendant can use that database to identify ***exactly*** which callers, by telephone number (and often by name and address, as discussed below), were recorded during the class period.[40]

---

[36] The following area codes are assigned to California: 209, 213, 310, 323, 341, 408, 415, 424, 442, 510, 530, 559, 562, 619, 626, 627, 628, 650, 657, 661, 669, 707, 714, 747, 760, 764, 805, 818, 831, 858, 909, 916, 925, 935, 949, 951.  Defendant searched its records for all calls from California assigned area codes routed to its English speaking call centers and Birmingham, England, during the Class period.  Grover Decl., Ex. J at 9:14-26.

[37] Grover Decl., Ex. J at 15:1-2.

[38] Grover Decl., Ex. A [Randall Depo] at 58:14-23, 59:13-21, 65:22-24, 70:21-71:7, 132:2-133:10; Ex. E [Emery Depo] at 76:17-77:16; Ex. J at 13:10-19; Ex. K at 12:27-13:8.

[39] *Id.*; Grover Decl., Ex. E [Emery Depo] at 37:5-21, 42:7-22; Ex. L at 5-7 (Impact 360 report ███████████████████).

[40] Grover Decl., Ex. E [Emery Depo] at 37:5-21, 41:6-24, 55:19-25, 73:8-14.

| MEMO OF P&A ISO MOTION FOR CLASS CERTIFICATION | 8 | CASE NO. 3:12-cv-04818-NC |
|---|---|---|

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Until July 18, 2012, Defendant had a uniform policy and practice of recording, without notice, **100%** of incoming calls routed to Verint-licensed work stations at its English-speaking call centers.[41]   Defendant's Verint-licensed work stations, which were set by default to record 100% of incoming calls, are identifiable by call center, extension and receiving agent.[42]   Thus, absent a power outage or system failure, Defendant recorded 100% of calls to those work stations during the class period.[43]   A total of 2,098,575 calls[44] were received from callers with California area codes and handled by Defendant's English-speaking call centers during the class period. Those calls represent the entire universe of potential class members.  The Verint system identifies which of those calls were routed to agents at Verint-licensed work stations and recorded.[45]

Plaintiffs anticipate being able to verify that Defendant's Verint system retains historical data back to March 1, 2011.  Defendant has confirmed that it has Verint data regarding its recorded calls dating at least as far back as December 2011, and possesses actual audio recordings of its recorded calls dating back to mid-2013.[46]   Although the recordings may be more difficult to access once they have been moved from the local drive to the archives, the database continues to maintain a record of each call that was recorded.[47]   From the data in that database, reports such as "historical contact reports" and "recorded contact reports"[48] can be generated and will provide pertinent information regarding Class members.[49]

Barring unforeseen problems, listening to recordings will not be necessary, because the Verint database contains information and can generate reports on **every recorded call** going back

---

[41] Grover Decl., Ex. B [Floor Depo] at 43:2-7 ("[t]he goal is to record **each call**"); Ex. E [Emery Depo] at 27:3-28:16 (the Verint template was set to "**record 100 percent of their calls**"); Ex. A [Randall Depo] at 99:18-20, 101:3-102:2.

[42] Grover Decl., Ex. B [Floor Depo] at 43:2-7; Ex. E [Emery Depo] at 19:9-20:6, 23:5-8, 27:3-28:16, 32:15-25; Ex. A [Randall Depo] at 70:21-71:7.

[43] Grover Decl., Ex. B [Floor Depo] at 43:2-7; Ex. E [Emery Depo] at 27:3-28:16.

[44] This is the sum of all California calls in the first five columns of the table in section III.C.

[45]  Grover Decl., Ex. E [Emery Depo] at 36:15-37:21, 42:1-25, 46:14-47:15.

[46]  Grover Decl., Ex. E [Emery Depo] at 36:1-37:25, 40:17-41:8, 42:1-44:3, 46:14-47:17.

[47]  Grover Decl., Ex. E [Emery Depo] at 36:1-37:25, 46:14-47:17.

[48]   Grover Decl., Ex. J at 13:10-19; Ex. K at 12:27-13:8; Ex. A [Randall Depo] at 61:6-62:1; Ex. E [Emery Depo] at 47:6-15.

[49]  Grover Decl., Ex. J at 13:10-19; Ex. K at 12:27-13:8.

at least to some point in 2011.[50]    ***Thus, for a large portion of the class period, Defendant can identify all recorded callers (i.e. the complete universe of potential Class members) in its Verint system by telephone number (ANI), with no need to listen to actual recordings.***[51]

**Other Systems:  Holidex and Magic.**  Defendant maintains several other systems that can be searched to identify additional contact information for each putative Class member. Defendant's Holidex system contains information regarding every reservation made by any customer for one of Defendant's hotels and goes back at least as far as March 2011.[52]  Similarly, Defendant's Magic system contains information regarding members of its loyalty rewards programs, including addresses and telephone numbers, and also maintains their reservation data at least as far back as March 2011.[53]  The consumer data contained in Defendant's Holidex and Magic systems, such as customers' names, addresses, telephone numbers, email addresses (when given), and credit card information, is housed in its centralized Enterprise Data Warehouse database and is searchable by, for example, name, telephone number and area code.[54]

Thus, Holidex and Magic can provide Class member contact information corresponding to the calls identified by the Verint database and, if necessary, the audio recordings.  And if there are any gaps in the Verint database or the archived audio recordings, Holidex and Magic will help to assure that few, if any, potential Class members go unidentified

**Genesys Info Mart and Enterprise Data Warehouse.**  Defendant also maintains a system related to its incoming telephone calls called Genesys Info Mart, whose data also is collected by and housed in Defendant's central database, the Enterprise Data Warehouse.[55]  The Genesys Info Mart system contains details regarding each incoming telephone call handled by Defendant's English-speaking call centers, and includes information such as call date and time,

---

[50]  Grover Decl., Ex. E [Emery Depo] at 36:1-37:25, 46:14-47:17.

[51]  Grover Decl., Ex. A [Randall Depo] at 65:22-24.  To the extent that Defendant's records contain "attempted" recordings of "one second or nothing," those calls easily can be filtered out by call duration.  *See* Ex. A [Randall Depo] at 56:8-13; Ex. E [Emery Depo] at 37:5-21 (confirming that the Verint system is searchable by call duration).

[52]  Grover Decl., Ex. D [Bazley Depo] at 9:9-23, 12:25-14:11.

[53]  Grover Decl., Ex. D [Bazley Depo] at 18:6-19:13.

[54]  Grover Decl., Ex. D [Bazley Depo] at 16:8-17:25, 18:6-19:13, 20:3-24, 30:7-31:17, 39:17-40:5, 41:1-19, 48:14-17, 88:6-90:4.

