1 | ERIC A. GROVER (SBN 136080)
2 | eagrover@kellergrover.com
  | RACHAEL G. JUNG (SBN 239323)
3 | rjung@kellergrover.com
  | **KELLER GROVER LLP**
4 | 1965 Market Street
  | San Francisco, California 94103
5 | Telephone:   (415) 543-1305
  | Facsimile:    (415) 543-7861
6 |
7 | SCOT BERNSTEIN (SBN 94915)
  | swampadero@sbernsteinlaw.com
8 | **LAW OFFICES OF SCOT D. BERNSTEIN,**
  | **A PROFESSIONAL CORPORATION**
9 | 101 Parkshore Drive, Suite 100
  | Folsom, California 95630
10 | Telephone:   (916) 447-0100
   | Facsimile:    (916) 933-5533
11 |
12 | Attorneys for Plaintiffs
   | LAURA McCABE and LATROYA SIMPSON
13 |

*(Left margin, vertical text:)* **KELLER GROVER LLP** 1965 Market Street, San Francisco, CA 94103 Tel. 415.543.1305 | Fax 415.543.7861

14 |
15 | **UNITED STATES DISTRICT COURT**
16 | **NORTHERN DISTRICT OF CALIFORNIA**

| 17 | LAURA MCCABE and LATROYA | Case No:  3:12-cv-04818-NC |
| 18 | SIMPSON, individually and on behalf of a class of similarly situated individuals, | |
| 19 | | <u>CLASS ACTION</u> |
| 20 | Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT SIX CONTINENTS HOTELS, INC.'S MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF RANDALL A. SNYDER** |
| 21 | vs. | |
| 22 | | |
| 23 | SIX CONTINENTS HOTELS, INC.; and | Date:      November 5, 2014 |
| 24 | DOES 2 through 10, inclusive, | Time:     1:00 P.M. |
|    | | Ctrm:     A - 15th Floor |
| 25 | Defendants. | |
| 26 | | Complaint Filed:  7/3/12 |
| 27 | | FAC Filed:         7/19/12 |
|    | | SAC Filed:         10/11/13 |
|    | | Trial Date:        None |
| 28 | | |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................... 1

II.  RELEVANT BACKGROUND ........................................................ 3

    A.  Plaintiffs Propose Two Objectively Ascertainable Classes ................... 3

    B.  Plaintiffs' Proposed Classes Are Administratively Manageable ........... 5

    C.  Mr. Snyder Was Asked To Opine On Limited Topics Within
        His Expertise ........................................................................... 6

III.  LEGAL STANDARD FOR EXPERT OPINIONS
      AT CLASS CERTIFICATION .................................................... 7

IV.  ARGUMENT ............................................................................. 8

    A.  Mr. Snyder's Report and Testimony Support the Administrative
        Feasibility of Identifying and Confirming Absent Class Members ........ 8

    B.  Mr. Snyder's Opinions Are Based On Reliable Foundation ................ 12

    C.  Mr. Snyder Is Well Qualified To Opine On These Issues ................... 16

    D.  Mr. Snyder's Opinions Are Based On Factual Analysis, Not Legal
        Conclusions ............................................................................ 17

    E.  Mr. Snyder Did Not Fail To Consider Any Contrary Evidence .......... 18

    F.  Mr. Snyder's Opinions Are Based On Reliable Methodologies ........... 19

    G.  Mr. Snyder's Opinions Are Based On Research Independent
        Of And Unrelated To This Litigation ............................................. 22

V.  CONCLUSION ........................................................................... 23

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**<u>TABLE OF AUTHORITIES</u>**

<u>Page</u>

**Cases**

*Abaxis Inc. v. Cepheid*

    2012 WL 2979019 (N.D. Cal. Jul. 19, 2012)....................................................................... 17

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*

    738 F.3d 960 (9th Cir. 2013)............................................................................................. 22

*Allen v. Hyland's Inc.*

    2014 WL 3819713 (C.D. Cal. Aug. 1, 2014)..................................................................... 10

*Allstate Ins. Co. v. Nassiri*

    2013 WL 2393854 (D. Nev. May 29, 2013)...................................................................... 16

*American Honda Motor Co. v. Allen*

    600 F.3d 813 (7th Cir. 2010)............................................................................................... 7

*Amorgianos v. Nat'l R.R. Passenger Corp.*

    303 F.3d 256 (2d Cir. 2002)............................................................................................. 14

*Astiana v. Kashi Co.*

    291 F.R.D. 493 (S.D. Cal. 2013)...................................................................................... 10

*Benjamin v. Peter's Farm Condominium Owners Ass'n*

    820 F.2d 640 (3d Cir. 1987)............................................................................................. 14

*Berk v. St. Vincent's Hosp. and Medical Ctr.*

    380 F.Supp.2d 334 (S.D.N.Y. 2005)................................................................................ 13

*Birchmeier v. Caribbean Cruise Line, Inc.*

    2014 WL 3907048 (N.D. Ill. Aug. 11, 2014)............................................................. passim

*Blough v. Shea Homes, Inc.*

    2014 WL 3694231 (W.D. Wash. Jul. 23, 2014) ................................................................. 7

*Butt v. Allegheny Pepsi-Cola Bottling Co.*

    116 F.R.D. 486 (E.D. Va. 1987) ...................................................................................... 20

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1

<u>**TABLE OF AUTHORITIES**</u>
(Continued)

2

3

<u>**Page**</u>

4   *Casas Office Machines, Inc. v. Mita Copystar Am., Inc.*

5       42 F.3d 668 (1st Cir. 1994) .......................................................................... 14

6   *Daubert v. Merrill Dow Pharmaceuticals, Inc.*

7       509 U.S. 579 (1993).......................................................................... passim

8   *Ellis v. Costco Wholesale Corp. (Ellis I)*

9       240 F.R.D. 627 (N.D. Cal. 2007) ........................................................ 7, 8, 22

10  *Ellis v. Costco Wholesale Corp. (Ellis II)*

11      657 F.3d 970 (9th Cir. 2011)................................................................ 7, 13

12  *Enyart v. Nat'l Conference of Bar Examiners, Inc.*

13      823 F.Supp.2d 995 (N.D. Cal. 2011) ............................................ 8, 14, 15, 16

14  *Feuerstein v. Home Depot, U.S.A., Inc.*

15      2014 WL 2616582 (D. Ariz. Jun. 12, 2014) ....................................... 3, 20

16  *Fosmire v. Progressive Max Ins. Co.*

17      277 F.R.D. 625 (W.D. Wash. 2011) ................................................... 13

18  *Galvan v. KDI Dist. Inc.*

19      2011 WL 5116585 (C.D. Cal. Oct. 25, 2011)...................................... 4

20  *Gen. Elec. Co. v. Joiner*

21      522 U.S. 136 (1997).......................................................................... 15, 21

22  *Guadiana v. State Farm Fire and Cas. Co.*

23      2010 WL 5071069 (D. Ariz. Dec. 7, 2010) ....................................... 3, 15

24  *Hangarter v. Provident Life & Accident Ins. Co.*

25      373 F.3d 998 (9th Cir. 2004)............................................................ passim

26  *Henninghan v. Insphere Ins. Solutions, Inc.*

27      2014 WL 1600034 (N.D. Cal. Apr. 21, 2014) .................................... 7

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

1

## TABLE OF AUTHORITIES
### (Continued)

2

Page

3

4

*Hovenkotter v. SAFECO Ins. Co. of Illinois*

5

    2010 WL 3984828 (W.D, Wash. Oct. 11, 2010) ................................................................ 11

6

*In re Bextra and Celebrex Marketing Sales Practices and Product Liab. Litig.*

7

    524 F.Supp.2d 1166 (N.D. Cal. 2007) ........................................................................... 14

8

*In re Graphics Processing Units Antitrust Litig.*

9

    253 F.R.D. 478 (N.D. Cal. 2008) ................................................................................... 21

10

*In re Hydrogen Peroxide Antitrust Litig.*

11

    552 F.3d 305 (3d Cir. 2008) ........................................................................................... 20

12

*In re Static Random Access Memory (SRAM) Antitrust Litig.*

13

    264 F.R.D. 603 (N.D. Cal. 2009) ..................................................................................... 5

14

*In re Tableware Antitrust Litig.*

15

    241 F.R.D. 644 (N.D. Cal. 2007) ................................................................................... 21

16

*In re Zurn Pex Plumbing Products Liab. Litig.*

17

    644 F.3d 604 (8th Cir. 2011) .............................................................................. 7, 8, 22

18

*Internet Specialties West, Inc. v. ISPWest*

19

    2006 WL 4568796 (C.D. Cal. Sept. 19, 2006) ............................................................. 21

20

*Keegan v. Am. Honda Motor Co., Inc.*

21

    284 F.R.D. 504 (C.D. Cal. 2012) ..................................................................................... 5

22

*LaBauve v. Olin Corp.*

23

    231 F.R.D. 632 (S.D. Ala. 2005) ................................................................................... 20

24

*Leite v. Crane Co.*

25

    868 F.Supp.2d 1023 (D. Haw. 2012) ............................................................... 14, 15, 19, 22

26

*Manno v. Healthcare Revenue Recovery Group, LLC*

27

    289 F.R.D. 674 (S.D. Fla. 2013) ................................................................................... 10

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1

## TABLE OF AUTHORITIES
### (Continued)

2

3

**Page**

4  *Matuez v. Lewis*

5      2012 WL 3582122 (C.D. Cal. May 9, 2012) ........................................................ 17

