PERRIE M. WEINER (SBN 134146)
perrie.weiner@dlapiper.com
EDWARD D. TOTINO (SBN 169237)
edward.totino@dlapiper.com
MONICA D. SCOTT (SBN 286109)
monica.scott@dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, CA 90067-4704
Telephone: 310.595.3000
Facsimile: 310.595.3300

Attorneys for Defendant
SIX CONTINENTS HOTELS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA MCCABE and LATROYA SIMPSON, individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>SIX CONTINENTS HOTELS, INC.; and DOES 2 through 10, inclusive,<br><br>Defendants. | CASE NO. C12-4818-NC<br><br>**DEFENDANT SIX CONTINENTS HOTELS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF RANDALL SNYDER**<br><br>Date: November 5, 2014<br>Time: 1:00 p.m.<br>Place: Courtroom A, 15th Flr.<br><br>Complaint Filed: July 8, 2012<br>FAC Filed: July 19, 2012<br>SAC Filed: Oct. 11, 2013<br>Trial Date: None |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 2

    A. Contrary To Plaintiffs' Assertion, Mr. Snyder's Opinion Is Not Subject To A "Less Stringent" Daubert Standard ...................................................................... 2

    B. Mr. Snyder's Opinion On Class Ascertainability Cannot Assist The Court Because Mr. Snyder Has No Idea What The Proposed Classes Are ..................... 4

    C. Mr. Snyder's Expertise In Distinguishing Between Cellular And Landline Calls Is Not Alone Sufficient To Validate His Opinions .......................................... 6

    D. Mr. Snyder's Opinion That Caller Location Can Be Feasibly Determined Is Not The Product Of Reliable Principles And Methods .......................................... 8

    E. Mr. Snyder's Untested, Ad Hoc Ruminations That Call Location Can Be Feasibly Determined Fail Daubert I ..................................................................... 9

    F. Mr. Snyder Would Usurp The Role Of The Court By Testifying As To Legal Standards ..................................................................................................... 12

III. CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Abarca v. Merck & Co., Inc.*,
  No. 1:07–cv–0388, 2010 WL 4643642 (E.D. Cal. Nov. 9, 2010) ............................................. 7

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................................. 3

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  12 C 4069, 2014 WL 3907048 (N.D. Ill. Aug. 11, 2014) ........................................................ 10

*Cannon v. BP Products North America, Inc.*,
  2013 WL 5514284 (S.D. Tex. 2013) ....................................................................................... 11

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3rd Cir. 2013) ............................................................................................ 10, 13

*Cholakyan v. Mercedes-Benz, USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012) .............................................................................................. 4

*Comcast Corp. v. Behrend*,
  -- U.S. --, 133 S. Ct. 1426 (2013) ............................................................................................. 3

*Daubert v. Merrell Dow Pharms., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) .................................................................................................... 9

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ("*Daubert I*") ............................................................................... *passim*

*Dukes v. Wal–Mart Stores, Inc.*,
  603 F.3d 571 (9th Cir. 2010), *overruled*, 131 S.Ct. 2541 (2011) (Ikuta, J, dissenting) ............ 4

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .................................................................................................... 4

*G.F. Co. v. Pan Ocean Shipping Co., Ltd.*,
  23 F.3d 1498 (9th Cir. 1994) .................................................................................................. 12

*General Tel. Co. of S.W. v. Falcon*,
  457 U.S. 147 (1982) .................................................................................................................. 3

*Hanni v. Am. Airlines, Inc.*,
  No. C 08–00732 CW, 2010 WL 289297 (N.D. Cal. Jan.15, 2010) ........................................ 13

*In re Citric Acid Litig.*,
  191 F.3d 1090 (9th Cir. 1999) .................................................................................................. 5

DLA PIPER LLP (US)
LOS ANGELES

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re ConAgra Foods, Inc.*,
   CV 11-05379 MMM AGRX, 2014 WL 4104405 (C.D. Cal. Aug. 1, 2014) ........................... 4

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008) ................................................................................................ 11

*In re Imperial Credit Indus. Sec. Litig.*,
   252 F. Supp. 2d 1005 (C.D. Cal. 2003) ................................................................................ 9

*In re Initial Public Offering Securities Litig.*,
   174 F. Supp. 2d 61 (S.D.N.Y. 2001) ................................................................................... 12

*In re Rail Freight Fuel Surcharge Antitrust Litigation-MDL No. 1869*,
   725 F.3d 244 (2013) ............................................................................................................ 11

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
   C 06-2069 SBA, 2008 WL 413749 (N.D. Cal. Feb. 13, 2008) ........................................... 10

