ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone:   (415) 543-1305
Facsimile:    (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
  **A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone:   (916) 447-0100
Facsimile:    (916) 933-5533

Attorneys for Plaintiffs
LAURA McCABE and LATROYA SIMPSON

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA MCCABE and LATROYA SIMPSON, individually and on behalf of a class of similarly situated individuals,<br><br>            Plaintiffs,<br><br>   vs.<br><br>SIX CONTINENTS HOTELS, INC.; and DOES 2 through 10, inclusive,<br><br>           Defendants. | Case No:  3:12-cv-04818-NC<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      May 20, 2015<br>Time:      1:00 p.m.<br>Ctrm:     7 – 4th Floor (San Jose)<br><br>Complaint Filed:  7/3/12<br>FAC Filed:         7/19/12<br>SAC Filed:         10/11/13<br>Trial Date:        None |

**PLEASE TAKE NOTICE THAT** on May 20, 2015 at 1:00 p.m., or as soon thereafter as the matter may be heard by the Honorable Nathanael Cousins, Courtroom 7 – 4th Floor, 280 South 1st Street, San Jose, California 95113, Plaintiffs Laura McCabe and Latroya Simpson and proposed plaintiff Christy Sarabia (collectively, "Plaintiffs") will and hereby do move for an Order (1) preliminarily approving the Settlement Agreement and Release; (2) conditionally certifying the proposed Settlement Class; (3) appointing Plaintiffs as the Settlement Class Representatives; (4) appointing Plaintiffs' Counsel as Settlement Class Counsel; (5) approving the designation of Heffler Claims Group as the Claims Administrator; (6) approving the proposed notice plan; and (7) scheduling a fairness hearing for final approval of the settlement.

This Motion is made pursuant to Federal Rule of Civil Procedure 23, which provides for court approval of the settlement of a class action. The basis for this Motion is that the proposed settlement is fair, adequate, and reasonable and in the best interests of the Settlement Class as a whole, and that the procedures proposed are adequate to ensure the opportunity of the proposed Settlement Class Members to participate in, opt out of, or object to the settlement.

This Motion will be based on this notice of motion and motion, the accompanying memorandum of points and authorities set forth herein, the parties' Settlement Agreement and Release, the Declarations of Eric A. Grover, Scot D. Bernstein and Jeanne C. Finegan, the pleadings and papers filed in this case, and such evidence or oral argument as may be presented at the hearing.

Dated:  April 15, 2015                         **KELLER GROVER LLP**


By:     /s/ *Eric A. Grover*
        _____
        ERIC A. GROVER
        RACHAEL G. JUNG

        *Counsel for Plaintiffs*
        LAURA McCABE and LATROYA SIMPSON

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................ 1

II.     PROCEDURAL BACKGROUND AND SUMMARY OF CLAIMS ............................. 2

III.    SUMMARY OF SETTLEMENT TERMS ................................................................ 4

    A.      The Settlement Class. ........................................................................... 4

    B.      The Common Fund. .............................................................................. 5

    C.      Payments to Settlement Class Members. ............................................. 5

    D.      The settlement's release provision. ...................................................... 6

    E.      The notice program. ............................................................................. 7

    F.      Settlement Class Members may file a claim, opt out or object........... 10

    G.      The settlement provides reasonable enhancements for the Settlement Class Representatives. ............................................................................. 10

    H.      Attorneys' fees and costs. .................................................................. 10

    I.      Costs of notice and administering the settlement............................... 11

    J.      The selected *cy pres* recipients of any residual funds. ...................... 11

IV.     LEGAL ANALYSIS ....................................................................................... 12

    A.      Preliminarily approval of the class action settlement is appropriate under Federal Rules of Civil Procedure Rule 23............................................ 12

    B.      The Settlement Class satisfies Federal Rule of Civil Procedure 23 for conditional certification. ...................................................................... 13

        1.      FRCP 23(a) class certification requirements are satisfied. ..................... 13

            a.      The Proposed Settlement Class is ascertainable and too numerous to make joinder practicable ......................................... 13

            B.      Questions of law and fact common to members of the Settlement Class satisfy commonality. .......................................... 14

            C.      The Proposed Settlement Class Representatives' claims are typical of the Settlement Class Members' claims. ........................ 14

            D.      The Proposed Settlement Class Representatives will adequately represent the Settlement Class. ................................... 15

        2.      FRCP 23(b)(3) Requirements for Class Certification are Satisfied .......... 15

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

**TABLE OF CONTENTS**
(Continued)

Page

C.   The settlement is fair and reasonable and not the result of fraud or
collusion. ........................................................................................................ 17

3.   The settlement amount is a fair compromise in light of the litigation
risks and uncertainties. ............................................................................ 17

4.   Sufficient formal and informal discovery allowed Plaintiffs'
Counsel to calculate class damages and make informed decisions
regarding settlement. ............................................................................... 21

5.   The settlement was the product of informed, non-collusive, and
arms-length negotiations between experienced counsel who jointly
support the settlement. ............................................................................. 22

6.   The proposed notice and claims process are reasonable. ......................... 23

7.   Plaintiffs will submit a separate application for the requested
attorneys' fees, costs, and expenses. ...................................................... 23

8.   The settlement provides a reasonable service award for the
Settlement Class Representatives ............................................................. 24

V.   CONCLUSION ....................................................................................................... 25

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor*
     521 U.S. 591 (1997) ............................................................................ 15, 16

*Boyd v. Bechtel Corp.*
     485 F. Supp. 610 (N.D. Cal. 1979) ................................................................ 22

*Carter v. Anderson Merchandisers, LP*
     2010 WL 1946784 (C.D. Cal. May 11, 2010) ................................................... 22

*Churchill Village, L.L.C. v. Gen. Elec.*
     361 F.3d 566 (9th Cir. 2004) ......................................................................... 17

*Cook v. Niedert*
     142 F.3d 1004 (7th Cir. 1998) ....................................................................... 24

*Eisen v. Carlisle & Jacquelin*
     417 U.S. 156 (1974) ..................................................................................... 23

*Glass v. UBS Fin. Servs., Inc.,*
     2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .................................................... 19

*Hanlon v. Chrysler Corp.*
     150 F.3d 1011 (9th Cir. 1998) .................................................................. passim

*Ikonen v. Hartz Mountain Corp.*
     122 F.R.D. 258 (S.D. Cal. 1988) .................................................................... 13

*In re Beef Indus. Antitrust Litig.*
     607 F.2d 167 (5th Cir. 1979) ......................................................................... 17

*In Re S. Ohio Corr. Facility*
     175 F.R.D. 270 (S.D. Ohio 1997) ................................................................... 24

*In re Syncor ERISA Litig.*
     516 F.3d 1095 (9th Cir. 2008) ........................................................................ 17

*Ingram v. The Coca-Cola Co.*
     200 F.R.D. 685 (N.D. Ga. 2001) ..................................................................... 24

*Lewis v. Starbucks Corp.*
     2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) .................................................. 22

