ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone:  (415) 543-1305
Facsimile:   (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
 **A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone:  (916) 447-0100
Facsimile:   (916) 933-5533

Attorneys for Plaintiffs
LAURA McCABE and LATROYA SIMPSON

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAURA MCCABE and LATROYA SIMPSON, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>SIX CONTINENTS HOTELS, INC.; and DOES 2 through 10, inclusive,<br><br>Defendants. | Case No: 3:12-cv-04818-NC<br><br>CLASS ACTION<br><br>**DECLARATION OF ERIC A. GROVER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:    May 20, 2015<br>Time:   1:00 p.m.<br>Ctrm:   7 - 4th Floor (San Jose)<br><br>Complaint Filed:  7/3/12<br>FAC Filed:           7/19/12<br>SAC Filed:           10/11/13<br>Trial Date:          None |

I, ERIC A. GROVER, declare as follows:

1. I am an attorney duly admitted to the practice of law in the State of California and before this Court. I am a partner in the law firm Keller Grover LLP, counsel for Plaintiffs Laura McCabe and Latroya Simpson and proposed plaintiff Christy Sarabia (hereinafter "Plaintiffs" or "Settlement Class Representatives") and proposed co-Class Counsel in this action. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently to the facts set forth below.

**Class Counsel's Experience:**

2. Between September 1988 and October 2005, I was first an associate and then a shareholder in the firm Littler Mendelson, P.C. Littler is the largest law firm in the United States specializing in labor and employment law. During my 17 years at Littler, I practiced extensively in all areas of labor and employment law, including wage and hour law and class action defense. I also have extensive litigation experience, including numerous arbitrations and trying a number of cases to verdict in state and federal courts.

3. In the time I worked at Littler, I worked on many class action matters. The following is a list of various class action matters for which I was the lead or co-lead defense attorney:

   a. *DLSE v. UI Video* (Blockbuster) (Alameda County) (Failure to provide uniforms.);

   b. *Vickery, et al. v. Cinema Seven, Inc.* (San Francisco County) (Independent contractor vs. employee status, overtime, minimum wage and expense reimbursement claims.);

   c. *ILWU, et al. v. DMS Messenger Services, et al.* (San Francisco County) (Overtime, minimum wage, expense reimbursement and waiting time penalties.);

   d. *Shields, et al. v. Lyon's Restaurants* (San Diego County) (Manager misclassification.);

   e. *O'Donnell, et al. v. Starving Students Movers* (Marin County) (Overtime, minimum wage and waiting time penalties.);

   f. *Cross, et al. v. Compass* (Sacramento County) (Overtime and waiting time penalties.);

g. *Flowers, et al. v. Starving Students Movers* (San Joaquin County) (Overtime, minimum wage and waiting time penalties.);

h. *Chen v. DMX Music, Inc.* (San Francisco County) (Improper chargebacks on commission payments.);

i. *Tiffany, et al. v. Hometown Buffet* (San Francisco County) (Manager misclassification.);

j. *Leoni, et al. v. Jetsetter Express, Inc.* (San Joaquin County) (Manager misclassification.);

k. *Solano v. Clark Pest Control* (Los Angeles County) (Technician/salesperson misclassification.);

l. *Guglielmino, et al. v. McKee Foods Corp.* (USDC-ND) (Independent contractor vs. employee status.); and

m. *Evets v. Guess?, Inc.* (San Francisco County) (Manager misclassification.).

4. Between October 15, 2005 and the present, I have been practicing law at Keller Grover LLP. At Keller Grover, approximately 95% of my time is spent representing plaintiffs in employment, privacy and data breach class action matters. I currently am lead counsel or co-lead counsel on more than 15 different class actions. I have been named Class Counsel in numerous recent wage and hour, privacy and data breach class action matters, including:

a. *Watson v. Ann Taylor Stores Corp.*, Los Angeles County Case No. BC342729;

b. *Novak v. Retail Brand Alliance, Inc., et al.*, Alameda County Case No. RG 05-223254;

c. *Jos. A. Banks Overtime Cases* (Coordinated Proceeding of *Palmtag v. Jos. A. Bank Clothiers, Inc.* and *McClure v. Jos A. Bank Clothiers, Inc.*, Solano County Case No. JCCP NO. 4479);

d. *Diaz v. Best Buy Stores, L.P.*, Alameda County Case No. Case No. RG 06-264187;

e. *Lozoya v. PA Acquisition Corp.*, et al, Alameda County Case No. RG 06-258395;

