1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9

10   LAURA MCCABE, et al.,

11                 Plaintiffs,                Case No. 12-cv-04818 NC

12        v.                                  **ORDER GRANTING CLASS**
                                              **CERTIFICATION AND**
13   SIX CONTINENTS HOTELS, INC.,             **PRELIMINARY APPROVAL OF**
                                              **CLASS ACTION SETTLEMENT**
14                 Defendant.                 Re: Dkt. No. 139

15

16        This case arises out of defendant's alleged policy and practice of recording calls

17   made to its call centers without giving notice to callers.  Plaintiffs sue on behalf of all

18   California residents who called defendant, alleging that defendant's recording policies

19   violate the California Penal Code.  While plaintiffs' motion for class certification and

20   defendant's motion for summary judgment were pending with the Court, the parties settled

21   the case.  As part of the settlement, defendant agreed to pay $11,700,000 and to not oppose

22   plaintiffs' motion for class certification.  In addition, defendant agreed not to oppose

23   plaintiffs' motion to amend the complaint to add a plaintiff and claim for settlement

24   purposes.

25        Before the Court are plaintiffs' motions to amend the complaint, for class

26   certification, and for preliminary approval of the class action settlement.  The Court held a

27   preliminary approval hearing on May 20, 2015.  No objectors appeared.

28        The Court conditionally GRANTS plaintiffs' request to amend the complaint.

Case No. 12-cv-04818 NC

1   Because the Court finds that the proposed class meets the requirements for certification

2   under Federal Rules of Civil Procedure 23(a) and 23(b)(3), the Court GRANTS plaintiffs'

3   motion for class certification.  Additionally, plaintiffs have made a sufficient showing for

4   the purposes of preliminary approval, so the Court GRANTS their motion for preliminary

5   approval of the class action settlement.

6   **I.      BACKGROUND**

7          **A. Plaintiffs' Allegations**

8          Plaintiffs' complaint alleges that defendant Six Continents Hotels, Inc. has a policy

9   and practice of recording and/or intercepting, without the consent of all parties, customer-

10   initiated calls routed to certain call centers.  Third Amended Complaint, Dkt. No. 139-3 at

11   ¶ 1.[1]  Defendant operates six call centers to which all calls originating from the United

12   States were routed.  *Id.*  Before July 18, 2012, one center warned callers that calls could be

13   recorded or monitored, while the other five did not.  *Id.*  The five call centers that did not

14   warn callers are the subject of this lawsuit.  *Id.*  Plaintiffs allege that calls regarding

15   defendant's hotels and programs, including the Priority Club Rewards, Holiday Inn

16   Express, Crowne Plaza Hotels and Resorts, InterContinental Hotels and Resorts,

17   Staybridge Suites Hotels, Candlewood Suites Hotels, and Hotel Indigo, all connect callers

18   with the five relevant call centers.  *Id.* at ¶ 2.  Plaintiffs further allege that on or before July

19   18, 2012, defendant intentionally and surreptitiously recorded or monitored telephone calls

20   made to the call centers.  *Id.* at ¶ 3.

21          Plaintiffs alleges that defendant's policy and practice of recording and monitoring

22   calls without consent violates California's Invasion of Privacy Act, specifically Penal Code

23   § 632.7.  *Id.* at ¶ 4.  Section 632.7 prohibits the recording or monitoring a communication

24   made from a cellular or cordless telephone without the consent of all parties to the

25   communication.  *Id.*  Penal Code § 632 similarly prohibits recording or intercepting

26

27   [1] As discussed below, Section II.A., the Court grants plaintiffs' request to amend the
    complaint and will use the third amended complaint as the operative complaint for
28   purposes of preliminary approval of the settlement.  That complaint has been submitted on
    the record as Exhibit G of the settlement agreement, Dkt. No. 139-3.

United States District Court
Northern District of California

confidential communication without the consent of all parties.  *Id.*

Plaintiffs Laura McCabe, Latroya Simpson, and Christy Sarabia are all residents of California.  *Id.* at ¶ 6.  Defendant is a corporation headquartered in Atlanta, Georgia and systematically and continuously does business in California with California residents.  *Id.* Between 2010 and June 2012, each of the plaintiffs called one or more of the defendant's toll-free numbers from California using either a cellular or hardwired landline phone, was routed to a call center, and was not warned that her call could be recorded or monitored. *Id.* at ¶¶ 14-17.  Plaintiffs allege that their calls were recorded and monitored by defendant. *Id.* at ¶ 17.

Plaintiffs bring this action under Federal Rule of Civil Procedure 23 on behalf of themselves and the class, defined as "all person who, while residing or located in California at any time during the applicable limitations period preceding July 8, 2012 original filing of this complaint and through July 18, 2012, used a cellular or cordless telephone to call a toll-free telephone number operated by defendant and were recorded and/or monitored by defendant surreptitiously or without disclosure."  *Id.* at ¶ 19. Plaintiffs also bring this action on behalf of an additional class with the same definition, except individuals who used a hardwired landline telephone instead of a cellular or cordless telephone.  *Id.* at ¶ 20.

