ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone:   (415) 543-1305
Facsimile:    (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
  **A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California  95630
Telephone:   (916) 447-0100
Facsimile:    (916) 933-5533

Attorneys for Plaintiffs
LAURA McCABE, LATROYA SIMPSON
and CHRISTY SARABIA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA MCCABE, LATROYA SIMPSON, and CHRISTY SARABIA, individually and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> vs. <br><br> SIX CONTINENTS HOTELS, INC.; and DOES 2 through 10, inclusive, <br><br> Defendants. | Case No:  3:12-cv-04818-NC <br><br> **CLASS ACTION** <br><br> **NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND LITIGATION EXPENSES, CLAIMS ADMINISTRATION FEES AND ENHANCEMENT PAYMENTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:      February 3, 2016 <br> Time:     1:00 p.m. <br> Ctrm:    D – 15th Floor <br><br> Complaint Filed:   7/3/12 <br> FAC Filed:           7/19/12 <br> SAC Filed:           10/11/13 <br> TAC Filed:           7/6/15 |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

PLEASE TAKE NOTICE that on February 3, 2016, at 1:00 p.m., or as soon thereafter as the matter may be heard by the Honorable Nathanael Cousins, Courtroom D – 15th Floor, 450 Golden Gate Avenue, California 94102, Plaintiffs and Settlement Class Representatives Laura McCabe, Latroya Simpson and Christy Sarabia will and hereby do move this Court for an order (1) granting Class Counsel's application for an award of reasonable attorneys' fees in the amount of $3,510,000, which is 30% of the Gross Settlement Amount, and reimbursement of out-of-pocket costs in the amount of $122,421.19; (2) approving enhancement payments to Settlement Class Representatives McCabe and Simpson in the amount of $15,000 each and Sarabia in the amount of $7,500; and approving payment of up to approximately $491,684 to Heffler Claims Group for claims administration services.

The motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the Declarations of Eric A. Grover and Scot D. Bernstein, the Declarations of Laura McCabe, Latroya Simpson and Christy Sarabia, the Declaration of Brian Radetich of Heffler Claims Group, the pleadings and papers filed in this case, and any oral argument this Court permits.

Dated: November 25, 2015    Respectfully submitted,


**KELLER GROVER LLP**


By: _/s/ Eric A. Grover_
   ERIC A. GROVER
   Attorneys for Plaintiffs

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................ 1

II.  CLASS COUNSEL'S WORK LITIGATING AND SETTLING THE ACTION ............. 4

    A.  Prior to filing this action, Class Counsel investigated and researched the case and prepared it for litigation. ................................. 4

    B.  The litigation required substantial discovery. ........................................... 4

    C.  Class Counsel engaged in substantive motion practice even prior to class certification. ......................................................... 5

    D.  Class Counsel prepared for and fully briefed the class certification motion. ......................................................................... 5

    E.  After extensive preparation, Class Counsel represented Plaintiffs and the Class at two mediations that resulted in the settlement. ................... 6

    F.  The Settlement Class Representatives participated actively. ...................... 8

    G.  The notice and claims process. .............................................................. 9

III.  THE SETTLEMENT ......................................................................... 10

    A.  The Settlement Class. .......................................................................... 10

    B.  The common fund. .............................................................................. 10

    C.  Settlement payments to the Settlement Class Members. ........................... 10

    D.  The Settlement Agreement clearly states the attorneys' fees and costs. ............... 11

    E.  The Settlement Agreement provides enhancement payments for the Settlement Class Representatives. ............................................. 11

    F.  Claims administration fees. .................................................................. 12

    G.  The Settlement Agreement's provision regarding requested amounts not awarded. .......................................................................... 12

IV.  ARGUMENT .................................................................................... 12

    A.  California law governs the award of fees, costs and enhancements in this action. ................................................................. 12

    B.  Plaintiffs' requested fee award is appropriate under the percentage-of-the-common-fund method. ............................................................. 13

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# TABLE OF CONTENTS
## (Cont.)

Page

1. The circumstances of this case support a 30% fee award. ........................ 16

   a. The results achieved. .................................................................. 16

   b. The contingent nature of this case and the financial burden. ........ 17

   c. The experience, reputation, and ability of Class Counsel, and the skill they displayed in litigation. ...................................... 18

   d. The risk of litigation. .................................................................. 19

2. As of this date, there has been only one letter objecting to the settlement. ......................................................... 19

3. The reasonableness of the requested fee award is supported by the awards granted in similar class settlements. ....................................... 20

C. A cross-check under the lodestar method confirms the reasonableness of the fee requested. .................................................................. 21

4. Class Counsel's hourly rates are reasonable. ............................................ 22

5. Class Counsel's hours are reasonable. ...................................................... 24

6. A multiplier is warranted. ......................................................................... 25

D. Class Counsel's request for costs also is reasonable. ............................................. 26

E. The requested Settlement Class Representative enhancement payments are reasonable. ................................................................................. 27

F. The Claims Administrator's requested fees are reasonable. ................................ 29

V. CONCLUSION ............................................................................................................... 30

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**Federal Cases**

*Birch v. Office Depot, Inc.*
    No. 06cv1690 DMS (S.D. Cal. Sept. 28, 2007) ........................................................ 21, 28

*Boeing Co. v. Van Gemert*
    444 U.S. 472 (1980) ................................................................................................ 13, 14

*Bolton v. U.S. Nursing Corp.*
    No. C 12–4466 LB, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013) ................................. 23

*Buccellato v. At&T Operations, Inc.*
    No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699 (N.D. Cal. June 30, 2011) ....... 25, 28

*Camacho v. Bridgeport Financial, Inc.*
    523 F.3d 973 (9th Cir. 2008) ........................................................................................ 22

*Cook v. Niedert*
    142 F.3d 1004 (7th Cir. 1998) ....................................................................................... 27

*Glass v. UBS Fin. Servs., Inc.*
    331 F. App'x 452 (9th Cir. 2009) .................................................................................. 21

*Glass v. UBS Fin. Servs.*
    No. C 06-4068 MMC
    2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ................................................ 28

*Gonzalez v. Southern Wine & Spirits of Am., Inc.*
    No. 12-55808, 2014 WL 636807 (9th Cir. Feb. 19, 2014) ................................. 13, 22, 23

*Greko v. Diesel U.S.A., Inc.*
    No. 10-CV-02576 NC, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ...................... 23, 26

*In re Activision Sec. Litig.*
    723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................................... 2, 15

*In re GNC Shareholder Litig,*
    668 F. Supp. 450 (W.D. Pa. 1987). ................................................................................ 26

*In re Heritage Bond Litig.*
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................. 20

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 458 (9th Cir. 2000) ........................................................................................ 27

*In re Sumitomo Copper Litig.*
    74 F. Supp. 2d 393 (S.D.N.Y. 1999) ............................................................................. 14

*In re United Energy Corp. Sec. Litig.*
    MDL No. 726, 1989 WL 73211 (C.D. Cal. 1989) ........................................................ 26

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

*Ingram v. The Coca-Cola Co.*
  200 F.R.D. 685 (N.D. Ga. 2001) ................................................................. 27

*Keller v. Electronic Arts*
  No. 4:09-cv-1967 CW, 2015 U.S. Dist. LEXIS 114387 (N.D. Cal. Aug. 18, 2015)... 15, 21

*Keller v. NCAA, et al.*
  Nos. 4:09-cv-1967 CW and 4:09-cv-3329 CW
  2015 U.S. Dist. LEXIS 113474 (N.D. Cal. Aug. 19, 2015).................................. 15, 21, 28

*Knight v. Red Door Salons, Inc.*
  No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) .................... 20

*Marenco v. VISA Inc.*
  No. CV 10-08022 DMG (VBKx)
  2011 U.S. Dist. LEXIS 140527 (C.D. Cal. Dec. 6, 2011) ...................................... 28

*McDonald v. Bass Pro Outdoor World, LLC*
  No. 3:13-cv-00889-BAS-DHB (S.D. Cal. Dec. 18, 2014) ........................................ 28

*Mills v. Electric Auto-Lite Co.*
  396 U.S. 3 (1970) .................................................................................... 2, 14

*Nguyen v. Equilon Enterprises, LLC*
  USDC ND Case No. 12-cv-04650 YGR, Docket No. 46 ........................................... 23

*O'Bannon v. NCAA*
  No. 09-cv-03329-CW (NC)
  2015 U.S. Dist. LEXIS 91514 (N.D. Cal. July 13, 2015)........................................ 23

*Paul, Johnson, Alston & Hunt v. Graulty*
  886 F.2d 268 (9th Cir. 1989)......................................................................... 15

*Radcliffe v. Experian Info. Solutions Inc.*
  715 F.3d 1157 (9th Cir. 2013).......................................................................... 27

*Rodriguez v. W. Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009).......................................................................... 27, 28

*Romero v. Producers Dairy Foods, Inc.*
  No. 1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 14, 2007) ........... 20

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003).......................................................................... 14

*Steinfeld v. Discover Fin. Servs.*
  No. C 12-01118 JSW, 2014 WL 1309692 (N.D. Cal. Mar. 31, 2014) ............................ 23

*Stern v. Gambello*
  480 F. App'x 867 (9th Cir. 2012) ................................................................... 14

*United Steelworkers of Am. v. Phelps Dodge Corp.*
  896 F.2d 407 (9th Cir. 1990).......................................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Van Vranken v. Atlantic Richfield Co.*
    901 F. Supp. 294 (N.D. Cal. 1995) ...................................................... 20, 26, 28

*Vedachalam v. Tata Consulting Serv. Ltd.*,
    No. C 06–0963 CW, 2013 WL 3941319 (N.D. Cal. July 18, 2013) ................................ 23

*Webb v. Board of Educ.*
    471 U.S. 234 (1985). ............................................................................ 24