[55]  *Id.* at 20:25-22:19.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  caller's telephone number, dialed telephone number, call center, agent, and various other data.[56]

2  It allows string searches and generates reports, such as caller detail records and historical contact

3  reports.  Those records and reports can be limited to specific area codes and periods of time.[57]  If

4  the Verint database does not go back all the way to March 1, 2011, the Genesys Infomart system

5  can fill in any gaps.  The system also provides an additional route to determining the number of

6  calls made by each potential Class member, which will be relevant to determining damages.

7  **Additional Factors Contributing to Completeness of Contact Information.**  Notably,

8  "approximately 38 to 40 percent" of Defendant's incoming calls result in a hotel booking and,

9  thus, capture the caller's name, telephone number and other identifying information.[58]  Other call

10  types, such as member reward inquiries or cancellations, also capture caller-identifying

11  information.[59]  Thus, Defendant's records will likely contain additional identifying information

12  beyond the telephone number for a significant percentage of calls.  Further, a caller who has

13  called multiple times and made even one reservation will be identifiable by name and address,

14  meaning that the percentage of Class members who can be identified by name and address is

15  likely to be far higher than the above percentages suggest.

16  **In Sum, An Integrated And Redundant System.**  Defendant already has determined that

17  2,098,575 calls from California area codes were handled by the English-speaking call centers

18  during the class period, when Defendant admittedly had a policy and practice of recording,

19  without notice, every telephone call handled by a Verint-licensed station.[60]  All of the following

20  information exists in the Verint or Genesys Info Mart systems regarding every one of those calls:

21  whether the call was recorded, date, time, call duration, call center, agent, unique call identifier

22  and the caller's telephone number or ANI.[61]  Using recorded callers' telephone numbers

23  identified in its Verint system, Defendant can search for additional identifying information,

24
[56] *Id.* at 28:1-31:12.

25  [57] *Id.* at 16:22-17:1, 28:1-31:12.

    [58] Ex. A [Randall Depo] at 131:6-132:5.

26  [59] Id.

27  [60]  Grover Decl., Ex. B [Floor Depo] at 43:2-7; Ex. E [Emery Depo] at 27:14-28:16; *see also* fns.
    25 and 26, *supra.*

28  [61]  Grover Decl., Ex. E [Emery Depo] at 23:19-24:24; Grover Decl., Ex. A [Randall Depo] at
    58:14-23, 59:13-21, 65:22-24, 70:21-71:7, 132:2-133:10.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

including name, address and email address, within its Holidex, Magic, and Enterprise Data Warehouse systems.[62]  Performing searches of that kind is not difficult or burdensome.[63]

Where those systems cannot provide a name and address, other publicly available resources, including reverse directories, will be able to do so in many cases.[64]  And direct telephone calls to the remaining pool of potential Class members are a viable method of notice to those for whom address and email address information cannot be obtained.  The universe of all potential Class members is clearly ascertainable.

## IV.    LEGAL STANDARD FOR CLASS CERTIFICATION

A class may be certified if it meets all Rule 23(a) requirements – numerosity, commonality, typicality, and adequacy of representation – and at least one Rule 23(b) requirement.[65]  Under Rule 23(b)(3), certification is warranted if "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[66]

While class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim,"[67] the Supreme Court more recently has made it clear that *"merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are*

---

[62] *Id.*

[63] *See* Grover Decl., Ex. D [Bazley Depo] at 88:6-89:25.

[64] Commercially available third-party information service companies, such as Neustar, Inc., A.B. Data, Ltd., CompliancePoint and Contact Center Compliance, collect and maintain subscriber data, either on behalf of cellular carriers or for various other commercial services. Those companies maintain comprehensive and extensive databases that can identify telephone subscribers based solely on their telephone numbers. These databases are updated on a daily basis to ensure that both past and present subscriber data is always reliable and preserved.  Declaration of Randall A. Snyder ("Snyder Decl."), ¶¶ 21-23.   Mr. Snyder is an independent telecommunications technology consultant and an expert in the fields of wireline and wireless telecommunications networking technology.  *See id.*, ¶¶4-6.

[65] Fed.R.Civ.P. 23, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

[66] Fed.R.Civ.P. 23(b)(3); *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S.Ct. 1184, 1191 (2013) ("Amgen").

[67] *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) ("Dukes").

*satisfied.*"[68]   "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."[69]   Further, whether to certify a class is within the district court's discretion.[70]

Here, the proposed Class satisfies all Rule 23(a) and Rule 23(b)(3) requirements because common questions of law and fact predominate over individual questions and a class action is vastly superior to thousands of individual lawsuits.  The overwhelming predominance of common factual and legal issues and the near absence of individual ones make this a textbook case for granting class certification.

## V.   CLASS MEMBERS' CLAIMS ARE NEARLY IDENTICAL AND WARRANT CLASS TREATMENT

Class actions are a vital instrumentality of consumer protection.[71]   As the Supreme Court has explained, class actions "motivate [plaintiffs] to bring cases that for economic reasons might not be brought otherwise, [thereby] vindicating the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost."[72]   That reasoning is particularly applicable here, where the vast majority of affected individuals will have no way to know, but for Class notice, that their privacy rights have been violated.  This case presents a straightforward class certification analysis.  The claims of all class members are materially identical and result from Defendant's *uniform policy and practice* of recording incoming calls to its English-speaking call centers without warning or notice.  Plaintiffs' claims are ideally suited for class treatment.

### A.   The Classes Are Clearly Ascertainable

While not a formal requirement, courts generally require that a class definition identify "a distinct group of plaintiffs whose members [can] be identified with particularity."[73]   The class definition must use "objective criteria" through which membership may be ascertained, such as "a

---

[68] *Amgen*, 133 S.Ct.at 1194-95 [emphasis added].

[69] *Id.*

[70] *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).

[71] *See, e.g., Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980); *Richmond v. Dart Industries, Inc.*, 29 Cal.3d 462, 469 (1981).

[72] *Id.* at 338-339.  *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998).

[73] *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 659 (S.D. Cal. 2010).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

defendant's own actions and the damages caused by such actions."[74]  As long as "the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist" because "[t]he primary goal . . . is to make it administratively feasible for the court to determine individual class membership.[75]

As discussed in great detail in section III.D, ascertainability is clear.  Callers who called Defendant's toll-free numbers from California during the class period using a telephone with a California area code and uniformly were recorded without warning can be identified from Defendant's and third-party records by telephone number and, in many cases, by name, address and email address.[76]

### 1. Class Members Are Defined By A Set Of Common, Objective Characteristics

There is no requirement that individual class member identities be known or knowable at the time of certification.[77]  "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on that description."[78]  Class certification hinges on whether putative class members' identities *can be* objectively ascertained, not on whether they already have been ascertained.[79]  Indeed, if class actions could be defeated because membership was difficult to ascertain at the class certification stage, there would be no such thing as a consumer class action.[80]