6  *Matuez v. Lewis*

7      2012 WL 3582629 (C.D. Cal. Aug. 20, 2012) .................................................... 17

8  *McCrary v. The Elations Co.*

9      2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ................................................ 4, 12

10  *McDonald v. Bass Pro Outdoor World, LLC*

11      2014 WL 3867522 (S.D. Cal. Aug. 5, 2014) .................................................. 4, 6

12  *McGlinchy v. Shell Chemical Co.*

13      845 F.2d 802 (9th Cir. 1988) ............................................................................ 13

14  *Moore v. Ashland Chemical Inc.*

15      151 F.3d 269 (5th Cir. 1998) ............................................................................ 14

16  *Oddi v. Ford Motor Co.*

17      234 F.3d 136 (3d Cir. 2000) ............................................................................. 21

18  *Oracle America, Inc. v. Google Inc.*

19      2011 WL at 5914033 (N.D. Cal. Nov. 28, 2011) ............................................. 21

20  *Oracle Corp. v. SAP AG*

21      2014 WL 4251570 (9th Cir. 2014) ................................................................... 21

22  *Parkinson v. Hyundai Motor America*

23      258 F.R.D. 580 (C.D. Cal. 2008) ........................................................................ 4

24  *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*

25      2011 WL 5417090 (N.D. Cal. Oct. 27, 2011) .............................................. 8, 22

26  *Primiano v. Cook*

27      598 F.3d 558 (9th Cir. 2010) ................................................................. 3, 8, 12, 13

28

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

### TABLE OF AUTHORITIES
**(Continued)**

**Page**

*Pyramid Tech., Inc. v. Hartford Cas. Ins. Co.*

    752 F.3d 807 (9th Cir. 2014)................................................................ 22

*Ralston v. Mortgage Investors Grp., Inc.*

    2011 WL 6002640 (N.D. Cal. Nov. 30, 2011)................................... 15

*Samson Tug and Barge Co., Inc. v. U.S.*

    2008 WL 3200695 (D. Alaska Aug. 6, 2008) ................................... 21

*Siring v. Oregon State Bd. of Higher Educ. ex rel. Eastern Oregon Univ.*

    927 F.Supp.2d 1069 (D. Or. Jun. 11, 2013) .......................... 13, 17, 18

*Smith v. Microsoft Corp.*

    2013 WL 6497073 (S.D. Cal. Dec. 10, 2013)............................ 2, 8, 19

*Somers v. Apple, Inc.*

    258 F.R.D. 354 (N.D. Cal. 2009) ..................................................... 20

*Sterk v. Path, Inc.*

    2014 WL 2443785 (N.D. Ill. May 30, 2014) .................................. 2, 18

*Tait v. BSH Home Appliances Corp.*

    289 F.R.D. 466 (C.D. Cal. 2012) ................................................ 7, 8, 14

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*

    209 F.R.D. 159 (C.D. Cal. 2002) ..................................................... 15

*Thorndike v. DaimlerChrysler Corp.*

    266 F.Supp.2d 172 (D. Maine 2003) ................................................ 21

*U.S. v. Smith*

    520 F.3d 1097 (9th Cir. 2008).......................................................... 16

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

## TABLE OF AUTHORITIES
### (Continued)

**Page**

**Rules**

Federal Rules of Evidence

      Rule 702 ................................................................................................................. passim

      Rule 704 ........................................................................................................................ 18

Federal Rules of Civil Procedure

      Rule 23 .................................................................................................................. 5, 7, 20

United States District Court, Northern District of California

      Civil Local Rule 7-3 ...................................................................................................... 7

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Randall Snyder, a prominent expert in wireless and wireline telecommunications technology, was asked to opine on three narrow topics relevant to the manageability of identifying absent class members and confirming class membership.  Mr. Snyder testified, based on his relevant knowledge and experience, that:  (i) a list of potential class member telephone numbers, such as Defendant's here, can be "scrubbed" to determine which numbers are cellular; (ii) telephone subscribers can be reliably identified using third-party information services and/or information from cellular carriers; and (iii) cellular service providers record and maintain call detail records ("CDRs") that can be analyzed to determine call location.[1]  Each of these opinions is relevant and useful in demonstrating that it is administratively feasible to identify absent class members who cannot otherwise be identified from Defendant's records and, in addition to class member affidavits and supporting documents, further confirm class membership.

Defendant's motion to exclude Mr. Snyder's report/declaration (the "report") is based on the faulty premise that Mr. Snyder was asked to opine on the ascertainability of eight objectively-defined class definition "sub-factors."[2]  Mr. Snyder was *not* asked to opine on the class definitions or their sub-parts, which "ha[ve] *already* been ascertained by reference to objective

---

[1] Declaration of Randall A. Snyder (Dkt. No. 80-8) ("Snyder Report") ¶¶7, 14-17, 18-20, 21-24. For the Court's convenience, a copy of the Snyder Report is filed herewith as Exhibit A to the Declaration of Eric A. Grover in Support of Plaintiffs' Opposition to Defendant Six Continents Hotels, Inc.'s Motion to Exclude the Expert Report and Testimony of Randall A. Snyder ("Grover Decl.").

[2] According to Defendant, these "sub-factors" include:  (1) whether an individual is a California resident; (2) whether a particular call was made during the relevant time period; (3) whether an individual used a cellular or cordless phone with a California area code; (4) whether an individual was located in California at the time he or she called Defendant; (5) whether an individual called Defendant's toll-free number; (6) whether the call was routed to one of Defendant's English-speaking call centers; (7) whether Defendant recorded an individual's phone call; and (8) whether Defendant provided notice of its recording.  *See* Defendant Six Continents Hotels, Inc.'s Memorandum of Points and Authorities in Support of Motion to Exclude the Expert Report and Testimony of Randall A. Snyder (Dkt. No. 90-1) ("Def's. Mot.") at 4.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1    criteria."[3]   Just 10 months ago, a district court in the Southern District of California denied a

2    motion to exclude Mr. Snyder's expert testimony on similar grounds.[4]

3        Ignoring Mr. Snyder's **actual** opinions, Defendant dedicates the bulk of its motion to its

4    straw-man argument that Mr. Snyder lacks reliable foundation or is unqualified to opine on the

5    various **other** ascertainability "sub-factors" that were not even part of his analysis.  It would be

6    like attacking an automotive engineering expert in a defective radiator class action for being

7    unqualified to opine on ascertainability "sub-factors."   Defendant does **not** challenge Mr.

8    Snyder's qualifications or foundation with regard to his **actual** opinions.

9        Mr. Snyder has established his extensive qualifications and offered a reliable foundation

10   for his proposed methodologies and analysis.  He has more than 28 years of experience in

11   telecommunications network and system architecture, engineering, design and technology and is

12   an expert in wireline and wireless telecommunications networking technology.[5]  Mr. Snyder has

13   been an expert in more than 75 cases regarding cellular telecommunications technology and has

14   first-hand professional experience with the methods and processes underlying his opinions.[6]  He

15   clearly has more than "the *minimal foundation* of knowledge, skill, and expertise required in

16   order to give 'expert' testimony" on these issues.[7]

17       Defendant also argues that Mr. Snyder's opinions somehow amount to improper legal

18   conclusions.  But Mr. Snyder's opinions are **factual** in nature; at no point does he testify that he

19   has "reached a **legal** conclusion" or purport to be a legal expert.[8]  In short, Defendant "has not

20   shown that [Mr.] Snyder has overstepped his bounds as an expert witness."[9]

21

22

---

23   [3] *Smith v. Microsoft Corp.*, 2013 WL 6497073, at *4 (S.D. Cal. Dec. 10, 2013) (**denying** motion

24   to exclude Mr. Snyder's expert testimony on similar grounds).
     [4] *Id.*

25   [5] Grover Decl., Ex. A (Snyder Report) ¶4.

26   [6] *Id.* ¶¶4, 15, 27.
     [7] *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).

27   [8] *Id.*
     [9] *Sterk v. Path, Inc.*, 2014 WL 2443785, at *3 (N.D. Ill. May 30, 2014) (**denying** motion to strike

28   Mr. Snyder's expert opinion).

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Defendant further claims that Mr. Snyder's opinions are not founded on verifiable methodology or tested for reliability under *Daubert*.[10]  But Mr. Snyder's report clearly sets forth his proposed, verifiable methodologies for "scrubbing" telephone number lists, identifying telephone subscribers, and analyzing CDR call location.[11]  Moreover, where, as here, expert testimony "depends heavily on the knowledge and experience of the expert, rather than the methodology behind it," the *Daubert* factors for reliability "simply are not applicable."[12]  Rather, "[t]he reliability of such non-scientific testimony depends . . . 'on the knowledge and experience of the expert.'"[13]

Mr. Snyder has sufficiently established that his opinions are grounded in his specialized knowledge and experience in telecommunications network and system technology.  "This is a permissible basis for expert testimony pursuant to Rule 702."[14]  Mr. Snyder's opinions are relevant, helpful and reliably based "in the knowledge and experience of the relevant discipline."[15]  Defendant's motion to exclude Mr. Snyder's expert report and testimony should be denied.