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   644 F.3d 604 (8th Cir. 2011) ................................................................................................ 3

*Jinro Am. Inc. v. Secure Invest., Inc.*,
   266 F.3d 993 (9th Cir. 2001), *amended by* 272 F.3d 1289 (9th Cir. 2001) ............................ 7

*Lang v. Kohl's Food Stores, Inc.*,
   217 F.3d 919 (7th Cir. 2000) .............................................................................................. 10

*Lifewise Master Funding v. Telebank*,
   374 F.3d 917 (10th Cir. 2004) .............................................................................................. 8

*Loussier v. Universal Music Group, Inc.*,
   No. 02 Civ. 2447(KMW), 2005 WL 5644422 (S.D.N.Y., Jun. 28, 2005) ............................. 7

*Magistrini v. One Hour Martinizing Dry Cleaning*,
   180 F. Supp. 2d 584 (D.N.J. 2002), *aff'd*, 68 Fed. App'x. 356 (3d Cir. 2003) ...................... 8

*Martin v. Pac. Parking Sys. Inc.*,
   12-56654, 2014 WL 3686135 (9th Cir. July 25, 2014) ....................................................... 12

*McPhail v. First Command Fin. Planning*,
   247 F.R.D. 598 (S.D. Cal. 2007) ......................................................................................... 12

*Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
   875 F.2d 1026 (2d Cir. 1989) ................................................................................................ 9

DLA PIPER LLP (US)
LOS ANGELES

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Messner v. Northshore Univ. HealthSystem*,
    No. 10-2514, 669 F.3d 802 (7th Cir. Jan. 13, 2012) .................................................................. 3

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    420 F. Supp. 2d 1070 (N.D. Cal. 2006), *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007) ................. 8

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) .................................................................................................................. 3

*R.F.M.A.S., Inc. v. Mimi So*,
    748 F. Supp. 2d 244 (S.D.N.Y. 2010) ...................................................................................... 9

*Robinson v. G.D. Searle & Co.*,
    286 F. Supp. 2d 1216 (N.D. Cal. 2003) .................................................................................... 5

*Sethavanish v. ZonePerfect Nutrition Co.*,
    12-2907-SC, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014) ...................................................... 13

*Smith v. Microsoft Corp.*,
    11-CV-1958 JLS BGS, 2013 WL 6497073 (S.D. Cal. Dec. 10, 2013) ..................................... 6

*Somers v. Apple, Inc.*,
    258 F.R.D. 354 (N.D. Cal. 2009) ...................................................................................... 11, 12

*Soutter v. Equifax Info. Servs. LLC*,
    299 F.R.D. 126 (E.D. Va. 2014) .............................................................................................. 12

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012) .......................................................................................... 3, 4

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) .................................................................................................................. 3

*Tietsworth v. Sears, Roebuck & Co.*,
    No. 5:09-cv-00288, 2012 WL 1595112 (N.D. Cal. May 4, 2012) ............................................ 3

*Vickers v. General Motors Corp.*,
    204 F.R.D. 476 (D. Kan. 2001) ................................................................................................ 5

*Webb v. Healthcare Revenue Recovery Grp. LLC*,
    C. 13-00737 RS, 2014 WL 325132 (N.D. Cal. Jan. 29, 2014) ................................................. 6

*Wolph v. Acer Am. Corp.*,
    C 09-01314 JSW, 2012 WL 993531 (N.D. Cal. Mar. 23, 2012) ............................................ 13

-iii-

## TABLE OF AUTHORITIES
### (continued)

**Page**

**FEDERAL STATUTES**

Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 .............................. 6, 10

**STATE STATUTES**

Cal. Penal Code § 632.7 ................................................................................................................ 6, 10

**FEDERAL RULES**

Fed. R. Evid. 23 ............................................................................................................................... 4, 11

Fed. R. Evid. 702 ........................................................................................................................ 1, 2, 8, 9

Fed. R. Evid. 702(d) ............................................................................................................................. 8

Fed. R. Evid. 703 .................................................................................................................................. 7

DLA PIPER LLP (US)
LOS ANGELES

Defendant Six Continents Hotels, Inc. ("Six Continents") submits the following Reply in support of its Motion to Exclude the Expert Report and Testimony of Randall A. Snyder (the "Motion") pursuant to Federal Rules of Evidence 402 and 702, and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert I*").