*Mullane v. Cent. Hanover Bank & Trust Co.*
     339 U.S. 306 (1950) ...................................................................................... 23

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Nachshin v. AOL, LLC*,
    663 F.3d 1034 (9th Cir. 2011)...................................................................... 11, 12

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982)...................................................................... 17, 19

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985) ............................................................................. 23

*Roberts v. Texaco, Inc.*
    979 F. Supp. 185 (S.D.N.Y. 1997)................................................................ 24

*Romero v. Producers Dairy Foods, Inc.*
    235 F.R.D. 474 (E.D. Cal. 2006) ................................................................. 13

*Satchell v. Fed. Exp. Corp.*
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .................................................... 22

*Silber v. Mabon*
    18 F.3d 1449 (9th Cir. 1994)...................................................................... 23

*Six Mexican Workers v. Ariz.Citrus Growers*
    904 F.2d 1301 (9th Cir.1990)...................................................................... 11

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003)....................................................................... 24

*Van Vranken v. Atl. Richfield Co.*
    901 F. Supp. 294 (N.D. Cal. 1995) ............................................................... 24

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 180 L. Ed. 2d 374 (2011) ....................................................... 14

*Wren v. RGIS Inventory Specialists*
    2011 WL 1230826 (N.D. Cal. April 1, 2011) .................................................. 17, 22

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
### (Continued)

**Page**

**Statutes**

California Penal Code

§ 630 .................................................................................................................. 15

§ 632 ........................................................................................................... passim

§ 632.7 ........................................................................................................ passim

§ 637.2 ....................................................................................................... 6, 14

Federal Rules of Civil Procedure

Rule 23 ........................................................................................................ passim

**Other Authorities**

*Manual for Complex Litigation* (4th ed. 2004)

§ 21.61 .............................................................................................................. 12

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Laura McCabe and Latroya Simpson brought this putative class action against Defendant Six Continents Hotels, Inc. ("Defendant" or "Six Continents") on behalf of themselves and a proposed class of California callers who made cellular or cordless telephone calls to Defendant that were recorded without consent between March 1, 2011 and July 18, 2012, in violation of California privacy statutes.[1] Defendant denies these allegations and does not admit any liability or wrongdoing of any kind. Nevertheless, Plaintiffs and Defendant wish to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation.

Plaintiffs McCabe and Simpson and proposed plaintiff Christy Sarabia ("Plaintiffs" or "Named Plaintiffs") now seek the Court's preliminary approval of a proposed class settlement in this action reached between Plaintiffs and Defendant the terms of which are set forth in the Settlement Agreement and Release ("the Settlement Agreement"), a copy of which is attached as **Exhibit 1** to the Grover Declaration. The Settlement Agreement was reached after Plaintiffs and Defendant (the "Parties") engaged in arms-length settlement negotiations through their experienced counsel.[2] The negotiations included two formal mediation sessions with an experienced mediator.[3] The proposed Settlement Agreement satisfies all the criteria for preliminary settlement approval under Federal Rule of Civil Procedure ("FRCP") 23 and is fair, reasonable, and adequate. Defendant does not oppose the motion.

The settlement is an excellent result for the Settlement Class Members who file timely and valid claims forms. The settlement will result in a cash payment to participating Settlement Class Members on terms that are believed by Plaintiffs and Settlement Class Counsel to be fair, reasonable and adequate. Defendant is required to pay $11,700,000, referred to as the "Gross

---

[1] *See* Declaration of Eric A. Grover submitted in support of the motion for preliminary approval, Ex. 1 (the Settlement Agreement and Release ("Settlement Agreement")). Hereinafter, all "Ex." references are to the exhibits attached to the Grover Declaration.
[2] Grover Decl. at ¶¶ 11, 34.
[3] Grover Decl. at ¶ 11; Ex. 1 at ¶ C.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Settlement Amount," to settle the matter[4] and has no reversionary interest in that amount.[5]  After subtracting out the costs of notice and administration, Settlement Class Counsel's fees and costs, and the Settlement Class Representative enhancement awards, the remaining portion ("the Net Settlement Fund") is estimated to be $7,552,500.[6]  Settlement Class Members who file timely and valid claims will receive a payment from the Net Settlement Fund on a pro rata basis depending on how many claims are filed, with a maximum payment of $5,000 per Class Member.[7]  If the claims do not exhaust the Net Settlement Fund, the settlement provides that any residual funds (and the value of any uncashed settlement checks) will be distributed to two selected *cy pres* recipients that provide indirect benefits to the Settlement Class Members and relate to the subject matter of the lawsuit.[8]

Plaintiffs respectfully request that the Court (a) grant preliminary approval of the settlement, (b) conditionally grant certification of the proposed Settlement Class solely for the purposes of settlement, (c) approve the appointment of Heffler Claims Group ("Heffler" or "Claims Administrator") as the Claims Administrator, (d) authorize notice pursuant to the proposed notice plan, (e) schedule a final fairness and approval hearing, (f) appoint Laura McCabe, Latroya Simpson, and Christy Sarabia as Settlement Class Representatives, and (g) appoint Eric A. Grover and Rachael G. Jung of Keller Grover LLP and Scot D. Bernstein of Law Offices of Scot D. Bernstein, A Professional Corporation as Settlement Class Counsel.

## II.   PROCEDURAL BACKGROUND AND SUMMARY OF CLAIMS

Plaintiffs McCabe and Simpson filed their initial complaint on July 3, 2012 against original defendants Intercontinental Hotels Group Resources, Inc. and Intercontinental Hotels of San Francisco, Inc. in Alameda County Superior Court.[9]  On July 20, 2012, Plaintiffs McCabe and Simpson filed the First Amended Complaint naming Six Continents Hotels, Inc. as a

---

[4] Ex. 1 at ¶ 3.1.
[5] Ex. 1 at ¶ 3.6.
[6] Ex. 1 at ¶ 3.4.
[7] Ex. 1 at ¶ 3.5.
[8] Ex. 1 at ¶ 3.5.
[9] Ex. 1 at ¶ A.

defendant.[10]

Defendants removed the action to this Court on September 14, 2012.[11]  On May 20, 2013, the Court signed an order granting the Parties' stipulation to dismiss without prejudice defendants Intercontinental Hotels Group Resources, Inc. and Intercontinental Hotels of San Francisco, Inc., leaving Six Continents Hotels, Inc. as the only remaining defendant.[12]  Following a contested motion, on October 13, 2014, Plaintiffs McCabe and Simpson filed the Second Amended Complaint, in which they allege unlawful call recording claims on behalf of a putative class of California residents who made cellular or cordless telephone calls to Defendant that were routed to certain call centers operated by Defendant and recorded without consent in violation of California Penal Code § 632.7.[13]

As part of the settlement, the Parties agreed that Plaintiffs will seek the Court's permission to file a Third Amended Complaint adding an additional named plaintiff, Christy Sarabia, and a cause of action for violation of California Penal Code § 632, which covers the recording of confidential communications without consent.[14]

Defendant has vigorously denied all of the allegations in their entirety.[15]  To date, no class has been certified and no court has made a finding of any wrongdoing on the part of Defendant or that Defendant otherwise acted improperly or in violation of any state law, rule or regulation, with respect to the issues presented in the litigation.[16]

The Parties conducted significant discovery during the litigation.  Plaintiffs propounded multiple sets of written discovery and reviewed nearly 11,000 pages of documents that Defendant produced.  Plaintiffs took six depositions.  Defendant also propounded written discovery.