f. *Krispy Kreme Overtime Cases* (Coordinated Proceeding of *Avina v. Krispy Kreme Doughnut Corp. et al.* and *Hashimoto v. Krispy Kreme Doughnut Corp., et al.*, Alameda County Case No. JCCP No. 4489);

g. *Walgreens Overtime Cases* (Coordinated Proceeding of *Lebrecque v. Walgreen Healthcare Plus* and *Wright v. Walgreen Co.*, Los Angeles County Case No. JCCP 4387);

  h. *Gring v. Claire's Boutique's, Inc.*, Alameda County Case No. RG 05-247759;

  i. *Greene v. Federated Retail Holdings, Inc.* San Francisco County Case No. CGC 06-449456;

  j. *Stermer v. L'Occitane, Inc.*, San Francisco County Case No. CGC 06-456056;

  k. *Wilde v. Catalina Restaurant Group, Inc. et al.*, Los Angeles County Case No. BC347513;

  l. *Rogers v. Accentcare, Inc.*, Alameda County Case No. RG 05-237683;

  m. *Fleming v. Dollar Tree Stores, Inc.*, United States District Court, Northern District of California Case No. Case No. C 06-cv-03409 MJJ;

  n. *Corrado v. Valero Services, Inc.*, Alameda County Case No. RG 07-322134;

  o. *Stenroos v. Core-Mark International, Inc.*, San Mateo County Case No. CIV 451198;

  p. *Ford v. Pilot Travel Centers LLC*, United States District Court, Northern District of California Case No. C-07-cv-02715 TEH;

  q. *Elsbury v. Pizza Hut of Southeast Kansas, Inc.*, United States District Court, Eastern District of California Case No. EDCV 07-00695 SGL (JCRx);

  r. *Brior v. AE Retail West LLC*, San Francisco County Case No. CGC 06-455422;

  s. *Moore v. Genesco, Inc. et al.*, Alameda County Case No. RG 06-270570;

  t. *Stermer v. Ulta Salon, Cosmetics & Fragrance, Inc.*, San Francisco County Case No. CGC 08-427014;

  u. *Lauzon v. Club Monaco U.S., LLC, Polo Retail, LLC, and Polo Ralph Lauren Corporation*, San Francisco County Case No. CGC 06-449963;

  v. *Davenport v. Union Bank of California, N.A. and Unionbanc Investment Services LLC*, United States District Court, Central District of California Case No. 2:07-cv-00001 FMC (VBKx);

  w. *Jacobs v. Les Schwab Tire Centers of California, Inc., et al.*, San Francisco Superior Court Case No. CGC 08-478372;

  x. *Daniel Arias v. Praxair Distribution, Inc., et al.*, San Francisco Superior Court Case No. CGC 08-474506;

  y. *Flores, et al. v. Zale Delaware, Inc.*, United States District Court, Northern District of California Case No. 07-cv-00539 TEH;

  z. *Payan et al. v. MetroPCS, Inc.*, San Francisco County Case No. CGC 08-476703;

aa. *Njoku v. Ecko Direct, LLC*, San Francisco County Case No. CGC 07-469480;

bb. *Wiggins v. Cingular Wireless Employee Services, LLC*, San Francisco County Case No. CGC 08-477763;

cc. *Lee v. Marshalls of CA LLC*, Alameda County Case No. RG 07-337021;

dd. *Flores v. Cintas Corporation No. 2, Inc.*, Los Angeles County Case No. BC400422;

ee. *Drew v. HCR Manor Care Medical Services of Florida, LLC, et al.*, San Francisco County Case No. CGC 09-490181;

ff. *Ireland, et al. v. National Distribution Centers, L.P., et al.*, San Francisco County Case No. CGC 09-493709;

gg. *Lim-Hui v. Carter's Retail, Inc.*, San Francisco County Case No: CGC 09-484456;

hh. *Sefton v. OshKosh B'Gosh, Inc.*, San Francisco County Case No. CGC 09-484496;

ii. *Murphy v. Check n' Go of California, Inc.*, San Francisco County Case No. CGC 06-449394;

jj. *Wireless Advocates Wage and Hour Cases* (Coordinated Proceedings of *Turner, et al v. Wireless Advocates LLC*, *Reyna, et al. v. Wireless Advocates LLC* and *Burk v. Wireless Advocates LLC*), Los Angeles County Case No. JCCP 4600;