### B.  Procedural History

Plaintiffs McCabe and Simpson filed their initial complaint on July 8, 2012, against original defendants Intercontinental Hotel Group Resources, Inc. and Intercontinental Hotels of San Francisco, Inc. in Alameda County Superior Court.  Dkt. No. 1.  On July 20, 2012, plaintiffs filed their first amended complaint naming Six Continent Hotels, Inc. as a defendant.  *Id.*  Defendants timely removed this action to federal court in September 2012. *Id.*  In May 2013, plaintiffs stipulated to dismiss defendants Intercontinental Hotel Group Resources, Inc. and Intercontinental Hotels of San Francisco, Inc., leaving Six Continents Hotels, Inc. as the only remaining defendant.  Dkt. No. 54.  On July 8, 2014, plaintiffs moved to certify the class, which defendant contested.  Dkt. Nos. 80, 88, 89.  While the

Case No. 12-cv-04818 NC            3

United States District Court
Northern District of California

1   motion for class certification was pending, on August 21, 2014, defendant moved for

2   summary judgment.  Dkt. No. 91.  While both motions were pending with the Court, the

3   parties engaged in two mediation sessions on January 22 and 30, 2015, with the Hon.

4   Louis M. Meisinger (Ret.).  Dkt. No 139, Grover Decl. at ¶ 11.  The parties did not reach

5   an agreement at the mediation sessions, but came to a settlement agreement shortly after.

6   Dkt. No 139 at 4; Dkt. No. 132.  On April 15, 2015, plaintiffs moved for this Court to (1)

7   grant preliminary approval of the settlement; (2) conditionally grant certification of the

8   proposed settlement class solely for the purposes of settlement; (3) approve the

9   appointment of Heffler Claims Group as the claims administrator; (4) authorize notice

10  pursuant to the proposed notice plan; (5) schedule a fairness and approval hearing; (6)

11  appoint Laura McCabe, Latroya Simpson, and Christy Sarabia as settlement class

12  representatives; and (7) appoint Eric A. Grover, Rachael G. Jung, and Scot D. Bernstein as

13  settlement class counsel.  Dkt. No. 139 at 2.  Defendant did not oppose the motion.  On

14  May 20, 2015, the Court held a hearing on the motion, and subsequently asked for

15  supplemental briefing from plaintiffs.  Dkt. Nos. 144, 145.

16      **C. Jurisdiction**

17      This case was removed from state court by defendants under 28 U.S.C. § 1332(d),

18  the Class Action Fairness Act.  Dkt. No. 1 at 2.  The plaintiffs and proposed class members

19  are California residents.  *Id.* at 3.  Defendant is incorporated in Delaware with a principal

20  place of business in Georgia.  *Id.*  The amount in controversy exceeds $5 million.  *Id.*

21  Therefore, the Court has jurisdiction under the Class Action Fairness Act.  All parties have

22  consented to magistrate judge jurisdiction.  Dkt. Nos. 7, 8.

23      **D.  Overview of the Class Settlement Agreement**

24          **1.      Class Definition**

25      The settlement agreement defines the class as, "All persons who, while residing or

26  located in California, placed a call to one of Defendant's toll-free telephone numbers at

27  any time during the period from March 1, 2011 through July 18, 2012, inclusive, and

28  spoke with a representative."  Dkt. No. 139-1 at ¶ 1(h).  Based on defendant's records of

United States District Court
Northern District of California

1  unique telephone numbers with California area codes made to defendant's toll-free

2  numbers, the parties estimate approximately 698,000 individuals in the class.  *Id*. at ¶ 1(h),

3  6.1.

### 2.  Monetary Payment to the Class

5  Under the settlement, defendant will pay the sum of $11,700,000.  *Id*. at ¶ 3.1.

6  Those class members who have submitted approval claims will receive an equal part of the

7  $11,700,000 payment after administration costs, attorneys' fees and costs, and the class

8  representatives' awards have been deducted from this amount, up to a maximum payment

9  of $5,000 per person.  *Id.* at ¶ 3.5.

10  The settlement further provides that, in the event that all class members are paid the

11  maximum $5,000 award, and there is additional settlement money available; or, in the

12  event that any check to a claimant is uncashed 90 days after distribution, the unused funds

13  will be turned over in equal parts to Electronic Frontier Foundation and Consumer Action,

14  San Francisco-based non-profits that provide advocacy and education on behalf of

15  consumers.  *Id.* at ¶ 3.5.

### 3.  Incentive Awards, Attorneys' Fees and Costs, and Administration Costs

18  Under the settlement agreement, the $11,700,000 payment includes all attorneys'

19  fees and costs, administration costs, and the class representatives' awards approved by the

20  Court.  *Id.* at ¶ 6.1.  The settlement agreement provides that the class representatives will

21  receive a maximum award of $15,000 each to McCabe and Simpson and $7,500 to

22  Sarabia.  *Id.* at ¶ 3.3.  Class counsel may seek an award of attorneys' fees no more than

23  $3,510,00, which is 30% of the gross settlement amount, and costs not to exceed $100,000.

24  *Id.* at ¶ 3.2.  The settlement agreement provides that defendant may not oppose the cost

25  request or an attorneys' fee request of 25% of the gross settlement amount or less.  *Id.* at ¶

26  3.2.  The settlement agreement also allocates $500,000 for a claims administrator's costs of

27  providing notice to the settlement class and administering the settlement.  *Id.* at ¶¶ 3.4, 4.1,

28  4.2.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 4.      Release of Claims

The settlement agreement further provides that, upon final entry of the court, the

following release applies:

> The Settlement Class Representatives and each Settlement
> Class Member, and their respective heirs, assigns, successors,
> agents, attorneys, executors, and representatives, shall be
> deemed to have and by operation of this agreement and the
> final approval order and judgment shall have fully, finally,
> irrevocably, and forever released Six Continent Hotels, Inc.
> and its past or present direct and indirect parents, affiliates and
> subsidiaries (whether or not wholly owned) and their
> respective directors, officers, employees, agents, insurers,
> shareholders, members, attorneys, advisors, consultants,
> representatives, partners, affiliates, related companies, parents,
> subsidiaries (whether or not wholly owned), joint ventures,
> independent contractors, vendors, wholesalers, resellers,
> distributors, retailers, clients, divisions, franchisees, licensees,
> predecessors, successors, and assigns and each of them
> (collectively, the "Released Parties") from any and all
> liabilities, claims, causes of action, damages (whether actual,
> compensatory, statutory, punitive or of any other type),
> penalties, costs, attorneys' fees, losses, or demands, whether
> known or unknown, existing or suspected or unsuspected, that
> were or reasonably could have been asserted based on the
> factual allegations contained in the Action, or relate to or arise
> out of the alleged recording, monitoring, eavesdropping upon
> telephone calls made to Defendant or any other Released
> Parties prior to July 19, 2012 (collectively, the "Released
> Claims"). The Released Claims include, but are not limited to,
> claims that were or reasonably could have been asserted based
> on the factual allegations contained in the Action alleging
> violation of any law prohibiting or regulating the monitoring,
> recording, or eavesdropping on telephonic calls without the
> consent of all parties, including but not limited to any claims
> under California Penal Code §§ 631, 632, 632.7, 637.2. The
> Released Claims also include but are not limited to claims
> under any other California or federal statute, code, rule or
> regulation that regulates or restricts the monitoring, recording
> or eavesdropping on telephone calls.

Dkt. No. 139-2 at ¶ 11. Additionally, the settlement class members waive their rights

under California Civil Code § 1542. *Id.* at ¶ 11.2.

### 5.      Class Notice

The settlement agreement provides for a notice procedure that includes notification

via U.S. mail, email, a settlement website, an online banner program, newspaper

publication, and press release. Dkt. No. 139 at ¶¶ 6.1-6.8. Defendant will compile a list of

Case No. 12-cv-04818 NC                          6

1   the unique telephone numbers associated with telephone calls to defendant from California

2   area codes that were routed to one of its call centers during the class period.  Defendant

3   estimates the list will be approximately 698,000 unique phone numbers, which it will

4   cross-reference through its databases to search for names, mailing addresses, and

5   additional telephone numbers.  The contact information for potential class members will be

6   provided to the claims administrator.

7   **II.    DISCUSSION**

8       **A. Amended Complaint**

9         As part of the settlement agreement, the parties agreed that plaintiffs will seek the

10   Court's permission to file a third amended complaint which adds a named plaintiff, Christy

11   Sarabia, and a cause of action for violation of California Penal Code § 632, which covers

12   the recording of confidential communications without consent.  Dkt. No. 139-2 at ¶ A.

13         The settlement agreement provides that the defendant stipulates to amend the

14   complaint only for settlement purposes, but does not stipulate to the amendment if

15   settlement is not approve or is defeated by its own terms.  Dkt. No. 139-2 at ¶ 2.4.

16   However, plaintiffs ask the Court to appoint Sarabia as a settlement class representative as

17   part of the preliminary approval.  Dkt. No. 139 at 14-15.  Additionally, the settlement

18   release includes a release of California Penal Code § 632 claims.  Dkt. No. 139-2 at ¶ 11.

19         Federal Rule of Civil Procedure 15(a)(2) permits a plaintiff to amend its pleading

20   with the opposing party's written consent.  Where the parties have agreed to file an

21   amended complaint as part of the class settlement, judges in this district have granted leave

22   to amend, subject to the terms of settlement.  *See Miller v. Ghirardelli Chocolate Co.*, 12-

23   cv-04936 LB, 2014 WL 4978433, at *7 (N.D. Cal. Oct. 2, 2014) (granting leave to amend

24   for settlement purposes, but voiding the amendment if no final settlement occurs); *Harris*

25   *v. Vector Mktg. Corp.*, 08-cv-5198 EMC, 2011 WL 1627973, at *6 (N.D. Cal. Apr. 29,

26   2011) (approving stipulation and granting leave to amend complaint as part of order

27   granting preliminary approval); *see also Ching v. Siemens Indus. Inc.*, 11-cv-4838 MEJ,

28   2013 WL 6200190, at *8 (N.D. Cal. Nov. 27, 2013)(same).

United States District Court
Northern District of California

1   Because provisions of the settlement agreement require the Court to consider

2   content exclusively pled in the third amended complaint, the Court finds it necessary to

3   grant plaintiffs' motion to amend the complaint at this time.  In the event that the proposed

4   settlement is not finally approved by the Court, or in the event that the settlement

5   agreement becomes null and void pursuant to its terms, the third amended complaint will

6   be dismissed.  In that event, the second amended complaint will be the operative pleading.

7   The Court's following analysis of class certification and preliminary settlement

8   approval will be based on the plaintiffs and claims presented in the third amended

9   complaint.

10   **B.  Conditional Class Certification**

11   Class certification requires that: (1) the class be so numerous that joinder of all

12   members individually is impracticable; (2) there are questions of law or fact common to

13   the class; (3) the claims or defenses of the class representative must be typical of the

14   claims or defenses of the class; and (4) the person representing the class must be able fairly

15   and adequately to protect the interests of all members of the class.  Fed. R. Civ. P. 23(a);

16   *Staton v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003).