*Williams v. MGM-Pathe Commc'ns Co.*
    129 F.3d 1026 (9th Cir. 1997) ............................................................ 13, 14

*Williams v. SuperShuttle Int'l, Inc.*
    No. 12-CV-06493-WHO, 2015 WL 685994 (N.D. Cal. Feb. 12, 2015) ...................... 23

*Willner v. Manpower Inc.*
    No. 11-cv-02846-JST, 2015 U.S. Dist. LEXIS 80697 ................................ passim

*Wolph v. Acer Am. Corp.*
    No. C 09-01314 JSW, 2013 WL 5718440 (N.D. Cal. Oct. 21, 2013) ........................ 13

*Wren v. RGIS Inventory Specialists*
    No. C–06–05778 JCS, 2011 WL 1230826 (N.D. Cal. April 01, 2011) ...................... 21, 23

**State Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*
    85 Cal.App.4th 1135 (2000) ................................................................ 20

*Apple Computer, Inc. v. Superior Court*
    126 Cal.App.4th 1253 n. 4 (2005) .................................................... 2, 13, 25

*Chavez v. Netflix, Inc.*
    162 Cal.App.4th 43 n.11 (2008) ................................................ 2, 15, 20, 21

*City and County of San Francisco v. Sweet*
    12 Cal.4th 105 (1995) ......................................................................... 14

*Contreras v. Bank of Am., N.A.*
    No. CGC-07-467749 (S.F. Cnty. Super. Ct. Sept. 3, 2010) ............................ 20

*Glendale City Employees' Association v. City of Glendale*
    15 Cal.3d 328 (1975) .................................................................... 13, 14

*In re Cellphone Fee Termination Cases*
    186 Cal.App.4th at 1393-94 ............................................................ 27, 28

*In re Consumer Privacy Cases*
    175 Cal.App.4th 545 (2009) .......................................................... 2, 13, 21

*Ketchum v. Moses*
    24 Cal. 4th 1122 (2001) .................................................................. 17, 22

*Lealao v. Beneficial California, Inc.*
    82 Cal.App.4th 19 (2000) ........................................................... 2, 25

*Quinn v. State of California*
    15 Cal.3d 162 (1995) ................................................................ 13, 14

*Roos v. Honeywell International, In*c.
    2015 Cal. App. LEXIS 1004 (Cal. App. 1st Dist. Nov. 10, 2015)................................... 15

*Serrano v. Priest ("Serrano III")*
    20 Cal.3d 25 (1977) ...................................................... 2, 13, 14, 21

*Serrano v. Priest ("Serrano IV")*
    32 Cal.3d 621 (1982) .................................................................. 24

*Wershba v. Apple Computer, Inc*.
    91 Cal.App.4th 224 (2001) ............................................................ 25


## Statutes

California Penal Code
    §§ 630, *et seq.* ................................................................... 4, 12
    §§ 632, *et seq.* ................................................................... 1, 28


## Other Authorities

California Practice Guide: Civil Trials and Evidence (The Rutter Group)
    §17:172............................................................................ 14


## Rules

Federal Rule of Civil Procedure
    23(e) ........................................................................... 12
    26(a) ............................................................................ 4
    30(b)(6) ......................................................................... 5


## Treatises

*California Class Actions Practice and Procedure*
    § 15.03 at pp. 15.3-15.4.1 (2004).................................................... 15

*Newberg on Class Actions*
    § 14.6 (4th ed. 2007)) ............................................................. 20

4 *Newberg on Class Actions* 4th (4th ed. 2002)
    § 14.6 ............................................................................ 25

*Newberg*, Attorney Fee Awards
    § 2.19 (1987)..................................................................... 26

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## I.    INTRODUCTION

Plaintiffs and Settlement Class Representatives Laura McCabe, Latroya Simpson and Christy Sarabia move for an award of reasonable attorneys' fees and reimbursement of costs and litigation expenses incurred during nearly three and one-half years of litigation. Class Counsel achieved a non-reversionary $11,700,000 class action settlement of California Penal Code §§ 632 and 632.7 privacy violation claims against Defendant Six Continents Hotels, Inc. ("Defendant" or "Six Continents"). The Court preliminarily approved that settlement on June 30, 2015.[1] In addition, this action caused Defendant to change its call recording policy. It now provides a pre-recording warning message at the start of all calls, allowing informed callers to choose affirmatively whether or not they consent to being recorded.

Over the past three and one-half years, Class Counsel defeated two motions to dismiss, successfully moved to amend the complaint, conducted significant discovery, including taking, defending or attending 13 depositions and reviewing approximately 11,000 pages of produced documents, fully briefed the class certification motion, drafted and filed oppositions to Defendant's summary judgment motion and motion to exclude expert evidence, and filed a motion to exclude Defendant's expert evidence, among numerous other necessary tasks.

Shortly before the scheduled hearings on class certification, summary judgment and the parties' motions to exclude expert witnesses, the Parties agreed to mediation. Class Counsel prepared extensively for mediation.

Then, with the assistance of a respected mediator, the Hon. Louis M. Meisinger (Ret.), Class Counsel negotiated with Defendant over two mediation sessions until the Parties reached a $11,700,000 all-in settlement, referred to as the Gross Settlement Amount. All of the terms of the settlement are set forth in the Settlement Agreement and Release ("Settlement Agreement") attached as Exhibit 1 to the Declaration of Eric A. Grover submitted with this motion.[2]

---

[1] Docket ("Dkt.") No. 147.

[2] All "Ex." references are to exhibits attached to the Grover Declaration ("Grover Decl.") unless stated otherwise. All capitalized terms used herein are defined in the Settlement Agreement.

As allowed by the Settlement Agreement, Class Counsel seeks a fee award of $3,510,000, which represents 30% of the Gross Settlement Amount.[3] Under California law,[4] when the settlement produces a specific, identifiable common fund for the benefit of the entire class, the court may award attorneys' fees using the percentage of the fund method.[5] The requested fee amount of 30% of the total settlement amount is within the range regularly awarded in similar class action settlements in California courts.[6] Plaintiffs' fee request is strongly supported by the results obtained, the risks of further litigation, the skill required and quality of work performed, and the contingent nature of this litigation, all of which demonstrate the reasonableness of the request.

A lodestar "cross-check" confirms the reasonableness of Plaintiffs' fee request, which is equivalent to Class Counsel's lodestar to date with a modest multiplier of 1.69.[7] When the additional time working with the Claims Administrator on the remaining claims process, speaking with Settlement Class Members, finalizing this motion, preparing and filing the final approval motion, and preparing for and attending the final fairness hearing are all factored in, the requested

---

[3] Ex. 1 at ¶¶ 3.1, 3.2; Grover Decl. at ¶ 48.

[4] California law regarding fee awards applies because it governs the settled claims in this case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (applying Washington state law regarding fee awards because the settled claims were governed by state law). Federal law serves as guidance where appropriate. *Apple Computer, Inc. v. Superior Court*, 126 Cal.App.4th 1253, 1264 n. 4 (2005).

[5] *Serrano v. Priest ("Serrano III")*, 20 Cal.3d 25, 34-35 (1977) (noting that the percentage of the common fund method has been applied by numerous California courts); *Willner v. Manpower Inc.*, No. 11-cv-02846-JST, 2015 U.S. Dist. LEXIS 80697, at * 17 (applying California law in awarding fees under percentage of common fund method); *see also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970) (endorsing the common fund approach in class actions); *see also, Lealao v. Beneficial California, Inc.*, 82 Cal.App.4th 19, 27 (2000) ("Despite its primacy, the lodestar method is not necessarily utilized in common fund cases."); *see In re Consumer Privacy Cases*, 175 Cal.App.4th 545, 557 (2009) (when fee awards come from the total settlement fund, the percentage of recovery method is appropriate).

[6] *Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66, n.11 (2008) (noting that fee awards in class actions average around one-third of the recovery). Similarly, fee awards in federal courts often range between 20 and 30%. *Vizcaino*, 290 F.3d at 1048-50; *see also, In re Activision Sec. Litig.* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (fee awards "almost always hovers around 30% of the fund.").

[7] Grover Decl. at ¶¶ 48-49, 65.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

multiplier will be less than 1.69.[8]  Class Counsel's hourly rates are reasonable in light of their significant experience, skill, and expertise.[9]  Moreover, their rates are consistent with those of attorneys of similar qualifications practicing in the Bay Area and California as a whole, and have been approved by courts in other settled class actions.[10]  The number of hours expended by Class Counsel on this hard-fought case also is reasonable.  Class counsel have provided details of their hours spent litigating this action and their hourly rates.[11]

Plaintiffs also request that the Court approve the reimbursement of Class Counsel's reasonable costs and litigation expenses incurred in this action in the amount of $122,421.19.[12]

Further, Plaintiffs seek the Court's approval of reasonable enhancement payments to each of the Settlement Class Representatives for the contributions each made to the litigation of this matter.  Those contributions include initiating this lawsuit on behalf of the settlement class, safeguarding class members' interests throughout the litigation, and assisting in the settlement.  Plaintiffs seek payment of the reasonable amount of $15,000 each for Settlement Class Representatives McCabe and Simpson and $7,500 for Settlement Class Representative Sarabia, the amounts set forth in the Settlement Agreement,[13] in acknowledgment of the time and efforts each spent seeking enforcement of the Settlement Class Members' rights.  Details of their efforts are discussed below and in their attached declarations.

Finally, Plaintiffs request that the Court approve payment of up to approximately $491,684 to the Court-approved claims administrator, Heffler Claims Group ("Heffler" or the "Claims Administrator"), for the fees and costs incurred to date and to be incurred through the conclusion of the settlement administration.  Brian Radetich of Heffler has submitted a declaration detailing the work the Claims Administrator has performed to date.  Heffler will

---

[8] Grover Decl. at ¶ 48.