///

///

///

---

[74] *Id.*
[75] *Id.*
[76] *See* fns. 61-63, *supra.*
[77] *Astiana v. Kashi Co.*, 291 F.R.D. at 500 (court noted that if class actions could be defeated because membership was difficult to ascertain at the class certification stage, there would be no such thing as a consumer class action).
[78] *McCrary v. The Elations Co.*, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014).
[79] *Id.; see also* Grover Decl., Ex. S [Manual for Complex Litigation (4th) § 21.222] at 1; Ex. T [Newberg on Class Actions § 3.3] at 1.
[80] *Astiana v. Kashi Co.*, 291 F.R.D. at 500.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

Plaintiffs seek to certify the following two classes of individuals:

SubClass 1:  All California residents who, at any time from March 1, 2011 through and including July 17, 2012, used a cellular telephone with a California area code while located in California to call a toll-free number operated by Defendant and whose calls were routed to any of Defendant's English-speaking call centers and were recorded by Defendant without notice; and

SubClass 2:  All California residents who, at any time from March 1, 2011 through and including July 17, 2012, used a cordless telephone with a California area code while located in California to call a toll-free number operated by Defendant and whose calls were routed to any of Defendant's English-speaking call centers and were recorded by Defendant without notice.

These Class definitions are precise and objective.  They identify two groups of unnamed plaintiffs united by a simple common set of characteristics:  use of a cellular or cordless telephone with a California area code to call Defendant's toll-free numbers from California during the period from March 1, 2011 through July 17, 2012.  The specific telephone types, discrete time period and concrete list of Defendant's qualifying telephone numbers – with the actual date and time of each call – are sufficient to allow every member of the potential class of callers to self-identify as a member of the Cellular Class, the Cordless Class or both.

## 2.    The Universe of Potential Class Members Can Be Ascertained From Defendant's Records

As described in section III D, Defendant's own records establish a finite number of telephone calls (and telephone numbers) from callers with California area codes during the class period that were answered and handled by its English-speaking call centers.  Defendant's Verint Impact 360 database contains information on ***all recorded calls***, such as date, time, call duration, call center, agent, and caller telephone number (ANI), at least back to 2011.[81]  That database also is searchable and can be limited by telephone number, area code and time period.[82]  Thus, Defendant can identify, by telephone number, exactly which calls were recorded.

Defendant's other data, which is housed in the systems described in Section III.D, is searchable and also can be limited to specific area codes and specific time periods.[83]  Reports also

---

[81] Grover Decl., Ex. E [Emery Depo] at 37:5-21.
[82] *Id.*; Grover Decl., Ex. A [Randall Depo] at 65:22-24.
[83] Grover Decl., Ex. D [Bazley Depo] at 20:25-22:19.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

can be generated reflecting the caller's telephone number, call date and time, handling agent and various other data points including, for many callers, name and address.[84]   Together, these databases will make it easy for the parties to identify potential putative Class members by, at a minimum, their telephone numbers, which alone can provide a reasonable means of notice.

### 3. Potential Class Members Can Be Further Identified Through Third Party Records

Even if Defendant's records for a Class member contain no contact information beyond the telephone number, potential putative Class members can be identified solely from their telephone numbers.[85]   Third-party cellular carriers maintain identifying subscriber information such as name and address and the time period when a subscriber had a cellular number in service.[86]   Primary carriers maintain this data for at least three to five years, and the data can be obtained via subpoena for a subscriber using only his or her cellular telephone number.[87]

Moreover, as noted in footnote 64, commercially available third-party information service companies also collect and maintain subscriber data that can identify telephone subscribers based solely on their telephone numbers.[88]   Those databases are updated on a daily basis to ensure that both past and present subscriber data is always reliable and preserved.[89]   Accordingly, both cellular carriers and third-party information service companies can produce relevant subscriber information, such as name and address, for any recorded caller who cannot otherwise be identified from Defendant's records.[90]   Such information can be retrieved based solely on the telephone numbers identified by Defendant's databases.[91]

Courts have found ascertainability and granted certification in factually similar (or weaker) cases.[92]   For example, in *Astiana v. Kashi Co.*, California consumers who had purchased

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

---

[84] *Id.* [Bazley Depo] at 16:22-17:1, 28:1-31:12.
[85] Snyder Decl., ¶¶ 14-16, 21-24, Ex. B.
[86] Snyder Decl., ¶¶ 21-22, Ex. B.
[87] *Id.*  ¶ 22.
[88] *Id.* ¶ 23
[89] *Id.*
[90] *Id.* ¶ 24.
[91] *Id.*
[92] *See, e.g., Astiana v. Kashi Co., supra*, 291 F.R.D. 493; *Gragg v. Orange Cab Co., Inc.*, 2014 WL 794266, at *6 (W.D. Wash. Feb. 27, 2014).  Courts have also routinely granted certification

*(Cont'd)*

cereal and snack products labeled as "all natural" or containing "nothing artificial," but which allegedly contained artificial or synthetic ingredients, filed a putative class action against defendant alleging false advertising claims.  Defendant argued that the Court would have no feasible way to identify class members and would have to pursue proof individual to each class member based on its lack of records of consumer purchases.[93]  There, the Court found the class ascertainable and granted certification despite defendant's lack of records and the likelihood that potential class members would also lack proof of their purchases.[94]  Defendant here can make no such arguments as its own systems contain a wealth of information regarding the identity of and contact information for potential Class members whose rights have been violated.

Similarly, in *Gragg v. Orange Cab Co., Inc.* in opposition to plaintiff's motion for  class certification for violations of Washington's Commercial Electronic Mail Act ("CEMA"), RCW § 19.190 .010 *et seq.,* defendants argued that the proposed class was improper because (a) defendants' records were insufficient to identify "customers of Orange Cab" or to determine whether a text message was sent to a customer on a cellular telephone and (b) individual inquiry would be necessary to determine whether each member provided express consent before receiving defendant's commercial text message.[95]  The Court rejected defendants' arguments.  Although some investigation would be necessary to determine whether the telephone number was a cell phone or a land line and to link each cell number to an individual, the Court held that whether a person fell within or outside of the proposed class was based on objective and clear standards and granted certification.[96]

Here, Defendant's records contain the entire universe of potential class members and will enable the parties to identify the telephone numbers of recorded persons and, often, their names and/or addresses.  Information from third parties can fill in any gaps in the names, addresses and

---

in cases seeking statutory minimum damages.  *See, e.g., Reynoso v. South County Concepts*, Case No. SACV 07-0373-JVS (RCx) (C.D. Cal. Oct. 26, 2007) and *Medrano v. WCG Holdings, Inc.*, 2007 WL 4592113 (C.D. Cal. Oct 26, 2007).