## II.    RELEVANT BACKGROUND

### A.    Plaintiffs Propose Two Objectively Ascertainable Classes

In their Motion for Class Certification, Plaintiffs ask the Court to certify two well-defined classes of individuals whose privacy rights were uniformly violated by Defendant:

SubClass 1:  All California residents who, at any time from March 1, 2011 through and including July 17, 2012, used a cellular telephone with a California area code while located in California to call a toll-free number operated by Defendant and whose calls were routed to any of Defendant's English-speaking call centers and were recorded by Defendant without notice; and

SubClass 2:  All California residents who, at any time from March 1, 2011 through and including July 17, 2012, used a cordless telephone with a California area code while located in California to call a toll-free number operated by Defendant and

---

[10] *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).
[11] Grover Decl., Ex. A (Snyder Report) ¶¶14-17.
[12] *Hangarter*, 373 F.3d at 1017.
[13] *Feuerstein v. Home Depot, U.S.A., Inc.*, 2014 WL 2616582, at *2 (D. Ariz. Jun. 12, 2014).
[14] *Guadiana v. State Farm Fire and Cas. Co.*, 2010 WL 5071069, at *7 (D. Ariz. Dec. 7, 2010).
[15] *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

whose calls were routed to any of Defendant's English-speaking call centers and were recorded by Defendant without notice.

These class definitions are based on objective criteria and will allow prospective class members "to determine whether they are class members with a potential right to recovery."[16] Defendant's records can identify by date, time and telephone number, every call from a telephone with a California area code to one of its' toll-free number(s) during the proposed Class Period[17] that was routed to its "English-speaking" call centers and recorded without warning or notice.[18] Defendant's records alone can identify the entire universe of qualifying calls and potential class members.[19]   Moreover, because Defendant can pinpoint the date and time of each call, absent class members can objectively determine and certify that they used a cellular or cordless telephone to make the call and that they were in California at the time of the call.[20]  Thus, "class notice will further help reveal the class members," who can "identify themselves in order to participate."[21]   Because it is "administratively feasible for the court to determine whether a particular individual is a member" using objective criteria, the classes are ascertainable under

---

[16] *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 593-94 (C.D. Cal. 2008); *McCrary v. The Elations Co.*, 2014 WL 1779243, at *7 (C.D. Cal. Jan. 13, 2014) ("A class is ascertainable if it is 'administratively feasible for the court to determine whether a particular individual is a member' using objective criteria.").

[17] The proposed Class Period is March 1, 2011 through July 17, 2012, inclusive.

[18] *See* Plaintiffs' Reply in Support of Motion for Class Certification ("Reply"), filed concurrently herewith, at 5-6

[19]  *See* Reply at 5.   Moreover, Defendant has additional records with names and contact information for the approximately 40% of callers who made a hotel reservation.  Grover Decl., Ex. B (Randall Depo) at 131:24-132:1; Ex. C (Bazley Depo) at 12:25-14:23.

[20]  *See* Reply at 7.  Courts in call recording cases have consistently used similar approaches, requiring class members to provide their name, address, and telephone numbers used to call the defendant and verify, under oath, that they (i) spoke with the defendant's representative (ii) by cellular or cordless telephone (iii) while physically present in California (iv) during the class period.  *See* Grover Decl., Ex. D (*McDonald v. Bass Pro Outdoor World LLC,* Notice & Claim Form) at 7; Ex. E (*Marenco v. Visa, Inc.*, Keough Decl.) at 14; Ex. F (*Nader v. Capital One Bank (USA), N.A.*, Claims Form); Ex. G (*Batmanghelich v. Sirius XM Radio Inc.*, Claims Form); Ex. H (*Nguyen v. Equilon Enterprises LLC*, Claims Form); Ex. I (*Knell v. FIA Card Serv's, N.A.*, Claims Form).

[21] *Galvan v. KDI Dist. Inc.*, 2011 WL 5116585, at *4 (C.D. Cal. Oct. 25, 2011).

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

1  Rule 23 – even without any reliance on those parts of Mr. Snyder's expert opinions to which

2  Defendant objects.[22]

3      **B.**    **Plaintiffs' Proposed Classes Are Administratively Manageable**

4          In addition to being objectively ascertainable, Plaintiffs' proposed classes are

5  administratively manageable and identifiable, and sufficient notice can be provided to absent

6  class members in a simple, straightforward manner.[23]  Nearly ***all*** potential class members can be

7  identified through Defendant's records by telephone number.[24]  Defendant also maintains

8  multiple databases containing customer identifying information, such as name, address and email,

9  which can be searched using known class member telephone numbers to further identify

10  individual class members.[25]  Defendant estimates that 40% of callers make a reservation and

11  provide detailed contact information.[26]  Defendant also has several reward member databases

12  with complete contact information.[27]  For the many hundreds of thousands of potential class

13  members identifiable in Defendant's records by address and/or email, Plaintiffs can provide direct

14  notice via U.S. mail or email.  For the rest, where Defendant has only a telephone number,

15  Plaintiffs can engage in an outbound call campaign.[28]  Additional notice can be provided by

16

17  [22] *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012); *In re Static*

18  *Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 608 (N.D. Cal. 2009) (class ascertainable where "absent class members will easily be able to identify themselves");

19  *Birchmeier v. Caribbean Cruise Line, Inc.*, --F.R.D.--, 2014 WL 3907048, at *5-6 (N.D. Ill. Aug.

20  11, 2014) (class "sufficiently ascertainable" where members could be identified "using a combination of phone numbers in Defendants' records, the records of third-party phone carriers

21  and third-party database providers").
[23] *See* Reply at 9-12.

22  [24] Reply at 11; *see Birchmeier,* 2014 WL 3907048, at *4-*6 (class ascertainable and manageable where nearly one million potential class members could be identified through defendants' records

23  by telephone number).
[25] Reply at 11; Grover Decl., Ex. C (Bazley Depo) at 14:5-17:1, 18:9-19:13, 20:25-22:19, 28:1-

24  31:12.
[26] *Id.*, Ex. B (Randall Depo) at 131:24-132:1.

25  [27] *Id.*, Ex. C (Bazley Depo) at 12:25-14:23; 16:8-17:1; 18:9-19:13; 30:7-31:6

26  [28] *See* Reply at 11-12.  Because nearly ***all*** potential class members are identifiable through Defendant's records by phone number, an outbound call campaign along with a settlement

27  website and toll-free information hotline would be especially practicable here.  *See* Grover Decl., Ex. J (*Nguyen v. Equilon Enterprises LLC*, Cooper Decl.) at ¶5 (providing notice via outbound

28  call campaign in call recording case).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1   publication in print and on the Internet, a practicable method commonly used in call recording

2   cases.[29]

3        Each of these notice methods can be undertaken without any reliance on any of Mr.

4   Snyder's expert opinions.  The notice plan could be improved, however, by using one of the

5   commercial databases identified by Mr. Snyder to run a reverse search of each telephone number

6   to look for the most recent mailing address associated with each number.[30]  ***Defendant offers no***

7   ***objection or challenge to Mr. Snyder's report or testimony related to information available***

8   ***through these commercial databases.***

9        **C.    Mr. Snyder Was Asked To Opine On Limited Topics Within His Expertise**

10        In further support of the administrative feasibility and manageability of identifying absent

11   class members and confirming class membership, Mr. Snyder was asked to opine on three

12   narrow, relevant topics:  (i) whether it is possible to determine or "scrub" from a list of telephone

13   numbers, such as Defendant's list, which numbers are cellular; (ii) whether telephone subscribers

14   can be identified using their telephone numbers; and (iii) whether cellular carriers maintain

15   information regarding call location.[31]  Mr. Snyder's opinions are based on his vast experience in

16   telecommunications network and system architecture, engineering, design and technology, and

17   wireline and wireless telecommunications networking technology, as well as his personal

18   experience with the specific methodologies proposed in his report.[32]  Mr. Snyder's report satisfies

19   the standards for admissibility of expert opinions at class certification.[33]

20   ──────────────────

21   [29] *See* Reply at 11; *Birchmeier*, 2014 WL 3907048, at *12 (publication notice sufficient for class
     members not identified through defendants' telephone records); *McDonald v. Bass Pro Outdoor*

22   *World, LLC*, 2014 WL 3867522, at *9 (S.D. Cal. Aug. 5, 2014) (combination of direct mail and
     publication notice sufficient).

23   [30] Grover Decl., Ex. K (Snyder Depo) at 9:10-10:11; 14:17-25.

24   [31] *Id.*, Ex. A (Snyder Report) ¶¶2, 7; Ex. K (Snyder Depo) at 6:10-14; 61:9-17; 116:12-117:16.