## I.     INTRODUCTION

Dismissing Six Continents' objections as mere "strawmen," Plaintiffs attempt to rewrite Mr. Snyder's actual opinions and gloss over his failure to conduct even the most basic analysis necessary to pass the thresholds established in *Daubert I*. Nothing in Plaintiffs' opposition cures the central defects in Mr. Snyder's testimony:

- Mr. Snyder opines that the "proposed members of the class in this case can be definitively and clearly ascertained," yet he has no idea what the proposed classes are;
- Mr. Snyder's untested hypothesis that the location of calls can be determined by subpoenaing vast amounts of records from cellular carriers is predicated exclusively on a "leaked" document of dubious authenticity which, even if taken at face value, demonstrates that most carriers do not retain records dating back to the relevant class period;
- Mr. Snyder has no expertise in all but one of the eligibility factors for the proposed classes, yet offers an opinion as to class ascertainability that is necessarily grounded in a finding that all factors can be feasibly determined;
- Mr. Snyder's ascertainability opinion is an unadorned legal conclusion;
- Mr. Snyder's untested assurances that some analysis could be fashioned and used to determine whether potentially millions of calls were placed within California – at some undetermined point in the future – does not satisfy Rule 702's rigorous requirements for expert testimony.

These points are not "strawmen." They underscore fundamental flaws going to the inherent unreliability of Mr. Snyder's opinions. This Court's gatekeeping role under *Daubert I* to ensure the basic reliability and relevance of expert testimony has little meaning if Mr. Snyder is permitted to present sweeping legal conclusions based on unfounded assumptions, a

1   misapprehension of the record, and flawed logic, and without having conducted even the most
2   obvious empirical analysis needed to support those conclusions.

3         Plaintiffs largely ignore these flaws and instead repeatedly insist that Mr. Snyder was not
4   asked to opine on whether the class was ascertainable.  Instead, they contend Mr. Snyder only
5   opines that: (1) cellular calls can be distinguished from landline calls; (2) various records may be
6   culled to determine the identity of telephone subscribers; and (3) cellular carriers maintain call
7   detail records ("CDRs") that reveal call location.  Plaintiffs' arguments fail.

8         As an initial matter, whether Mr. Snyder was asked or not asked to opine on class
9   ascertainability, the fact is that he did – and Plaintiffs cite that ascertainability opinion in support
10  of their motion for class certification.  Nor can Plaintiffs salvage Mr. Snyder's testimony by
11  asking the Court to ignore everything else in Mr. Snyder's opinion besides the above three points.
12  As to the first point, whether a phone call was placed using a cellular telephone or landline
13  telephone is just one of eight factors in the first of two class definitions.  As to the latter points,
14  Mr. Snyder has not actually performed any analysis or testing – a failure that is particularly
15  problematic given that his promised model is predicated on simply reading an unauthenticated
16  document he found on the internet.  Simply stated, Plaintiffs seek to avoid the requirements of
17  Rule 702 by hypothesizing that an opinion could be rendered sometime in the future.  Nothing
18  could be more speculative or unreliable.

19        The bottom line is still the same: Mr. Snyder does not know what the proposed class
20  definitions are, has never before attempted to determine the identity of potentially millions of
21  callers or the location where potentially millions of calls were made, and has never tested his
22  proposed method for determining caller identity and location, not even for this case.  The
23  testimony should be excluded.

24  **II.  ARGUMENT**
25      **A.  Contrary To Plaintiffs' Assertion, Mr. Snyder's Opinion Is Not Subject To A
26          "Less Stringent" *Daubert* Standard**

27        As the Supreme Court has emphasized time and again, class actions represent "an
28  exception to the usual rule that litigation is conducted by and on behalf of the individual named

1  parties only." *Comcast Corp. v. Behrend*, -- U.S. --, 133 S. Ct. 1426, 1432 (2013) (quoting
2  *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 155 (1982)); *Taylor v. Sturgell*, 553 U.S. 880,
3  892-93 (2008) (noting the "deep-rooted historic tradition that everyone should have his own day
4  in court"); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) (same).  Because representative
5  litigation raises serious due process concerns, a district court must take a "close look at the case"
6  before certifying a class, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997), and the
7  party seeking certification must show through "rigorous analysis" that class treatment is
8  appropriate.  *Comcast Corp.*, 133 S. Ct. at 1432.  Any argument that this analysis can be short-
9  circuited via flimsy, unreliable expert testimony is thus fanciful.