---

[10] Ex. 1 at ¶ A.
[11] Ex. 1 at ¶ A.
[12] Docket ("Dkt.") No. 38; Ex. 1 at ¶ A.
[13] Dkt. No. 54; Ex. 1 at ¶ A.
[14] Ex. 1 at ¶ A, Settlement Agreement Exhibit G (proposed Third Amended Complaint); Grover Decl. at ¶ 7, Ex. 2 (red-lined version of proposed Third Amended Complaint).
[15] Ex. 1 at ¶ D.
[16] Grover Decl. at ¶ 8.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

Defendant deposed Plaintiffs McCabe and Simpson, proposed Plaintiff Sarabia, an additional fact witness and three experts named by Plaintiffs.[17]

The Parties also have engaged in substantive motion practice.[18]  Defendant filed motions to dismiss the First and Second Amended Complaints.[19]  Plaintiffs filed a motion to amend the complaint.[20]  The Parties also had one discovery dispute resolved by the Court.  Most recently, Plaintiffs moved for class certification and Defendant moved for summary judgment motion and to exclude certain expert testimony Plaintiff submitted in support of class certification.[21]

While awaiting a hearing on the fully briefed class certification, summary judgment and expert testimony motions, the Parties agreed to mediate the case.[22]  On January 22 and January 30, 2015, the Parties engaged in mediation sessions with the Hon. Louis M. Meisinger (Ret.), formerly of the Los Angeles County Superior Court and a former Executive Vice-President and General Counsel of The Walt Disney Company.[23]  Although the Parties did not reach an agreement at the mediation sessions, with Judge Meisinger's assistance, the broad terms of an agreement were reached several days after the second mediation session.  All terms of the Parties' settlement are set forth in the Settlement Agreement.[24]

### III.    SUMMARY OF SETTLEMENT TERMS

#### A.    The Settlement Class.

The Parties agreed that the Settlement Class should be defined as:

> All persons who, while residing or located in California, placed a call to one of Defendant's toll-free telephone numbers at any time during the period from March 1, 2011 through July 18, 2012, inclusive, and spoke with a representative.[25]

---

[17] Ex. 1 at ¶ B; Grover Decl. at ¶ 9.
[18] Ex. 1 at ¶ B; Grover Decl. at ¶¶ 10-11.
[19] Dkt. Nos. 5 and 56.
[20] Dkt. No. 41.
[21] Dkt. Nos. 80, 90 and 91.
[22] Grover Decl. ¶ 11.
[23] Ex. A. at ¶ C; Grover Decl. at ¶ 11.
[24] Ex. 1; Grover Decl. at ¶ 11.
[25] Ex. 1 at ¶ 1(h).

Based on a review of Defendant's records, it is estimated that incoming calls from approximately 698,000 unique telephone numbers with California Area Codes were made to Defendant's toll-free numbers and reached a representative of Defendant during the Class Period.[26]

**B.     The Common Fund.**

The settlement provides that Defendant will fund the Gross Settlement Amount in the amount of $11,700,000 to resolve the claims covered by the settlement.[27]   After subtracting out approximately $500,000 to pay the costs of notice and administration, the amounts allocated to the fees and costs of Settlement Class Counsel (not to exceed $3,510,000 and approximately $100,000, respectively), and the Settlement Class Representative enhancement awards (not to exceed $37,500 total), the remaining funds, referred to as the Net Settlement Fund, will be available for distribution to the Settlement Class Members who file timely and valid claims.[28] The Net Settlement Fund is estimated to be $7,552,500.[29]   Defendant does not have any revisionary interest in the Gross Settlement Amount.[30]

**C.     Payments to Settlement Class Members.**

The Settlement Agreement provides that Settlement Class Members may submit claims forms by mail or online in order to participate in the settlement.[31]   Each Settlement Class Member who submits a valid and timely claim will receive a settlement payment representing a *pro rata* share of the Net Settlement Fund, up to a maximum payment of $5,000 per person.[32]   If the valid and timely claims do not exhaust the entire Net Settlement Fund, any remaining funds will be distributed to the *cy pres* beneficiaries, Consumer Action and Electronic Frontier Foundation,

---

[26]  Ex. 1 at ¶¶ 1(h), 6.1.
[27] Ex. 1 at ¶ 3.1.
[28] Ex. 1 at ¶ 3.5; Grover Decl. at ¶ 18.
[29] Ex. 1 at ¶ 3.4; Grover Decl. at ¶ 18.
[30] Ex. 1 at ¶ 3.6; Grover Decl. at ¶ 21.
[31] Ex. 1 at ¶¶ 3.5,  7.1, Settlement Agreement Exhibit A (Claim Form).
[32] Ex. 1 at ¶ 3.5.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

subject to the Court's approval.[33]  The proposed *cy pres* beneficiaries are discussed in more detail in Section III.J below.

The allocation of the Net Settlement Fund among participating Class Members is fair given the claims alleged and in comparison to numerous other settlements of similar claims.  As detailed at length in paragraph 16 of the Grover declaration, when compared in per capita terms, the proposed settlement in this action compares favorably against nine telephone recording settlements that received final approval.[34]  The "per capita" settlement amount here is estimated at $16.76 per Settlement Class Member, compared to between $0.75 and $30 in the comparable settlements.[35]  The recovery for participating Settlement Class Members through settlement at this juncture is reasonable and fair when compared against these other settlements.

**D.      The settlement's release provision.**

The settlement provides that Settlement Class Members who do not opt out will release certain call-recording claims against Defendant.  The scope of the Released Claims is set forth in full in Section 11 of the Settlement Agreement.  To summarize, the settlement provides that Settlement Class Members who do not opt out will release all claims against Defendant that were or reasonably could have been asserted based on the factual allegations contained in the operative complaint, or that relate to or arise out of the alleged recording, monitoring, or eavesdropping upon telephone calls made to Defendant prior to July 18, 2012.  The Released Claims include claims under California Penal Code §§ 632, 632.7, and 637.2 as well as any California or federal law prohibiting or regulating the monitoring, recording or eavesdropping on telephonic calls without the consent of all parties.[36]  The Released Claims are aligned closely with the class claims and the underlying factual allegations alleged in the operative complaint.[37]

---

[33] Ex. 1 at ¶ 3.5.
[34] Grover Decl. at ¶ 16.
[35] Taking the $30 per capita settlement out of the mix, the average of the remaining eight settlements is $3.58 per class member. See list of comparable settlements at Section IV.C.1.
[36] Ex. 1 at ¶ 11.1.
[37] *See* Ex. 1 at ¶ 11.1, Settlement Agreement Exhibit G.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