kk. *Matrix Service Wage and Hour Cases* (Coordinated Proceeding of *Hickman v. Matrix Service, Inc.* and *Alexander, et al. v. Matrix Service Company, et al.*), Alameda County Case No. JCCP 4610;

ll. *Sullivan v. Kelly Services, Inc.,* United States District Court, Northern District of California Case No. 08-cv-3893 CW;

mm. *Strickland, et al. v. Timec Company, Inc., et al.*, San Francisco County Case No. CGC 10-501832;

nn. *Davis and Duke v. Plant Performance Services LLC, et al.,* Alameda County Case No. RG 10-501301;

oo. *Jordan v. Directory Distributing Associates, Inc.,* San Francisco County Case No. CGC 10-500633;

pp. *Martin v. Total Safety U.S., Inc.,* Alameda County Case No. RG 10-533750;

qq. *Placer Title Company Wage and Hour Cases* (Coordinated Proceedings of *Shults v. Placer Title Co.* and *Nazeri v. Placer Title Co.*), Sacramento County Case No. JCCP 4567;

rr. *Martin, et al. v. Starcon International, Inc.,* Contra Costa County Superior Court Case No. MSC10-01071;

ss. *Meyer v. Irwin Industries, Inc.,* ADRS Case No. 11-3844-RAH;

tt. *Lazarin, et al. v. Total Western, Inc.,* JAMS Case No. 1100067385;

uu. *Potter v. Zale Delaware, Inc.,* Alameda County Superior Court Case No. RG 10-548469;

vv. *Canales, et al. v. Electrical & Instrumentation Unlimited of California, Inc.*, Kern County Superior Court Case. No. S-1500-CV-271947 WDP;

ww. *Schechter and Porter v. ISYS Solutions, Inc.,* Alameda County Superior Court Case No. RG 10-550517;

xx. *Gomez v. Pizza Hut of Southeast Kansas, Inc.*, San Bernardino County Superior Court Case No. CIVVS900679;

yy. *Hernandez v. Bodell Construction* Company, Alameda County Superior Court Case No. RG12-624600;

zz. *Gilliam v. Matrix Energy Services, Inc.*, Alameda County Superior Court Case No. RG11-592345;

aaa. *Tate v. Wyatt Field Services Co.*, Alameda County Superior Court Case No. RG 10-522846;

bbb. *Becerra, et al. v. RadioShack Corporation,* United States District Court, Northern District of California Case No. C-11-cv-03586 YGR;

ccc. *Vasquez, et al. v. Turnaround Welding Services, Inc.,* Contra Costa Superior Court Case No. MSC12-00340;

ddd. *Betten and Lafa v. Diamond Wireless, LLC,* United States District Court, Central District of California Case No. 2:13-cv-02885 CBM;

eee. *Martin v. AltairStrickland LLC*, Alameda County Superior Court Case No. RG11 575618;

fff. *Miller v. Southwest Airlines Co.*, United States District Court, Northern District of California Case No. C-12-cv-5978-CRB;

ggg. *Nguyen v. Equilon Enterprises LLC*, United States District Court, Northern District of California Case No. 4:12-cv-04650-YGR;

hhh. *Saunders v. StubHub Inc.*, San Francisco County Superior Court Case No. CGC-12-517707;

iii. *Oregel v. PacPizza, LLC*, Contra Costa County Superior Court Case No. MSC12-01454;

jjj. *Torres, et al. v. San Joaquin Community Hospital*, JAMS Case No. 1220043288;

kkk. *Hulsey v. San Joaquin Community Hospital*, JAMS Case No. 1210030884;

lll. *DeLeon, et al. v. NCR Corp.*, San Bernardino County Superior Court Case No. CIVDS1403274;

mmm. *Springer, et al. v. Stanford Hospital and Clinics, et al.*, Los Angeles County Superior Court Case No. BC470522;

nnn. *Ginn, et al. v. Certified Safety, Specialists LLC et al.*, Contra Costa County Superior Court Case No. C11-0969;

ooo. *Clothier v. SPAR Marketing Services, Inc.*, Alameda County Superior Court Case No. RG12-639317;

ppp. *St. Joseph Health System Medical Information Cases,* Orange County Superior Court JCCP Case No. 4716;

qqq. *Everhart and Everhart v. Advantage Sales & Marketing, LLC*, Alameda County Superior Court Case No. RG14-712100;

rrr. *Miller v. Hitachi America, Ltd.*, San Mateo County Superior Court Case No. CIV 526430;

sss. *Johnson and Storey v. Mobility Plus Transportation LLC, et al.*, San Francisco County Superior Court Case No. CGC-13-532872; and

ttt. *Tripp and Solberg v. Crossmark, Inc., et al.,* United States District Court, Northern District of California Case No. 3:12-cv-04818-NC.