17   In addition to meeting the conditions imposed by Rule 23(a), the parties seeking

18   class certification must also show that the action is maintainable under Federal Rule of

19   Civil Procedure 23(b).  Plaintiffs here are seeking certification under Rule 23(b)(3).  Dkt.

20   No. 139 at 13.  Plaintiffs assert that the action is maintainable under Rule 23(b)(3) which

21   allows a class action to be certified if "the court finds that the questions of law or fact

22   common to class members predominate over any questions affecting only individual

23   members, and that a class action is superior to other available methods for fairly and

24   efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b); *Hanlon v. Chrysler Corp.*,

25   150 F.3d 1011, 1022 (9th Cir. 1998).

26   Here, plaintiffs ask the Court to conditionally grant certification of the proposed

27   settlement class, solely for the purposes of settlement.  Dkt. No. 132 at 9.

28   /

United States District Court
Northern District of California

Case No. 12-cv-04818 NC                    8

1

### 1.    Numerosity

Here, the numerosity requirement has been satisfied.  The defendant has already
reviewed its records and identified a potential class, based on unique telephone numbers
associated with telephone calls to defendant from California area codes that were routed to
one of its call centers during the class period. Dkt. No. 139-2 at ¶ 1(h), 6.1,  The parties
estimate approximately 698,000 individuals in the class.  *Id*. at ¶ 1(h), 6.1.  Joinder of all
individuals would be impracticable.

### 2.    Commonality

Here, there are questions of fact and law common to all class members, the answers
to which will drive the resolution of the litigation.  *See Wal-Mart Stores, Inc. v. Dukes*, 131
S. Ct. 2541, 2551 (2011).  Plaintiffs contend that all settlement class members were
illegally recorded when they called defendant's call centers, while residing or located in
California.  Plaintiffs assert that defendant's uniform practices and policies violated
California Penal Code §§ 632 and 632.7, creating a question of law and fact common to all
settlement class members.  Dkt. No. 139 at 21.  All settlement class members seek the
same legal remedies under Penal Code § 637.2.  *Id*.; Grover Decl. at ¶ 40.

### 3.    Typicality

The class representatives' claims are typical of those of the class.  For purposes of
the typicality inquiry, the named plaintiffs' injuries need not be identical with those of the
other class members, "only that the unnamed class members have injuries similar to those
of the named plaintiffs and that the injuries result from the same, injurious course of
conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  Here, this requirement
is met as all of the named plaintiffs have made calls during the class period to the
defendant's toll-free customer-service lines from a telephone while located in California,
reached a representative of defendant, and had their calls recorded allegedly without their
consent.  Dkt. No. 139-3.  Named plaintiffs claim the same injury as the proposed
settlement class, thus the typicality requirement is satisfied.

### 4.    Conflicts of Interest

Proposed class representatives and their counsel cannot have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020. Prior to settlement, this case was at an advanced stage in litigation with motions for class certification and summary judgment pending before the Court. Dkt. Nos. 80, 90, 91. Plaintiffs assert that named plaintiffs will aggressively and competently assert the interests of the settlement class members because they have retained competent counsel that is experienced in litigating class action, including those in the context of alleged violations of the California Invasion of Privacy Act. Dkt. No. 139 at 22. The Court finds that the named plaintiffs and their counsel will fairly and adequately protect the interests of the class.

### 5.    Rule 23(b)(3)

Rule 23(b)(3) requires that the common legal and fact questions represent a significant aspect of the case, and do not appear to be outweighed by any questions affecting only individual members. *See Hanlon*, 150 F.3d at 1022 ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986)).

Here, the common question is whether defendant had policies and practices of recording or monitoring telephone calls to defendant's call centers without the knowledge and consent of callers. Dkt. No. 132 at 33. The same question is presented in class representatives' claims.

Additionally, considerations of judicial economy favor litigating this case as a class action. As this case involves hundreds of thousands of claims for a statutory maximum recovery of $5,000, a class action is superior to an alternative method for adjudicating the plaintiffs' claims. *See Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1154, 1163 (9th Cir. 2001) ("[I]f plaintiffs cannot proceed as a class, some-perhaps most-

1    will be unable to proceed as individuals because of the disparity between their litigation

2    costs and what they hope to recover.").  According to the record provided, no potential

3    class member has expressed a desire to proceed independently and no unusual obstacles

4    have appeared that would make managing the class particularly difficult.

5          The Court finds that this action is maintainable under Federal Rule of Civil

6    Procedure 23(a) and (b)(3), and therefore, certifies the following class: all persons who,

7    while residing or located in California, placed a call to one of Defendant's toll-free

8    telephone numbers at any time during the period from March 1, 2011 through July 18,

9    2012, inclusive, and spoke with a representative.  The Court approves the named plaintiffs,

10   Laura McCabe, Latroya Simpson, and Christy Sarabia as class representatives.

11   Additionally, the Court appoints Eric A. Grover, Rachael G. Jung, and Scot D. Bernstein

12   as class counsel.

13        **C. Preliminary Approval of the Settlement**

14         Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement

15   by a certified class.  Although there is a "strong judicial policy that favors settlements,

16   particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska*

17   *P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), "[t]he purpose of Rule 23(e) is to protect the

18   unnamed members of the class from unjust or unfair settlements affecting their rights." *In*

19   *re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, a settlement

20   should only be approved if it is "fundamentally fair, adequate, and reasonable." *Torrisi v.*

21   *Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks

22   omitted).  In determining whether the proposed settlement meets this standard, the Court

23   does not have the ability "to delete, modify, or substitute certain provisions. . . . The

24   settlement must stand or fall in its entirety." *Id.*  Due to the dangers of collusion between

25   class counsel and the defendant, as well as the need for additional protections when the

26   settlement is not negotiated by a Court-designated class representative, settlement approval

27   that takes place prior to formal class certification requires a higher standard of fairness.