[9] Grover Decl. at ¶¶ 2-4, 48-59, 70; Declaration of Scot D. Bernstein submitted in support of this motion ("Bernstein Decl.") at ¶ 2, Ex. 1.

[10] Grover Decl. at ¶¶ 60-62; Bernstein Decl. at ¶ 12.

[11] *Id.* at ¶¶ 49-60, 63-64, Exs. 4, 5, 6, 7, 8; Bernstein Decl. at ¶¶ 3-13, Ex. 2.

[12] Grover Decl. at ¶¶ 73-74.

[13] Ex. 1 at ¶ 3.3.

provide a supplemental declaration and an updated invoice with the final approval motion to be filed on December 22, 2015.

## II. CLASS COUNSEL'S WORK LITIGATING AND SETTLING THE ACTION.

### A. Prior to filing this action, Class Counsel investigated and researched the case and prepared it for litigation.

Before filing the action in July 2012, Class Counsel expended time and effort investigating and researching Plaintiffs' potential privacy claims under Penal Code §§ 630, *et seq.* This included researching other unlawful recording cases filed in California. This time also included preliminary research that generally was applicable to and thus apportioned amongst a number of unlawful recording cases that Class Counsel was preparing to file in early to mid-2012. Class Counsel then drafted and filed the initial complaint based on the resulting analysis and facts.[14]

### B. The litigation required substantial discovery.

Class Counsel engaged in significant discovery on Plaintiffs' behalf throughout the litigation. Class Counsel drafted and served Plaintiffs' Rule 26(a) Initial Disclosures; propounded multiple sets of written discovery; reviewed Defendant's written discovery responses, Initial Disclosures and nearly 11,000 pages of documents that Defendant produced; drafted responses to Defendant's written discovery requests; and engaged in multiple meet-and-confer efforts regarding discovery responses.[15]

The discovery in this case also included numerous depositions. Class Counsel prepared for and defended the depositions of Named Plaintiffs McCabe, Simpson and Sarabia and Plaintiffs' three experts. Class Counsel attended the deposition of one of Plaintiff McCabe's co-workers. And Class Counsel also deposed six individuals who were designated by Defendant as corporate representatives on various subject matters or were other key employee witnesses.[16]

---

[14] Grover Decl. at ¶ 9.

[15] Grover Decl. at ¶ 10.

[16] Grover Decl. at ¶ 10.

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**C.  Class Counsel engaged in substantive motion practice even prior to class certification.**

In October 2012, Defendant moved to dismiss the First Amended Complaint.  Class Counsel drafted and filed the opposition and ultimately defeated that motion.[17]

As the litigation and discovery progressed, Class Counsel determined that it was necessary to amend the complaint and asked Defendant to stipulate to the amendment.  When Defendant declined, Class Counsel drafted and filed a motion to amend, including a draft of the proposed Second Amended Complaint.  Despite Defendant's opposition, Class Counsel succeeded in obtaining the Court's permission to amend.  Class Counsel then filed the Second Amended Complaint.[18]

Defendant next moved to dismiss the Second Amended Complaint in October 2013.  Class Counsel drafted and filed Plaintiffs' opposition and defeated that motion as well.[19]

Also in late 2013, Class Counsel engaged in letter briefing to the Court to resolve discovery disputes regarding Defendant's corporate representatives produced to testify at the Federal Rule of Civil Procedure 30(b)(6) deposition and Defendant's deposition of Plaintiff McCabe's employer.[20]

**D.  Class Counsel prepared for and fully briefed the class certification motion.**

Class Counsel conducted much of the discovery mentioned above in preparation for the class certification motion.  After analyzing the voluminous evidence obtained, Class Counsel drafted and filed the class certification motion.  Class Counsel reviewed Defendant's opposition and drafted and filed Plaintiffs' reply brief.  Class Counsel also drafted and filed a class certification sur-reply and reviewed and analyzed Defendant's sur-reply.[21]

---

[17] Dkt. Nos. 5, 11, 24; Grover Decl. at ¶ 11; Ex. 1 at ¶ B.

[18] Grover Decl. at ¶ 11; Dkt. Nos. 41, 42, 52, 54.

[19] Dkt. Nos. 56, 61, 74; Grover Decl. at ¶ 11.

[20] Dkt. No. 55; Grover Decl. at ¶ 11.

[21] Grover Decl. at ¶ 12; Dkt. Nos. 80, 88, 119, 122.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Several days after filing its opposition, Defendant filed a motion to exclude expert evidence that Plaintiffs submitted in support of class certification. Class Counsel drafted and filed the opposition to that motion.[22]

Also in the midst of class certification briefing, Defendant filed a motion for summary judgment. Class Counsel drafted and filed Plaintiffs' opposition to the summary judgment motion.[23]

Additionally, after reviewing Defendant's opposition to class certification and motion for summary judgment, Class Counsel drafted and filed a motion to exclude certain expert evidence that Defendant submitted with its class certification opposition and in support of its motion for summary judgment.[24] In all, Class Counsel put in an all-out effort to brief four major issues in this case in a very tight time frame.

### E. After extensive preparation, Class Counsel represented Plaintiffs and the Class at two mediations that resulted in the settlement.

While awaiting a hearing on the class certification, summary judgment and evidentiary motions, Class Counsel had discussions with Defendant's counsel regarding possible settlement. The Parties eventually agreed to exchange additional information informally and scheduled a mediation session. On January 22 and January 30, 2015, the Parties had two days of mediation with the Hon. Louis M. Meisinger (Ret.), formerly of the Los Angeles County Superior Court and a former Executive Vice-President and General Counsel of The Walt Disney Company.[25]

Class Counsel spent many hours preparing for what was ultimately a successful mediation. In the weeks leading up to the first mediation session, Class Counsel prepared and sent to Defendant's counsel several detailed writings analyzing Plaintiffs' claims and the multiple defenses from a quantitative and probabilistic perspective. Counsel for the Parties discussed these analyses at length prior to the mediation.[26]

---

[22] Dkt. No. 90, 108; Grover Decl. at ¶ 12.

[23] Dkt. No. 91, 108; Grover Decl. at ¶ 12.

[24] Dkt. Nos. 104; Grover Decl. at ¶ 12.

[25] Ex. 1 at ¶ C; Grover Decl. at ¶ 13.

[26] Grover Decl. at ¶ 14.

Class Counsel also hired retired United States Magistrate Judge James Larson to review the entire collection of class certification and summary judgment papers and draft an opinion as to how he would rule on each motion. Judge Larson was not told and did not know which party was paying for the evaluation until after he completed his opinion. Class Counsel then met with Judge Larson for a full debriefing regarding his analysis of the two motions. In addition, Class Counsel prepared an extensive mediation brief that was submitted to the mediator and Defendant.[27]

Although the Parties did not reach an agreement at the mediation sessions, they reached an agreement in principle several days after the second mediation session with Judge Meisinger's continuing assistance. After the Parties reached a tentative settlement, Class Counsel drafted a detailed, formalized settlement agreement and exhibits and negotiated the language and terms with Defense Counsel until the Settlement Agreement setting forth all of the settlement terms and its exhibits were finalized and executed. Class Counsel also drafted and filed the motion for preliminary approval of the proposed class settlement and supporting papers on April 14, 2015, as well as providing supplemental information about the settlement on June 3, 2015 at the Court's request.[28]

Since the preliminary approval order was entered, Class Counsel have worked extensively with the Claims Administrator to provide notice of the settlement to Settlement Class Members. Class Counsel also has spent time speaking with Settlement Class Members and dealing with Defense Counsel and the Claims Administrator on notice and claims administration issues.[29]

Class Counsel anticipates spending additional time working with the Claims Administrator on the remaining claims process, speaking with additional Class Members (especially as the claim filing deadline approaches), finalizing this motion, preparing and filing the final approval motion, and preparing for and attending the final fairness hearing.[30]

---

[27] Grover Decl. at ¶ 14.

[28] Grover Decl. at ¶¶ 15-17; Bernstein Decl. at ¶¶ 3-7, 11; Dkt. No. 139; *see also*, Ex. 1.

[29] Grover Decl. at ¶ 18.

[30] Grover Decl. at ¶¶ 19; Bernstein Decl. at ¶ 13.

## F. The Settlement Class Representatives participated actively.

Plaintiffs McCabe and Simpson have represented the Settlement Class actively and aggressively throughout the three and one-half years of this litigation. And although added as named Plaintiff after the settlement was reached, Plaintiff Sarabia, like Plaintiffs McCabe and Simpson, was deposed and began actively assisting Class Counsel more than one year before Plaintiffs filed the Third Amended Complaint.[31]

In preparation for bringing this action, Plaintiffs McCabe and Simpson gave Class Counsel substantive information regarding their claims. Before the complaints were filed, Plaintiffs discussed their claims and the underlying circumstances at length with Class Counsel.

After the original complaint was filed, Plaintiffs McCabe and Simpson regularly communicated with Class Counsel regarding the progress of the litigation. They assisted in the discovery process, including providing information for the initial disclosures and responses to interrogatories and document requests; They both were deposed by Defendant and spent time preparing for those depositions; they carefully reviewed their transcripts and made any needed corrections; they were available to Class Counsel when additional information was needed or when there were case-related matters to discuss; and Ms. McCabe endured significant stress and workplace tension because Defendant deposed a representative of her employer.[32]

Plaintiffs McCabe and Simpson also communicated with Class Counsel regularly during the entire litigation and throughout the settlement process, taking care to understand all terms of the Settlement Agreement before executing it.[33]

Plaintiff Sarabia first began assisting Class Counsel in 2013, more than a year before she was formally added as a named Plaintiff. Even before she was added as a plaintiff, Plaintiff Sarabia assisted in the discovery process by authorizing disclosure of her telephone records and sitting for a deposition. She also has communicated with Class Counsel regularly through the

---

[31] Grover Decl at ¶ 41; Sarabia Decl. at ¶¶ 3-8; McCabe Decl. at ¶¶ 3-13; Simpson Decl. at ¶¶ 3-13.