[93] *Astiana v. Kashi Co.*, 291 F.R.D. at 500.
[94] *Id.*
[95] Gragg v. Orange Cab Co., Inc., 2014 WL 794266, at *6.
[96] *Id.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

other contact information.  As the *Gragg* Court noted, while "[t]he parties may have to do additional investigation [regarding the type of telephone involved] . . . ***none*** of these hurdles is insurmountable."[97]

### 4.   Self-Identification and Fine-Tuning

If necessary, putative class members can self-identify.[98]  "Class notice will further help reveal the class members," who then can "identify themselves in order to participate."[99]

Moreover, if it is determined later in the litigation that certain callers did not use a cellular or cordless telephone or were not in California, those individuals can be eliminated from the class at that time.  Just as court or jury fact-finding may refine who is in the class and who is entitled to recovery, the claims administration process can refine it further.  A plaintiff need not show that all objectively defined class members will share in any eventual recovery.[100]  The "possibility or indeed inevitability" of certifying a class that contains persons who have not been injured "does not preclude certification."[101]  Indeed, "an inability to absolutely confirm class members' identities" or right to recover should not "act as an independent bar to class certification."[102]

In sum, the Class is presently ascertainable.  The Class definitions are based on objective criteria, and Class membership is based on Defendant's uniform policy and practice of recording all incoming telephone calls handled by its English-speaking call centers without providing notice or disclosure of any kind.  The universe of all potential Class members whose privacy rights have

---

[97] *Id.*, emphasis added.

[98] *Banks v. Nissan North America, Inc.*, 2013 WL 6700299, at *7 (N.D. Cal. Dec. 19, 2013).

[99] *See Ebin v. Kangadis Food Inc.*, 287 F.R.D. 561, 567 (S.D.N.Y. 2014) (allowing class members to self-identify using sworn affidavits); *McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *7-*8 (C.D. Cal. Jan. 13, 2014) (same); *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014) (same); *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417-418 (N.D. Ill. 2012) (same); *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 327-28 (C.D. Cal. 1998) (using medical history questionnaire to assist in determining class membership); *Galvan v. KDI Distrib. Inc.,* 2011 WL 5116585, at *4-*5 (C.D. Cal. Oct 25, 2011).

[100] *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 220-221 (M.D. Pa. Dec. 7, 2012).

[101] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010); *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009).

[102] *Forcellati*, 2014 WL 1410264, at *8.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

been violated can be identified using Defendant's own records and, to the extent necessary, third party records. Ascertainability is easily satisfied.

### B.      The Proposed Class Meets All Rule 23(a) Requirements

A proposed class satisfies Rule 23(a) if (1) it contains so many members as to make individual joinder impracticable, (2) there are questions of law or fact common to the class, (3) Plaintiffs' claims are typical of the class claims, and (4) Plaintiffs will fairly and adequately protect the interests of the class.[103] To a far greater degree than most, the proposed Class meets all of these requirements.

### 1.      The Class Is Numerous And Joinder Impracticable

Numerosity is satisfied when "the class is so numerous that joinder of all members is impractical."[104] To satisfy the numerosity requirement, a plaintiff need not demonstrate the exact number of class members, nor is a particular "magic number" required.[105] Generally, a class of 40 or more members is sufficiently numerous. Here, the proposed Class contains thousands of members.[106] Defendant's records show that, from March 1, 2011 through July 17, 2012, its English-speaking call centers received and handled more than 2,000,000 calls from California area codes.[107] Defendant's policy and practice was to record *100%* of the calls that came to its Verint-licensed work stations and to do so without warning.[108]

Given both (1) the prevalence of cellular telephone usage and cellular-only households and (2) the widespread use of cordless telephones rather than corded landline telephones by those callers who still use landlines, there clearly are many thousands of potential Class members. The Class is sufficiently numerous to make joinder of all Class members impracticable.

///

///

---

[103] Fed.R.Civ.P. 23(a).
[104] Fed.R.Civ.P. 23(a)(1).
[105] *See In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350-351 (N.D. Cal. 2005).
[106] *Celano v. Marriott Int'l Inc.,* 242 F.R.D. 544, 549 (N.D. Cal. 2007); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 646-647 (W.D. Wash. 2007).
[107] Grover Decl., Ex. J at 9:14-26.
[108] Grover Decl., Ex. B [Floor Depo] at 43:2-7; Ex. E [Emery Depo] at 27:14-28:16.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

### 2.    Common Questions of Law and Fact Predominate

The common issues of law and fact are virtually the only legal issues in this case. Commonality focuses on facts and legal issues that class members have in common.[109]   To demonstrate commonality, Plaintiffs must show that class members have suffered the same type of injury.[110]  "Their claims must depend upon a common contention ... of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[111] Commonality can be satisfied by either "the existence of shared legal issues with divergent facts" or a "common core of salient facts coupled with disparate legal remedies within the class."[112] Here, the Class members share the same factual experience and legal issues in all material respects; it presents a case for commonality that is far more compelling than the norm.

The class action case law is rife with reassurances that factual differences won't defeat class-wide resolution when there are at least some common questions.  "Factual differences between class members' claims do not defeat certification where common questions of law exist."[113]  All questions of fact and law need not be common.[114]  As long as there are substantial questions that, if tried separately, would have to be answered as to each potential class member, commonality is satisfied.[115]  Where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists."[116]

---

[109] Fed.R.Civ.P 23(a)(2).

[110] *Dukes,* 131 S.Ct. at 2551.

[111] *Id.  In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838, 852 (6th Cir. 2013), <u>cert. denied.</u> (U.S., Feb. 24, 2014, 13-431) 2014 WL 684065.

[112] *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019-1020 (9th Cir. 1998).

[113] *See, e.g.*, *DG ex rel. Stricklin v. Devaugh*, 594 F.3d 1188, 1195 (10th Cir. 2010) (holding that commonality existed in a putative class of children exposed to the same risk of harm from defendant agency's inadequate oversight despite the fact that the vast majority of children in the program suffered no physical harm).

[114] *Id.*

[115] *See Walters v. Reno*, 145 F.3d 1032, 1045-1046 (9th Cir. 1998); *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010); *see Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) ("commonality only requires a single significant question of law or fact.").

[116] *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-979 (9th Cir. 2008).

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

If a person falling within the proposed Class definitions were to pursue an individual claim, only one question would be relevant:

- Did Defendant record my telephone call without notice?

That question would be the entire case.  Similarly, this case presents just one significant question that is common to every proposed Class member:

- Did Defendant have a uniform policy and practice of recording without notice all incoming telephone calls to its toll-free numbers that were transferred to its Verint-licensed stations at its English-speaking call centers during the class period?

Defendant admits that the answer to that question is "yes" as to each and every one of the thousands of calls it received during the class period from callers with California area codes who were transferred to its Verint-licensed stations at its English-speaking call centers.[117]  Every such caller who, like Plaintiffs, called on a cellular or cordless telephone with a California area code from a location within California was indisputably recorded in violation of § 632.7.[118]  As a matter of California law, Defendant's systemic § 632.7 violation affected all Class members in the same way.  Plaintiffs and the affected Class members seek the same legal remedy of statutory minimum damages under § 637.2 for each of Defendant's violations. The core factual and legal issues common to all Class members predominate.[119]

### 3.  Plaintiffs' Claims Are Typical of the Class

Plaintiffs in this case meet the typicality requirement.  The commonality in this case is so strong that virtually any Class member could satisfy the typicality requirement.