     [32] *Id.*, Ex. A (Snyder Report) ¶¶4-5; Ex. K (Snyder Depo) at 21:19-23:15, 39:24-43:14, 46:7-47:8.

25   [33] In addition to squeezing in nearly ***33%*** more argument than Plaintiffs in its opposition to class
     certification (18,090 words in Defendant's 35-page opposition, compared to 13,641 words in

26   Plaintiff's 35-page opening motion), Defendant also filed separate objections to Mr. Snyder's
     report that mainly repeat their motion to exclude.  *Compare* Defendant Six Continents Hotels,

27   Inc.'s Evidentiary Objections to Declaration of Randall A. Snyder, Dkt. No. 88-2 *with* the
     documents associated with this motion at Dkt. Nos. 90, 90-1, 90-2.  ***For the same reasons as are***

28   ***set forth in this opposition, Defendant's evidentiary objections to Mr. Snyder's report are***
     *(Cont'd)*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

### III. LEGAL STANDARD FOR EXPERT OPINIONS AT CLASS CERTIFICATION

In the Ninth Circuit, district courts are *not* required to conduct a full *Daubert* analysis at class certification.[34] Relying on *Wal-Mart Stores, Inc. v. Dukes* and *American Honda Motor Co. v. Allen*, Defendant asserts that the Court must conduct "a full *Daubert* inquiry into the reliability of an expert's methodology" at class certification.[35] Defendant misstates the ***Ninth Circuit*** standard. Post-*Dukes*, the Ninth Circuit has affirmed that full *Daubert* analysis "***is not required***" at class certification.[36] Accordingly, courts in this circuit have ***rejected*** *American Honda*'s "full *Daubert*" inquiry in favor of a less-stringent "tailored *Daubert*" approach at class certification.[37]

"[T]he main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony."[38] That interest is not implicated at the class certification stage where the judge is the decision maker.[39] Thus, "[a]t this early stage, robust gatekeeping of expert evidence ***is not required***; rather, ***the court should ask only if expert evidence is 'useful in evaluating whether class certification requirements have been met***.'"[40] District courts need only "conduct an analysis tailored to whether an expert's opinion was sufficiently reliable to admit for the purpose of proving or disproving Rule 23 criteria, such as commonality and

---

*unwarranted and should be overruled.* Moreover, Defendant's objections were improperly submitted outside of the Court-imposed page limits in violation of Civil Local Rule 7-3 and, on that basis alone, should be stricken. *See* Civil L.R. 7-3 ("Any evidentiary and procedural objections to the motion ***must be contained within the brief or memorandum***."); *Henninghan v. Insphere Ins. Solutions, Inc.*, --F.Supp.2d--, 2014 WL 1600034, at *6 (N.D. Cal. Apr. 21, 2014) (*striking* separately filed objections *sua sponte* for failure to comply with L.R. 7-3).

[34] *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 495 (C.D. Cal. 2012) (distilling Ninth Circuit holdings post-*Dukes*); *Blough v. Shea Homes, Inc.*, 2014 WL 3694231, at *3 (W.D. Wash. Jul. 23, 2014) (following *Tait*).

[35] Def's Mot. at 9. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011); *American Honda Motor Co. v. Allen*, 600 F.3d 813 (7th Cir. 2010).

[36] *Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 635 (N.D. Cal. 2007) (*Ellis I*), affirmed on this point by *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (*Ellis II*).

[37] *See e.g., Tait*, 289 F.R.D. at 495 ("the Court rejects Defendants argument that the Court should follow the Seventh Circuit's decision in *American Honda* and instead adopts the reasoning of the Eighth Circuit in *In re Zurn*").

[38] *In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011).

[39] *Id.*

[40] *Ellis I*, 240 F.R.D. at 635, affirmed on this point by *Ellis II*, 657 F.3d at 982.

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1  predominance."[41]  In other words, a district court need only conduct a "tailored *Daubert* analysis"

2  which "scrutinize[s] the reliability of the expert testimony in light of the criteria for class

3  certification and the current state of the evidence."[42]  While the "requirements of relevance and

4  reliability set forth in *Daubert* [may] . . . serve as guideposts," the court retains discretion in

5  determining how to test reliability as well as whether the proffered expert testimony is both

6  relevant and reliable.[43]

7       Further, where, as here, the expert testimony is not "scientific," but rather is the "kind of

8  testimony whose reliability depends heavily on the knowledge and experience of the expert,

9  rather than the methodology or theory behind it," the *Daubert* factors simply are not applicable.[44]

10  In such situations, "Rule 702 should be 'construed liberally.'"[45]  The key inquiry is whether the

11  witness has sufficient skill or knowledge related to his field that his testimony probably will be of

12  some assistance to the "untrained layman."[46]  Mr. Snyder exemplifies the principle that "an

13  expert's knowledge may be derived from experience alone, and there is no per se requirement that

14  a[n] . . . expert have any particular training or license in order to testify."[47]  Moreover, "the

15  threshold for qualification is low: a minimal foundation of knowledge, skill, and experience

16  suffices."[48]

17  **IV.**    **ARGUMENT**

18      **A.**    **Mr. Snyder's Report and Testimony Support the Administrative Feasibility**

19          **of Identifying and Confirming Absent Class Members**

20       Mr. Snyder was not asked to opine on the proposed class definitions or on Defendant's

21  purported ascertainability "criteria" – the eight purported "sub-factors" identified in footnote 2,

---

22  [41] *Tait*, 289 F.R.D. at 495.

23  [42] *Zurn,* 644 F.3d at 614.

24  [43] *Tait*, 289 F.R.D. at 495; *Ellis I*, 240 F.R.D. at 635-36.

24  [44] *Hangarter*, 373 F.3d at 1017.

25  [45] *Smith*, 2013 WL 6497073, at *3.

26  [46] *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 823 F.Supp.2d 995, 1001 (N.D. Cal. 2011); *Primiano*, 598 F.3d at 567 ("The 'will assist' requirement, under *Daubert*, 'goes primarily to relevance.'").

27  [47] *Enyart*, 823 F.Supp.2d at 1001.

28  [48] *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.,* 2011 WL 5417090, at *3 (N.D. Cal. Oct. 27, 2011).

---

OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE RANDALL A. SNYDER

8

CASE NO. 3:12-cv-04818-NC

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

which Defendant has decided must be analyzed to determine class ascertainability.[49]  Indeed, ***Defendant acknowledges*** that Mr. Snyder "was not even asked by Plaintiff's counsel to opine on" these purported "criteria."[50]  Nonetheless, Defendant's motion to exclude Mr. Snyder's report and testimony rests on its false premise that Mr. Snyder was asked to opine on these criteria. Defendant's straw-man argument should be rejected.

Mr. Snyder was asked to opine on three limited topics relating to identifying cellular versus non-cellular telephone numbers, identifying absent class members and confirming class membership.[51]  His opinions on these topics will assist the Court to determine that it is administratively manageable to identify absent class members (to provide notice) and to confirm class membership.  They also provide additional support for class ascertainability.

*First*, Mr. Snyder opines that it is a common and straight-forward process to determine from a list of dates and telephone numbers, such as Defendant's list, which numbers are associated with a cellular telephone on any given date.[52]  Mr. Snyder describes the ability of several commercially available services to "scrub" telephone number lists to segregate cellular and non-cellular numbers by date.[53]  Mr. Snyder has personal and technical experience with many of these companies, including Neustar, A.B. Data, CompliancePoint and Contact Center

---

[49] *See* Grover Decl., Ex. A (Snyder Report) ¶¶2, 7; Ex. K (Snyder Depo) at 6:10-14 ("I was asked to opine on the ability to identify individuals by a cell phone that are potentially members of the class . . ."), 14:25-15:2 ("Well, again, we're trying to find the identity, to ascertain the identity of an individual associated with a phone number."), 16:12-25 ("I don't know all of the details and subsets or, you know, ***I'm not an expert in that***. But given a phone number, I'm confident that you could identify an individual that may be included in this class."), 35:18-23 ("I was asked to opine on landline versus cellular issues," ***not handset type***."), 36:25-37:6 ("***I never made a statement that every single class that might be or every category of class that might be included is the basis for this paper.*** I was simply asked to opine on mostly the cellular telephone numbers and the ability to identify individuals associated with a cellular telephone number."), 37:14-38:8 (Q: [Y]ou can't determine . . . whether they were recorded by defendant, whether they received notice, whether they are a California resident; is that right?" A: "Well, ***I wasn't asked to opine on that***."), 61:9-17, 116:12-117:16 ("***I wasn't asked to ascertain all those nine characterizations*** you mentioned in the class certification document.").

[50] Def's Mot. at 10.

[51] Grover Decl., Ex. A (Snyder Report) ¶¶2, 7; Ex. K (Snyder Depo) at 6:10-14, 14:25-15:2, 16:12-25, 35:18-23, 36:25-37:6, 37:14-38:8, 61:9-17, 116:12-117:16.

[52] *Id.*, Ex. A (Snyder Report) ¶¶7, 14-17.

[53] *Id.* ¶¶15-17; Ex. K (Snyder Depo) at 7:13-8:18.