10  Plaintiffs nonetheless argue exactly that, suggesting that a "less-stringent" *Daubert*
11  standard applies to Mr. Snyder's opinions.  This argument betrays a serious misunderstanding of
12  both the law and their own expert's testimony.  Mr. Snyder's "substantive" conclusions are to the
13  ascertainability of the class – not to the merits of Plaintiffs' claims – and the Motion seeks to
14  exclude those conclusions on the basis that they cannot assist the Court in determining whether
15  class treatment is proper.  The cases Plaintiffs cite for its "*Daubert*-light" approach, by contrast,
16  addressed whether expert testimony going to both the merits of the case and the appropriateness
17  of class treatment need be admissible at trial to be admissible at class certification.  *See Tait v.*
18  *BSH Home Appliances Corp.*, 289 F.R.D. 466, 496 (C.D. Cal. 2012) and *In re Zurn Pex*
19  *Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011).  To the extent *Zurn* might be read as
20  holding *Daubert* inapplicable at the class certification stage, it is "contrary to Ninth Circuit
21  authority approving application of *Daubert* in the context of class certification." *Tietsworth v.*
22  *Sears, Roebuck & Co.*, No. 5:09-cv-00288, 2012 WL 1595112, at *7 n.5 (N.D. Cal. May 4,
23  2012).

24  Plaintiffs submitted Mr. Snyder's expert opinion in support of their class certification
25  motion and Six Continents seeks to exclude it for purposes of that motion.  Under this posture, "a
26  district court must make a conclusive ruling on any challenge to that expert's qualifications or
27  submissions before it may rule on a motion for class certification." *Messner v. Northshore Univ.*
28  *HealthSystem*, No. 10-2514, 669 F.3d 802, 812 (7th Cir. Jan. 13, 2012).  That "conclusive ruling"

necessarily requires rigorous application of *Daubert I* and in no way abandons its reliability requirements. *See In re ConAgra Foods, Inc.*, CV 11-05379 MMM AGRX, 2014 WL 4104405, at *2 n.17 -- F.R.D. -- (C.D. Cal. Aug. 1, 2014) (rejecting the relevance of *Tait* because "[t]he court does not interpret the motions to strike the parties have filed as motions to exclude expert testimony at trial. Consequently, the court evaluates the admissibility of the expert testimony under *Daubert* in light of the purpose for which it is offered – i.e., to demonstrate that it is appropriate to certify a class under Rule 23); *Dukes v. Wal–Mart Stores, Inc*., 603 F.3d 571, 639 (9th Cir. 2010), *overruled*, 131 S.Ct. 2541 (2011) (Ikuta, J, dissenting) ("Like any other evidence, expert evidence introduced to 'establish a component of a Rule 23 requirement' must be reliable; it is not enough that the expert testimony is 'not fatally flawed.'").

Accordingly, at the class certification stage, the Court must disregard expert testimony that fails to meet the reliability requirements of *Daubert I*. The undefined, "less-stringent" standard suggested by Plaintiffs is irrelevant. *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 982 (9th Cir. 2011) ("In its analysis of Costco's motions to strike, the district court correctly applied the evidentiary standard set forth in [*Daubert I*]"); *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 541-42 & n.53 (C.D. Cal. 2012); (*Daubert I* analysis warranted at class certification stage under *Dukes* and *Ellis* and rejecting out-of-circuit authorities).

**B.     Mr. Snyder's Opinion On Class Ascertainability Cannot Assist The Court Because Mr. Snyder Has No Idea What The Proposed Classes Are**

The baseline of any expert opinion is that it must assist the court in evaluating the issues in controversy. *Daubert*, 509 U.S. at 589. The Supreme Court characterized this requirement as one of "fit," explaining that the expert testimony must be "relevant to the task at hand" in that it "logically advances a material aspect of the proposing party's case." *Id.* Mr. Snyder's does not for a variety of reasons but this deficiency is most apparent in his sweeping conclusion that "proposed members of the class in this case can be definitively and clearly ascertained." That opinion is incapable of reliably assisting the Court in deciding Plaintiffs' motion for class certification because Mr. Snyder simply has no idea what the proposed class definitions are. Mr. Snyder's deposition testimony bears repeating:

| | | |
|---|---|---|
| 1 | Q. | Okay. Just so we're clear, as you sit here, do you know what the actual |
| 2 | | proposed class is in this case, the definition? |
| 3 | A. | No. |
| 4 | Q. | So when you say in paragraph 26 that the "proposed members of the class |
| 5 | | can be definitely and clearly ascertained based solely on their cellular |
| 6 | | telephone numbers," how can you make that conclusion if you don't know |
| 7 | | what the class definition is? |
| 8 | A. | I was told by plaintiffs' counsel that the proposed members of the class |
| 9 | | were those people with cellular telephone numbers that apparently had |
| 10 | | called in for some promotion to defendants, and that's all I know. So they |
| 11 | | basically described it to me that way. |