**E.     The notice program.**

The settlement provides for a robust settlement notice program that explains in plain language the nature of the lawsuit, the terms of the settlement, Settlement Class Members' rights, and the steps necessary to make a claim for payment under, request exclusion from, or object to, the settlement.[38]   The Parties agreed upon a notice procedure that includes notification via U.S. mail, email, a settlement website an online banner program, newspaper publication and press release.  The notice program, which is designed to reach at least 70% of all California adults 18 and over at least 1.6 times, is clearly intended to ensure as high of a number of Settlement Class Members receive notice of the settlement.[39]

The Settlement Agreement provides that, excluding telephone numbers associated with its franchised hotels, Defendant shall compile a list of the unique telephone numbers associated with telephone calls to Defendant from California Area Codes that were routed to one of its call centers during the Class Period, March 1, 2011 through July 18, 2012, inclusive.  Defendant then will cross-reference that list of unique telephone numbers, which is estimated to be approximately 698,000, through its Holidex and Magic customer-related databases and search for names, mailing addresses, additional telephone numbers and/or email addresses associated with the list. Additionally, Defendant will run searches of its customer-related databases in an effort to locate contact information associated with individuals who provided a California mailing address to Defendant at any time during the period from January 1, 2010 through December 31, 2012, inclusive.  All of the information collected by Defendant, taken in total, shall be referred to as the Potential Class Member Contact List.[40]

Not later than 45 days after the Court enters its order preliminarily approving the settlement, Defendant will provide the Potential Class Member List to Heffler, the Claims Administrator.   Heffler also will run reverse directory searches on the phone numbers that

---

[38] *See* Ex. 1 at ¶¶ 6.1-6.8, and Settlement Agreement Exhibits C, D, E and F (proposed Settlement Notice Postcard, Email Settlement Notice, Publication Notice and Press Release).
[39] Ex. 1 at ¶ 6.7; Grover Decl. at ¶ 24; Declaration of Jeanne Finegan (Heffler Media LLC) ("Finegan Decl.") at ¶ 16.
[40] Ex. 1 at ¶ 6.1.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Defendant provides in order to obtain the names and/or mailing addresses associated with each telephone number for which no name or mailing address was provided, and will confirm all mailing addresses.[41]

Not later than 75 calendar days after the Court enters an order granting preliminary approval, Heffler will mail a Postcard Settlement Class Notice to each Settlement Class Member with an identified mailing address.[42]  By the same deadline, Heffler also will email the Email Settlement Notice to each Settlement Class Member with an identified email address.[43]

In addition, not later than 50 calendar days after the Court enters the preliminary approval order, Heffler will publish a website on the internet at the URL www.HotelCallRecordingSettlement.com (or a similar name if that one is not available) ("Settlement Website") that will provide a summary a summary of the terms of the settlement, state the means by which Settlement Class Members may communicate with the Claims Administrator (including but not limited to the Claims Administrator's business name, address, telephone number, and e-mail address), and contain a set of Frequently Asked Questions and corresponding answers, instructions on how to submit a Claim Form (both electronically and by mail) and the deadline associated therewith, instructions on how to object and opt out of the settlement and the deadlines associated therewith, and a toll-free telephone number which Settlement Class Members may call to reach the Claims Administrator with questions. The Settlement Website also shall provide, free of charge, a viewable, printable and downloadable copy, in PDF file format, of each of the following documents:  this Agreement; the Third Amended Complaint; the Answer to the Third Amended Complaint; the Court's order preliminarily approving the Class Action Settlement and certifying the Settlement Class; the Claim Form (**Exhibit A**); the Long-form Settlement Class Notice (**Exhibit B**); the Motion for an award of attorneys' fees, litigation costs, administration costs, and the Settlement Class Representatives' enhancement award; and the Motion for Final Approval.

---

[41] Ex. 1 at ¶ 6.2; Grover Decl. at ¶ 26.
[42] Ex. 1 at ¶ 6.3, Settlement Agreement Exhibit C (Settlement Class Notice Postcard).
[43] Ex. 1 at ¶ 6.3, Settlement Agreement Exhibit D (Email Settlement Notice).

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

The Settlement Website shall remain active for 180 calendar days after the Settlement Effective Date.[44]

Also, 50 calendar days after the entry of the preliminarily approval order, Heffler will initiate an on-line banner advertising campaign that will continue for 115 days.[45]  The on-line program will utilize data targeting, contextual targeting and geo-targeting to reach adults in California with an emphasis on users with past travel purchases and a history of visiting websites with hotel and travel content.  The online program will be delivered over the Xaxis network of more than 2,000 websites and Facebook.  The banner and Facebook ads, which will include a live link to the Settlement Website, www.HotelCallRecordingSettlement.com, will be drafted by the Claims Administrator and approved by the Parties.  The intent of the banner and Facebook ads is to communicate the following information in a format suggested by the Claims Administrator and approved by the Parties:  "If You Called IHG Rewards Club or any of the Following Hotel Brands From California Between March 1, 2011 and July 18, 2012, Inclusive, **You Could Get Money From a Class Action Settlement**: Holiday Inn ®, Holiday Inn Express ®, Crowne Plaza Hotels and Resorts ®, Intercontinental Hotels and Resorts®, Staybridge Suites®, Candlewood Suites® or Hotel Indigo®."[46]

Heffler also will issue a press release approved by the Parties and ensure that notice of the settlement is posted on Top Class Actions.com and distributed through PR Newswire California.[47]

Between 75 and 90 days after the entry of the preliminarily approval order, Heffler also will twice cause the Publication Notice (in the form of Exhibit E to the Settlement Agreement) to be published in the following newspapers that are distributed throughout San Francisco, Alameda, Santa Clara, Monterey, Los Angeles, Orange, and San Diego counties: *San Francisco Examiner, SF Weekly, Oakland Berkeley East Bay Express, Silicon Valley Metro, Bay Area Report, Monterey County Weekly, San Diego Reader,* and *LA/OC Weekly.*  In addition, between 75 and 90

---

[44] Ex. 1 at ¶ 6.4.
[45] Ex. 1 at ¶ 6.5.
[46] Ex. 1 at ¶ 6.5.
[47] Ex. 1 at ¶ 6.5, Settlement Agreement Exhibit F (press release).

days after entry of the Court's preliminary approval order, the Heffler will cause the Publication

Notice to be published once in Parade Magazine's California edition.[48]

### F.        Settlement Class Members may file a claim, opt out or object.

All Settlement Class Members will have the opportunity to file a claim form to participate

in the settlement, request exclusion from the settlement, or object to the settlement terms.[49]

Settlement Class Members will have 90 days from the date that Heffler first sends the email and

postcard notices to electronically submit an online claim form, postmark a claim form, submit an

opt-out request, or file and serve an objection.[50]

### G.        The settlement provides reasonable enhancements for the Settlement Class Representatives.

The settlement also provides reasonable enhancements for the named Plaintiffs to

compensate them for the risks they incurred and the time and effort they expended in coming

forward to provide information in support of the claims based on the privacy violations alleged in

the Complaint.[51]   Subject to the Court's approval, the settlement provides that a reasonable

enhancement of not more than $15,000 each to McCabe and Simpson and $7,500 to Sarabia.[52]

With the motion for attorneys' fees and litigation expenses, each Plaintiff will submit a

declaration detailing the time and effort she put in to this case.