**Factual and Procedural Background:**

5. Plaintiffs McCabe and Simpson filed their initial complaint on July 3, 2012 against original defendants Intercontinental Hotels Group Resources, Inc. and Intercontinental Hotels of San Francisco, Inc. in Alameda County Superior Court. On July 20, 2012, Plaintiffs McCabe and Simpson filed the First Amended Complaint naming Defendant Six Continents Hotels, Inc. ("Defendant" or "Six Continents") as a defendant.

6. Defendants removed the action to this Court on September 14, 2012. (Dkt. 1.) On May 20, 2013, the Court signed an order granting the Parties' stipulation to dismiss without prejudice defendants Intercontinental Hotels Group Resources, Inc. and Intercontinental Hotels of San Francisco, Inc., leaving Six Continents as the only remaining defendant. (Dkt. 38.) Following a contested motion, on October 13, 2013, Plaintiffs McCabe and Simpson filed the Second Amended Complaint, in which they allege unlawful call recording claims on behalf of a putative class of California callers who made cellular or cordless telephone calls to Defendant that were routed to certain call centers operated by Defendant and recorded without consent in violation of California Penal Code § 632.7. (Dkt. 54.)

7. As part of the settlement, Plaintiffs seek the Court's for permission to file a Third Amended Complaint adding an additional named plaintiff, Christy Sarabia, and a cause of action

for violation of California Penal Code § 632, which covers the recording of confidential communications without consent. A clean version of the proposed Third Amended Complaint is attached as **Exhibit G** to the Settlement Agreement and Release ("the Settlement Agreement"), a true and correct copy of which is attached hereto as **Exhibit 1**. A redlined version of the proposed Third Amended Complaint is attached hereto as **Exhibit 2.**

8. Defendant has vigorously denied all of the allegations in their entirety. To date, no class has been certified and no court has made any findings Defendant engaged in any wrongdoing or in any wrongful conduct or otherwise acted improperly or in violation of any state law, rule or regulation, with respect to the issues presented in the litigation.

9. The Parties conducted significant discovery during the litigation. Plaintiffs propounded multiple sets of written discovery and reviewed nearly 11,000 pages of documents that Defendant produced. Plaintiffs took six depositions. Defendant also propounded written discovery. Defendant deposed Plaintiffs McCabe and Simpson, proposed Plaintiff Sarabia, an additional fact witness and three experts named by Plaintiffs.

10. The Parties also have engaged in substantive motion practice. Defendant filed motions to dismiss the First and Second Amended Complaints. (Dkts. 5 and 56.) Plaintiffs filed a motion to amend the complaint. (Dkt. 41.) The Parties also had one discovery dispute resolved by the Court.

11. Plaintiffs McCabe and Simpson filed a motion for class certification, which Defendant opposed. (Dkts. 80 and 88.) Defendant filed a motion for summary judgment and a motion to exclude certain expert testimony submitted by Plaintiffs in support of class certification. (Dkts. 90 and 91.) Plaintiffs opposed both motions. (Dkts. 106 and 108.) While awaiting a hearing on the fully briefed class certification, summary judgment and expert testimony motions, the Parties agreed to mediate the case. On January 22 and January 30, 2015, the Parties engaged in mediation sessions with the Hon. Louis M. Meisinger (Ret.), formerly of the Los Angeles County Superior Court and a former Executive Vice-President and General Counsel of The Walt Disney Company. Although the Parties did not reach an agreement at the mediation sessions, with Judge Meisinger's assistance, the broad terms of an agreement were

reached several days after the second mediation session. All terms of the Parties' settlement are set forth in the Settlement Agreement.

12. The Settlement Agreement provides for a Settlement Class defined as: All persons who, while residing or located in California, placed a call to one of Defendant's toll-free telephone numbers at any time during the period from March 1, 2011 through July 18, 2012, inclusive, and spoke with a representative. Excluded from the Settlement Class are persons who validly opt out of the settlement.