28   *Hanlon*, 150 F.3d at 1026.

United States District Court
Northern District of California

1    "The Court may grant preliminary approval of a settlement and direct notice to the

2    class if the settlement: (1) appears to be the product of serious, informed, non-collusive

3    negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential

4    treatment to class representatives or segments of the class; and (4) falls within the range of

5    possible approval." *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198 EMC, 2011 WL

6    1627973, at *7 (N.D. Cal. Apr. 29, 2011); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d

7    1078, 1079 (N.D. Cal. 2007). The Court reviews the preliminary approval factors in turn.

### 1.    The Settlement Process

9        The Court first considers the means by which the parties reached their settlement.

10   While motions for class certification and summary judgment were pending with the Court,

11   the parties engaged in two mediation sessions on January 22 and 30, 2015, with the Hon.

12   Louis M. Meisinger (Ret.) where the parties set out the broad outlines of an agreeable

13   settlement. Dkt. No 139, Grover Decl. at ¶ 11. The parties did not reach an agreement at

14   the mediation sessions, but came to a settlement agreement shortly after. Dkt. No 139 at 4;

15   Dkt. No. 132. Additionally, the parties engaged in adversarial motion practice, as well as

16   discovery during the 28 months the case was ongoing in federal court. The settlement

17   appears to be the product of serious, informed, non-collusive negotiations. However, the

18   Court notes that the plaintiffs' motion is unclear whether the final settlement agreement

19   was overseen by the private mediator, and whether class representatives were involved in

20   the settlement negotiations. *See* Dkt. No. 139 at 11, 29. The Court is cautious about the

21   possibility of collusive negotiations occurring and expects the parties to provide further

22   information in their motion for final approval.

### 2.    The Presence of Obvious Deficiencies

24       The Court must next analyze whether there are obvious deficiencies in the

25   settlement agreement. The Court previously ordered plaintiffs to submit additional

26   information to clarify the settlement agreement. Dkt. No. 145. Having reviewed the

27   supplemental information, the Court finds there are no obvious deficiencies in the

28   settlement agreement.

United States District Court
Northern District of California

1    First, the class definition and amended complaint are appropriate for the purposes of

2    settlement, as discussed above.

3    Second, the scope of release is broad, and releases defendant's "affiliates,"

4    "vendors," and "independent contractors," among other entities related to defendant.  Dkt.

5    No. 139-2 at ¶ 11.  The Court asked the parties to clarify which defendant entities are

6    included and to provide a plain language version of the release, accessible to the public.

7    Dkt. No. 145.  The parties submitted clarification, simplifying the release language into a

8    shorter and more direct statement so potential class members can be informed as to the

9    scope of the release.  Dkt. No. 146.  While the scope of release is broad, it is acceptable

10   because the claims released are limited to those facts that "relate to or arise out of the

11   alleged recording, monitoring, eavesdropping upon telephone calls made to Defendant or

12   any other Released Parties prior to July 19, 2012."  Dkt. No. 139-2 at ¶ 11; *see Hesse v.*

13   *Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a

14   party from bringing a related claim in the future even though the claim was not presented

15   and might not have been presentable in the class action, but only where the released claim

16   is based on the identical factual predicate as that underlying the claims in the settled class

17   action.") (internal quotation marks and citations omitted).

18   Third, the parties' designated *cy pres* beneficiaries, Consumer Action and

19   Electronic Frontier Foundation, would equally split any class funds remaining after all

20   class funds are distributed per capita to class member up to a maximum of $5,000.  The

21   designated *cy pres* recipient appears to meet the requirements for approval set forth in

22   *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (holding that there must be "a

23   driving nexus between the plaintiff class and the *cy pres* beneficiaries" and that the *cy pres*

24   award must be "guided by (1) the objectives of the underlying statute(s) and (2) the

25   interests of the silent class members, . . . and must not benefit a group too remote from the

26   plaintiff class").  The motion for preliminary class approval did not contain information

27   sufficient for the Court to determine whether the recipients were appropriate.  Dkt. No.

28   139.  Additionally, the Court expressed concern at the hearing that the *cy pres* beneficiaries

United States District Court
Northern District of California

Case No. 12-cv-04818 NC            13

1  are national organizations, while the class is limited to California residents.  In

2  supplemental briefing, the parties provided the Court with sufficient information to

3  determine that the beneficiaries are consumer action organizations, guided by the

4  objectives of the underlying statutes, to protect consumer privacy.  Dkt. No. 146.

5  Additionally, the parties proffered that if any settlement fund is given to a *cy pres*

6  beneficiary, it will be designated for use on behalf of California consumers.

7  Fourth, the settlement agreement provides that, subject to court approval, class

8  representatives McCabe and Simpson will each receive a $15,000 enhancement award,

9  class representative Sarabia will receive a $7,500 enhancement award, and class counsel

10  may seek up to 30% of the class settlement fund in attorneys' fees.  The settlement

11  agreement covers the cost of settlement administration, which plaintiffs estimate will be

12  $500,000.