[32] McCabe Decl. at ¶¶ 3-13; Simpson Decl. at ¶¶ 3-13

[33] McCabe Decl. at ¶¶ 3-13; Simpson Decl. at ¶¶ 3-13; Grover Decl. at ¶ 43.

litigation. Before signing the Settlement Agreement, she reviewed the terms of the settlement and discussed them with Class Counsel.[34]

With this motion, all three Plaintiffs have submitted declarations explaining the details of their participation in this case.[35]

### G. The notice and claims process.

The Court granted preliminary approval of the settlement and provisionally certified the Settlement Class on June 30, 2015.[36] The notice procedure set forth in the Settlement Agreement and approved in the Court's order required Heffler to distribute notice of the settlement through postcard notification, email notification, a settlement website, an online banner program, newspaper publication and a press release.[37] The Radetich Declaration provides the details of the notice process.

In compliance with the Court's June 30, 2015 order, Heffler mailed and emailed the class notice, published the settlement website (www.HotelCallRecordingSettlement.com), caused notice to be published in the required newspapers, initiated the online banner advertising campaign, and issued a press release regarding the settlement.[38]

The deadline to postmark a claim, file a claim electronically, opt out of the settlement or submit an objection is December 14, 2015.[39] As of November 18, 2015, Heffler has received 31,201 claims, 17 opts outs and one letter from a class member that purports to be an objection.[40] Class Counsel will address the purported objection as part of the final approval motion to be filed on or before December 22, 2015.[41]

---

[34] Sarabia Decl. at ¶¶ 3-8; Grover Decl. at ¶ 44.

[35] *See* McCabe Decl.; Simpson Decl.; Sarabia Decl.

[36] Dkt. No. 147.

[37] *See* Ex. 1 at ¶ 6; Dkt. No. 147.

[38] Radetich Decl. at ¶¶ 5, 7-8, 10-13.

[39] Radetich Decl. at ¶ 14, Exs. A, B and C; Grover Decl. at ¶ 34.

[40] Radetich Decl. at ¶¶ 14, 17; Grover Decl. at ¶¶ 35-36.

[41] Grover Decl. at ¶ 36.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Heffler will provide a supplemental declaration with the December 22, 2015 final approval motion detailing the final claims data. Once the claims period closes and the Court grants final approval of the settlement, Heffler will calculate the settlement payments based on the total number of valid and timely claims received.[42]

## III.   THE SETTLEMENT

### A.   The Settlement Class.

The June 30, 2015 preliminary approval order defines the Settlement Class as follows:

> All persons who, while residing or located in California, placed a call to one of Defendant's toll-free telephone numbers at any time during the period from March 1, 2011 through July 18, 2012, inclusive, and spoke with a representative.[43]

Based on Defendant's records, it is estimated that incoming calls from approximately 698,000 unique telephone numbers with California area codes were made to Defendant's toll-free numbers and reached a representative of Defendant during the Class Period.[44]

### B.   The common fund.

The settlement provides that Defendant will pay $11,700,000 to resolve the claims covered by the settlement.[45] After subtracting out the following requested amounts -- $3,632,421 for fees and costs, $491,684 to pay the costs of notice and administration, and $37,500 in Settlement Class Representative enhancement awards -- all of the remaining funds, referred to as the Net Settlement Fund, will be available for distribution to the Settlement Class Members who file timely and valid claims.[46] The Net Settlement Fund is estimated to be *at least* $7,538,395.[47] Defendant has no reversionary interest in the $11,700,000 Gross Settlement Amount.[48]

### C.   Settlement payments to the Settlement Class Members.

---

[42] Grover Decl. at ¶ 39; Radetich Decl. at ¶ 19.

[43] Ex. 2 (June 30, 2015 order at p.4); Ex. 1 at ¶ 1 (h).

[44] Ex. 1 at ¶¶ 1(h), 6.1.

[45] Ex. 1 at ¶ 3.1.

[46] Ex. 1 at ¶ 3.5; *see* Grover Decl. at ¶¶ 40, 41, 76.

[47] Ex. 1 at ¶ 3.4; *see* Grover Decl. at ¶¶ 40, 41, 76.

[48] Ex. 1 at ¶ 3.6.

The Settlement Agreement allows Settlement Class Members to submit claim forms by mail or online to participate in the settlement.[49] Each Settlement Class Member who submits a valid and timely claim will receive a settlement payment representing a *pro rata* share of the Net Settlement Fund.[50] Through November 18, 2015, 31,201 Settlement Class Members have submitted claims.[51] The claims period ends on December 14, 2015. Based on the $7,538,395 minimum estimated Net Settlement Fund, even if another 4,382 valid and timely claims are filed (for a total of 35,000), each Settlement Class Member who files a valid and timely claim will receive a settlement payment of approximately $215.38.[52]

**D.     The Settlement Agreement clearly states the attorneys' fees and costs.**

The Settlement Agreement provides that Plaintiffs may seek attorneys' fees of up to $3,510,000, which is 30% of the Gross Settlement Amount, and out-of-pocket costs estimated not to exceed $100,000. Defendant has agreed that it will not oppose any fee application up to 25% of the Gross Settlement Amount but reserves the right to oppose any fee application over 25% of the Gross Settlement Amount.[53] Plaintiffs are seeking a fee award of $3,510,000, which is the maximum permitted, and which represents 30% of the Gross Settlement Amount and a modest 1.69 multiplier on Class Counsel's lodestar. Plaintiffs also seek reimbursement of $122,421.19 in out-of-pocket costs that they have advanced over the last three-plus years. Plaintiffs' fee and cost requests are discussed in Sections IV.A, B, C and D below.

**E.     The Settlement Agreement provides enhancement payments for the Settlement Class Representatives.**

The Settlement Agreement provides that Plaintiffs may seek reasonable enhancement awards in the amount of $15,000 each to Plaintiffs McCabe and Simpson and $7,500 to Plaintiff Sarabia, subject to the Court's approval.[54] Each Settlement Class Representative has submitted

---

[49] Ex. 1 at ¶¶ 3.5, 7.1; *see* Radetich Decl. at ¶ 14, Ex. A (explaining claims may be submitted electronically or by mail).

[50] Ex. 1 at ¶ 3.5.

[51] Radetich Decl. at ¶ 14; Grover Decl. at ¶ 37.

[52] Grover Decl. at ¶ 38.

[53] Ex. 1 at ¶ 3.2.

[54] Ex. 1 at ¶ 3.3.

with this motion a declaration explaining her efforts on behalf of the Settlement Class in the litigation and settlement of this action.[55]  Plaintiffs' request that the Court approve the enhancement awards is addressed in Section IV.E below.

**F.     Claims administration fees.**

The Settlement Agreement provides that the Claims Administrator may be paid fees and costs that originally were estimated to be approximately $500,000.[56]  Heffler has provided a declaration detailing the work performed and costs incurred through November 20, 2015 in the administration of this settlement.[57]  Heffler will provide a supplemental declaration with the final approval motion specifying the exact dollar amount that it is seeking in fees and costs.[58]  Plaintiffs' request that the Court approve the Claims Administrator's fees and costs is addressed in Section IV.F below.

**G.     The Settlement Agreement's provision regarding requested amounts not awarded.**

The Settlement Agreement provides that, if the Court does not award the full amount of attorneys' fees or costs that Plaintiffs are requesting in this application, any remaining amounts will be included in the Net Settlement Fund.[59]  Similarly, if the Court awards less than the requested enhancement amounts for the Settlement Class Representatives, any amount requested but not awarded will be included in the Net settlement Fund.[60]

**IV.     ARGUMENT**

**A.  California law governs the award of fees, costs and enhancements in this action.**

California law, specifically California Penal Code §§ 630, *et seq.*, governs the settled claims in this action.  Thus, California law also governs the award of fees, costs and enhancement

---

[55] *See generally*, McCabe Declaration, Simpson Declaration and Sarabia Declaration.

[56] Ex. 1 at ¶¶ 3.4, 4.1, 4.2.

[57] Radetich Declaration.

[58] *See* Radetich Decl. at ¶¶ 18-19.

[59] Ex. 1 at ¶ 3.2.

[60] Ex. 1 at ¶ 3.3.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

awards.[61]   This California privacy action is in federal court due to Defendant's removal from California state court on grounds of federal diversity jurisdiction, not federal question jurisdiction.[62]   Although California law governs the fee award, federal law may be referenced as guidance where needed.[63]

### B.   Plaintiffs' requested fee award is appropriate under the percentage-of-the-common-fund method.

Courts have long recognized the "common fund" or "common benefit" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs to be paid out of the fund.[64]   "[A]ttorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants."[65]   As the United States Supreme Court has held, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."[66]   Courts may even look at the value of the total fund in a reversionary settlement, although is not necessary in this "all-in" (i.e., non-reversionary)

---

[61] *See Vizcaino*, 290 F.3d at 1047 (holding that the state law that governs the claims also governs the award of fees); *see also, Gonzalez v. Southern Wine & Spirits of Am., Inc.*, 555 Fed. Appx. 704, 704-05 (9th Cir. 2014) (applying California substantive law to the calculation of the attorney fee award). *Willner*, 2015 U.S. Dist. LEXIS 80697, at *17 (same); *Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 WL 5718440, at *2 (N.D. Cal. Oct. 21, 2013) ("This action asserted claims under California law and is premised on diversity jurisdiction. Therefore, California law governs the determination of attorneys' fees here.").

[62] Dkt. No. 1; *see* Grover Decl. at ¶ 61.

[63] *See Apple Computer, Inc. v. Superior Court*, 126 Cal.App.4th 1253, 1264 n. 4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures."); *see also, e.g., Willner*, 2015 U.S. Dist. LEXIS 80697, at *15-16 (citing *Apple Computer*).