Rule 23(a)(3) requires the representative party to have claims or defenses that are "typical of the claims or defenses of the class."[120]  The relevant inquiry "is whether other members have

---

[117]  Grover Decl., Ex. B [Floor Depo] at 43:2-7; Ex. E [Emery Depo] at 27:14-28:16.
[118]  Unlike a claim premised on § 632, the callers' motivations for making those calls and the information they were conveying are irrelevant as a matter of law; rather, a "communication" is all that is required.  *Simpson v. Vantage Hospitality Group, Inc.*, *supra,* fn. 10.
[119]  Plaintiffs expect that Defendant will argue that confidentiality questions, caller expectations, consent, telephone type, and caller location are all individualized issues that preclude certification.  As discussed in section V.C.1, *infra,* those red herrings are not properly part of the class certification analysis.
[120]  Fed.R.Civ.P. 23(a)(3).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."[121]   In determining whether typicality is met, the focus should be "on the defendants' conduct and the plaintiffs' legal theory,' not the injury caused to the plaintiff."[122]

Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability."[123]   "[T]ypicality exists where, as here, all class members [we]re at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."[124]   The typicality requirement is "permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical."[125]

Here, Plaintiffs' and Class members' claims are based on Defendant's exact same course of conduct – Defendant's uniform policy and practice of recording incoming telephone calls without warning – and are based on the same legal theory.  Like other Class members, Plaintiffs were not informed that their telephone calls to Defendant's toll-free numbers were being recorded and did not consent to those recordings.  Defendant's uniform failure to provide notice of its recordings to cellular and cordless telephone callers violated § 632.7 and caused identical injury to Plaintiffs and putative Class members.  Further, like other Class members, Plaintiffs seek statutory minimum damages under § 637.2 for Defendant's unlawful conduct.  Accordingly, Plaintiffs' claims are typical of those of the Class.

**4.    Plaintiffs Will Fairly And Adequately Protect The Class' Interests**

Rule 23(a) also requires that Class representatives "fairly and adequately protect the interests of the class."[126]   The Ninth Circuit has established a two-prong test for this requirement:

---

[121] *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).
[122] *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005).
[123] *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010); *Cole v. Asurion Corp.*, 267 F.R.D. 322, 326 (C.D. Cal. 2010).
[124] *Stricklin*, 594 F.3d at 1199.
[125] *Hanlon*, 150 F.3d at 1020.
[126] Fed.R.Civ.P. 23(a)(4).

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

"(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[127]  To defeat certification, any conflict would have to be "fundamental" so that it relates to the specific issues in controversy.[128]  Here, there is no conflict at all, let alone a "fundamental" one.

Moreover, the "threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim[], and will be deemed inadequate only if she is 'startlingly unfamiliar' with the case."[129]

All components are satisfied here.  Plaintiffs have no apparent or known conflicts, seek the same statutory relief as the Classes, and have aligned interests.  Moreover, Plaintiffs are sufficiently knowledgeable about their claims and have responded to written discovery, provided documents and sat for depositions.[130]  Plaintiffs are committed to participating in this case to the fullest extent necessary to fairly and adequately protect their and the Class's interests.[131]  Plaintiffs also have retained qualified and experienced counsel.[132] The adequacy requirement is satisfied.

**C.    The Proposed Class Action Meets All Rule 23(b)(3) Requirements**

    **1.    Common Questions of Law and Fact Predominate Over Individual Questions**

Plaintiffs' claims are clear-cut and strong.  But even if they were not, it would not matter for certification purposes.  Rule 23(b)(3) requires only that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.[133]  This predominance requirement is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  It does not demand commonality as to all

---

[127] *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003), citing *Hanlon*, 150 F.3d at 1020.
[128] *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).
[129] *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004).
[130] *See* McCabe Decl., ¶5; Simpson Decl. ¶5; Grover Decl., Ex. F [McCabe Depo] at 35:14-36:7; Ex. G [Simpson Depo] at 30:7-31:6.
[131] *See* McCabe Decl., ¶6; Simpson Decl. ¶6.
[132] *See* Grover Decl., ¶¶ 4-5; Bernstein Decl., Ex. 1.
[133] *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013).

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    questions. [134]   A Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to

2    select the "method" best suited to adjudication of the controversy "fairly and efficiently."[135]

3           Rule 23(b)(3) also does not require that *each element* of a claim be "susceptible to

4    classwide proof."[136]   Rather, the rule simply requires that common questions "predominate over

5    any questions affecting only individual [class] members."[137]   "Where defendants offer only the

6    vague possibility that there may be some material variation in the circumstances of individual

7    class members, the ability to resolve the common issues on behalf of the entire class is a

8    significant benefit that is not outweighed by the possibility that some class members may not be

9    entitled to damages."[138]   Further, as the Supreme Court recently held, when adjudication of

10   common liability questions will achieve economies of time and expense, the predominance

11   standard is generally satisfied even if damages are not provable in the aggregate.[139]

12          This case meets the predominance requirement easily.   What individual issues can be

13   found are few in number and wholly damages-related.

14                      a)      **Defendant's Uniform Policies And Practices Establish Section
                                632.7 Violations**

16          Defendant's standardized course of conduct raises common questions of law and fact that

17   predominate over individual issues.   Defendant has admitted that it had a uniform policy and

18   practice of recording 100% of incoming customer telephone calls handled by its Verint-licensed

19   work stations at its English-speaking call centers.[140]   Defendant also admits that, until July 18,

20   2012, **none** of its English-speaking call centers provided a warning or notice that calls were being

21

22   [134] *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623 (1997); *see also* Grover Decl., Ex. V
     [C. Wright, A. Miller & M. Kane, 7AA Fed. Prac. & Proc. § 1778 (3d ed. 2005)] at 1-2.

23   [135] *Amgen*, 133 S.Ct. at 1191.

     [136] *Post,* at 1210.

24   [137] *Amgen*, 133 S.Ct. at 1196.

     [138] Gragg v. Orange Cab Co., Inc., 2014 WL 794266, at *6.

25   [139] *See Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1436-37 (2013) ("[A] fraud perpetrated on

26   numerous persons by the use of similar misrepresentations may be an appealing situation for a
     class action, and it may remain so despite the need, if liability is found, for separate determination

27   of the damages suffered by individuals within the class.") (quoting Advisory Committee's 1966
     Notes on Fed. Rule Civ. Proc. 23, 28 U.S.C.App., p. 141); *In re Whirlpool Corp. Front-Loading*

28   *Washer Products Liability Litigation*, 722 F.3d 838, 860 (6th Cir. 2013).