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Compliance, and has first-hand knowledge and experience with their "scrubbing" processes.[54] Using Mr. Snyder's proposed methodology, the parties can "scrub" Defendant's list of potential class member telephone numbers to determine, on any given date, which numbers fall within the cellular subclass. That information will assist in the notice process. It also can be used to cross-check class membership based on information in class member affidavits.[55] Notably, Defendant does *not* claim that Mr. Snyder's "scrubbing" methodology is unreliable or unmanageable or challenge the foundation or basis for Mr. Snyder's opinion on this issue. Courts have relied on similar cellular "scrubs" proposed by Mr. Snyder to support class certification.[56]

*Second,* while not needed for *ascertainability,* Mr. Snyder opines that class members can be reliably ***identified*** solely from their telephone numbers in a manageable and highly effective manner.[57] As Mr. Snyder explains, third-party information service companies collect and maintain comprehensive and extensive databases that can identify telephone subscribers based solely on their telephone numbers and maintain that data over several years.[58] Such companies include Neustar, A.B. Data, Ltd., CompliancePoint and Contact Center Compliance – all of which are well-known organizations that maintain extensive demographic databases containing telephone subscription information and subscriber identifying data.[59] These companies update their databases daily to ensure that both past and present telephone subscriber data is reliable and preserved.[60] Mr. Snyder has had personal and technical experience using this process in numerous class actions to identify putative class members using only telephone numbers.[61]

---

[54] *Id.*, Ex. A (Snyder Report) ¶¶15-16; Ex. K (Snyder Depo) at 106:22-109:23.
[55] *See Birchmeier*, 2014 WL 3907048, at *7 (class sufficiently ascertainable and identifiable based on a combination of documentary evidence and sworn statements from class members).
[56] *See, e.g., Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 684 n.3 (S.D. Fla. 2013).
[57] Grover Decl., Ex. A (Snyder Report) ¶21; *Allen v. Hyland's Inc.*, --F.R.D.--, 2014 WL 3819713, at *10 (C.D. Cal. Aug. 1, 2014) ("the *identity* of class members need not be known at the time of class certification"); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) ("If class actions could be defeated because membership was difficult to ascertain at the class certification stage, 'there would be no such thing as a consumer class action.'").
[58] Grover Decl., Ex. A (Snyder Report) ¶23; Ex. K (Snyder Depo) at 9:10-10:11; 16:17-25.
[59] *Id.*
[60] *Id.*
[61] *Id.*; Ex. K (Snyder Depo) at 11:24-12:11, 107:10-109:23.

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Defendant does **not** challenge the reliability or manageability of this proposed methodology or the foundation or basis for Mr. Snyder's opinion.

Mr. Snyder further explains that cellular carriers maintain subscriber information including name, address and subscription period, all of which can be obtained from the carriers using only the subscriber's cellular number as the unique identifying piece of data.[62]  While such information may not be available for all subscribers, the primary carriers maintain this data for a minimum of three to five years.[63]  Courts granting class certification have relied on similar proposed methods for using information obtained from cellular carriers to identify absent class members.[64]

The two methodologies Mr. Snyder proposed – engaging a specialized third-party information service and obtaining information from cellular service providers – each can be used to further identify individual class members based solely on their telephone numbers reflected in Defendant's records.[65]  In other words, Mr. Snyder's opinion "gives credence" to Plaintiffs' position that class members can be identified and notified "using only information that can be culled from [Defendant's] database" and supports a finding of manageability and ascertainability.[66]

*Third*, Mr. Snyder opines that cellular service providers record, maintain and store detailed information about individual subscriber calls, including CDRs.[67]  As Mr. Snyder explains, each line-item CDR represents an individual call and includes the telephone number of the calling party, the telephone number of the called party, the call date, time and length, the switching system from which the call originated and the cell site serving the subscriber for the

---

[62] *Id.*, Ex. A (Snyder Report) ¶21-22, 24; Ex. K (Snyder Depo) at 8:21-9:9.

[63] *Id.*, Ex. A (Snyder Report) at Ex. B.

[64] *See, e.g., Birchmeier*, 2014 WL 3907048, at *11 (class certification granted where, despite varying wireless subscriber retention periods, the plaintiff made a similar showing that "it [wa]s **possible** to obtain historical subscriber information from each carrier").

[65] Grover Decl., Ex. K (Snyder Depo) at 16:17-25, 111:15-22.

[66] *Hovenkotter v. SAFECO Ins. Co. of Illinois*, 2010 WL 3984828, at *5 (W.D, Wash. Oct. 11, 2010); *Birchmeier*, 2014 WL 3907048, at *11-*12.

[67] Grover Decl., Ex. A (Snyder Report) ¶18.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

call.[68]   CDRs also reveal identification codes for the geographic locations of the call origination switching system where the call originated.[69]   Thus, CDRs for a particular cellular telephone number can provide information regarding the location from which each call from that number was made.[70]

CDRs can be obtained from wireless carriers using only the cellular telephone number as the unique identifying piece of data.[71]   Mr. Snyder has professional experience analyzing such data obtained via subpoena from cellular carriers.[72]   While this information may not be available for all potential class members (*see* Snyder Decl. ¶20), it can be used to further supplement class member affidavits and supporting documents by confirming cellular call location and class membership.[73]   Because class members' sworn statements regarding their location when they made a call are reliable, the subpoenaed information is ***not*** necessary for class certification or class membership.   It simply offers further support for class ascertainability and manageability.[74]

Mr. Snyder's opinions are relevant.   Even though ascertainability can be established without them, his opinions nonetheless will aid the Court in determining the ascertainability of Plaintiffs' proposed classes and the manageability of identifying absent class members and confirming class membership.

**B.      Mr. Snyder's Opinions Are Based On Reliable Foundation**

Expert opinion testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."[75]   "A trial court has broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to

---

[68] *Id.*

[69] *Id.* ¶19; Ex. K (Snyder Depo) at 21:19-23:25.

[70] *Id.*

[71] *Id.*, Ex. A (Snyder Report) ¶18.

[72] *Id.*, Ex. K (Snyder Depo) at 22:5-25:25, 65:19-67:18.

[73] With respect to SubClass 2 (the cordless class), supplemental information regarding call location is unnecessary, as call location for cordless (landline) callers can be definitively determined from their telephone number alone.

[74] *McCrary*, 2014 WL 1779243, at *7 (class certification does ***not*** require class members to have "actual proof that they belong in the class").

[75] *Primiano*, 598 F.3d at 565.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

determine the testimony's reliability."[76]  Contrary to Defendant's suggestion, "[r]eliable expert testimony need only be relevant, and need not establish *every element* that the plaintiff must prove, in order to be admissible."[77]  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry."[78]

Defendant claims that Mr. Snyder's opinions regarding class "ascertainability" generally lack reliable foundation because he did not analyze the class definitions or their subparts and could not repeat them verbatim during his deposition.  But Mr. Snyder *was not asked to opine* on the proposed class definitions or their subparts.[79]  Defendant does *not* challenge the foundation of Mr. Snyder's *actual* opinions.  For instance, Defendant does not claim that Mr. Snyder was unfamiliar with or failed to review the underlying processes for "scrubbing" telephone number lists or using third-party databases to identify telephone subscribers.  Nor does it claim that Mr. Snyder fundamentally misunderstood CDRs or the information collected and maintained by cellular carriers.  Indeed, Defendant appears to concede that Mr. Snyder's opinions and methodologies for "scrubbing" telephone number lists, identifying telephone subscribers by telephone number and analyzing CDRs to determine call location are reliable and are based on his knowledge and expertise in the wireless telecommunications industry.  In short, Mr. Snyder's failure to analyze extraneous factors irrelevant to his analysis – many of which are within Defendant's exclusive control – does not render his opinions inadmissible.[80]

---

[76] *Ellis II*, 657 F.3d at 982.

[77] *Primiano*, 598 F.3d at 565; *Siring v. Oregon State Bd. of Higher Educ. ex rel. Eastern Oregon Univ.*, 927 F.Supp.2d 1069, 1078 (D. Or. Jun. 11, 2013) ("Expert testimony need not address *every element* of a claim, but need only help the [fact finder] understand the evidence or 'a fact in issue.'").

[78] *Primiano*, 598 F.3d at 565.

[79] Grover Decl., Ex. A (Snyder Report) ¶¶2, 7; Ex. K (Snyder Depo) at 6:10-14, 14:25-15:2, 16:12-25, 35:18-23, 36:25-37:6, 37:14-38:8, 61:9-17, 116:12-117:16.