Snyder Depo., 6:9-7:3. In short, Mr. Snyder rendered his opinion that the class membership could "be definitively and clearly ascertained" based on a fundamental misapprehension of the facts – that there was just one proposed class, consisting simply of people who called Six Continents with cellular phones. Accordingly, his opinion is entirely useless to the Court for purposes of class certification. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1102 (9th Cir. 1999) (expert's opinion is unreasonable where record contradicts basis for expert's inference); *Robinson v. G.D. Searle & Co.*, 286 F. Supp. 2d 1216, 1221 (N.D. Cal. 2003) (expert's opinion inadmissible where key premise on which opinion was based was refuted by plaintiff's own admissions); *Vickers v. General Motors Corp.*, 204 F.R.D. 476, 478-79 (D. Kan. 2001) (court denied class certification where plaintiffs relied on expert testimony that was based on misinterpretation of underlying information).

Plaintiffs attempt to skirt the obvious by excising Mr. Snyder's unreliable and unfounded conclusion from his declaration, repeatedly insisting that he was "not asked to opine on the class definitions or their sub-parts." *See* Opp. at 1, 8, 13, 16, 18. Plaintiffs' protestations are disingenuous and irrelevant. Regardless of what Mr. Snyder was asked or not asked to opine on, the fact remains that he did testify that the class could "be definitely and clearly ascertained based solely on their cellular telephone numbers" and Plaintiffs cited Mr. Snyder's ascertainability

conclusions in support of their motion to certify. *See* Motion at 16 (citing paragraphs 21 – 24 of Mr. Snyder's Declaration). Plaintiffs are free to disavow that testimony if they wish – as they should – but they cannot sweep it under the rug for purposes of Six Continents' Motion while continuing to rely on it for purposes of certification.

Citing *Smith v. Microsoft Corp.*, 11-CV-1958 JLS BGS, 2013 WL 6497073 (S.D. Cal. Dec. 10, 2013), Plaintiffs further suggest it is of no moment that Mr. Snyder was unaware of the proposed class definitions in opining that class members could be ascertained because "the class has already been ascertained by reference to objective criteria." Opp. at 1-2. But if it were the case that the class had "already been ascertained," then there would be no need for Plaintiffs to rely on Mr. Snyder's testimony. Further, *Smith* involved a proposed class under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. Unlike California Penal Code Section 632.7 – the statute under which Plaintiffs sue – a violation of the TCPA only requires that the defendant have called a cellular telephone using an automatic dialing system or prerecorded voice. *Webb v. Healthcare Revenue Recovery Grp. LLC*, C. 13-00737 RS, 2014 WL 325132, at *2 (N.D. Cal. Jan. 29, 2014). Accordingly, the vast majority of factors necessary to ascertain class membership here – such as whether the individual used a cordless phone, whether the individual was in California at the time of the call, and whether Six Continents recorded the call – were simply not at issue in *Smith*. *See id.* 2013 WL 6497073, at *1-2. Unlike in *Smith*, these additional eligibility requirements cannot be "ascertained by reference to objective criteria."

**C.     Mr. Snyder's Expertise In Distinguishing Between Cellular And Landline Calls Is Not Alone Sufficient To Validate His Opinions**

Plaintiffs take umbrage at Six Continents' description of Mr. Snyder's qualifications but point to nothing in his background that suggests he is qualified to opine on whether the proposed classes are ascertainable. In fact, he is not. Plaintiffs do not contest that Mr. Snyder has never attempted to determine the residence of callers, has never conducted a study on the variance between cellular subscribers and the actual users of the phones associated with an account, has no expertise in subpoenaing cellular telephone records, and has no expertise in determining whether a call was recorded, whether consent was given that the caller was being recorded, or whether the

1   call was, if made via landline telephone, placed using a cordless telephone. *See* Snyder Depo.,
2   33:7-17; 35:18-23. Indeed, Plaintiffs concede Mr. Snyder's "lack of experience in . . . these
3   categories." Opposition at 16.

4   To downplay these shortcomings, Plaintiffs insist that they have nothing to do with
5   Mr. Snyder's "actual opinions." Opposition at 16. The precise opposite is true. Mr. Snyder's
6   central opinion – an opinion Plaintiffs rely upon in their motion for class certification – is that the
7   proposed classes are ascertainable. But to reliably arrive at that conclusion, one must: (1) have an
8   understanding as to what the actual class definitions are; and (2) have expertise in determining the
9   eligibility factors for each class. Mr. Snyder has neither. As such, the conclusions set forth in his
10  declaration and deposition consist of little more than his own personal reflections. *Jinro Am. Inc.*
11  *v. Secure Invest., Inc.*, 266 F.3d 993, 1005-06 (9th Cir. 2001), *amended by* 272 F.3d 1289 (9th
12  Cir. 2001) (expert on Korean business culture unqualified because witness lacked legal, business,
13  or financial expertise to evaluate substance of transaction at issue, and witness had no education
14  or training as a cultural expert or on Korean culture specifically); *Abarca v. Merck & Co., Inc.*,
15  No. 1:07–cv–0388, 2010 WL 4643642, at *4 (E.D. Cal. Nov. 9, 2010) ("Rule 703 does not allow
16  an expert qualified in one field to offer opinions outside his or her area of expertise.").