### H.        Attorneys' fees and costs.

The settlement provides that, in connection with final approval, Settlement Class Counsel

may seek an award of attorneys' fees of no more than $3,510,000, which is 30% of the Gross

Settlement Amount, and out-of-pocket costs not to exceed $100,000.[53]   Defendant may not

oppose Class Counsel's fee request if it does not exceed $2,925,000, which is 25% of the Gross

---

[48] Ex. 1 at ¶ 6.6, Settlement Agreement Exhibit E (Publication Notice).
[49] Ex. 1 at ¶¶ 7.3, 8.1 and 8.3, Settlement Agreement Exhibit A (Claim Form).
[50] Ex. 1 at ¶¶ 7.3, 8.1 and 8.3.
[51] Ex. 1 at ¶ 3.3; *see also*, Grover Decl. at ¶¶ 23, 43-44.
[52] Ex. 1 at ¶ 3.3.
[53] Ex. 1 at ¶ 3.2.  Plaintiffs will file a motion seeking an award of fees and costs no later than 15 days before the deadline for objections to the settlement.  Grover Decl. at ¶ 46; Ex. 1 at ¶ 15.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Settlement Amount, and will not oppose the cost application that will be submitted in prior to the objection deadline, should the Court preliminarily approve the settlement.[54]

The range of the fee request is reasonable given that Class Counsel conducted significant discovery and engaged in substantive motion practice, including fully briefing the class certification motion and opposing Defendant's motion for summary judgment. Class Counsel also engaged in extensive settlement negotiations that resulted in resolution of this matter before trial and provides significant monetary payments to those Settlement Class Members who file timely and valid claims.[55]

**I.      Costs of notice and administering the settlement.**

Subject to the Court's approval, the Settlement Agreement also allocates approximately $500,000 of the Gross Settlement Amount for the Claims Administrator's costs of providing notice to the Settlement Class and administering the settlement.[56] The administration costs are reasonable given the large number of potential Settlement Class Members and the substantial notice procedures involved in this settlement. The anticipated cost of notice and administration represents only 4.3% of the Gross Settlement Amount.

**J.      The selected *cy pres* recipients of any residual funds.**

The *cy pres* doctrine allows for unclaimed or non-distributable portions of a class action settlement fund to be distributed in a manner that still indirectly benefits the class.[57] Unclaimed settlement funds should be put to their "next best use" in light of "the purposes of the underlying lawsuit or the class of plaintiffs involved."[58]

Here, the Parties have agreed that if the payments for Settlement Class Members' claims do not exhaust the Net Settlement Fund, any remaining amount (as well as the funds represented by any uncashed settlement checks) will be paid to the Parties' selected *cy pres* beneficiaries,

---

[54] Ex. 1 at ¶ 3.2.
[55] *See* Grover Decl. at ¶¶ 13-19, 33-35.
[56] Ex. 1 at ¶¶ 3.4, 4.1, 4.2.
[57] *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038-39 (9th Cir. 2011); *Six Mexican Workers v. Ariz.Citrus Growers*, 904 F.2d 1301, 1306-07 (9th Cir.1990).
[58] *Nachshin*, 663 F.3d at 1038-39; *see also*, *Six Mexican Workers*, 904 F.2d at 1306-07.

Consumer Action and Electronic Frontier Foundation, subject to the Court's approval.[59]   The selected *cy pres* recipients relate to the subject matter of the lawsuit and the class members.[60] Consumer Action is a non-profit organization that provides advocacy and education for consumers regarding financial and privacy issues.[61]   Electronic Frontier Foundation is a non-profit organization that defends against technological privacy violations, among other civil liberty issues, through litigation, policy-making, and education.[62]   Because this action involves a putative class of consumers who allege privacy violations through call recording practices, the two organizations are aligned with the purpose of the lawsuit and provide indirect benefits to the Settlement Class Members. A donation to the selected *cy pres* recipients will serve as the "next best use" of any residual settlement funds.[63]

## IV.    LEGAL ANALYSIS

### A.    Preliminarily approval of the class action settlement is appropriate under Federal Rules of Civil Procedure Rule 23.

A class action may not be dismissed, compromised or settled without the Court's approval.[64]   Proper review and approval of a class action settlement requires three steps:  (1) preliminary approval of the proposed settlement after submission of a written motion; (2) dissemination of mailed and/or published notice of the settlement to all class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.[65]   The decision to approve or reject a proposed settlement is committed to the sound discretion of the court.[66]

---

[59] Ex. 1 at  ¶¶ 3.5, 3.6, 9.1, 10.1; Grover Decl. at ¶ 20.  Further information is available on the two organizations' websites: Consumer Action (www.consumer-action.org) and the Electronic Frontier Foundation (www.eff.org).
[60] *See Nachshin*, 663 F.3d at 1038-39.
[61] *See* http://www.consumer-action.org/about.
[62] *See* https://www.eff.org/about.
[63] *See Nachshin*, 663 F.3d at 1038-39.
[64] *See* Fed. R. Civ. P. 23(e).
[65] *Manual for Complex Litigation* (4th ed. 2004), § 21.61.
[66] *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

FRCP 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval:  (1) that the settlement class meets the requirements for class certification if it has not yet been certified;[67] and (2) that the settlement is fair, reasonable, and adequate.[68]  Here, both of those are satisfied.[69]

### B.    The Settlement Class satisfies Federal Rule of Civil Procedure 23 for conditional certification.

Rule 23(a) sets out four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.[70]   Further, Rule 23(b)(3) provides that a class action seeking monetary relief may be maintained only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[71]  All of the requirements are met here.[72]

### 1.   FRCP 23(a) class certification requirements are satisfied.

#### a.   *The Proposed Settlement Class is ascertainable and too numerous to make joinder practicable*

The numerosity prerequisite demands that the class be large enough that joinder of all members would be impracticable.[73]   While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least 40 members.[74]

Based on extensive review of its pre- and post-mediation records of calls received from discrete telephone numbers with California area codes, Defendant estimates that approximately

---

[67] Fed. R. Civ. P. 23(a).

[68] Fed. R. Civ. P. 23(e)(2).

[69] *See* Ex. 1.

[70] Fed. R. Civ. P. 23(a)(1)-(4).

[71] Fed. R. Civ. P. 23(b)(3).

[72] For purposes of settlement approval only, Defendant has agreed to the certification of the proposed class and appointment of the proposed class representatives and Class Counsel.  Ex. 1 at ¶ 2.4.

[73] Fed. R. Civ. P. 23(a)(1).