**Class Counsel's Assessment of the Fairness of the Settlement:**

13. As will be explained in more detail below, based on my years of experience and my own independent investigation and evaluation, I am of the opinion that settlement for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate and it is in the best interests of the Settlement Class in light of all known facts and circumstances and the expense and risk inherent in litigation. Moreover, I am familiar with class actions involving California Invasion of Privacy Act issues and have a strong understanding of the trends in both the likelihood of certification and the value of settlement.

14. Defendant has raised numerous defenses to the class claims. Defendant has argued, among other things, that Plaintiffs' Penal Code § 632.7 claims are barred by the statute of limitations, Section 632.7 does not apply to calls answered by VoIP devices or computers, the California Invasion Privacy Act exempts call recording done for "service observing" purposes, a class-wide damage award would violate the Due Process Clause, and the Commerce Clause prohibits the application of Section 632.7 on recording of calls outside of California, arguing that it is an improper direct regulation of interstate commerce and places an undue burden on interstate commerce. (Dkt. No. 91-1).

15. In addition, Defendant also has argued that a class is not ascertainable and that individual issues would predominate over common issues. Defendant, for example, has argued that ascertainability, commonality and predominance cannot be established because Plaintiffs cannot establish on a class basis which callers called Six Continents, their location at the time of the call, which calls were made from cordless telephones, whether a particular call was recorded,

whether the caller consented to the recording, what type of device was used to answer the call, and whether a particular call was made during the limitations period. (Dkt. No. 88). Based on these arguments, Defendant contends that Plaintiffs were about to lose the contested class certification motion.

16. When compared in per capita terms, the proposed settlement in this action compares favorably against nine telephone recording settlements that received final approval. By "per capita terms," I am referring to a comparison of the maximum settlement amount divided by the total number potential class members. The settlement in this case provides that Defendant will pay a total settlement amount of $11,700,000 to resolve the claims covered by the settlement. Based on a review of its call center records, Defendant estimated that incoming calls from approximately 698,000 unique telephone numbers with California Area Codes were routed to one of Defendant's call centers during the Class Period. This results in a per capita value of $16.76 per potential class member.

    a. In *Skurov. BMW of North America, LLC,* USDC CD Case No. 10-cv-8672 GW, the settlement involved 40,000 class members and gave them the option of selecting a six month extension of the BMW Assist basic safety plan or making a cash claim. If all class members selected the cash option, the per capita value of the cash option would be $7.50 ($300,000/40,000 class members).

    b. In *Marenco v. Visa Inc.,* USDC CD Case No. 10-cv-8022 DMG, the court approved an $18,000,000 settlement for a class that numbered 600,000. Thus, the per capita monetary recovery in that case was $30 per class member ($18,000,000/600,000 class members).

    c. *Batmanghelich v. Sirius XM Radio, Inc.,* USDC CD Case No. 09-cv-9190 VBF settled for $9,480,000. The class size exceeded 1,700,000. At 1,700,000 class members, the per capita monetary recovery in that case was $5.77 per class member ($9,480,000/1,700,000 class members).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

    d.    In *Greenberg v. E-Trade Financial Corporation,* Los Angeles County Superior Court Case No. BC360152, the court approved a $7,500,000 settlement covering as many as 1,400,000 class members, which resulting in a per capita monetary recovery of $5.38 per class member ($7,500,000/1,000,000 class members).

    e.    In *Nader v. Capital One Bank (USA)*, *N.A.,* USDC CD Cal. Case No. 2:12-cv-01265-DSF, the court approved a settlement of $3,000,000 for 1,100,000 class members, equating to a per capita recovery of $2.73 per class member ($3,000,000/1,100,000 class members).

    f.    In *Cohorst v. BRE Properties, Inc. et al.,* USDC SD Cal. Case No. 10-cv-2666, the court approved a $5,500,000 settlement covering as many as 1,170,584 class members. In per capita terms, recovery in that case amounted to approximately $4.70 per potential class member ($5,500,000/1,170,584 potential class members).

    g.    In *Knell v. FIA Card Services,* USDC SD Cal. Case No. 12-CV-00426-AJB-WVG, the court approved a $2,750,000 settlement covering 3,650,000 class members. This resulted in a per capita recovery of $0.75 per class member ($2,750,000/3,650,000 class members).

    h.    *Hoffman v. Bank of America,* USDC SD Cal. Case No. Case No. 3:12-cv-00539-JAH-DHB, settled for $2,600,000. The class size exceeded 1,400,000. At 1,400,000 class members, the per capita monetary recovery in that case was $1.86 per class member ($2,600,000/1,400,000 class members).

    i.    In *Mount v. Wells Fargo.,* Los Angeles Superior Court Case No. BC395959, the court approved a $5,600,000 settlement covering as many as 600,000 class members. In per capita terms, recovery in that case amounted to approximately $9.33 per class member ($5,600,000/600,000 class members).