13  While the Court is not approving the requested attorneys' fees and costs at this

14  stage, the Court notes that class counsel must support these requests with affidavits and

15  documents that demonstrate such requests are reasonable, given the time spent on the

16  litigation.  Additionally, the motion for preliminary approval contains little information

17  regarding the involvement of class representatives or justifying an enhancement award for

18  class representatives potentially above the statutory maximum value of their claims.

19  Finally, the costs of administering the settlement must also be supported by appropriate

20  documentation.  The motion for final approval must address these issues.

21  Accordingly, the lack of obvious deficiencies in the revised settlement agreement

22  weighs in favor of granting preliminary approval.

23  **3.    Preferential Treatment**

24  The third factor the Court considers is whether the settlement agreement provides

25  preferential treatment to any class member.  Under the settlement, the monetary recovery

26  will be distributed to class members who have submitted approved claims pro rata after

27  deduction of the attorneys' fees, costs, class representative awards, and administration

28  costs.  A class member can recover up to the statutory maximum $5,000.  The settlement

1    provides for an enhancement award of $15,000 for class representatives McCabe and

2    Simpson, and an award of $7,500 for class representative Sarabia.

3         Incentive awards for class representatives, should the Court finally approve them,

4    does not render the settlement unfair, as "the Ninth Circuit has recognized that service

5    awards to named plaintiffs in a class action are permissible and do not render a settlement

6    unfair or unreasonable." *Harris*, 2011 WL 1627973, at *9 (citing *Staton*, 327 F.3d at 977).

7    While the Court is not approving the amount of the incentive award at this stage, the Court

8    notes that the proposed incentive awards here are on the high end. *See Spalding v. City of*

9    *Oakland*, No. 11-cv-02867 TEH, Dkt. No. 99 (N.D. Cal. Sept. 9, 2013) (approving $9,000

10   incentive award); *Covillo v. Specialtys Cafe*, No. 11-cv-00594 DMR, 2014 WL 954516, at

11   *8 (N.D. Cal. Mar. 6, 2014) (approving $8,000 incentive award); *Barel v. Bank of Am.*,

12   255 F.R.D. 393, 402 (E.D. Pa. 2009) (approving $10,000 incentive award).  Additionally,

13   the incentive awards are significantly greater than the $5,000 statutory maximum recovery,

14   so class representatives may be receiving more than their expected recovery in the lawsuit.

15   At the final approval stage, the plaintiffs must demonstrate why the enhancement awards

16   are reasonable, especially in light of a statutory maximum recovery for the settled claims.

17        The Court finds no indication of unfair treatment to certain members of the class,

18   and therefore, this factor supports preliminary approval.

                    **4.    Whether the Settlement Falls Within the Range of Possible**
                    **Approval.**

19
20

21        Finally, the Court must determine whether the proposed settlement falls within the

22   range of possible approval.  "To evaluate the range of possible approval criterion, which

23   focuses on substantive fairness and adequacy, courts primarily consider plaintiff's

24   expected recovery balanced against the value of the settlement offer." *Harris*, 2011 WL

25   1627973, at *9 (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114,

26   1125 (E.D. Cal. 2009)).  To determine whether an agreement is fundamentally fair,

27   adequate, and reasonable, the Court may preview the factors that ultimately inform final

28   approval: "[1] the strength of plaintiff's case; [2] the risk, expense, complexity, and likely

United States District Court
Northern District of California

duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Id.* at *9 (citing *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  As part of this assessment, the Court must "compare the value of the settlement against the expected recovery at trial" by estimating "the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount." *Id.* at *11 (internal quotation marks omitted).  The Court will first address the value of the settlement.

### a.      The Value of the Settlement.

The full value of the settlement is $11,700,000 to resolve the claims covered by the settlement.  Dkt. No. 139-3 at ¶ 3.1.  With an class size of 698,000, per capita recovery is estimated at $16.76 per settlement class member.  Grover Decl. at ¶ 16.  Subtracting the administration costs, proposed enhancement awards, and proposed attorneys' fees and costs, the net settlement fund will be approximately $7,552,500.  *Id.* at ¶ 3.4.  If all proposed awards are granted by the Court, and all class member submitted claims, each class member would receive an award of $10.82.

Plaintiffs argue that this represents a fair and reasonable settlement because the gross per capita recovery is within the range of settlements approved in recent phone recording settlements that received final approval.  Dkt. No. 139 at 19; *see Skuro v. BMW of North America, LLC*, 10-cv-8672 GW, Dkt. No. 56 (C.D. Cal. Aug. 28, 2012) (settlement of $7.50 per class member); *Marenco v. Visa Inc.*, 10-cv-8022 DMG, Dkt. No. 54 (C.D. Cal. Nov. 30, 2011) (settlement of $30 per class member); *Batmanghelich v. Sirius XM Radio, Inc.*, 09-cv-9190 VBF, Dkt. No. 89 (C.D. Cal. Sept. 15, 2011) (settlement of $5.77 per class member); *Nader v. Capital One Bank, N.A.*, 12-cv-01265 DSF, Dkt. No. 170 (C.D. Cal. Nov. 17, 2014) (settlement of $2.73 per class member); *Cohorst v. BRE Properties, Inc. et. al.*, 10-cv-2666 JM, 2012 WL 153754 (S.D. Cal. Jan.

United States District Court
Northern District of California

1  18, 2012) (settlement of $4.70 per class member); *Knell v. FIA Card Services*, 12-cv-

2  00426 WVG, Dkt. No. 79 (S.D. Cal. Aug. 15, 2014) (settlement of $0.75 per class

3  member); *Hoffman v. Bank of America, N.A.*, 12-cv-00539 DHB, Dkt. No. 67 (S.D. Cal.