[64] *Serrano III*, 20 Cal.3d at 34; *Glendale City Employees' Association v. City of Glendale*, 15 Cal.3d 328, 341, fn.19 (1975); Quinn v. State of California, 15 Cal.3d 162, 167 (1995); *see In re Consumer Privacy Cases*, 175 Cal.App.4th at 557 (when fee awards come from the total settlement fund, fees may be awarded as a percentage of fund); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); Mills, 396 U.S. at 391-392.

[65] *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997), citing *Boeing*, 444 U.S. at 480–81.

[66] *Boeing*, 444 U.S. at 478.

settlement.[67]

Similarly, the California Supreme Court has held that "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund."[68] California Practice Guide: Civil Trials and Evidence (The Rutter Group) at §17:172.3 explains the common fund doctrine as follows:

> Where the lawsuit results in the recovery of a fund or property benefiting others as well as plaintiff (e.g., a class action), the court has inherent equitable power to order Plaintiffs' attorney fees paid out of the common fund or property [citations]. Such fee spreading assures that all of those benefited by the litigation pay their fair share of obtaining the recovery.[69]

Thus, the percentage-of-the-fund approach appears to be the preferred method of awarding fees in traditional common fund cases, such as this case.[70] Where the settlement amount is a "certain or easily calculable sum of money," use of the percentage-of-the-fund method is appropriate.[71]

---

[67] *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (quoting *Boeing v. Van Gemert*); *Williams*, 129 F.3d at 1027 (finding the district court abused its discretion by awarding class counsel's fees based on the percentage of claims made rather than the total common fund); *see also Stern v. Gambello*, 480 F. App'x 867, 870 (9th Cir. 2012) (finding that the district court correctly considered the requested fees against the potential recovery, rather than the claims actually made, in cross-checking a lodestar method fee award).

[68] *Serrano III*, 20 Cal.3d at 34; *see also Mills*, 396 U.S. at 391-392 (United States Supreme Court endorsing the common fund approach in class actions).

[69] California Practice Guide: Civil Trials and Evidence (The Rutter Group) at §17:172.3.

[70] *See Glendale City Employees' Association*, 15 Cal.3d 328, 341 (1975) (upholding fee award based on percentage of common fund); *Quinn v. State of California*, 15 Cal.3d 162, 167 (1995) ("[O]ne who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits may require those passive beneficiaries to bear a fair share of the litigation costs.); *City and County of San Francisco v. Sweet*, 12 Cal.4th 105, 110-11 (1995) (recognizing that the common benefit doctrine has been applied "consistently in California when an action brought by one party creates a fund in which other persons are entitled to share.). *See also, e.g., In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396-398 (S.D.N.Y. 1999) (describing the overwhelming weight of federal authority in favor of the percentage fee method).

[71] *See Serrano III*, 20 Cal. 3d at 35.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Here, Plaintiffs have created a fixed common fund from which reasonable attorneys' fees can be recovered. The Settlement Agreement creates a common fund of $11,700,000 that will substantially benefit the more than 31,000 Settlement Class Members who have filed claims to date and others who file before the deadline. Each participating Settlement Class Member will receive an ascertainable settlement payment. Thus, the common fund doctrine enables the Court to determine a reasonable fee with "some exactitude."[72]

Attorneys' fee awards of approximately 30% or greater frequently are upheld.[73] As one district court explained, even when courts have employed the alternative lodestar method to assess attorneys' fees, "the result is always an award that hovers around 30% of the fund created by the settlement."[74] The Ninth Circuit also has recognized that the usual range of fee awards in common fund settlements is between 20-30%.[75]

Plaintiffs' requested fee award of 30% of the Gross Settlement Amount falls well within the range of percentages awarded in other class action litigation by this Court and numerous California trial courts.[76] Attorneys' fee awards of 30% or more are well-established by California law and practice. Accordingly, the fee request here is fair and reasonable. The history of this action and Class Counsel's efforts and the results obtained by Class Counsel further support the reasonableness of the requested fees.

---

[72] *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

[73] *See e.g.*, *Keller v. NCAA, et al.*, Nos. 4:09-cv-1967 CW and 4:09-cv-3329 CW, 2015 U.S. Dist. LEXIS 113474, at **36-37 (N.D. Cal. Aug. 19, 2015) (awarding fees amounting to 30% of common fund); *Keller v. Electronic Arts*, No. 4:09-cv-1967 CW, 2015 U.S. Dist. LEXIS 114387, at **12-13 (N.D. Cal. Aug. 18, 2015) (awarding fees representing 29% of separate common fund in case related to the NCAA case just mentioned); *Willner v. Manpower Inc.*, No. 11-cv-02846-JST, 2015 U.S. Dist. LEXIS 80697, at *17 (N.D. Cal. June 20, 2015) (awarding 30% of $8,750,000 common fund); *Roos v. Honeywell International, In*c., 2015 Cal. App. LEXIS 1004, *26- (Cal. App. 1st Dist. Nov. 10, 2015) (confirming 37.5% fee award in $8,150,000 million class settlement). *See also*, *Chavez*, 162 Cal.App.4th at 66, n.11 (noting that fee awards in class actions average around one-third of the recovery).

[74] *In re Activision Sec. Litig.* 723 F. Supp. at 1375.

[75] *Vizcaino*, 290 F.3d at 1047;

[76] *See e.g.*, Grover Decl. at ¶¶ 48, 73; *see also* Elizabeth J. Cabraser, California Class Actions Practice and Procedure § 15.03 at pp. 15-3-15.4.1 (2004) (discussing that California Courts recognize the 30% benchmark and citing cases).

Courts consider several factors when assessing the reasonableness of a common fund award: (1) the results achieved; (2) the risk of prosecuting the litigation; (3) the skill and quality of work by counsel; and (4) the financial burden carried by Class Counsel in prosecuting the case on a contingency basis.[77]  Here, all of the factors support the reasonableness of the requested fee.

### a.    The results achieved.

Class Counsel achieved an exceptional result in this case.  The Parties reached a non-collusive, arms'-length settlement, with the assistance of a respected mediator, after extensive formal discovery and vigorous litigation that began nearly three and one-half years ago.[78]  Defendant strongly denied liability, filed two motions to dismiss and a motion for summary judgment, and vigorously challenged Plaintiffs' ability to certify the class and prove the alleged privacy violations on a class basis.  Continued litigation of this lawsuit presented Plaintiffs with substantial legal risks including the possibility of summary judgment; failure to certify the class; inability to prove liability; and, in the event of success at the trial court level, appeals relating to liability, damages or class certification.[79]

Class Members' support for the results that Class Counsel achieved is demonstrated by the existence of only one "objection"; and that purported objection really is no more than a single class member's polemic in letter form arguing that lawsuits should be forced to go to trial instead of being permitted to settle.  Significantly, the "objection" does not specifically object to Class Counsel's request for fees and costs, which were described clearly in the Notice.[80]

Class Counsel in this case negotiated a settlement which ensured that each Settlement Class Member who submits a simple claim form will receive a settlement payment of approximately $215 based on distribution formula and the current claims rate.[81]

---

[77] *Vizcaino*, 290 F.3d at 1048-50.

[78] Grover Decl. at ¶¶ 9-16, 71; Bernstein Decl. at ¶¶ 3-7.

[79] Grover Decl. at ¶¶ 68-69, 71; *see also*, Dkt. No. 139-1 (Grover Declaration submitted with the preliminary approval motion, at ¶¶ 34-35).

[80] *See* Radetich Decl. at ¶ 17; Grover Decl. at ¶ 66, Ex. 3.

[81] Radetich Decl. at ¶ 14; Grover Decl. at ¶ 38.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

The settlement provides the participating Settlement Class Members with a real and immediate monetary benefit, avoiding the very real risk of not succeeding at the certification or liability phase, which likely would take years to determine and could be followed by years of appeals. These are significant benefits for the participating Settlement Class Members.[82]

Moreover, Defendant changed its policies and practices after this action was filed and implemented a warning message, at the start of all calls to its toll-free telephone numbers, stating that calls may be recorded.[83] That pre-recording warning provides callers the opportunity to decide affirmatively whether they consent to being recorded. Thus, in addition to the monetary results achieved in the settlement, Class Counsel's representation of Plaintiffs in their pursuit of the class claims in this lawsuit resulted in a policy change that now protects consumers' privacy rights. The results achieved support Class Counsel's fee request.

### b. __The contingent nature of this case and the financial burden.__

Class Counsel provided experienced, competent representation and obtained an eight-figure settlement for the Settlement Class Members, all while prosecuting the case on a contingency basis for three-plus years. As the California Supreme Court has explained:

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.[84]

---

[82] Grover Decl. at ¶¶ 38, 68-69, 71.

[83] Grover Decl. at ¶ 71.

[84] *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-1133 (2001) (internal citations and quotations omitted).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

From the outset of the case to the present, prosecution of this action has involved substantial financial risk for Class Counsel.[85]  Class Counsel undertook this matter on a purely contingent basis, with no assurance of recovery.  In addition to their time, Class Counsel placed at risk their own resources to prosecute this action with no guarantee of success.[86]  The risks of this case are apparent in the pending battles over the class certification, summary judgment and expert witness evidentiary motions.  Further, even if Plaintiffs successfully overcame those hurdles, there still was no guarantee of success at trial or in any subsequent appeals.

Class Counsel's commitment to this litigation should not be overlooked in assessing the reasonableness of the fee request.  The aggressive nature of this litigation, particularly the discovery and motion practice involved, required Class Counsel to dedicate significant resources to this case.  Class Counsel have spent more than 3,331 hours on the case to date and have incurred $122,421.19 in costs and other litigation expenses such as expert witness fees.[87]  Had the Parties not agreed to settle, the demands of litigating this case would have continued to require a significant portion of Class Counsel's resources.  Class Counsel were forced to forego other employment in order to devote the time and resources required by this case.[88]

Despite such challenges, Class Counsel were able to persuade Defendant that it faced sufficient exposure that it was willing to pay $11,700,000 to settle Plaintiffs' claims.