     [140] Grover Decl., Ex. B [Floor Depo] at 43:2-7; Ex. E [Emery Depo] at 27:13-28:16.

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

recorded.[141]   Absent notice or warning, Plaintiffs and putative Class members were unaware that Defendant was recording their calls and, thus, could not consent to the recordings.

Moreover, whether Defendant's uniform surreptitious recording of incoming telephone calls violated § 632.7 is the predominant legal issue and will be answered as to all Class members based on the common evidence of Defendant's uniform policy and practice.  These common facts and legal issues predominate and do not vary among Class members.[142]

Defendant likely will assert arguments regarding confidentiality questions, caller expectations, consent, telephone type, and caller location.  But Plaintiffs' theory of recovery – § 632.7 – makes those red-herring arguments irrelevant.  Further, determination of the exact amount of damages owed to each Class member – a simple multiplication based upon the number of telephone calls each Class member made to Defendant's toll-free numbers while in California – is an issue more appropriately handled at the claims administration stage and does not predominate over the liability questions present in this case.[143]

> **b)** **Confidentiality Is Not Required Under Section 632.7; Thus, Individual Expectations of Privacy Are Irrelevant**

Section 632.7 applies to **all** communications made on cellular or cordless telephones.  Unlike § 632, *§ 632.7 does <u>not</u> include a confidentiality element*.[144]

Courts have recognized this important distinction.  As *Lewis v. Costco Wholesale Corp.* recognized, "the principal difference between [§§] 632 and [] 632.7 is that the word 'confidential,' which appears in the former, is absent from the latter.  Thus, on its face, [§] 632.7

---

[141]   Grover Decl., Ex. A [Randall Depo] at 99:18-102:2.   Only the sixth call center, in Birmingham, England, where a relatively tiny number of calls (about three tenths of a percent) were handled, provided a warning pursuant to English law.  That center is excluded from the definition of "English-speaking call centers" in this motion.  *See* fns. 1 and 23, *supra*.

[142]   *See, e.g., Jackson v. Collections Acquisition Co.*, 2013 WL 5592603 (E.D. Mo. Oct. 9, 2013) (holding that the court 'need not engage in individualized inquiries to determine class membership" because the defendant sent the same form collection letter to all class members).

[143]   *See, e.g., Hartley v. Suburban Radiologic Consultants, Ltd.*, 2013 WL 5467300 (D. Minn. Sept. 30, 2013) (holding that even if individual class members claimed differing damage amounts, "such damage determinations would not predominate over the liability questions in the litigation").

[144]   Pen. Code § 632.7.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

is unambiguous: it precludes the recording of **all communications** involving a cellular [or cordless] telephone."[145]   In other words, § 632.7 applies to all communications, not merely confidential ones, *without regard to an objective consideration of expected confidentiality*.[146]

Significantly here, in the class certification context, because § 632.7 does *not* require confidentiality, no analysis is required regarding whether each Class member reasonably expected that his or her call with Defendant would be overheard or recorded.  Similarly, a caller's general or overall expectation of being recorded when placing calls to toll-free telephone numbers is utterly irrelevant to the present case.[147], [148]   The plain language of the statute, as well as the California Supreme Court and Court of Appeal case law interpreting the statute, are clear - a caller's expectation of confidentiality or of being recorded is irrelevant under § 632.7.[149]   Thus, no individual analysis regarding Class members' expectations of privacy is required.

### c) No Inquiry Regarding Consent Is Required Because Defendant Uniformly Failed To Provide Any Notice or Disclosure of Its Unlawful Recording Practice

CIPA prohibits the recording of telephone conversations without all parties' consent.[150]  Here, Defendant did not, and could not, obtain consent to its recordings because, absent adequate notice or warning, Plaintiffs and putative Class members were unaware that they were being recorded.  They cannot be deemed to have consented to that of which they were not aware.

---

[145]  *See* Grover Decl., Ex. R at 4-5 (emphasis added).

[146]  *Flanagan*, 27 Cal.4th at 776 ("Significantly, those statutes [632.5, 632.6, and 632.7] protect against interception or recording of *any* communications" (emphasis added in text above; emphasis in original of text in this footnote).

[147]  Plaintiffs anticipate that in support of its opposition to the present motion, Defendant will introduce a report from its expert, Linda Golden, regarding a recent survey she conducted that allegedly establishes consumers expect their calls to be recorded.  As discussed *infra*, not only does that defectively-designed study fly in the face of the California Supreme Court's holding in *Kearney*, but its findings are wholly irrelevant to the analysis of Defendant's liability under § 632.7.

[148]  In a similar vein, *Hataishi v. First American Home Buyers Protection Corp.* (2014) 223 Cal. App. 4th 1454, is utterly irrelevant.  *Hataishi* was a pure § 632 case.  The confidentiality issues that were determinative there are irrelevant to a claim under the very different § 632.7, which was not even before the *Hataishi* court.

[149]  *See Kearney*, 39 Cal. 4th at 118, n.10. and *Kight v. Cashcall,* 200 Cal.App.4th 1377, 1398-99 (2011) ("Kight").

[150]  *See* Pen. Code § 632.7; *Kearney*, 39 Cal.4th at 126.

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    "[E]xpress consent" is "[c]onsent that is clearly and unmistakably stated."[151]

2    "[S]peculation that customers may have given their . . . consent" to the recordings "is *not*

3    sufficient to defeat class certification."[152]   Here, Defendant has presented *no evidence* that any

4    putative Class member ever consented to Defendant's recording.   Indeed, absent warning or

5    disclosure at the call's outset, Plaintiffs and putative Class members could not *knowingly* consent

6    to the recordings.

7         Implied consent was absent as well.   Implied consent is "[c]onsent inferred from one's

8    conduct rather than from one's direct expression," or "[c]onsent imputed as a result of

9    circumstances that arise."[153]   Implied consent "is inferred 'from surrounding circumstances

10   indicating that the [party] *knowingly* agreed to" the conduct.[154]   "The key question in such an

11   inquiry obviously is whether parties were given sufficient notice."[155]   Without *actual* notice,

12   consent can be implied only when "[t]he surrounding circumstances [ ] *convincingly show that*

13   *the party knew about and consented to*" the conduct.[156]   Accordingly, "[d]eficient notice almost

14   *always* will defeat a claim of implied consent."[157]   Absent some form of notice, Defendant clearly

15   cannot meet this high burden and convincingly establish implied consent to its surreptitious call

16   recordings.

17        Further, a general public "expectation" is *not* equivalent to consent.[158]   Defendant will

18   likely rely on its expert's report, which purportedly concluded that some unidentified consumers

19   ─────────────────────────

20   [151] Grover Decl., Ex. W [Black's Law Dictionary (9th ed. 2009)].

     [152] *Agne v. Papa John's Intern., Inc.,* 286 F.R.D. 559, 568 (W.D. Wash. 2012).

21   [153] *Id*. at 346.