[80] The cases Defendant cites are factually distinguishable and inapplicable here.  *See, e.g., Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 630 (W.D. Wash. 2011) (excluding expert opinion that simply "rel[ied] upon opinions developed by another expert for purposes of litigation without independent verification of the underlying expert's work"); *Berk v. St. Vincent's Hosp. and Medical Ctr.*, 380 F.Supp.2d 334, 352-53 (S.D.N.Y. 2005) (excluding *unsworn* medical expert opinion that was based on the false assumption that the plaintiff had complained of "increased swelling, redness and drainage," when the plaintiff had only complained of drainage); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (excluding damages expert
*(Cont'd)*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Mr. Snyder's report sets forth his knowledge and extensive experience supporting his opinions. Mr. Snyder has developed his expertise through more than 28 years of experience in telecommunications network and system architecture, engineering, design and technology.[81] He is an expert in wireline and wireless telecommunications networking technology, has been an expert in more than 75 cases regarding cellular telecommunications technology for plaintiffs ***and*** defendants, and has extensive first-hand experience with the methods and processes described in his report.[82] Mr. Snyder "described the principles and methods supporting [his] opinions as required by F.R.E. 702 by explaining," in detail, the processes for (i) "scrubbing" telephone number lists, (ii) identifying telephone subscribers by telephone number, and (iii) identifying call location using CDRs.[83] "Clearly, this lays at least the *minimal foundation* of knowledge, skill, and expertise required in order to give 'expert' testimony" on these issues.[84] Mr. Snyder's extensive experience with these methods and processes provides sufficient basis and foundation for his opinions "and take[s] this testimony outside the realm of unsupported speculation."[85] Mr. Snyder's report and testimony helps establish that most class members can be identified and

---

who failed to consider market condition changes and "did not know which of appellants' product lines had declined in sales, or in which geographic areas"); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 268 (2d Cir. 2002) (excluding expert opinion where expert testified that "proper exposure assessment" depended on certain variables, but then failed to "include any of these variables in his calculations"); *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 278-79 (5th Cir. 1998) (excluding expert who "offered no ***scientific*** support" for his ***scientific*** theory); *Benjamin v. Peter's Farm Condominium Owners Ass'n*, 820 F.2d 640, 643 (3d Cir. 1987) (excluding expert opinion of post-injury earning capacity that was based solely on the *plaintiff's* personal speculation); *In re Bextra and Celebrex Marketing Sales Practices and Product Liab. Litig.*, 524 F.Supp.2d 1166, 1176 (N.D. Cal. 2007) (excluding expert report that "cherry-pick[ed] observational studies that support [its] conclusion and reject[ed] or ignor[ed] the great weight of the evidence that contradict[ed] [its] conclusion"); *Casas Office Machines, Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 682-83 (1st Cir. 1994) (***reversing*** district court's exclusion of expert declaration on summary judgment).

[81] *Enyart*, 823 F.Supp.2d at 1004; Grover Decl., Ex. A (Snyder Report) ¶4.

[82] *Id.* ¶¶4-6; Ex. K (Snyder Depo) at 11:17-12:11, 22:17-25:25, 39:24-40:25, 65:19-67:18, 81:22-82:2, 106:19-109:23.

[83] *Enyart*, 823 F.Supp.2d at 1004; Grover Decl., Ex. A (Snyder Report) ¶¶14-17, 18-19, 22-23; Ex. K (Snyder Depo) at 7:13-10:11, 21:25-22:13, 65:19-67:18, 106:19-109:23.

[84] *Hangarter*, 373 F.3d at 1016.

[85] *Leite v. Crane Co.*, 868 F.Supp.2d 1023, 1036 (D. Haw. 2012); *Tait*, 289 F.R.D. at 497 (expert's "extensive personal knowledge and experience" is sufficient foundation for expert opinion).

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

confirmed based primarily on Defendant's records.[86]  Thus, Mr. Snyder has "technical, or other specialized knowledge [that] will assist the trier of fact" and is qualified to testify as an expert witness on these issues.[87]

Defendant also argues that Mr. Snyder's opinions should be excluded because they "lack a 'valid scientific connection'" to determining all elements of ascertainability.[88]  Contrary to Defendant's suggestion, however, Mr. Snyder need not analyze every purported ascertainability "criteria" for his opinion to be admissible.[89]  Here, Mr. Snyder's opinions are relevant and will help determine whether it is administratively feasible and manageable to identify absent class members and confirm class membership.[90]  Moreover, the "scientific connection" that Defendant seeks is not required, as Mr. Snyder "is not offering *scientific* expert testimony."[91]  "He is offering expert testimony grounded in his experience and observations."[92]  "This is a permissible basis for expert testimony pursuant to Rule 702."[93]

///

---

[86] *Leite*, 868 F.Supp.2d at 1036.

[87] *Enyart*, 823 F.Supp.2d at 1004; *Hangarter*, 373 F.3d at 1016.

[88] Def's Mot. at 11.  Notably, Defendant does ***not*** claim that Mr. Snyder's opinions lack a valid connection to ***identifying*** absent class members or class ***manageability***.  Defendant's arguments are limited to the various unrelated ascertainability subparts enumerated in its motion.

[89] *Williams v. Illinois*, 132 S. Ct. 2221, 2228 (2012) (It is well-established that "an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true."); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002) ("At this stage in the proceeding, an expert report should not be excluded merely on the basis that it assumes the substantive allegations of the complaint rather than relying upon actual data that may yet to be discovered.").

[90] Defendant's reliance on Justice Stevens' partial concurrence and dissent in *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) to argue that Mr. Snyder's opinion does not "fit" the disputed issues is misplaced.  There, Justice Stevens opined that expert opinions should ***not*** be excluded when they "have reached relevant conclusions on the basis of an acceptable methodology," such as a scientifically accepted "weight of the evidence" methodology.  *Id.* at 153.  Here, because Defendant does ***not*** challenge Mr. Snyder's underlying ***methodologies*** for scrubbing telephone lists, identifying telephone subscribers by telephone number and analyzing CDRs for call location, exclusion is unwarranted.

[91] *Guadiana,* 2010 WL 5071069, at *6.

[92] *Id.*

[93] *Id.* at *7; *Ralston v. Mortgage Investors Grp., Inc.*, 2011 WL 6002640, at *4 (N.D. Cal. Nov. 30, 2011) ("Courts frequently accept experience-based, expert opinion testimony on relevant aspects of industry practice that do not offer themselves readily to scientific or statistical analysis.").

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

### C.     Mr. Snyder Is Well Qualified To Opine On These Issues

Defendant complains that Mr. Snyder is unqualified to "speak as an expert" with regard to seven of Defendant's eight "ascertainability factors."[94]  Again, Defendant bases its argument on six factors wholly unrelated to Mr. Snyder's testimony.[95]  But Mr. Snyder was not asked to opine on *any* of these purported factors.[96]    Thus, Mr. Snyder's lack of experience in any of these categories is completely irrelevant to his qualifications and experience underlying his *actual opinions* – which Defendant does not challenge.[97]

Defendant also claims that Mr. Snyder is somehow unqualified because he has never been involved in a California Privacy Act case before and, with regard to determining cellular call location, "it has never been his job to performed [sic] any such analysis before."[98]    Both arguments fail.  That Mr. Snyder never before has testified as an expert witness in a Privacy Act case "does *not* preclude his opining as an expert in this case."[99]  "If witnesses could not testify for

---

[94] Def's Mot. at 14.  Defendant concedes that Mr. Snyder is qualified to testify as an expert with regard to his opinion that Defendant's telephone number lists can be reliably "scrubbed" to determine which numbers are cellular and which numbers are landlines.

[95] The six factors are (i) Mr. Snyder "never attempted to determine the residence of callers;" (ii) Mr. Snyder "never conducted a study on the variance between cellular telephone account holders and actual users of the phones associated with an account;" (iii) Mr. Snyder is not an expert in the subpoena process; (iv) Mr. Snyder "could not determine . . . whether [a] call was recorded;" (v) Mr. Snyder "could not determine . . . whether notice was given that the caller was being recorded;" and (vi) Mr. Snyder "could not determine whether the call was, if via landline, placed using a cordless telephone."  Def's Mot. at 14.

[96] *Enyart*, 823 F.Supp.2d at 1004.

[97] Contrary to Defendant's assertion, Mr. Snyder's expertise is not limited to "areas of signaling networking."  Def's Mot. at 14.  As Mr. Snyder testified, he has extensive expertise in "all areas of signaling networking in the core network used for cellular technology. . . "[A]nything from the antenna back to services, features, standards, protocols, and individual network elements, the switching systems, ancillary elements, and basically how the overall system works down to a pretty fair level of detail, I would say I'm an expert in."  Grover Decl., Ex. K (Snyder Depo) at 46:9-22.  Mr. Snyder is also an expert in in telecommunications network and system architecture, engineering, design and technology, and an expert in both wireline and wireless telecommunications networking technology.  *Id.*, Ex. A (Snyder Report) ¶4.

[98] Def's Mot. at 14.  Again, Defendant concedes that Mr. Snyder is experienced in scrubbing telephone lists and identifying cellular subscribers.

[99] *U.S. v. Smith*, 520 F.3d 1097, 1105 (9th Cir. 2008); *Allstate Ins. Co. v. Nassiri*, 2013 WL 2393854, at *3 (D. Nev. May 29, 2013) (expert need not have "served as an expert before" to be qualified).