17  To opine as an expert on caller location, Plaintiffs believe all Mr. Snyder need do is
18  conduct a rudimentary internet search and read a single two-page "leaked" document of unknown
19  origin and authenticity, entitled "Retention Periods of Major Cellular Service Providers."
20  Reading for purposes of litigation that two-page document – which purports to set forth CDR
21  retention periods for major carriers – does not qualify him as an expert on retrieving and
22  analyzing CDRs or using them to identify call locations. *See, e.g., Loussier v. Universal Music*
23  *Group, Inc.*, No. 02 Civ. 2447(KMW), 2005 WL 5644422, at *3 (S.D.N.Y., Jun. 28, 2005)
24  (excluding expert who had "got[ten] to know the music industry 'as a lay person' by listening to
25  music and belonging to arts organizations, general knowledge, and specific research that she did
26  for this case, such as 'Google searches on the internet'").

### D. Mr. Snyder's Opinion That Caller Location Can Be Feasibly Determined Is Not The Product Of Reliable Principles And Methods

Rule 702 requires expert testimony to apply reliable methods to the facts of the case. Fed. R. Evid. 702(d). Mr. Snyder did no such thing. "The heart of expert testimony is the foundation." *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). As Plaintiffs readily admit, the foundation for Mr. Snyder's conclusion that caller location can be feasibly determined is the "Retention Periods of Major Cellular Service Providers" document he found off the internet. *See* Opposition at 21. Plaintiffs offer a string citation for the proposition that experts may permissibly rely on the internet in forming opinions. *See id.* No one doubts this as a general proposition. The problem for Plaintiffs is that Mr. Snyder's "leaked" document is the *entirety* of his analysis. In essence, Mr. Snyder renders an expert opinion by selectively citing to the Court selected and unverified figures from a single source of dubious reliability.

An expert cannot simply adopt figures of unknown authenticity and authorship without any independent verification or analysis. Blindly and uncritically accepting select data points in an unverified document and repeating them to the Court does not qualify as "scientific, technical, or other specialized knowledge" required by Rule 702. Mr. Snyder did no investigation into the background, scope or legitimacy of this document. He made no effort to verify that it was in any way accurate and up to date. He fails to explain how or why, despite the lack of independent verification, he can reasonably assume that it correctly sets forth CDR retention periods for major cellular carriers. He also fails to address the "leaked" report's own data points indicating that only one major cellular carrier – AT&T – retains CDRs and the necessary cell tower records to determine locations for calls placed during the class period. Mr. Snyder's selective cherry-picking from this document, particularly where it largely undermines his conclusions and he employed no methodology to weigh or discount what he was reading, does not survive the requirements of the Federal Rules and *Daubert I*. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1088 (N.D. Cal. 2006), *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007) ("an expert may not adopt another's data without verifying the validity and reliability of that data"); *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 607 (D.N.J.

1    2002), *aff'd*, 68 Fed. App'x. 356 (3d Cir. 2003) (excluding opinions because the expert "d[id] not

2    provide any methodology for weighing and discounting . . . information"); *In re Imperial Credit*

3    *Indus. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012 n.5 (C.D. Cal. 2003) (precluding expert testimony

4    that simply pulled excerpts from another expert's report submitted in a different case).

### E.  Mr. Snyder's Untested, Ad Hoc Ruminations That Call Location Can Be Feasibly Determined Fail *Daubert I*

Mr. Snyder hypothesizes as to one potential method that he – or perhaps some other expert – might use in the future to determine whether potentially millions of calls were placed inside or outside of California.  But he was not tasked with the assignment of actually crunching data to determine whether this was possible.  Doing so was particularly important here because, as noted above, Mr. Snyder's speculation about the availability of CDRs is not based on experience or prior testing, but a "leaked" document he pulled off the internet.  Absent actual testing, Mr. Snyder hypothesis is no more than a layperson's interpretation of a two-page document of unknown origin and authenticity.  *See R.F.M.A.S., Inc. v. Mimi So*, 748 F. Supp. 2d 244, 269 (S.D.N.Y. 2010) (excluding testimony of experts who "simply do not draw on their areas of actual expertise in arriving at the[ir] conclusion" and where "[a]ny juror could have employed common sense to perform the same analysis" in reviewing same information); *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1027 (2d Cir. 1989) (expert cannot offer opinion about something that "[a]nyone with a rudimentary knowledge of English" could understand).