[74] *See e.g.*, *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (40 class members satisfies numerosity); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006) (same).

698,000 individuals called its call centers during the defined Class Period.[75] Thus, in addition to being ascertainable, the proposed Settlement Class is sufficiently numerous to warrant certification.

### b. Questions of law and fact common to members of the Settlement Class satisfy commonality.

The commonality prerequisite for class certification concerns the existence of questions of law and/or fact common to the class and is "construed permissively."[76]   To satisfy the commonality requirement of Rule 23(a), the plaintiff must assert at least one common contention that is capable of class-wide resolution.[77]

Here, the proposed Settlement Class Members' claims all stem from a common set of circumstances.  All of the Settlement Class Members made calls to one of Defendant's toll-free customer service telephone numbers from a telephone while located in California during the relevant time period.  Plaintiffs contend that all Settlement Class Members were subject to call recording policies and practices that applied to all calls routed to Defendant's call centers. Whether Defendant's uniform practices and policies violated Penal Code §§ 632 and 632.7 creates questions of law and fact common to all Settlement Class Members.  All Settlement Class Members seek the same legal remedies under Penal Code §637.2.[78]

Under these circumstances, the requirement that common questions of law and/or fact exist among the proposed Settlement Class Members is satisfied for purposes of certifying the proposed class for settlement.[79]

### c. The Proposed Settlement Class Representatives' claims are typical of the Settlement Class Members' claims.

The typicality prerequisite of Rule 23(a) is met if the named plaintiff's claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical."[80]   In this case, Plaintiffs McCabe, Simpson, and Sarabia, the proposed Settlement

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

---

[75] Ex. 1 at ¶ 6.1; Grover Decl. at ¶ 39.
[76] *Hanlon* 150 F.3d at 1019.
[77] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).
[78] Grover Decl. at ¶ 40.
[79] *Id.*
[80] *Hanlon*, 150 F.3d at 1020.

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

Class Representatives, like all of the proposed Settlement Class Members, made calls during the Class Period to certain one or more of Defendant's toll-free customer-service lines from a telephone while located in California, reached and representative of Defendant,  and had their calls recorded, allegedly without their consent.[81]  Thus, the Named Plaintiffs' claims arise from the same course of conduct from which the Settlement Class Members' claims arise.[82]

### d. The Proposed Settlement Class Representatives will adequately represent the Settlement Class.

The adequacy prerequisite permits class certification if the "representative parties will fairly and adequately protect the interests of the class."[83]  This means that proposed class representatives and their counsel cannot have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class.[84]  Neither Plaintiffs nor any of their Counsel has a conflict with any settlement Class Member.

The Named Plaintiffs have also demonstrated that they will aggressively and competently assert the interests of the Settlement Class Members.  Plaintiffs have retained competent counsel, experienced in litigating class action claims, including those in the context of alleged violations of the California Invasion of Privacy Act, Penal Code §§ 630, *et seq.*[85]

### 2. FRCP 23(b)(3) Requirements for Class Certification are Satisfied

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating controversy."  This analysis focuses on "the relationship between the common and individual issues" and "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[86]  In other words, courts must

---

[81] *See* Settlement Agreement Exhibit G (proposed Third Amended Complaint).
[82] Grover Decl. at ¶ 41.
[83] Fed. R. Civ. P. 23(a)(4).
[84] *Hanlon*, 150 F.3d at 1020.
[85] *See* Grover Decl. at ¶¶ 1-4, 13, 42; Declaration of Scot D. Bernstein at ¶ 2, Ex. 1.
[86] *Hanlon*, 150 F.3d at 1020; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

determine whether the focus of the proposed class action will be on the actions and conduct of the defendants rather than the behavior of individual class members.[87]

Here, the common questions predominate over any individual questions.  If the class were certified and the action proceeded to trial, resolution of the putative class members' claims would be determined by key common questions, such as whether Defendant had policies and practices of recording and/or monitoring, without the knowledge and consent of callers, telephone calls to Defendant's call centers.  These uniform policies and practices are at the core of Plaintiffs' allegations that California Penal Code §§ 632 and 632.7 was violated. Thus, they would determine liability to the Class and, therefore, would predominate over any potential individualized issues.

Further, class action procedure is a superior to a multitude of individual suits.  To determine whether the class approach is superior, courts consider: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.[88]  Here, a class action device is preferable because the Class Members do not have a strong interest in controlling their individual claims.  Indeed the individual prosecution of the claims, if it were to occur, would be identical to and duplicative of the class action litigation.  The use of the class action mechanism here also would efficiently resolve numerous identical claims at the same time while avoiding waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation.  Although manageability is not a concern in the settlement context,[89] Plaintiffs are unaware of any issues that would render unmanageable the adjudication of

---

[87] *Hanlon*, 150 F.3d at 1022-23.

[88] Fed. R. Civ. P. 23(b)(3)(A)-(D).

[89] *Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial.").

Plaintiffs' class claims if the case were to proceed to trial.  Accordingly, the class action is the superior method for adjudication the claims in this action.

Therefore, the Court should conditionally certify the proposed Settlement Class solely for settlement purposes.

**C.      The settlement is fair and reasonable and not the result of fraud or collusion.**

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate."[90]   In exercising their sound discretion to approve settlements, courts regularly consider whether the settlement is fair, non-collusive, and "reflects all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions."[91]   Included in this analysis are considerations of "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence or absence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."[92]

Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining."[93]   There also is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."[94]   Applying these factors to this case, the proposed settlement is fair, reasonable, and adequate.

> 3.      The settlement amount is a fair compromise in light of the litigation risks and uncertainties.

The monetary value of the proposed Settlement to class members represents a fair compromise given the litigation risks and uncertainties presented by continued litigation.

---

[90] Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

[91] *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th Cir. 1979).

[92] *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) citing *Hanlon*, 150 F.3d at 1026.

[93] *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. April 1, 2011).

[94] *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008).

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

Defendant has asserted and would have continued to assert legal and factual grounds to defend against this action.[95]   Additionally, Defendant adamantly disputes Plaintiffs' ability to certify a class and prove liability to the class for their call recording and monitoring practices. Specifically, Defendant argues that numerous individualized issues exist, including which callers called Six Continents, the callers' residency, their location at the time of the call, which calls were made from cordless telephones, whether a particular call was recorded, whether the caller consented to the recording, what type of device was used to answer the call, and whether a particular call was made during the limitations period.[96]   While Plaintiffs and their Counsel disagree and believe that the claims can be successfully proved on a class-wide basis through a combination of company records testimony, expert witnesses, and representative class member testimony, they recognize that such procedures raise complicated proof issues and commensurate risks.  Defendant also raised numerous defenses to the merits of the claims, arguing, among other things, Section 632.7 does not apply to calls answered by VoIP devices or computers, the California Invasion of Privacy Act exempts call recording done for "service observing" purposes, a class-wide damage award would violate the Due Process Clause, and the Commerce Clause prohibits the application of Section 632.7 on the recording of calls outside of California, arguing that it is an improper direct regulation of interstate commerce and places an undue burden on interstate commerce.[97]   Accordingly, there is a risk that the Court could deny class certification or, following initial certification, subsequently decertify the class based on unanticipated individualized issues or manageability concerns.  Were a class not certified, it is unlikely that many Settlement Class Members would maintain an individual action against Defendant, given the statutory maximum recovery of $5,000 per violation.[98]