17. As further described below, based on that knowledge, I am of the opinion that the settlement is fair, reasonable and adequate and is in the best interests of the Settlement Class.

18. The settlement is a good compromise for the damages of absent Settlement Class Members. The settlement provides that Defendant will pay a total non-reversionary settlement amount of $11,700,000 to resolve the claims covered by the settlement. After subtracting out approximately $500,000 to pay the costs of notice and administration, the amounts allocated to the fees and costs of Settlement Class Counsel (not to exceed $3,510,000 and approximately $100,000, respectively), and the Settlement Class Representative enhancement awards (not to exceed $37,500 total), the remaining portion of the Net Settlement Fund – which is estimated to be $7,552,500 -- will be available for distribution to the Settlement Class Members who file timely and valid claims.

19. The settlement provides that Settlement Class Members who submit valid and timely Claim Forms will receive a payment from the Net Settlement Fund on a pro rata basis depending on how many claims are filed, with a maximum payment of $5,000 per Class Member.

20. If the payments for Settlement Class Members' claims do not exhaust the Net Settlement Fund, any remaining amount (as well as the funds represented by any uncashed settlement checks) will be paid to the Parties' selected *cy pres* beneficiaries, Consumer Action and Electronic Frontier Foundation, subject to the Court's approval. Consumer Action is a non-profit organization that provides advocacy and education for consumers regarding financial and privacy issues.[1] Electronic Frontier Foundation is a non-profit organization that defends against technological privacy violations, among other civil liberty issues, through litigation, policy-making and education.[2] Because this action involves a putative class of consumers who allege privacy violations through call recording practices, the two organizations are aligned with the purpose of the lawsuit and provide indirect benefits to the Settlement Class Members

---

[1] See Consumer Action's website for additional information: http://www.consumer-action.org.

[2] *See* Electronic Frontier Foundation's website for additional information: https://www.eff.org.

GROVER DECLARATION ISO MOTION FOR PRELIMINARY APPROVAL - 11 - CASE NO. 3:12-cv-04818-NC
EAST\97590937.1

21. Defendant will not have a reversionary interest in any portion of the $11,700,000 Gross Settlement Amount.

22. The settlement also gives all Settlement Class Members the opportunity to request exclusion from the settlement or object to the settlement terms.

23. The settlement also provides the Settlement Class Representatives with reasonable enhancements of not more than $15,000 to McCabe and Simpson and $7,500 to Sarabia for the risks, time and effort they expended in coming forward to provide invaluable information in support of the claims alleged in the complaint.

24. The settlement also provides a fair notice procedure that includes email notification, U.S. mail notification via postcard, a settlement website, online banner advertising newspaper and magazine publication, publication through TopClassAction.com, and a press release, all of which is intended to ensure that the largest practical number of Settlement Class Members will receive notice of the Settlement.[3] The proposed class notice materials explain in plain language the nature of the lawsuit, the terms of the settlement, Class Members' rights, and the steps necessary to submit a claim, request exclusion, and/or object to the settlement.

25. The Settlement Agreement provides that, excluding telephone numbers associated with its franchised hotels, Defendant shall compile a list of the unique telephone numbers associated with telephone calls to Defendant from California Area Codes that were routed to one of its call centers during the Class Period, March 1, 2011 through July 18, 2012, inclusive. Defendant then will cross-reference that list of unique telephone numbers, which is estimated to be approximately 698,000, through its Holidex and Magic customer-related databases and search for names, mailing addresses, additional telephone numbers and/or email addresses associated with the list. Additionally, Defendant will run searches of its customer-related databases in an effort to locate contact information associated with individuals who provided a California mailing address to Defendant at any time during the period from January 1, 2010 through

---

[3] Filed herewith is the Declaration of Jeanne Finegan of HF Media LLC, an affiliate of the proposed claims administrator, Heffler Claims Group, explaining that the proposed notice campaign is designed to reach 70% of all adults over the age of 18 who reside in California at least 1.6 times.

December 31, 2012, inclusive. All of the information collected by Defendant, taken in total, shall be referred to as the Potential Class Member Contact List.