4  Nov. 6, 2014) (settlement of $1.86 per class member).

5       Additionally, plaintiffs argue that recovery per class member will actually be higher

6  because, "at a strong 10% claims rate," each settlement class member who filed a claim

7  would receive over $100. Dkt. No. 139 at 21. The Court notes that the per capita recovery

8  represents 0.3% of the statutory maximum recovery. Even the $100 estimate of actual

9  recovery by each class member who files a claim represents only 2% of the statutory

10  maximum recovery. The Court finds the value of the settlement to be low compared to the

11  potential recovery, but in light of other approved settlements within a similar range, this

12  factor is not dispositive in the Court's analysis. Therefore, the Court turns to the

13  remaining factors.

14              **b.    The Remaining Factors.**

15       The Court considers together the remaining factors, such as the strength of the

16  plaintiffs' case, the extent of discovery completed at this stage of the proceedings, the risk

17  of maintaining class action status, and the risk, expense, and likely duration of the

18  litigation. The Court finds that all weigh in favor of preliminary approval of the proposed

19  settlement agreement.

20       Plaintiffs assert that it is not certain they would prevail at maintaining class action

21  status and prove liability to the class. Dkt. No. 139 at 20-22. Plaintiffs assert that

22  defendant maintains that a variety of factual issues precluded both class certification and

23  liability, including which potential class members called Six Continents, the callers'

24  residency, their location at the time of the call, which calls were made from cordless

25  telephones, whether a particular call was recorded, whether the caller consented to the

26  recording, what type of device was used to answer the call, and whether a particular call

27  was made during the limitations period. Dkt. No. 88. Additionally, defendant raised

28  defenses to the merits of the claims, which may have precluded some of plaintiffs' claims.

Case No. 12-cv-04818 NC           17

1    Dkt. No. 91-1.  As a result, if litigation were to continue, plaintiffs would have invested

2    significant time and money to further investigate the class claims and maintain class

3    certification.  Dkt. No. 139 at 18.  The Court notes that the plaintiffs' and defendant's

4    disagreements are not speculative, but in fact, the parties had briefed class certification

5    motions and a motion for summary judgment prior to settlement.

6            Plaintiffs also assert that it is too expensive and risky for an individual plaintiff to

7    pursue a claim outside of a certified class, considering the statutory maximum recovery of

8    $5,000 per violation.  *Id.*  Plaintiffs assert that defendant produced responses to plaintiffs'

9    multiple sets of written discovery and produced over 11,000 pages of relevant documents.

10   Dkt. No. 139, Grover Decl. ¶¶ 9, 11, 33.  Plaintiffs took six depositions and defendant

11   deposed three plaintiffs, a fact witness, and three experts.  *Id*.  Therefore, plaintiffs assert,

12   they not only engaged in significant discovery, but also could evaluate class damages and

13   make informed decisions regarding settlement.  Dkt. No 139 at 21-22.

14           Finally, plaintiffs argue that the settlement ensures timely relief and substantial

15   recovery of the amounts that plaintiffs contend are owed to the proposed settlement class.

16   *Id.* at 19.  If litigation were to proceed, plaintiffs would still have to prevail on their

17   pending class certification motion, defeat defendant's summary judgment motion, establish

18   class-wide liability, and prove damages.  *Id.*  Plaintiffs argue that these efforts would take

19   years, impose additional cost, risks, and further delay.  *Id.*

20           The Court finds that the remaining factors weigh in favor of granting preliminary

21   approval.  Additionally, the Court finds that the low recovery value is fair and reasonable,

22   considering all the factors, because the high cost of litigation, the significant risks to the

23   plaintiffs, and the low statutory recovery value would make individual pursuit of a lawsuit

24   impractical.  Thus, the plaintiffs' motion for preliminary approval of the settlement is

25   GRANTED.

26           **D.  Class Notice**

27           "The court must direct notice in a reasonable manner to all class members who

28   would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

United States District Court
Northern District of California

United States District Court
Northern District of California

### 1.    Notice Administration

Plaintiffs ask the Court to appoint Heffler Claims Group LLC ("Heffler") as the Claim Administrator. Dkt. No. 132. Plaintiffs have provided the Court with the declaration of Jeanne C. Finegan, the President of HF Media, LLC, a division of Heffler. Dkt. No 139-6. Finegan attests that Heffler has provided class action settlement services in more than 900 cases over the past 45 years. *Id.* at ¶ 4. Finegan personally has served as an expert, directly responsible for the design and implementation of hundreds of class action notice programs. *Id.* at ¶ 6. Heffler has proposed a notice program that is targeted to reach 70 percent of persons over the age of 18 who live in or are located in California 1.6 times. *Id.* at ¶ 15. The plaintiffs estimate that the cost of settlement administration is $500,000, approximately 4.3% of the gross settlement amount. The Court finds that Heffler is an appropriate claims administrator and APPOINTS Heffler to administer the class notice. The Court notes that the estimated cost of settlement administration has not been supported by documentation or legal arguments beyond the assertion that it is reasonable given the class size. Dkt. No. 139 at 18. At the final approval stage, plaintiffs must provide further documentation and argument to support the settlement administration costs.

### 2.    Method of Providing Notice

Plaintiffs and Heffler have planned an extensive notice program to reach the estimated 698,000 class members. Heffler will take a two-step approach to reaching potential class members: (1) Heffler will contact known class plaintiffs; and (2) Heffler will attempt to access members of the general public who may be class plaintiffs. Dkt. No. 139-6 at 13.