      **c.**    **The experience, reputation, and ability of Class Counsel, and the skill they displayed in litigation.**

Class Counsel are experienced in complex class litigation including numerous privacy related class actions.[89]  Because of their experience and skill, Class Counsel were able to develop a thorough factual record regarding the call center and data storage policies and practices of a large corporation operating numerous hotel brands, defeat two motions to dismiss, move successfully to amend the complaint, present a fully-briefed class certification motion, move to

---

[85] Grover Decl. at ¶¶ 48, 67, 72; Bernstein Decl. at ¶¶ 3, 8, 14.

[86] Grover Decl. at ¶¶ 48, 67-69; Bernstein Decl. at ¶¶ 3, 8, 14.

[87] Grover Decl. at ¶¶ 50, 53, 63-64, 74-75; Bernstein Decl. at ¶¶ 3, 8.

[88] *See* Grover Decl. at ¶¶ 72-73; Bernstein Decl. at ¶ 14.

[89] *See* Grover Decl. at ¶¶ 51, 55-59, 70; Bernstein Decl. at ¶ 2, Ex. 1.

exclude Defendant's expert evidence, and present oppositions to Defendant's summary judgment motion and motion to exclude Plaintiffs' expert evidence.[90] With the hearings for those substantive motions approaching, Class Counsel persuaded Defendant that settlement was a better option than the costs and risks of continued and prolonged litigation.[91]

Through their skill, ability and experience, Class Counsel were able to litigate this action vigorously on behalf of the class and obtain a settlement that provides an excellent result for the Settlement Class Members.

### d. The risk of litigation.

In addition to the risks of continued litigation discussed above, there also was considerable uncertainty given that there is limited case law interpreting California Penal Code § 632.7 in the class action context; determining liability for alleged non-consensual telephone call recording under the statute; and setting out methods of acceptable class-wide proof regarding various issues Defendant raised, such as which callers called Six Continents, the callers' residency, their location at the time of their calls, which non-cellular calls were made from cordless landline telephones, whether a particular call was recorded, whether the caller consented to the recording, what type of device was used to answer the call, and whether a particular call was made during the limitations period.[92] Class Counsel, therefore, faced complex and novel issues concerning the interpretation of Section 632.7 and how best to establish proof of a lack of consent to or lack of warning of the recordings on a class basis.[93]

### 2. As of this date, there has been only one letter objecting to the settlement.

Plaintiffs' intention to request payment of Class Counsel's attorneys' fees was disclosed clearly to each Class Member in the Court-approved Class Notice and in information found on the Settlement Website.[94] To date, the settlement has received an overwhelmingly positive reaction

---

[90] Grover Decl. at ¶¶ 70-71.

[91] Grover Decl. at ¶¶ 13-16, 70-71.

[92] Grover Decl. at ¶ 69.

[93] Grover Decl. at ¶¶ 68-69.

[94] *See* Radetich Decl. at ¶¶ 5, 7, 8, Exhibits A, B, and C.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

from Settlement Class Members. More than 31,000 have submitted claims. Only one Settlement Class Member has submitted an objection; and that objection, which will be addressed as part of the final approval motion, does not take specifically issue with the fee request. [95] Positive reactions by class members favor settlement approval.[96] A lack of objections to the requested fee award also constitutes strong evidence in support of the reasonableness of the requested award.[97]

### 3. The reasonableness of the requested fee award is supported by the awards granted in similar class settlements.

"Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."[98] Fee awards in smaller class settlements, *i.e.,* those involving common funds around $10 million or less, frequently are 30% or higher as opposed to "megafunds," *i.e.*, $50 million or more, where a smaller percentage recovery is more appropriate.[99]

In class settlements similar in size to this one, California courts consistently award attorneys' fees equaling around 30% of the total common fund.[100] Similarly, federal courts in

---

[95] Radetich Decl. at ¶ 17; Grover Decl. at ¶¶ 37, 66, Ex. 3 (objection letter filed with the Court, Dkt. 150).

[96] *7-Eleven Owners for Fair Franchising v. Southland Corp*., 85 Cal.App.4th 1135, 1152-53 (2000).

[97] *See In re Heritage Bond Litig.,* No. 02-ML-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) ("The absence of objections or disapproval by class members to Class Counsel's fee request further supports finding the fee request reasonable.").

[98] *Chavez*, 162 Cal.App.4th 43, 66 n.11 (quoting *Shaw v. Toshiba Am. Info. Sys., Inc*., 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000)); *see also*, *Knight v. Red Door Salons, Inc.,* No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, *17 (N.D. Cal. Feb. 2, 2009) (fee awards in common fund cases range around 30%); *Romero v. Producers Dairy Foods, Inc.,* No. 1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270, at *10 (E.D. Cal. Nov. 14, 2007) (noting that "fee awards in class actions average around one-third of the recovery," citing *Newberg on Class Actions* § 14.6 (4th ed. 2007)).

[99] *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (discussing the inverse relationship with fee award percentages and the common fund size); *see also, Miller v. CEVA Logistics USA, Inc.,* 2015 U.S. Dist. LEXIS 104704, at *20 (E.D. Cal. Aug. 7, 2015) (noting same).

[100] *See, e.g.,* Grover Decl. Ex. 13, *Contreras v. Bank of Am., N.A*., No. CGC-07-467749 (S.F. Cnty. Super. Ct. Sept. 3, 2010) (fee award of one-third of $16,650,000 fund in class settlement).

California also have awarded approximately 30% or more of the common fund in settlements that are well below the megafund range.[101]

### C. A cross-check under the lodestar method confirms the reasonableness of the fee requested.

Fee calculations under the lodestar method would result in a similar award, demonstrating the fairness of Class Counsel's percentage fee request. Because this is a common fund case, the lodestar method serves only to cross check the reasonableness of the fee request.[102]

Under the lodestar method, a base fee amount is calculated from a compilation of time reasonably spent on the case and the reasonable hourly compensation of the attorney. The base amount then is adjusted by using a multiplier addressing various factors, such as the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.[103] *Newberg on Class Actions* states that, in applying the multiplier, "[m]ultiples ranging from one to four frequently are awarded in common fund cases when the lodestar method

---

[101] *See*, *e.g.*, *Willner v. Manpower Inc.*, No. 11-cv-02846-JST, 2015 U.S. Dist. LEXIS 80697, at *17 (N.D. Cal. June 20, 2015) (awarding 30% of $8,750,000 total settlement fund, noting that, similar to this case, the four-year litigation had involved multiple motions to dismiss, a class certification motion and a summary judgment motion); *Keller v. Electronic Arts*, No. 4:09-cv-1967 CW, 2015 U.S. Dist. LEXIS 114387, at **12-13 (awarding fees representing 29% of $20,000,000 common fund in class settlement); *Birch v. Office Depot, Inc*., No. 06cv1690 DMS, at ¶ 13 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16,000,000 class action settlement; *see* Grover Decl. Ex. 12); *See also*, *Wren v. RGIS Inventory Specialists*, No. C-06-05778, JCS, 2011 U.S. Dist. LEXIS 38667, at ** 74-75, 78-84 (N.D. Cal. Apr. 1, 2011) (approving fee award under lodestar method that, when cross-checked with percentage method, constituted 42% of the $27,000,00 common fund); *Keller v. NCAA, et al.*, Nos. 4:09-cv-1967 CW and 4:09-cv-3329 CW, 2015 U.S. Dist. LEXIS 113474, at **36-37 (N.D. Cal. Aug. 19, 2015) (awarding fees of to 30% of $40,000,000 common fund).

[102] *See*, *e.g.*, *In re Consumer Privacy Case*s, 175 Cal.App.4th at 557-58 (Approving cross-checking with an alternative fee calculation method, the court held that, "[r]egardless of whether attorney fees are determined using the lodestar method or awarded based on a percentage-of-the-benefit analysis under the common fund doctrine, the ultimate goal … is the award of a reasonable fee to compensate counsel for their efforts, irrespective of the method of calculation." (internal quotations and citations omitted); *see also, Glass v. UBS Fin. Servs., Inc.* 331 F.App'x 452, 456 (9th Cir. 2009) (approving the district court's "informal lodestar cross-check" for confirming the reasonableness of the percentage award); *Vizcaino*, 290 F.3d at 1050 (similar).

[103] *Serrano III,* 20 Cal.3d at 48; *In re Consumer Privacy Case*s, 175 Cal.App.4th at 556; *Chavez*, 62 Cal.App.4th at 61-67 (considering factors supporting multiplier of 2.5, including quality of representation, success achieved and rate of acceptance of the settlement benefits).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

is applied."[104]  As the Ninth Circuit recently recognized, "California law requires that 'an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee.'"[105]

Class Counsel has invested over 3,343 hours of attorney time litigating this class action to date.[106]  Class Counsel calculates its lodestar through November 20, 2015 at $2,089,958 based on reasonable hourly rates.[107]  This amount does not include the additional lodestar time attorneys at Keller Grover LLP and Law Offices of Scot D. Bernstein, A Professional Corporation, will expend finalizing and filing this motion, preparing and filing the final approval motion, attending the final fairness hearing, speaking with Class Members and making sure that the settlement is administered properly.[108]  Plaintiffs are requesting an award representing Class Counsel's actual lodestar through November 20, 2015 plus a reasonable 1.69 multiplier.[109]  In light of Class Counsel's reasonable hourly rates and reasonable hours worked, in addition to the substantial benefits obtained for the class, the quality of representation and risk of non-payment,[110] the $3,510,000 fee request is reasonable.