22   [154] *See Griggs-Ryan v. Smith*, 904 F.2d 112, 117 (1st Cir. 1990) ("*Griggs-Ryan*"), quoting *United*
     *States v. Amen*, 831 F.2d 373, 378 (2d Cir.1987) (emphasis added); *see also Berry v. Funk*, 146

23   F.3d 1003 (D.C. Cir. 1998).

     [155] *Berry*, 146 F.3d at 1011; *compare Griggs-Ryan*, 904 F.2d at 118 (implied consent where

24   prison inmate was expressly informed that incoming calls were being monitored), *with Campiti v.*
     *Walonis*, 611 F.2d 387, 393 (1st Cir.1979) (no implied consent where regulations did not inform

25   inmates of monitoring).

     [156] *United States v. Lanoue*, 71 F.3d 966, 981 (1st Cir.1995) (emphasis added).

26   [157] *Id.*; *see also Williams v. Poulos,* 11 F.3d 271, 282 (1st Cir. 1993); *Campiti,* 611 F.2d at 393;

27   *Griggs-Ryan,* 904 F.2d at 117 (particularly where, as here, notice was deficient, "consent should
     *not* causally be inferred")

28   [158] Plaintiff anticipates that Defendant, in support of its opposition, will introduce a report from
     its expert, Linda Golden, regarding a recent survey she conducted that purports to establish that

*(Cont'd)*

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

"expect" that their telephone calls "may" be recorded.  That purported analysis is irrelevant.  Whether a customer "expects" that his call "may" be recorded does **not** equate to actual consent to being recorded.  Consent "is not constructive . . . but 'consent in fact,'" and requires that the caller **know** of the recording.[159]  Expecting that some company might record you illegally and without warning is not consenting to being recorded any more than expecting that a car that has run a stop sign may collide with you is consenting to a collision.  Regardless of general expectations, absent notice or warning of Defendant's unlawful recording, the surrounding circumstances do not show that Class members knew about and consented to Defendant's recordings.[160]

<div style="text-align:center">

**d)  Telephone Type And Caller Location Are Damages Issues And Therefore Are Not Impediments To Class Certification**

</div>

Plaintiffs recognize that in order to qualify for a damage payment, Class members will have to demonstrate membership in the Cellular Class, the Cordless Class or both.  Defendant's records will be able to provide each individual Class member with a very detailed call history during the class period.  With that information, Putative class members will know or be able to determine (a) their own telephone type and (b) whether they were in California when a call was made.  That will allow each Class member to provide affidavits regarding those matters or otherwise marshal the evidence in his or her possession that will demonstrate the type of phone used to make the call or calls and his or her location during each call.

---

consumers "expect" their calls to be recorded.  Putting aside glaring weaknesses that invalidate its underlying survey, the report's purported findings (1) are utterly irrelevant to an analysis of Defendant's § 632.7 liability, and (2) are contrary to the California Supreme Court's holding in *Kearney* that, absent adequate notice at the call's outset, "a California consumer reasonably would anticipate that such a telephone call is **not** being recorded."  *Kearney*, 39 Cal.4th at 118, n.10.  Plaintiffs will further address the defective survey and Defendant's "expectation" argument in the reply.

[159] *Lanoue,* 71 F.3d at 981.

[160] While expectations are irrelevant, the California Supreme Court has recognized that "California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call" and, therefore, it is "plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded."  *Kearney*, 39 Cal. 4th at 118, n.10.  In other words, absent adequate warning or notice at the call outset, the objectively reasonable expectation is that calls will **not** be monitored or recorded, i.e., that companies will obey the law.  *Kight,* 200Cal.App.4th at 1398-99.

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

A caller's telephone type and location can be determined and verified easily.  Third-party information service companies can analyze a list or database of telephone numbers to determine which numbers were cellular versus landline numbers during the relevant time period, regardless of a number's porting history.[161]  Call detail records also can be obtained and will reveal whether a proposed Class member was within California when a particular cellular call was made.[162]  Further, like Plaintiff McCabe, Class members can supply credit card statements or other receipts to demonstrate their presence in California when they made calls.[163]

Moreover, because statutory minimum damages under § 637.2 are unvarying, damage calculations in this case are common in nature rather than individualized.  But even in cases where damages are "individualized," damage calculations do not preclude class certification under Rule 23(b)(3).[164]  "[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members."[165]   The "amount of damages is invariably an individual question and does not defeat class action treatment."[166]   Further, if necessary, liability and damage issues can be bifurcated at trial.[167]

Courts have correctly reasoned that it would drive a stake through the heart of the class action device to require that every class member have identical damages.[168]  If liability issues are genuinely common, and the damages of individual class members can be determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not

---

[161] Snyder Decl., ¶ 25.  "Porting" refers to a telephone service customer's ability to move from one service provider to another or from one telephone type to another and keep his or her telephone number.  But third-party service providers can tell whether the telephone corresponding to a given telephone number was cellular or a landline on any given date.

[162] *Id*. ¶¶18-20

[163] *See e.g.* Grover Decl., Ex. P.

[164]  *See* Grover Decl., Ex. U [Newberg on Class Actions § 4.54] at 1 (ordinarily, "individual damage[s] calculations should not scuttle class certification under Rule 23(b)(3)").

[165] *Comcast Corp. v. Behrend*, 133 S.Ct. at 1437 (Ginsburg, J., Breyer, J., dissenting); Grover Decl., Ex. U [Newberg on Class Actions § 4.54] at 2.

[166] *Leyva v. Medline Indust. Inc.*, 716 F.3d at 513; *Dilts v. Penske Logistics, LLC*, 267 F.R.D. at 639-640; *Guido v. L'Oreal, USA, Inc*., 284 F.R.D. at 479.

[167] *See, e.g., Whitlock v. FSL Management, LLC*, 2013 WL 5656100 (W.D. Ky. Oct. 16, 2013).

[168] See, e.g. *Butler v. Sears, Roebuck and Co*., 727 F.3d 796, 801 (7th Cir. 2013).

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

identical across all class members should not preclude class certification.[169]  To hold otherwise would allow defendants to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits.[170]

Accordingly, at certification, a plaintiff need only present a likely method for determining class damages.[171]  It is not necessary to show this method will work with certainty at this time.[172]

Plaintiffs and the putative Class seek statutory minimum damages for *each* § 632.7 violation – that is, *each* recording by Defendant of a cellular or cordless telephone call placed during the Class period by a Class member in California.  Thus, once a Class member has established his membership in the Cellular Class, the Cordless Class or both, his or her individual damages can be determined by simply multiplying his or her number of recorded California calls by the statutory minimum damages.  If individual issues regarding the amount of damages owed to each class member were to become a future concern, the Court could address such issues at that time.[173]  But those concerns are unlikely.  Rarely does a class action have a damage measure even approaching the simplicity of this one.