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

the first time as experts, we would have no experts."[100]   Moreover, "Rule 702 imposes no requirement that experts have personal experience in an area to offer admissible testimony relating to that area."[101]   Mr. Snyder has established his knowledge and expertise in analyzing CDRs to determine call location.[102]   Mr. Snyder's knowledge of obtaining CDR information via subpoena, "although indirect, is sufficient to satisfy *Daubert's* minimum threshold of relevance and accuracy."[103]   Thus, Defendant's objections to the credibility of Mr. Snyder's testimony relating to the availability of CDR information go to its weight, not its admissibility.[104]

### D.   Mr. Snyder's Opinions Are Based On Factual Analysis, Not Legal Conclusions

Without pinpointing any specific "legal" conclusion, Defendant complains generally that Mr. Snyder somehow "usurps the role of the court" by dispensing only legal opinions.[105]   But Mr. Snyder's opinions and proposed methodologies for (i) "scrubbing" and identifying cellular numbers, (ii) identifying absent class members based on their telephone numbers, and (iii) analyzing CDRs for call location are *factual* in nature.   Indeed, Mr. Snyder "never testified that he had reached a legal conclusion" or purported to be a legal expert.[106]

That Mr. Snyder uses the word "ascertain" – a word from standard English – also does *not* transform his opinion into a legal conclusion or "usurp the court's role."[107]   "An expert may

---

[100]   *Matuez v. Lewis*, 2012 WL 3582122, at *8 (C.D. Cal. May 9, 2012), report and recommendation adopted by *Matuez v. Lewis*, 2012 WL 3582629 (C.D. Cal. Aug. 20, 2012).
[101]   *Abaxis Inc. v. Cepheid*, 2012 WL 2979019, at *3 (N.D. Cal. Jul. 19, 2012).
[102]   Grover Decl., Ex. K (Snyder Depo) at 21:19-25:25.
[103]   *Abaxis*, 2012 WL 2979019, at *3.
[104]   *Id.*; *Hangarter*, 373 F.3d at 1017 n.14 ("the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility").   Defendant focuses its argument on Mr. Snyder's experience with issuing subpoenas – a legal process that he was not asked to opine on – *not* whether Mr. Snyder has sufficient knowledge and experience with analyzing CDRs to determine call location.
[105]   Def's Mot. at 15.
[106]   *Hangarter*, 373 F.3d at 1016; Grover Decl., Ex. K (Snyder Depo) at 7:4-6 ("I'm certainly *not* an expert in the law or in class action litigation . . ."), 111:18-20 ("Whether they meet all the criteria in the proposed class membership, *I wasn't asked to opine on that*."), 117:14-16 ("*I wasn't asked to ascertain all those nine characterizations* you mentioned in the class certification document.").
[107]   *Siring*, 927 F.Supp.2d at 1077 ("an expert's opinion that relies in part on the expert's understanding of state law does *not* improperly usurp the court's role").

---

'properly be called upon to aid the [trier of fact] in understanding the facts in evidence even though reference to those facts is couched in legal terms' and may 'refer to the law in expressing an opinion without that reference rendering the testimony inadmissible."[108]   Moreover, "[p]ursuant to Federal Rule of Evidence 704, [Mr.] Snyder is not barred from giving an opinion as to the ultimate issue before the trier of fact."[109]   Thus, Mr. Snyder's factual opinion that absent class members can be identified – or "ascertained" – based on his proposed methodologies "does not improperly invade the province of the Court."[110]   Defendant "has not shown that [Mr.] Snyder has overstepped his bounds as an expert witness or that [Mr.] Snyder is attempting to instruct the court as to the law as a legal expert."[111]

**E.      Mr. Snyder Did Not Fail To Consider Any Contrary Evidence**

With regard to his opinion that cellular carriers maintain CDR information relating to call location, Defendant claims that Mr. Snyder *failed to consider* the relevant class period or that some records may not be available for all putative class members.  Defendant apparently confuses the availability of information relating to subscriber identification and information relating to CDRs and call location.  As Mr. Snyder explained, the primary carriers maintain *subscriber identifying information* for, at minimum, three to five years, and would have information relating to any class member who is still a current subscriber.[112]   Cellular subscribers also can be identified using third-party information services, such as Neustar, A.B. Data, Ltd., CompliancePoint and Contact Center Compliance, which maintain detailed records for much longer periods.[113]   The primary carriers maintain *CDR information*, which includes call location information, for at least 18 months to seven years.[114]   As Mr. Snyder testified, however, the only

---

[108] *Id.*; *Hangarter*, 373 F.3d at 1017.
[109] *Sterk,* 2014 WL 2443785, at *3 (**denying** motion to exclude Mr. Snyder on similar grounds).
[110] *Siring*, 927 F.Supp.2d at 1077.
[111] *Sterk*, 2014 WL 2243785, at *3.  As Defendant admits, Mr. Snyder was not asked to opine on Defendant's purported ascertainability sub-factors.  Defendant fails to explain how Mr. Snyder could possibly be "usurping the Court's role" or providing "legal conclusions" on issues *on which he did not even opine*.
[112] Grover Decl., Ex. A (Snyder Report) ¶22, Ex. B.
[113] *Id.* ¶23.
[114] *Id.* at Ex. B.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

1   way to determine with certainty whether cellular carriers have this information is to request it

2   using Defendant's *as-of-yet unproduced* records of potential class member telephone numbers.[115]

3        Thus, not only did Mr. Snyder consider this information, he specifically discussed it in his

4   analysis.   Moreover, Mr. Snyder has demonstrated his knowledge and experience with this

5   process.[116]   To the extent Defendant "assert[s] that this testimony is contradicted by other

6   evidence, the court's job at this stage is not to weigh the evidence, but merely to determine

7   admissibility (especially in light of the preliminary stage of litigation)."[117]

8        **F.    Mr. Snyder's Opinions Are Based On Reliable Methodologies**

9        Defendant also claims that Mr. Snyder's third opinion – that cellular call location can be

10  determined by analyzing CDRs – is not based on verifiable methodology and has not been tested

11  for reliability under *Daubert*.[118]   But Mr. Snyder need not conduct a "study" or "sample" of

12  potential class members to submit valid expert testimony on the contents and availability of CDR

13  information.   If that were the standard, the report of Ronald O. Brown, Defendant's purported

14  VoIP expert, would surely be excluded, as he conducted *no study* and used *no methodology* for

15  his purported "expert" opinion.[119]   Mr. Snyder's opinion also need not be based on verifiable

16

17

18  [115] *Id.*, Ex. K (Snyder Depo) at 78:3-16, 80:6-9, 94:21-24; *see also* Ex. A (Snyder Report) ¶20

19  (the availability of this information is limited by "the corresponding data retention periods for
    each of those carriers").

20  [116] *Id.*, Ex. K (Snyder Depo) at 22:5-25:25, 65:19-67:18; *Smith*, 2013 WL 6497073, at *3-*4

21  (*rejecting* similar argument that class could not be ascertained because "only four of the eight
    primary wireless service providers keep their records for five years"); *Birchmeier*, 2014 WL

22  3907048, at *5-*6 (class ascertainable where, according to defendant's expert, phone companies
    maintained historical subscriber data "going back seven years for Verizon landlines and cellular

23  phones, seven years for AT&T landlines and cellular phones, for 'current subscribers and
    disconnected subscribers' at Sprint, seven years at CenturyLink, and two years at Comcast").

24  [117] *Leite v. Crane Co.*, 868 F.Supp.2d at 1037.
    [118] Defendant does *not* question Mr. Snyder's methodologies for (i) "scrubbing" telephone number

25  lists to determine cellular and landline numbers, or (ii) using third-party information
    services to identify class members.

26  [119] *See* Report of Ronald O. Brown, Declaration of Monica D. Scott in Support of Defendant Six

27  Continents Hotels, Inc.'s Opposition to Plaintiffs' Motion for Class Certification, Ex. M (Dkt.
    No. 88-6).  There are numerous reasons to exclude the Brown report, but failure to conduct a

28  "study" is not one of them.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

1  technical or scientific data to be admissible.[120]   Instead, it can be – and is – based on his

2  significant industry experience and expertise.[121]

3         Mr. Snyder's declaration sets forth a verifiable methodology for analyzing CDRs to

4  determine call location based on his knowledge and experience of cellular carrier processes and

5  record-keeping.  As Mr. Snyder testified, "call detail records will show and demonstrate that a

6  call was actually made to one of these toll-free numbers at a given time and the cell site the call

7  was made from, from a cellular phone and the switching system where the call originated.  So you

8  could determine the geographic area of those two systems to determine whether they were in the

9  boundaries of California."[122]  While admittedly not an expert in the subpoena process, Mr. Snyder

10  *is* an expert in analyzing cellular carrier records and has personally been involved in cases where

11  such records were "subpoenaed . . . from the carriers."[123]   Thus, Mr. Snyder's proposed

12  methodology for analyzing CDRs to further confirm class membership is based on his

13  professional knowledge and experience.  Courts have relied on similar proposed methodologies

14  for obtaining subscriber information from cellular carriers in certifying classes.  In *Birchmeier*,

15  for example, the court certified a class where expert stated that, despite varying retention periods,

16  "it [wa]s *possible* to obtain historical subscriber information from each carrier."[124]   The cases

17  Defendant cites are inapposite.[125]

---

18  [120] *Hangarter*, 373 F.3d at 1017; *Feuerstein*, 2014 WL 2616582, at *2.