Plaintiffs contend that Mr. Snyder's proposed methodology for determining call location need not be tested because his proposal is "verifiable" and "based on his professional knowledge and experience."  The time for Mr. Snyder to verify his untested methodology is now, not at some uncertain point in the future after the class has been certified.  *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) (*Daubert II*) (simple presentation of an expert's qualifications, conclusions, and assurances of reliability cannot satisfy Rule 702).  Promises to render a methodologically-sound analysis at some date in the future are patently insufficient under *Daubert I*.  *General Elec. Co. v. Joiner*, 118 S. Ct. 512, 519 (1997) ("[N]othing in either

*Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). "Talking off the cuff – deploying neither data nor analysis – is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000) (noting that "experts' work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data"). The Court cannot presume that Mr. Snyder will find sufficient data to put into a model for identifying class members that he has only hypothesized.

In support of their assertion that Mr. Snyder's never-before-tested methodology is nonetheless reliable, Plaintiffs refer this Court to *Birchmeier v. Caribbean Cruise Line, Inc.*, 12 C 4069, 2014 WL 3907048 (N.D. Ill. Aug. 11, 2014). *See* Opposition at 10. In that case – which again involved the TCPA and not Section 632.7 – defendants' own expert testified that carriers kept sufficient information on file to determine the identities of subscribers to the phone numbers at issue. Because Seventh Circuit case law provides that subscribers – not simply callers – have standing to sue under the TCPA, that data was sufficient. Indeed, rather than disputing that such records were available, the defendants' expert merely testified that it would be cumbersome to obtain the data. By contrast, there is nothing here in the record – besides Mr. Snyder's *ipse dixit* – to suggest that carriers retain CDRs dating back to the class period, that such data would permit Mr. Snyder to identify the location of each call, or that such data would permit Plaintiffs to determine any of the remaining factors in their two class definitions. Indeed, for the cordless telephone class, CDRs would obviously provide no useful data whatsoever. Nor is there anything in the record to suggest that Six Continents would have this information. *See In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, C 06-2069 SBA, 2008 WL 413749, at *9 (N.D. Cal. Feb. 13, 2008) (class of former employees not ascertainable where employer's database did not record their termination date).

Contrary to Plaintiffs' arguments, Mr. Snyder's ongoing assurances for an untested proposal predicated on unknown – and largely non-existent – records does not satisfy *Daubert I*. Nor can a class be certified based on mere assurances that certification requirements might be met in the future. *See Carrera v. Bayer Corp.*, 727 F.3d 300, 311 (3rd Cir. 2013) ("At this stage in the

DLA PIPER LLP (US)
LOS ANGELES
EAST\83364227.2                                    - 10 -                              CASE NO. C12-4818-NC
REPLY IN SUPPORT OF MOTION TO EXCLUDE SNYDER

litigation, the district court will . . . just be told how the model will operate with the plaintiff's assurances it will be effective. Such assurances that a party 'intends or plans to meet the requirements' are insufficient to satisfy Rule 23.") (citing *Comcast*); *Cannon v. BP Products North America, Inc.*, 2013 WL 5514284, at *12 (S.D. Tex. 2013) ("Plaintiffs assure the Court that they can fix the model at the merits stage if needed. 'But such assurance is not provided by a methodology that identifies damages that are not the result of the wrong.'") (quoting *Comcast*); *In re Rail Freight Fuel Surcharge Antitrust Litigation-MDL No. 1869*, 725 F.3d 244, 254 (2013) ("It is not enough to submit a questionable model whose unsubstantiated claims cannot be refuted through *a priori* analysis. Otherwise, 'at the class-certification stage any method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be.'") (quoting *Comcast*).