Therefore, absent settlement, Plaintiffs' Counsel acknowledges that there would be a continued vigorous challenge to both class certification and the merits of Plaintiffs' claims. While Plaintiffs' Counsel remains confident that Plaintiffs would certify a litigation class and

---

[95] Grover Decl. at ¶¶ 14-15.
[96] Docket No. 88; Grover Decl. at ¶ 15.
[97] Docket No. 91-1; Grover Decl. at ¶ 14.
[98] *See* Grover Decl. at ¶¶ 13, 35.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

prevail on the class claims, continued litigation would be costly, time consuming, and uncertain. Plaintiffs still would have to prevail on their pending class certification motion, defeat Defendant's summary judgment motion, establish class-wide liability, and then prove up various issues regarding damages. Those efforts likely would take years, would require expert testimony and would impose other costs, risks, and potential delays on the putative class. Appellate proceedings could further delay and jeopardize recovery. By contrast, the settlement ensures timely relief and substantial recovery of the amounts that Plaintiffs contend are owed to the proposed Settlement Class.

Moreover, it is well established that settlement offers that constitute a fraction of the *potential* recovery do not preclude a court from finding that the settlement offer is fair.[99]  District courts have found that settlements for substantially less than the plaintiff's claimed damages were fair and reasonable, especially when taking into account the uncertainties, risks and delay involved in litigation.[100]

In addition, when compared in absolute terms, the proposed settlement in this action compares favorably against nine recent phone recording settlements that received final approval.[101]

1. In *Skurov. BMW of North America, LLC,* USDC CD Case No. 10-cv-8672 GW, the settlement involved 40,000 class members and gave them the option of selecting a six month extension of the BMW Assist basic safety plan or making a cash claim. If all class members selected the cash option, the per capita value of the cash option would be $7.50 ($300,000/40,000 class members).

2. In *Marenco v. Visa Inc.,* USDC CD Case No. 10-cv-8022 DMG, the court approved an $18,000,000 settlement for a class that numbered 600,000. Thus, the

---

[99] *See Hanlon*, 150 F.3d at 1027; *Officers of Justice*, 688 F.2d at 628.

[100] *See e.g., Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (finding settlement of wage and hour class action for 25% to 35% of the claimed damages to be reasonable).

[101] Grover Decl. at ¶ 16. By "per capita terms," Plaintiffs are referring to a comparison of the maximum settlement amount divided by the total number potential class members.

per capita monetary recovery in that case was $30 per class member ($18,000,000/600,000 class members).

3. *Batmanghelich v. Sirius XM Radio, Inc.,* USDC CD Case No. 09-cv-9190 VBF settled for $9,480,000.  The class size exceeded 1,700,000.  At 1,700,000 class members, the per capita monetary recovery in that case was $5.77 per class member ($9,480,000/1,700,000 class members).

4. In *Greenberg v. E-Trade Financial Corporation,* Los Angeles County Superior Court Case No. BC360152, the court approved a $7,500,000 settlement covering as many as 1,400,000 class members, which resulting in a per capita monetary recovery of $5.38 per class member ($7,500,000/1,000,000 class members).

5. In *Nader v. Capital One Bank (USA), N.A.,* USDC CD Cal. Case No. 2:12-cv-01265-DSF , the court approved a settlement of $3,000,000 for 1,100,000 class members, equating to a per capita recovery of $2.73 per class member ($3,000,000/1,100,000 class members).

6. In *Cohorst v. BRE Properties, Inc. et al.,* USDC SD Cal. Case No. 10-cv-2666, the court approved a $5,500,000 settlement covering as many as 1,170,584 class members.  In per capita terms, recovery in that case amounted to approximately $4.70 per potential class member ($5,500,000/1,170,584 potential class members).

7. In *Knell v. FIA Card Services,* USDC SD Cal. Case No. 12-CV-00426-AJB-WVG , the court approved a $2,750,000 settlement covering 3,650,000 class members.  This resulted in a per capita recovery of $0.75 per class member ($2,750,000/3,650,000 class members).

8. *Hoffman v. Bank of America,* USDC SD Cal. Case No. 3:12-cv-00539-JAH-DHB, settled for $2,600,000.  The class size exceeded 1,400,000.  At 1,400,000 class members, the per capita monetary recovery in that case was $1.86 per class member ($2,600,000/1,400,000 class members).

9. In *Mount v. Wells Fargo,* Los Angeles Superior Court Case No. BC395959, the court approved a $5,600,000 settlement covering as many as 600,000 class

members.  In per capita terms, recovery in that case amounted to approximately $9.33 per class member ($5,600,000/600,000 class members).[102]

Here, the settlement provides that Defendant will pay a total settlement amount of $11,700,000 to resolve all claims covered by the settlement.[103]  Given the estimated approximately 698,000 potential class members, the per capita value of this settlement is per $16.76 per potential class member ($11,700,000/698,000).[104]  Thus, Settlement Class Members who file timely and valid claims will receive payments of at least $16.76 (if every potential Settlement Class Member filed a claim) and up to $5,000.[105]  At a strong 10% claims rate, each Settlement Class Member who filed a claim would receive over $100.  In light of the risks, uncertainties, and delays of continued and potentially protracted litigation, these recovery amounts are fair, reasonable, and adequate.

Despite the asserted fairness of the settlement terms, any proposed Settlement Class Member who objects to the terms of the settlement has the right to submit a request for exclusion from (*i.e.*, to opt out of) the settlement.[106]  A Settlement Class Member who does so will retain any claim he or she may have had against Defendant.[107]  Moreover, Settlement Class Members who do not opt out may, upon providing proper notice to the Parties and the Court, attend the final fairness and approval hearing for the purposes of objecting to one or more of the settlement terms set forth in the Settlement Agreement.[108]

4.   Sufficient formal and informal discovery allowed Plaintiffs' Counsel to calculate class damages and make informed decisions regarding settlement.

The Parties conducted significant formal discovery and exchanged additional informal discovery both before and after the two mediation sessions.[109]  Defendant produced responses to Plaintiffs' multiple sets of written discovery and produced over 11,000 pages of relevant

---

[102] Grover Decl. at ¶ 16.
[103] Ex. 1 at ¶ 3.1.
[104] Grover Decl. at ¶ 16.
[105] Ex. A at ¶ 3.5; Grover Decl. at ¶¶ 16, 19.
[106] Ex. 1 at ¶ 8.1.
[107] *Id.*
[108] Ex. 1 at ¶ 8.3.
[109] Grover Decl. at ¶¶ 9, 11, 33; Ex. 1 at ¶ B.