26. Under the Settlement Agreement, no more than 45 days after the Court grants preliminary approval, Defendant must provide the Potential Class Member Contact List to Heffler Claims Group ("Heffler" or "Claims Administrator"), the parties' selected Claims Administrator. Heffler will run reverse directory searches on the phone numbers that Defendant provides in order to obtain the names and/or mailing addresses associated with each telephone number for which no name or mailing address was provided. Heffler will also run all of the addresses though the National Change of Address or comparable database before mailing the Postcard Settlement Class Notice (in the form of **Exhibit C** to the Settlement Agreement).

27. Not later than 75 days after the Court enters an order granting preliminary approval, Heffler must send to each of the email addresses the Email Settlement Class Notice (in the form of **Exhibit D** to the Settlement Agreement).

28. Not later than 75 calendar days after the Court enters an order granting preliminary approval, the Claims Administrator must mail the Postcard Settlement Class Notice (in the form of **Exhibit C** to the Settlement Agreement) via U.S. mail to each Settlement Class Member with an identified mailing address.

29. Not later than 50 calendar days after the Court enters the preliminary approval order, the Claims Administrator will publish a website on the internet at the URL www.HotelCallRecordingSettlement.com (or a similar name if that one is not available) ("Settlement Website") which shall set forth a summary of the terms of the settlement, state the means by which Settlement Class Members may communicate with the Claims Administrator (including but not limited to the Claims Administrator's business name, address, telephone number, and e-mail address), and contain a set of Frequently Asked Questions and corresponding answers, instructions on how to submit a Claim Form (both electronically and by mail) and the deadline associated therewith, instructions on how to object and opt out of the settlement and the deadlines associated therewith, and a toll-free telephone number which Settlement Class Members may call to

reach the Claims Administrator with questions. The Settlement Website also shall provide, free of charge, a viewable, printable and downloadable copy, in PDF file format, of each of the following documents: this Agreement; the Third Amended Complaint; the Answer to the Third Amended Complaint; the Court's order preliminarily approving the Class Action Settlement and certifying the Settlement Class; the Claim Form (**Exhibit A**); the Long-form Settlement Class Notice (**Exhibit B**); the Motion for an award of attorney's fees, litigation costs, administration costs, and the Settlement Class Representatives' enhancement award; and the Motion for Final Approval. The Settlement Website shall remain active for 180 calendar days after the Settlement Effective Date.

30. Additionally, 50 calendar days after the entry of the preliminarily approval order, Heffler will initiate an on-line banner advertising campaign that will continue for 115 days. The on-line program will utilize data targeting, contextual targeting and geo-targeting to reach adults in California with an emphasis on users with past travel purchases and a history of visiting websites with hotel and travel content. The online program will be delivered over the Xaxis network of more than 2,000 websites and Facebook. The banner and Facebook ads, which will include a live link to the Settlement Website, www.HotelCallRecordingSettlement.com, will be drafted by the Claims Administrator and approved by the Parties. The intent of the banner and Facebook ads is to communicate the following information in a format suggested by the Claims Administrator and approved by the Parties: "If You Called Priority Club Rewards® or any of the Following Hotel Brands From California Between March 1, 2011 and July 18, 2012, Inclusive, **You Could Get Money From a Class Action Settlement**: Holiday Inn®, Holiday Inn Express®, Crowne Plaza Hotels and Resorts®, InterContinental Hotels and Resorts®, Staybridge Suites®, Candlewood Suites® or Hotel Indigo®."

31. The Claims Administrator also will issue a press release substantially in the form of **Exhibit F** and ensure that notice of the settlement is posted on TopClassActions.com and distributed through PR Newswire California.

32. Between 75 and 90 days after the entry of the preliminarily approval order, the Claims Administrator also will twice cause the Publication Notice (in the form of **Exhibit E** to

the Settlement Agreement) to be published in the following newspapers that are distributed throughout San Francisco, Alameda, Santa Clara, Monterey, Los Angeles, Orange, and San Diego counties: *San Francisco Examiner, SF Weekly, Oakland Berkeley East Bay Express, Silicon Valley Metro, Bay Area Report, Monterey County Weekly, San Diego Reader,* and *LA/OC Weekly.* In addition, between 75 and 90 days after entry of the Court's preliminary approval order, the Claims Administrator shall cause the Publication Notice to be published once in Parade Magazine's California edition.