First, defendant will compile a list of unique telephone numbers associated with telephone calls to defendant from California area codes that were routed to one of its call centers during the class period, March 1, 2011, through July 18, 2012. Dkt. No. 139, Exh. 1 at ¶ 6.1. Defendant will cross-reference the telephone numbers with its customer-related databases to search for names, mailing addresses, and additional telephone numbers or email addresses. *Id.* Defendant will also run searches of its customer-related databases to

1   locate contact information for individuals with a California mailing address from January
2   1, 2010, to December 31, 2012.  *Id.*  No later than 45 days after the Court enters its order
3   preliminarily approving settlement, defendant will provide the potential class member list
4   to Heffler.  *Id.* at ¶ 6.2.  Heffler will also run reverse directory searches on the phone
5   numbers from defendant to obtain names and mailing addresses associated with each
6   telephone number.  *Id.*  No later than 75 days after the Court's order, Heffler will mail a
7   postcard settlement class notice to each settlement class member with an identified mailing
8   address.  *Id.* at ¶ 6.3.

9        Second, to reach the general public, Heffler will create a variety of public notices.
10  It will issue a press release of the settlement.  *Id.* at ¶ 6.5; Dkt. No 139-3 at Exh. F.
11  Between 75 and 90 days after the Court's order, Heffler will publish a notification of the
12  settlement in a variety of newspapers distributed in California, as well as Parade magazine.
13  *Id.*  Additionally, Heffler will use targeted Facebook and online banner ads.  Dkt. No. 146-
14  1.

15       Within 50 days of the Court's order, Heffler will publish a website on the internet
16  that will provide a summary of the terms of the settlement, instructions on how settlement
17  class members may communicate with the claims administrator, frequently asked
18  questions and answers, and claim forms.  Dkt. No. 139 at 15.  The website will also have
19  downloadable court documents with the settlement agreement and this order included.  *Id.*

20              **3.      Content of the Notice**

21       Federal Rule of Civil Procedure 23 requires that "[t]he notice must clearly and
22  concisely state in plain, easily understood language: (i) the nature of the action; (ii) the
23  definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class
24  member may enter an appearance through an attorney if the member so desires; (v) that the
25  court will exclude from the class any member who requests exclusion; (vi) the time and
26  manner for requesting exclusion; and (vii) the binding effect of a class judgment on
27  members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

28       Plaintiffs have provided the various notices for the Court's review and approval.

United States District Court
Northern District of California

Dkt. Nos. 139, 146.  Initially, the Court ordered plaintiffs to submit the smaller notices that they intended to use, such as Facebook and banner ads, to ensure the notices provided sufficient information.  Dkt. No. 145.  The Court also suggested altering the appearance and language of some notices to ensure that they were accessible.  *Id.*  After reviewing the notices, the Court finds that they all provide sufficient information as to the nature of the action, the class claims, and access to further information.  Dkt. No. 146-1.  Most of the notices provide the class definition, the release language, and details on obtaining an attorney, submitting a claim, or opting out.  Those notices that are too small to contain all of the necessary information required by Rule 23 have links to the class website, which does contain all of the information.  The website also provides information regarding the time and place of the final approval hearing, the attorneys' fees and class representatives' incentive awards, and contact information to the claims administrator for further questions.

Thus, the Court concludes that the notices contain the required information and overall provide reasonable notice to the class members.

**E.  Schedule**

The parties propose the following schedule below, Dkt. No. 139-2, which the Court ADOPTS in full:

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| Last day for defendant to provide Heffler with potential class member contact list | August 14, 2015 |
| Last day for Heffler to publish settlement website | August 19, 2015 |
| Last day for Heffler to mail and email the settlement notice to class members | September 14, 2015 |
| Dates of online banner publication notice | August 19, 2015 - December 13, 2015 |
| Dates of newspaper publication notice | September 13, 2015 – September 28, 2015 |
| Last day for class counsel to file motion for award of attorneys' fees, litigation costs, administration costs, and class representative's service payment | November 27, 2015 |
| Last day for claims to be submitted by class member | December 13, 2015 |
| Last day for requests for exclusion from the settlement to be postmarked by class members | December 13, 2015 |
| Last day for class members to file objections to the settlement | December 13, 2015 |
| Last day for class counsel to file motion for final approval of settlement | December 22, 2015 |
| Last day for the parties to reply to any objections filed by class members | January 1, 2016 |
| Hearing on motion for final approval of settlement, class representative's incentive award, and application for attorneys' fees and costs | February 3, 2016 at 1:00 p.m. in the San Francisco Courthouse. |

**III.    CONCLUSION**

The Court GRANTS plaintiffs' request to amend the complaint as proposed in the settlement agreement, conditionally for the purposes of settlement only.  Defendant must answer the third amended complaint within 14 days.  The Court CERTIFIES the proposed class, GRANTS preliminary approval of the settlement agreement, and APPROVES the proposed method of notice.  The Court also APPROVES the proposed class counsel and class representatives.

The Court will hold a final approval hearing on February 3, 2016, at 1:00 p.m. in Courtroom D, 15th Floor, U.S. District Court, 450 Golden Gate Avenue, San Francisco, California.

**IT IS SO ORDERED.**

Dated:  June 30, 2015                                   _____
                                                                       NATHANAEL M. COUSINS
                                                                       United States Magistrate Judge

United States District Court
Northern District of California