### 4.    Class Counsel's hourly rates are reasonable.

Under the lodestar method, courts should apply rates commensurate with hourly rates for private attorneys conducting non-contingent litigation of the same type.[111]  Ordinarily, reasonable hourly rates are based on each attorney's current hourly rates.[112]

---

[104] *Newberg*, *Attorney Fee Awards*, § 14.03 at 14–5 (1987).

[105] *Gonzalez*, 555 Fed. Appx. at 704-05, quoting *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001).

[106] Grover Decl. at ¶¶ 50, 53, 64, Exs. 4, 5, 6, 7, 8; Bernstein Decl. at ¶ 3, Ex. 2.

[107] Grover Decl. at ¶¶ 63-65; Bernstein Decl. at ¶ 12.

[108] Grover Decl. at ¶¶ 52, 65; Bernstein Decl. at ¶ 13.

[109] Grover Decl. at ¶¶ 48-49, 65; *see also*, Bernstein Decl. at ¶¶ 3-13, Ex. 2.

[110] *See* Section IV.B.1 above, addressing very similar or essentially the same factors.

[111] *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

[112] *Vizcaino*, 290 F.3d at 1051 ("calculating fees at [current hourly rates]…compensate[s] for delay in receipt of payment").

Class Counsel's hourly rates are summarized in the Grover and Bernstein Declarations filed in support of this application.[113]  Rate determinations from other cases are satisfactory evidence of the prevailing market rate.[114]  Class Counsel's hourly rates are well within the range of those found permissible for attorneys practicing class action litigation in the Northern District/San Francisco area market.[115]  In fact, *a court in this district recently found Class Counsel's rates to be "consistent with market rates and reasonable in light of Class Counsel's skill, experience, and expertise."*[116]

All of the attorneys who contributed work to this action focus their practices on complex class actions and regularly litigate cases in California federal and state courts.[117]  The senior attorneys managing the litigation have an extensive history of success in litigating complex class action cases.[118]  Class Counsel's years of class action experience and expertise led to Plaintiffs' success in resolving the action before trial and with critical class certification and summary judgment motions fully briefed and about to be heard.[119]  Reaching an eight-figure settlement in

[113] Grover Decl. at ¶¶ 53-59; Bernstein Decl. at ¶ 12.

[114] *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

[115] *Gonzalez*, 2014 WL 636807, at *1 (reversing district court's order reducing attorneys' hourly rates without considering evidence of "prevailing hourly rates for comparable legal services in the community").  *See, e.g., O'Bannon v. NCAA*, No. 09-cv-03329-CW (NC), 2015 U.S. Dist. LEXIS 91514, at * 14 (N.D. Cal. July 13, 2015) (finding similar range of hourly rates for Bay Area class counsel experienced in complex class actions to be reasonable); *Williams v. SuperShuttle Int'l, Inc.*, No. 12-CV-06493-WHO, 2015 WL 685994, at *2 (N.D. Cal. Feb. 12, 2015) (similar); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309692, at *2 (N.D. Cal. Mar. 31, 2014) (similar); *Vedachalam v. Tata Consulting Serv. Ltd.*, No. C 06–0963 CW, 2013 WL 3941319, at *3 (N.D. Cal. July 18, 2013) (similar); *Bolton v. U.S. Nursing Corp.*, No. C 12–4466 LB, 2013 WL 5700403, at *5 (N.D. Cal. Oct. 18, 2013) (similar); *Greko v. Diesel U.S.A., Inc.*, No. 10-CV-02576 NC, 2013 WL 1789602, at *10 (N.D. Cal. Apr. 26, 2013); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *18-22 (similar); *see also*, Grover Decl. at ¶¶ 61-62 (noting the range of hourly rates approved in recent Bay Area fee orders).

[116] Grover Decl. at ¶ 60, Ex. 9 (Order in *Nguyen v. Equilon Enterprises, LLC*, USDC ND Case No. 12-cv-04650 YGR, Docket No. 46).

[117] Grover Decl. at ¶¶ 2-4, 51, 55-59, 70; Bernstein Decl. at ¶ 2, Ex. 1.

[118] Grover Decl. at ¶¶ 2-4; 51, 55, 70; Bernstein Decl. at ¶ 2, Ex. 1.

[119] Grover Decl. at ¶¶ 70-71; *see* Bernstein Decl. at ¶¶ 2, 4-7.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

the face of Defendant's hard fought opposition to the class claims is evidence of Class Counsel's skill and high quality of representation.

### 5. Class Counsel's hours are reasonable.

Class Counsel has spent approximately 3,343 hours litigating this case to date.[120] Reasonable hours include, in addition to time spent during litigation, the time spent before the action was filed, including time spent interviewing the clients, investigating the facts and the law, preparing the initial pleadings and litigating the case.[121]  The Grover and Bernstein Declarations describe the work performed by Class Counsel, which included fact investigation, drafting the complaints, propounding and responding to written discovery, reviewing nearly 11,000 pages of documents that Defendant produced, deposing six of Defendant's designated corporate representatives, defending the depositions of the three named Plaintiffs and Plaintiffs' three experts, attending the deposition of Plaintiff McCabe's co-worker, engaging in substantive motion practice -- including opposing two motions to dismiss, meeting and conferring with opposing counsel regarding discovery disputes, moving to amend the complaint, moving for class certification, moving to exclude Defendant's expert evidence, opposing Defendant's summary judgment motion, opposing Defendant's expert evidentiary motion, working with a retired U.S. Magistrate Judge to obtain a neutral analysis of the parties' positions on certification and summary judgment, preparing a detailed and multifaceted quantitative and probabilistic analysis and persuading opposing counsel that mediation was desirable in view of Defendant's risk, drafting a mediation brief, preparing for and attending a mediation, negotiating the settlement, working with the Claims Administrator, and fielding calls from Settlement Class Members, among the many other tasks necessary to this litigation.[122]

---

[120] Grover Decl. at ¶¶ 50, 53; Bernstein Decl. at ¶ 3.

[121] *Webb v. Board of Educ.,* 471 U.S. 234 (1985).  In addition, the fee award should include time spent to establish and the attorneys' fee claim.  *Serrano v. Priest* (*"Serrano IV"*), 32 Cal.3d 621, 639 (1982).

[122] *See* Grover Decl. at ¶¶ 9-18, 50; Bernstein Decl. at ¶¶ 3-7, Ex. 2.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Class Counsel expect to spend at least another 75 hours finalizing this motion, preparing and filing the final approval motion, preparing for and attending the final approval hearing, speaking with Class Members, and dealing with claims administration issues.[123] Those additional hours are not included in the current lodestar calculations.

### 6. A multiplier is warranted.

Based on the reasonable hourly rates suggested by Class Counsel, the requested fee award would represent a modest multiplier of 1.69 – an amount well within the accepted range for class action cases.[124] California law provides that an increase to the actual lodestar can be supported by "factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented."[125]

As discussed in Section IV.B.1.a above, *i.e.*, Class Counsel achieved excellent results for the Settlement Class Members. Based on the claims received to date, participating Settlement Class Members are expected to receive more than $215 each.[126]

Further, Class Counsel are highly experienced in complex class action litigation, including privacy class actions similar to this one.[127] Class Counsel called upon their expertise and skill in three-plus years of vigorous litigation that involved substantial discovery and numerous substantive motions.[128] Moreover, this action raises California privacy law issues that relevant case law addresses only minimally in the class action context, leaving Class Counsel to navigate

---

[123] Grover Decl. at ¶¶ 19, 52; Bernstein Decl. at ¶ 13.

[124] *See Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher"); *Willner*, 2015 U.S. Dist. LEXIS 80697, at *22 (finding 2.1 multiplier reasonable, noting that one to four is the common range); 4 *Newberg on Class Actions* 4th (4th ed. 2002) § 14.6 ("[m]ultiples ranging from one to four frequently are awarded in common fund when the lodestar method is applied."); *see also*, *Buccellato v. At&T Operations, Inc.*, No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699, at *3-4 (N.D. Cal. June 30, 2011) (finding 4.3 multiplier to be reasonable, noting the commonly accepted range of one to four with even higher multipliers sometimes applied); *see also*, *Vizcaino*, 290 F.3d at 1051 n.6 (stating that the majority of class settlements approved had fee multipliers that ranged between 1.5 and 3).

[125] Lealao v. Beneficial California, Inc., 82 Cal.App.4th 19, 26 (2000).

[126] Grover Decl. at ¶ 38.

[127] Grover Decl. at ¶¶ 2-4, 51, 55-59, 70; Bernstein Decl. at ¶ 2, Ex. 1.

[128] Grover Decl. at ¶¶ 9-18, 71.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

the class issues specific to the privacy claims alleged here without much guidance and in an environment of uncertainty.[129]

Class Counsel were precluded from accepting other work because of the time and resources needed to litigate this action. The three-plus years of very active and aggressive litigation required Class Counsel to dedicate a substantial portion of their resources to the case, preventing them from taking other cases.[130]

Finally, the fact that no Class Member has objected to the requested fees supports the application of a 1.69 multiplier to the basic lodestar. Thus, the lodestar cross-check helps to establish that the 30% fee award requested, which is less than the maximum fee award available, is reasonable.

### D. Class Counsel's request for costs also is reasonable.

To date, Class Counsel have incurred out-of-pocket litigation costs and litigation expenses of $121,671.19.[131] Class Counsel expects to incur additional costs totaling approximately $750 before the conclusion of this matter.[132] "Class counsel is entitled to reimbursement of reasonable expenses."[133] As demonstrated in the Grover and Bernstein Declarations, the incurred costs and expenses include mediation fees, filing fees, expert witness and consultant fees, deposition costs, court courier charges, legal research fees, mailing charges, parking costs, mileage, travel costs, meal costs, and overnight delivery costs.[134] Such costs are appropriate for cost reimbursement in these types of cases.[135]

---

[129] Grover Decl. at ¶ 69.