### e)    Due Process Concerns Are Not Impediments To Class Certification

Further, any claim of excessive penalties or due process concerns, should Defendant attempt to raise one, will be unavailing, particularly at this stage.  In the Ninth Circuit, "such a consideration is ***not*** an appropriate reason to deny class certification under Rule 23(b)(3)."[174]  Indeed, "[i]f the size of a defendant's potential liability alone was a sufficient reason to deny class certification…the very purpose of Rule 23(b)(3) – to allow integration of numerous small

---

[169] *Id.*

[170] *Id.*

[171] *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010).

[172] *Id.*

[173] *See Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221114 *10 (N.D. Cal. June 7, 2011) (accepting plaintiff's contention for class certification purposes that he will be able to prove the proper amount of restitution by relying on documents produced by defendant).

[174] *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 721-722 (9th Cir. 2010)

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1   individual claims into a single powerful unit – would be substantially undermined."[175]  Moreover,

2   as the Court in *Napster* recognized, nothing in the Ninth Circuit precedent suggests that the

3   availability of statutory damages is a bar to certification, and in fact, statutory damages may

4   weigh in favor rather than against class certification.[176]

5       Here, the plain statutory language makes it clear that, in the Legislature's judgment, the

6   statutory damage amount "***is*** proportionate and appropriately compensates the consumer."[177]

7   "That proportionality does not change as a defendant's conduct causes more plaintiffs to seek

8   relief."[178]

9              **2.    A Class Action Is Superior To Other Available Methods For The Fair
                      And Efficient Adjudication Of This Case**

10      The overwhelming prevalence of common issues makes classwide resolution of this case

11  vastly superior to any other method of resolution.  Thus, this case meets the requirement of Rule

12  23(b)(3) that a class action be "superior to other available methods for fairly and efficiently

13  adjudicating the controversy."[179]

14      Considerations in the superiority analysis include: (A) the class members' interests in

15  individually controlling the prosecution or defense of separate actions; (B) the extent and nature

16  of any litigation concerning the controversy already begun by or against class members; (C) the

17  desirability or undesirability of concentrating the litigation of the claims in the particular forum;

18  and (D) the likely difficulties in managing a class action.[180]

19      The superiority requirement's purpose is judicial economy.  The goal is to ensure that a

20  class action is the "most efficient and effective means of resolving the controversy."[181]  Use of the

21  class method is warranted where, as here, a case involves multiple claims for relatively small

22  individual sums, and some plaintiffs may not be able to proceed as individuals because of the

---

23  [175] *Id.*; *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611, at *11 (N.D. Cal. Jun. 2, 2005)

24  ("at the class certification stage, such an inquiry would almost inevitably be speculative, based on a potential statutory maximum award rather than an actual jury verdict").

25  [176] *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611, at *9.
[177] *Bateman* 623 F.3d at 722.

26  [178] *Id*.
[179] Fed.R.Civ.P. 23(b)(3).

27  [180] Fed.R.Civ.P. 23(b)(3)(A)-(D).

28  [181]  *Wolin  v.  Jaguar  Land  Rover  N.  Am.,  LLC*,  617  F.3d 1168, 1175-1176 (9th Cir. 2010) ("Wolin"); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

disparity between their litigation costs and what they hope to recover.[182]  "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."[183]

Moreover, the class action is superior to individual actions in consumer cases with thousands of members, as "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."[184]

Here, as Defendant's records show, thousands of individuals have been affected and injured by Defendant's unlawful recording practices.  Although $5,000 per violation is not an insignificant sum, it also is not nearly large enough to litigate practically on an individual basis. And there is a still greater impediment to individual claims:  it is unlikely that Class members, the vast majority of whom have no way of even knowing that their privacy rights were violated absent a Class notice, would come to know that they should consider pursuing individual claims against the Defendant.  As far as Plaintiffs are aware, no other Class members have filed a § 632.7 claim against Defendant during the two years this case has been pending.  The unlikelihood of individual actions by consumers still in the dark because Defendant recorded them secretly weighs heavily in favor of class certification.

Moreover, denial of Class certification could result in enormous duplication of legal and judicial efforts and corresponding waste of resources, despite near-identical issues of law and fact for each proposed Class member.  In fact, were Class members to bring individual actions, common factual and legal issues would be litigated repeatedly with the possibility of inconsistent results and the certainty of squandering limited judicial resources.  The class action device was

---

[182] *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1163 (9th Cir. 2001).

[183] *Wolin,* 617 F.3d at 1175; s*ee also Amgen,* 133 S.Ct. at 1202; *Amchem Prods., Inc.,* 521 U.S. at 617, 117 S.Ct. 2231 (finding that in drafting Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all' "); *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) (noting that "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits" because of litigation costs).

[184] *Holloway v. Full Spectrum Lending*, 2007 WL 7698843 at *9 (C.D. Cal. June 26, 2007).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  created to prevent such situations.  Further, as discussed above, a potential large damage award

2  does not affect the superiority of class relief.[185]  A class action is the superior method for the fair

3  and efficient adjudication of this controversy.

**D.    The "Death Knell" Effect Of A Ruling Denying Class Certification Militates In Favor Of A Ruling That Any Denial Be Without Prejudice To Modification And Re-Filing**

6    Denial of class certification is a "death knell" order.  Such a denial would severely affect

7  the putative Class members' rights by precluding class action redress on any cause of action.[186]

8  Because denial of a class certification motion is final, "courts should avoid ruling on the merits

9  [of class certification] until satisfied that a plaintiff has had a fair opportunity to present the case

10  for certification."[187]  In light of the drastic nature of a denial of class certification, particularly

11  here, where putative class members would never even learn that their rights were violated,

12  Plaintiffs respectfully request that, if there should there be any inadequacies in their motion, the

13  motion be denied without prejudice to modification and re-filing.

**VI.    CONCLUSION**

15    Defendant created thousands of identical victims by violating a California Penal Code

16  section in the exact same way with respect to all of them. The Class members' damage

17  calculations differ almost not at all, requiring only a single, simple multiplication.  It is difficult to

18  imagine a case more appropriate for certification than this one.  For the foregoing reasons,

19  Plaintiffs respectfully request that their motion for certification be granted in its entirety.

20  Dated:  August 11, 2014              **KELLER GROVER LLP**

21                                      By:  /s/ Eric A. Grover
22                                      ERIC A. GROVER
                                        RACHAEL G. JUNG
23                                      *Counsel for Plaintiffs* LAURA McCABE and
                                        LATROYA SIMPSON

---

[185] *Bateman,* 623 F.3d at 721-722 (holding that "[i]f the size of a defendant's potential liability alone was a sufficient reason to deny class certification…the very purpose of Rule 23(b)(3) – to allow integration of numerous small individual claims into a single powerful unit – would be substantially undermined").

[186] See, e.g., *Stephen v. Enterprise Rent-A-Car*, 235 Cal.App.3d 806 (1991).

[187] *Id*. at 814; *see also Amgen*, 133 S.Ct. at 1194-1195.