19  [121] Grover Decl., Ex. A (Snyder Report) ¶¶4-6.

20  [122] *Id.*, Ex. K (Snyder Depo) at 22:5-13; Ex. A (Snyder Report) ¶¶18-19.

    [123] *Id.*, Ex. K (Snyder Depo) at 22:14-25: 65:19-68:4.

21  [124] *See Birchmeier*, 2014 WL 3907048, at *11.

    [125] In *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008), the Third Circuit
22  vacated and remanded a class certification order because the "District Court apparently believed it
    was barred from resolving disputes between the plaintiffs' and defendants' experts" and failed to
23  consider "all relevant evidence and argument, including relevant expert testimony of the parties"
    under Rule 23.  *Id.* at 325.  **Contrary to Defendant's suggestion, it did *not* reverse the district**
24  **court's order because plaintiff's expert "merely proposed hypothetical methods . . . without**
    **establishing those methods actually work."**  Def's Mot. at 21.  In *Somers v. Apple, Inc.*, 258
25  F.R.D. 354 (N.D. Cal. 2009), the court found that the expert's damage methodologies, while
    admissible, were unpersuasive because the expert "conceded that he had never successfully
26  employed a regression model to an indirect purchaser antitrust class action" and "ha[d] not yet
    developed a model or worked with any data."  *Id.* at 360; *see also LaBauve v. Olin Corp.*, 231
27  F.R.D. 632, 676 (S.D. Ala. 2005) (similar failure to employ regression model); *Butt v. Allegheny*
    *Pepsi-Cola Bottling Co.*, 116 F.R.D. 486, 492 (E.D. Va. 1987) (same).  Here, in contrast, Mr.
28
                                                                                              *(Cont'd)*

---

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

1    Mr. Snyder's inclusion of a publicly available Department of Justice document (Grover

2   Decl., Ex. A (Snyder Report) at Ex. B), which sets forth the *minimum* retention periods for major

3   cellular service providers, does not render his opinion inadmissible, as Defendant contends.  Far

4   from "unsubstantiated and undocumented information," Exhibit B is, itself, a substantiated

5   document.[126]   Notably, the 2010 Department of Justice document that Defendant cites as

6   purported contrary evidence contains ***nearly identical*** information as Exhibit B.[127]   Further,

7   Defendant's claim that "all of [Mr. Snyder's opinions] are predicated on this document" is

8   nonsense, as ***two of his opinions*** – "scrubbing" telephone number lists and identifying class

9   members using third-party information services – have no connection to cellular service provide

10   retention periods.[128]

11    In any event, "a qualified expert may rely on information he obtained off the internet . . .

12   in forming his opinions."[129]   Moreover, "[i]t is not necessary that plaintiffs show that their

13   expert's methods will work with certainty at this time."[130]   Plaintiffs need only present the Court

14   with common methods for determining class membership and manageability.[131]

15

16   Snyder's opinions are based on his ***knowledge and experience***, not a scientific or technical

17   framework, such as a regression model.  Mr. Snyder is experienced with CDRs and the
     information they contain and has analyzed similar CDR data successfully in the past.  Grover

18   Decl., Ex. K (Snyder Depo) at 21:25-25:25, 65:21-67:18.
     [126] Def's Mot. at 20.

19   [127] *See Id.* at 19 n.3.
     [128] *Id.* at 19.

20   [129] *Internet Specialties West, Inc. v. ISPWest*, 2006 WL 4568796, at *1 (C.D. Cal. Sept. 19,

21   2006); *see also Oracle Corp. v. SAP AG*, --F.3d--, 2014 WL 4251570, at *12 (9th Cir. 2014)
     (affirming admissibility of expert testimony that "relied on Internet research"); *Oracle America,*

22   *Inc. v. Google Inc.*, 2011 WL at 5914033, *3 (N.D. Cal. Nov. 28, 2011) ("experts can reasonably
     rely upon" internet postings); *Samson Tug and Barge Co., Inc. v. U.S.*, 2008 WL 3200695, at *4

23   (D. Alaska Aug. 6, 2008) (expert testimony that relied on "the internet for information"
     admissible).

24   [130] *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 652 (N.D. Cal. 2007).

25   [131] Defendant cites numerous cases where ***scientific*** expert testimony was rejected for failure to
     sufficiently test the underlying ***scientific*** hypothesis or methodology.  *See Oddi v. Ford Motor*

26   *Co.*, 234 F.3d 136, 155-57 (3d Cir. 2000); *In re Graphics Processing Units Antitrust Litig.*, 253
     F.R.D. 478, 493 (N.D. Cal. 2008); *Thorndike v. DaimlerChrysler Corp.*, 266 F.Supp.2d 172, 176

27   (D. Maine 2003); *General Elec. Co. v. Joiner*, 522 U.D. 136, 137 (1997). These cases, however,
     ***have little application here***, as Mr. Snyder's opinions are based on his knowledge and

28   experience, not scientific or technical methodology.  *Hangarter*, 373 F.3d at 1017.

Mr. Snyder was asked to opine on whether cellular providers record and maintain CDRs that can analyzed to determine call location, not on their specific retention periods.[132]   While Defendant may disagree with the factual basis of Mr. Snyder's opinion, its objections are "better directed to the weight of [Mr. Snyder's testimony] than its admissibility."[133]  "And to the extent [Defendant] assert[s] that this testimony is contradicted by other evidence, the court's job at this stage is not to weigh the evidence, but merely to determine admissibility (especially in light of the preliminary stage of litigation)."[134]  "[T]hese are precisely the sorts of . . . considerations that affect only the weight, and not the admissibility" of Mr. Snyder's opinion.[135]

### G.   Mr. Snyder's Opinions Are Based On Research Independent Of And Unrelated To This Litigation

Defendant claims that Mr. Snyder's "attempt to testify on issues for which he has no relevant experience indicates that the opinions he has to offer about ascertainability were developed purely for this litigation," rendering his opinions "inherently suspect."[136]  Again, Defendant's argument is based on a fundamental mischaracterization of Mr. Snyder's report.  Mr. Snyder has sufficiently established the relevance of his knowledge and experience underlying his opinions.  Moreover, Mr. Snyder's proposed methodologies for (i) "scrubbing" telephone number lists to determine which numbers are cellular; (ii) using third-party information services and

---

[132] Grover Decl., Ex. A (Snyder Report) ¶7, 18-20; Ex. K (Snyder Depo) at 21:19-23:25, 25:4-25, 65:4-67:18; 78:6-16, 86:6-8 (Q: "You are not an expert on this retention period of cellphone carriers; right?" A: "*No, I'm not.*").

[133] *Ellis I*, 240 F.R.D. at 649; *see also Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (objections to factual basis of expert opinion "all go to the weight of the testimony and its credibility, *not* its admissibility"); *Hangarter*, 373 F.3d at 1017, n.14 (Questions regarding the factual basis of an expert's opinions, methodology, accuracy, or degree of relevance go to the weight of the testimony – not its admissibility.); *Zurn*, 644 F.3d at 614 (objections regarding the "validity of . . . [an expert's] inputs" "go to its weight, not its admissibility").

[134] *Leite,* 868 F.Supp.2d at 1037; *Zurn*, 644 F.3d at 614 ("[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility"); *Pyramid Tech., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

[135] *PixArt*, 2011 WL 5417090, at *5.

[136] Def's Mot. at 23.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

cellular service providers to identify telephone subscribers; and (iii) analyzing CDR data to determine cellular call location, were developed and employed prior to this litigation.  As Mr. Snyder testified, he previously has worked with various third-party information services, such as A.B. Data, CompliancePoint, Contact Center Compliance and Neustar, to obtain this ***exact type of information*** in numerous other cases.[137]  Indeed, Defendant acknowledges that Mr. Snyder has offered similar expert testimony in prior cases.[138]  Mr. Snyder also testified that he has previous experience analyzing CDR information, including call location information, in cases where CDRs were obtained from cellular carriers via subpoena.[139]  Mr. Snyder's opinions and methodologies are based on his experience and research undertaken prior to and unrelated to this litigation.

## V.    CONCLUSION

Mr. Snyder's opinions are relevant to determining that it is administratively feasible to identify absent class members and confirm class membership, and will aid the Court in determining that the proposed classes are both ascertainable and manageable.  The Court should deny Defendant's motion to exclude Mr. Snyder's report and testimony in its entirety.

Dated:  October 1, 2014

**KELLER GROVER LLP**

By: /s/ *Eric A. Grover*
    ERIC A. GROVER
    RACHAEL G. JUNG

*Counsel for Plaintiffs*
LAURA McCABE and LATROYA SIMPSON

---

[137] Grover Decl., Ex. A (Snyder Report) ¶¶15-17, 23; Ex. K (Snyder Depo) at 12:5-11.
[138] *See Id.*, Ex. A (Snyder Report) at Ex. A (listing numerous expert engagements where Mr. Snyder testified to the availability of "scrubbing" telephone number lists and identifying cellular subscribers by telephone number).
[139] *Id.*, Ex. K (Snyder Depo) at 21:25-25:25, 65:21-67:18; Ex. A (Snyder Report) ¶¶18-20.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861