Even a threshold showing – which Mr. Snyder has not made – is insufficient. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 321 (3d Cir. 2008). In *Hydrogen Peroxide*, plaintiff's expert "identified two 'potential approaches' to estimating damages on a class-wide basis," including benchmark and regression analysis. 552 F.3d at 313. Although the expert opined that "sufficient reliable data" existed to use either of these two approaches, he had not actually performed any analysis using either. *Id*. He simply stated an "'intention to prove impact on a class-wide basis." *Id*. at 315. "The District Court held that it was sufficient that [plaintiff's expert] proposed reliable methods for proving impact and damages; it did not matter that [he] had not completed any benchmark or regression analyses, and the court would not require plaintiffs to show at the certification stage that either method would work." *Id*. at 315. The Third Circuit disagreed and reversed. Emphasizing the "rigorous analysis" necessary to certify a class, the Court held that a "party's assurance to the court that it intends or plans to meet the requirements [of Rule 23] is insufficient," and that a plaintiff must do more than state "an 'intention' to try the case in a manner that satisfies the predominance requirement." *Id*. at 321; *see also Somers v. Apple, Inc.*, 258 F.R.D. 354, 361 (N.D. Cal. 2009) (rejecting expert testimony at class certification stage where expert conceded that he had not "worked with any data in the context of

this case" and therefore plaintiff "failed to meet her burden of establishing 'a reliable method for proving common impact.'" *Id*. at 361 (citation omitted).

Plaintiffs clearly expect this Court to trust Mr. Snyder to develop a complex "specific empirical model" for purposes of this litigation that neither Six Continents nor Mr. Snyder's peers will review prior to certification. That is not – and should not be – the law, particularly because "the class certification decision is, as a practical matter, of dispositive consequence." *Soutter v. Equifax Info. Servs. LLC*, 299 F.R.D. 126, 130 (E.D. Va. 2014). Where an expert's analysis is unreliable or otherwise "not useful in evaluating whether class certification requirements have been met," as here, it should be stricken. *McPhail v. First Command Fin. Planning*, 247 F.R.D. 598, 604-05 (S.D. Cal. 2007) (striking testimony based on "purely hypothetical assumptions").

### F. Mr. Snyder Would Usurp The Role Of The Court By Testifying As To Legal Standards

It is indisputably the province of the Court to determine whether the ascertainability requirement for class certification has been met. *See Martin v. Pac. Parking Sys. Inc.*, 12-56654, 2014 WL 3686135, at *1 (9th Cir. July 25, 2014) (holding that district court did not abuse its discretion in concluding that the proposed class was not ascertainable). "Every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *In re Initial Public Offering Securities Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (citations omitted). Thus, the Ninth Circuit has "condemned the practice of attempting to introduce law as evidence." *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1507 (9th Cir. 1994). Nonetheless, Plaintiffs have repeatedly cited Mr. Snyder's opinion – that the "proposed members of the class in this case can be definitively and clearly ascertained" – to support their argument that the proposed classes are, in fact, ascertainable. Mr. Snyder's ascertainability opinion – and Plaintiffs' reliance thereon – plainly transgress the rules against invading the domain of the Court.

In a strained effort to disguise this transgression, Plaintiffs contend that Mr. Snyder was merely using "ascertained" according to its ordinary, English meaning and as a synonym for "identified." *See* Opposition at 17. If an expert could disguise legal conclusions through artful rephrasing by counsel, the proscription against such testimony could be easily evaded. Plaintiffs

fail to explain how the word "identify" they insist Mr. Snyder *meant* to use would connote a different meaning than "ascertain" within the context of his declaration.  "A party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Wolph v. Acer Am. Corp.*, C 09-01314 JSW, 2012 WL 993531 (N.D. Cal. Mar. 23, 2012); *Hanni v. Am. Airlines, Inc.*, No. C 08–00732 CW, 2010 WL 289297, at *9 (N.D. Cal. Jan.15, 2010) ("A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description"); *Sethavanish v. ZonePerfect Nutrition Co.*, 12-2907-SC, 2014 WL 580696, at *4 (N.D. Cal. Feb. 13, 2014) (citing *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) as an example in which the class was not ascertainable "because there was insufficient evidence to show that . . . records could be used to identify class members"). Accordingly, "even though there is no requirement that a named plaintiff identify all class members at the time of certification, that does not mean that a named plaintiff need not present some method of identifying absent class members to prevail on a motion for class certification." *Sethavanish*, 2014 WL 580696, at *5 (N.D. Cal. Feb. 13, 2014).  Mr. Snyder attempted (and failed) to do precisely that – "present some method of identifying absent class members."  His ultimate conclusion that absent class members could be "definitely and clearly ascertained" is a conclusion for the Court to draw or not draw, regardless of how Plaintiffs rephrase it.

### III.    CONCLUSION

For all of the foregoing reasons, Mr. Snyder's opinions and testimony are inherently flawed and unreliable.  Accordingly, the Court should exclude them.

Dated: October 15, 2014             **DLA PIPER LLP (US)**


By /s/ Edward D. Totino
PERRIE M. WEINER
EDWARD D. TOTINO
MONICA D. SCOTT
Attorneys for Defendant
SIX CONTINENTS HOTELS, INC.