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

documents. Plaintiffs took six depositions and Defendant deposed all three Plaintiffs, an additional fact witnesses and three experts named by Plaintiffs. The Parties also exchanged their respective legal theories and supporting evidence in the briefing of the class certification and summary judgment motions.[110] The information exchanged through formal and informal discovery and the motion practice permitted Plaintiffs to evaluate the strengths and weaknesses of the class claims and negotiate a fair, reasonable, and adequate settlement.[111]

5.  The settlement was the product of informed, non-collusive, and arms-length negotiations between experienced counsel who jointly support the settlement.

Courts routinely presume a settlement to be fair where it is reached through arm's-length bargaining.[112] Furthermore, where counsel are well-qualified to represent the proposed class in a settlement based on their extensive class action experience and familiarity with the strengths and weakness of the action, courts find this factor to support a finding of fairness.[113]

This settlement was a product of non-collusive, arm's-length negotiations.[114] The Parties engaged in two mediation sessions with the Hon. Louis M. Meisinger (Ret.) and continued negotiations with Judge Meisinger's assistance, after the mediation until an agreement was reached.[115] Moreover, the Parties are represented by skilled and experienced counsel who have extensive background litigating and settling complex litigation, including litigating similar

---

[110] Ex. 1 at ¶ B; Grover Decl. at ¶¶ 10-11.

[111] Grover Decl. at ¶¶ 9-11, 33-35; *see Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases"); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979).

[112] *See Hanlon*, 150 F.3d at 1027 (affirming trial court's approval of class action settlement where parties reached agreement after several months of negotiation and the record contained no evidence of collusion); *Wren*, 2011 WL 1230826, at *14 (finding that settlement reached after two mediation sessions before an experienced and retired judge was reached in a "procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel"); *see also Satchell v. Fed. Exp. Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Carter v. Anderson Merchandisers, LP*, No. EDCV 07-0025-VAP, 2010 WL 1946784, at *7 (C.D. Cal. May 11, 2010) (citing *Satchell*).

[113] *Wre*n, 2011 WL 1230826, at *10; *Carter*, 2010 WL 1946784, at *8 ("Counsel's opinion is accorded considerable weight.").

[114] Grover Decl. at ¶¶ 11, 34.

[115] *Id*.

privacy class actions.[116]   All of these factors support a finding that the settlement is fair, reasonable, and adequate.

> ### 6.   The proposed notice and claims process are reasonable.

In order to protect the rights of absent class members, courts must ensure that the settlement class members receive the best notice practicable under the circumstances of the case.[117]   Procedural due process requires that affected parties have the right to be heard at a meaningful time and in a meaningful manner.  It does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[118]

Here, the settlement provides a fair notice procedure that includes (1) email notification, (2) U.S. mail notification via postcard, (3) a settlement website published on the Internet, (4) an on-line banner advertising program, (5) newspaper and magazine publication, (6) publication through TopClassAction.com, and (7) a press release.[119]   This multifaceted procedure will maximize the number of Settlement Class Members who will receive the Settlement Class Notice.[120]   The proposed notice campaign is designed to reach 70% of adults over the age of 18 who reside in California at least 1.6 times.[121]

Accordingly, the proposed notice program complies with the standards of fairness, completeness, and neutrality required of a settlement notice disseminated under authority of the Court.

> ### 7.   Plaintiffs will submit a separate application for the requested attorneys' fees, costs, and expenses.

Under the Settlement Agreement, Plaintiffs' Counsel will not seek more than 30% of the $11,700,000 non-reversionary Gross Settlement Amount (*i.e.*, between $2,925,000 and no more

---

[116] Grover Decl. at ¶¶ 2-4, 13, 42; Bernstein Decl. at ¶ 2, Ex. 1.

[117] *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).

[118] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

[119] Ex. 1 at ¶¶ 6.1-6.7, Settlement Agreement Exhibits B, C, D, E and F.

[120] Ex. 1 at ¶¶ 6.1-6.8.

[121] Finnegan Declaration at ¶ 16.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

than $3,510,000) in fees and actual out-of-pocket expenses, estimated not to exceed $100,000.[122] Plaintiffs' Counsel will file a motion for reasonable attorneys' fees, costs, and expenses at least 15 days prior to the opt-out/objection deadline so that Settlement Class Members will have an opportunity to inspect the fee application prior to the deadline for submitting objections or requests for exclusion.[123] At this point, Plaintiffs do not seek approval of the fees/costs provision, but ask only that the Court include the maximum potential fee request in the class notice so that the Settlement Class can be informed of the provision.

8.   The settlement provides a reasonable service award for the Settlement Class Representatives.

Named plaintiffs in class action litigation are eligible for reasonable service awards.[124] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."[125]  The factors courts use in determining the amount of service awards include: (1) a comparison between the service awards and the range of monetary recovery available to the class;[126] (2) time and effort put into the litigation;[127] (3) whether the litigation will further the public policy underlying the statutory scheme;[128] and (4) risks of retaliation.[129]

Those factors support the service awards requested here.  The reasonable enhancement awards of $15,000 each to Plaintiffs McCabe and Simpson and $7,500 to Plaintiff Sarabia are intended to compensate them for the critical role they played in this case, and the time, effort, and

---

[122] Ex. 1 at ¶ 3.2.

[123] Ex. 1 at ¶ 15; Grover Decl. at ¶ 46.

[124] *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

[125] *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving $300,000 payment to each class representative in employment action settling before class certification) (quoting *In Re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (approving incentive payments up to $85,000 for named plaintiffs in employment action settling prior to class certification); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action).

[126] *See Ingram*, 200 F.R.D. at 694*; Roberts*, 979 F. Supp. at 204.

[127] *S*ee *Van Vranken*, 901 F. Supp. at 299; *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

[128] *See Roberts*, 979 F. Supp. at 201 n.25.

[129] *See id.* at 202; *Cook*, 142 F.3d at 1016.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

risks they undertook in helping to secure the result obtained on behalf of the Class.[130]  In agreeing to serve as a Class Representatives, Plaintiffs formally agreed to accept the responsibilities of representing the interests of all Class Members.[131]

Defendant does not oppose the proposed enhancements to the Named Plaintiffs.  Plaintiffs will request approval of the proposed enhancements as part of the motion for attorneys' fees and litigation expenses.[132]  With that motion, the Plaintiffs will submit declarations addressing their respective efforts in the litigation.

## V.      CONCLUSION

Based on the foregoing, Plaintiffs request that this Court grant preliminary approval of the settlement consistent with the terms of the Settlement Agreement and the proposed order submitted herewith.

Dated:  April 15, 2015

**KELLER GROVER LLP**

By:     /s/ *Eric A. Grover*
        ERIC A. GROVER
        RACHAEL G. JUNG

        *Counsel for Plaintiffs*
        LAURA McCABE and LATROYA SIMPSON

---

[130] Grover Decl. at ¶¶ 23, 43-45.
[131] *Id.*
[132] *See* Grover Decl. at ¶ 45.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861