33. My firm and co-counsel conducted an extensive investigation of the factual allegations involved in this case. We reviewed thousands of documents that Defendant produced and obtained relevant evidence by deposing six witnesses. As part of the settlement negotiations, we also engaged in meaningful discussions with counsel for the Defendant.

34. I am of the opinion that the settlement for each participating class member is fair, reasonable, and adequate, given the inherent risks of litigation, the risk relative to class certification, the amount that each Class Member could recover at trial, and the costs of pursuing such litigation. The settlement is the result of extensive, arms'-length negotiations.

35. The fairness of the settlement is further demonstrated by the uncertainty and risks to the Plaintiffs involved both in not obtaining class certification or prevailing on the merits. Defendant adamantly disputes Plaintiffs' ability to certify the class and prove that Defendant is liable to the class for its call recording practices. Were a class not certified, it is unlikely that few, if any, additional putative class members would maintain individual actions against Defendant.

**Suitability of the Settlement Class for Certification**

36. To date, no class has been certified. The Settlement Agreement reached among the Parties contains a provision under which we stipulate to the Court's provisional certification of the Settlement Class, but do so for purposes of this settlement only.

37. As one of the proposed Class Counsel, I believe that Plaintiffs could successfully prove that this action meets the requirements of class certification; however, I understand that counsel for Defendant disagrees.

38. The proposed Settlement Class is ascertainable because the members are identifiable from Defendant's records and computer systems, as discussed above.

39. Further, the size of the proposed class is sufficiently numerous to warrant certification. According to Defendant's records, the Settlement Class is estimated to include as many as 698,000 individuals whose calls made while located in California were routed to its call centers during the defined Class Period.

40. The proposed Settlement Class Members' claims all stem from a common set of circumstances. All of the Settlement Class Members made calls to one of Defendant's toll-free customer service telephone numbers from a telephone while located in California during the relevant time period. Plaintiffs contend that all Settlement Class Members were subject to call recording policies and practices that applied to all calls routed to Defendant's toll-free numbers. Whether Defendant's uniform practices and policies violated Penal Code §§ 632 and 632.7 creates questions of law and fact common to all Settlement Class Members. All Settlement Class Members seek the same legal remedies under Penal Code §637.2. Under these circumstances, the requirements that common questions of law and/or fact exist among the Class Members and will predominate over individual questions are satisfied for purposes of certifying the proposed Class for settlement.

41. Plaintiffs McCabe, Simpson and Sarabia, the proposed Settlement Class Representatives, like all of the proposed Settlement Class Members, made calls during the Class Period to certain one or more of Defendant's toll-free customer-service lines from a telephone while located in California that were allegedly recorded without their consent. Thus, the Named Plaintiffs' claims arise from the same course of conduct from which the Settlement Class Members' claims arise.

42. Plaintiffs also have demonstrated that they will aggressively and competently assert the interests of the Settlement Class Members. Plaintiffs have retained competent counsel who are experienced in litigating class action claims, including those involving alleged violations of the California Invasion of Privacy Act, Penal Code §§ 630, *et seq.*

**Named Plaintiffs' Enhancements:**

43. It is appropriate to recognize the contributions of the Settlement Class Representatives in prosecuting this litigation. I am of the opinion that it is fair and reasonable that Plaintiffs McCabe and Simpson each receive a $15,000 enhancement payment and for Plaintiff Sarabia to receive a $7,500 enhancement payment. The Plaintiffs are the proposed Settlement Class Representatives and have actively and aggressively represented the proposed class throughout this litigation. The Plaintiffs were an essential element in the successful prosecution and ultimate settlement of this case and always were available to provide their input on the litigation and gather evidence and other information that proved critical to the prosecution.

44. The enhancement amounts are fair given the amount of time and effort the Plaintiffs each spent assisting in the prosecution of this case and the personal hardship and pressure they faced as a result of filing this lawsuit against Defendant.

45. The Plaintiffs will provide declarations outlining their efforts on behalf of the Settlement Class as part of the motion for attorneys' fees and litigation expenses.

**Attorneys' Fees and Costs**

46. The settlement permits Plaintiffs to seek an award of attorneys' fees and litigation expenses in connection with the final approval process. Plaintiff will file a motion seeking reasonable attorneys' fees and out-of-pocket costs no later than 15 days before the deadline for objections to the settlement.

I declare, under penalty of perjury, under the laws of the United States and the State of California, that the foregoing is true and correct. Executed this 15th day of April 2015 at San Francisco, California.

/s/ *Eric A. Grover*
ERIC A. GROVER