[130] Grover Decl. at ¶ 72.

[131] Grover Decl. at ¶¶ 74-76, Ex. 10; Bernstein Decl. at ¶ 8, Ex. 2.

[132] Grover Decl. at ¶ 74.

[133] Fed. R. Civ. P. 23(h); *see e.g., Greko v. Diesel U.S.A., Inc.*, 10-CV-02576 NC, 2013 WL 1789602, at *12 (N.D. Cal. Apr. 26, 2013) (approving reasonable costs in class action settlement); *Van Vranken*, 901 F. Supp. at 299 (same).

[134] Grover Decl. at ¶ 74, Ex. 10; *see also*, Bernstein Decl. at ¶ 8, Ex. 2.

[135] *See e.g., In re United Energy Corp. Sec. Litig*,. MDL No. 726, 1989 WL 73211, at *6 (C.D. Cal. 1989) (quoting *Newberg*, Attorney Fee Awards, § 2.19 (1987)); *see also*, *In re GNC Shareholder Litig*, 668 F. Supp. 450, 452 (W.D. Pa. 1987).

Class Counsel are seeking reimbursement of up to $122,421.19, which, although above the $100,000 estimate amount provided in the Settlement Agreement and included in the Class Notice, represents costs incurred on behalf of the Settlement Class. No Settlement Class Member objected to the $100,000 estimate and there is no reason to believe that any Settlement Class Member would have objected to $122,421.19.[136]

### E. The requested Settlement Class Representative enhancement payments are reasonable.

"'[I]ncentive awards are fairly typical in class action cases.'"[137] An award to the named plaintiff is "'intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'"[138] A service award is appropriate as an incentive to the named plaintiff to participate in the suit.[139]

The approval of enhancements is within the discretion of the Court.[140] In exercising that discretion, district courts "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"[141] and consider factors such as "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof)

[136] *See* Radetich Decl. at ¶ 17; Grover Decl. at ¶ 36, Ex. 3.

[137] *In re Cellphone Fee Termination Cases*, 186 Cal.App.4th 1380, 1394 (2010), quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *Clark v. Am. Residential Servs. LLC*, 175 Cal.App.4th 785, 806 (2009); *see also Bell v. Farmers Ins. Exch.*, 115 Cal.App.4th 715, 725-26 (2004) (upholding service payments to class representatives); Cal.App.4th*see also*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and risks they incurred during the course of the class action litigation").

[138] *In re Cellphone Fee Termination Cases*, 186 Cal.App.4th at 1393-94, quoting *Rodriguez*, 563 F.3d at 958-59.

[139] *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

[140] *In re Cellphone Fee Termination Cases*, 186 Cal.App.4th at 1393-94; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463.

[141] *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  enjoyed by the class representative as a result of the litigation."[142]  The enhancement awards

2  requested for the three Named Plaintiffs and Class Representatives are reasonable in this situation

3  and fall within the range of enhancement awards in other similar California class settlements.[143]

4  For example, in the settlement of a similar California Penal Code §§ 632, *et seq.* class action, a

5  Southern District of California court approved a $20,000 enhancement where the total settlement

6  fund was $6,000,000.[144]

7       Plaintiffs McCabe, Simpson and Sarabia have invested significant time and energy in this

8  litigation.  The specific details of each Plaintiff's participation over the course of this litigation is

9  detailed in the declaration each Plaintiff has filed in support of her request.

10      It also is important to recognize that, after Plaintiffs McCabe and Simpson filed this

11 lawsuit, Defendant ***immediately changed its policy and practice and began providing a warning***

12 ***at the start of all calls to its toll-free telephone numbers notifying callers that Defendant might***

13 ***be recording the conversation***.  Because of that pre-recording warning, callers now have control

14 over their privacy and are able to choose whether they want to continue conversation or end the

15

16

17 [142] *In re Cellphone Fee Termination Cases*, 186 Cal.App.4th at 1395; *Rodriguez*, 563 F.3d at 958-59.

18 [143] *See Marenco v. VISA Inc.*, No. CV 10-08022 DMG (VBKx), 2011 U.S. Dist. LEXIS 140527

19 (C.D. Cal. Dec. 6, 2011) (awarding $18,000 enhancement in $18,000,000 Penal Code §§ 632, *et seq.* class settlement); *Birch v. Office Depot*, No. 06cv1690 DMS, unpublished order at ¶ 12

20 (awarding $15,000 enhancement in $16,000,000 class settlement; *see* Grover Decl. Ex. 12);; *Keller v. NCAA*, 2015 U.S. Dist. LEXIS 113474, at *35 (awarding incentive awards of $15,000

21 for two named plaintiffs and various lower amounts for others); *Buccellato,* 2011 U.S. Dist. LEXIS 85699, at *6-7 (approving $20,000 enhancement for one named plaintiff and $5,000 for

22 five other named plaintiffs); *Glass v. UBS Fin. Servs.,* No. C 06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at **51-52 (N.D. Cal. Jan. 26, 2007) (approving a $25,000 incentive award to four

23 plaintiff representatives in a $45 million settlement); *Van Vranken*, 901 F. Supp. at 299 (approving $50,000 award in $76,723,213.26 settlement amount); *see also, In re Cellphone Fee*

24 *Termination Cases*, 186 Cal.App.4th at 1395 (affirming $10,000 incentive awards for class

25 representatives who actively participated in the litigation, including producing documents, answering interrogatories and submitting to depositions); *McDonald v. Bass Pro Outdoor World,*

26 *LLC*, No. 3:13-cv-00889-BAS-DHB, unpublished order at p.11 (S.D. Cal. Dec. 18, 2014) (awarding $20,000 enhancement in $6,000,000 California Penal Code §§ 632, *et seq.* class

27 settlement; Grover Decl. Ex. 11).

28 [144] *McDonald*, No. 3:13-cv-00889-BAS-DHB, unpublished order at p.11.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  call and avoid being recorded.[145]

2  The Settlement Agreement provides reasonable enhancements for the Settlement Class

3  Representatives, subject to the Court's approval, to compensate them for the risks they incurred

4  and the time and effort they expended bringing the privacy violation class claims alleged in the

5  operative Third Amended Complaint and actively pursuing those claims for years on behalf of the

6  class.[146]  Those efforts resulted in monetary benefits for the Settlement Class and also led to

7  Defendant changing its policy and practice.  Plaintiffs request a $15,000 enhancement payment

8  each for Plaintiffs McCabe and Simpson and $7,500 for Plaintiff Sarabia.[147]

**F. The Claims Administrator's requested fees are reasonable.**

10  The requested fees of the Claims Administrator in this case are reasonable.  Heffler has

11  performed and will continue to perform tasks necessary to the administration of the settlement,

12  including providing mail and email notice to Settlement Class Members, setting up a settlement

13  website, initiating an online banner advertisement campaign, arranging for notice publication in

14  multiple newspapers, issuing a press release, receiving and processing claim forms and requests

15  for exclusion, processing returned mail, and handling inquiries from Class Members.[148]  Heffler

16  also will be calculating and mailing individual settlement payments.

17  Heffler anticipates requesting payment of up to $491,684, less than the estimated amount

18  set forth in the Settlement Agreement, as its fees for administering this settlement.[149]  Heffler has

19  incurred fees and costs totaling $305,088.04 through November 18, 2015 and will provide a

20  detailed supplemental declaration setting forth its final fee request in connection with the final

21  approval motion.[150]

---

[145] Grover Decl. at ¶ 45.

[146] Ex. 1 at ¶ 3.3; *see also* Grover Decl. at ¶¶ 41-45.

[147] *See* Ex. 1 at ¶ 3.3; McCabe Decl. at ¶¶ 3-13; Simpson Decl. at ¶¶ 3-13; Sarabia Decl. Decl. at ¶¶ 3-8; Grover Decl. at ¶¶ 41-45.

[148] Radetich Declaration; *see also,* Ex. 1 at ¶¶ 4.1, 4.2.

[149] Radetich Decl. at ¶ 18; Ex. 1 at ¶ 3.4.

[150] *Id.*

## V.     CONCLUSION

Class Counsel have fought hard for the class in this hotly contested case since its inception.  The substantial – and for Plaintiffs successful – motion practice and voluminous discovery required a high level of focus and effort throughout. When there was a need to advance costs, Class Counsel did not hesitate.  And the result of that effort is an eight-figure settlement.

The Settlement Class Representatives were helpful and responsive throughout and exposed themselves to risk.  For one, that risk was realized in the form of tension at work caused by Defendant deposition of her employer.  In view of the enormous benefit their willingness to serve has conferred on the class, the requested enhancements are reasonable.

With regard to attorneys' fees in this case, which is in federal court based purely on diversity jurisdiction, California law is the applicable law.  This case has been hard-fought throughout and has required unceasing time and focus.  The hours spent on the case and the more-than-$120,000 that Counsel advanced with no guarantee of compensation or repayment are a testament to the risk involved.  The sum requested as fees is equivalent to 30% of the $11,700,000 settlement – a percentage that has been found to be reasonable in numerous California appellate decisions.  And the effective multiplier of 1.69 is well below multipliers that have been approved in numerous state and federal cases.

Thus, Plaintiffs respectfully request that the Court grant this motion and approve (1) a payment of $3,510,000 to Class Counsel for attorneys' fees and $122,421.19 for Class Counsel's out-of-pocket costs and litigation expenses, (2) enhancement payments of $15,000 each to Plaintiffs McCabe and Simpson and $7,500 to Plaintiff Sarabia, and (3) payment to Heffler for administration fees and expenses anticipated not to exceed $491,684.

Dated:  November 25, 2015                      Respectfully submitted,


                                               **KELLER GROVER LLP**


                                               By: _/s/ Eric A. Grover_
                                               ERIC A. GROVER
                                               Attorneys for Plaintiffs