Charles R. Messer (SBN 101094)
CARLSON & MESSER LLP
5959 West Century Boulevard, Suite 1214
Los Angeles, California 90045
messerc@cmtlaw.com
Telephone (310) 242-2202

For Objector Charles R. Messer

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA McCABE, et al, <br><br> Plaintiffs, <br><br> v. <br><br> SIX CONTINENTS HOTELS, INC., <br><br> Defendant. | Case no. 12-cv-04818 NC <br><br> **OPPOSITION TO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND OPPOSITION TO MOTION FOR AWARD OF ATTORNEYS' FEES** <br><br> Date:      February 3, 2016 <br> Time:      1:00 p.m. <br> Courtroom: D—15th Floor |

# TABLE OF CONTENTS

1. The Illinois Statutes and California's IPA Both Require Two-Party Consent..................................................................................................6

2. The Seventh Circuit's Decision in *ACLU v. Alvarez*..................................6

3. The Illinois Supreme Court's Constitutional Analysis................................7

   A. The Facts.................................................................................................8

   B. Background and History of the Illinois Statute....................................8

   C. The Illinois Supreme Court's Constitutional Analysis........................10

4. The IPA Does Not Apply to Non-Private Conversations..........................15

5. Attendance of the February 3, 2016 Hearing.............................................17

{00041201;1}
OPPOSITION TO MOTION FOR FINAL APPROVAL
-2-

# TABLE OF AUTHORITIES

Cases

1. *American Civil Liberties Union v. Alvarez,*
   679 F.3d 583 (7th Cir. 2012)..................................................................5,6,7

2. *American Civil Liberties Union v. Alvarez,*
   679 F.3d 583, 585 (7th Cir. 2012).................................................................6

3. *American Civil Liberties Union v. Alvarez,*
   679 F.3d 583, 595 (7th Cir. 2012)............................................................7,10

4. *American Civil Liberties Union v. Alvarez,*
   679 F.3d 583, 605-606 (7th Cir. 2012)....................................................7,14

5. *Bartnicki v. Vopper,*
   532 U.S. 514, 532-33, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001)...............12

6. *Holder v. Humanitarian Law Project,*
   561 U.S. 1, 5-6, 130 S.Ct. 2705, 2723, 177 L.Ed.2d 355 (2010)...............11

7. *International Society for Krishna Consciousness of California, Inc. v. City of Los Angeles,*
   48 Cal. 4th 446 (2010).............................................................................5,15

8. *Kearney v. Salomon Smith Barney, Inc.,*
   (2006) 39 Cal. 4th 95, 115-120...................................................................16

9. *Merandette v. City & Cnty. Of San Francisco,*
   88 Cal. App. 3d 105, 113 (1979)................................................................15

10. *People v. Beardsley,*
    1 15 Ill. 2d 47, 104 Ill. Dec. 789, 503 N.E. 2d 346 (Ill. 1986)................9,11

11. *People v. Beardsley,*
    1 15 Ill. 2d at 53, 104 Ill. Dec. 789, 503 N.E. 2d 346 (Ill. 1986)...............11

12. *People v. Ceja,*
    204 Ill.2d 332, 349-50, 273 Ill. Dec. 796, 789 N.E.2d 1228 (2003).................................14

13. *People v. Clark,*
    379 Ill. Dec. 77, 6 N.E. 3d 154 (Ill. 2014).................................................................5,7,8

14. *People v. Clark,*
    379 Ill. Dec. 77, 82-85, 6 N.E. 3d 154, 159-162 (Ill. 2014)....................................10,15

15. *People v. Clark,*
    379 Ill. Dec. 77, 84, 6 N.E. 3d 154, 164 (Ill. 2014)......................................................12

16. *People v. Clark,*
    379 Ill. Dec. 77, 85, 6 N.E. 3d 154, 162 (Ill. 2014)......................................................10

17. *People v. Clark, supra,*
    6 N.E. 3d at 159............................................................................................................9

18. *People v. Melongo,*
    379 Ill. Dec. 43, 6 N.E. 3d 120 (Ill. 2014).................................................................5,7,8

19. *Turner Broadcasting System, Inc. v. Federal Communications Comm'n,*
    520 U.S. 180, 189, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997).....................................11

20. *United States v. O'Brien,*
    391 U.S. 367, 376-77, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).....................................11

21. *Ward v. Rock Against Racism,*
    491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).....................................11

Statutes and Codes

22. Cal. Penal Code Section 630.......................................................................................15,16

23. *Civil Code* Section 1747.08............................................................................................15

24. Invasion of Privacy Act, *Penal Code sections 632, et seq*..................................................5

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Class member Charles R. Messer objects to the class action settlement on the ground that the Invasion of Privacy Act, *Penal Code sections 632 et seq.,* ("IPA") is unconstitutional under the free speech and due process provisions of the California and United States Constitutions. The court should not approve paying anything to anyone under the plaintiffs' unconstitutional legal theory, even in the context of a voluntary settlement.

In the alternative, the Objector objects on the ground that in order to save the IPA from constitutional deficiencies, a cause of action under the IPA must contain an invasion-of-privacy element. Conversations about hotel-rates or hotel-addresses are not private under any plausible theory, and the Third Amended Complaint fails to allege any invasions of any tangible rights to privacy. For example, if someone uses a smartphone to record the hotel's address, it is not constitutionally plausible that that person should be liable for $5,000 in statutory damages to the hotel.

Under a constitutional and narrow construction of the IPA, only persons who conveyed private information (which was recorded without their consent) have viable IPA claims. If the IPA is narrowly construed to save it from constitutional infirmities, the settlement class must be re-ascertained to avoid paying persons whose privacy-rights were never invaded.

A trio of Illinois cases supports the Objector's contention that California's IPA is unconstitutional: *American Civil Liberties Union v. Alvarez,* 679 F.3d 583 (7th Cir. 2012), *People v. Melongo,* 379 Ill. Dec. 43, 6 N.E. 3d 120 (Ill. 2014), and *People v. Clark,* 379 Ill. Dec. 77, 6 N.E. 3d 154 (Ill. 2014). And the plaintiffs' broad theory of IPA-liability fails to comply with California's narrow-tailoring test. *International Society for Krishna Consciousness of California, Inc. v. City of Los Angeles,* 48 Cal. 4th 446 (2010).

In accordance with applicable rules, the Objector is today serving this brief on the California Attorney General.

Objector Charles R. Messer opposes the motion for attorney fees on the ground that the IPA does not authorize recovery of attorney fees. Also, lawyers should not recover fees for advocating legal theories that violate the California and federal Constitutions. Such litigation is

emphatically *not* in the public interest. There is no plausible statutory basis to award attorney fees in this case, and for that reason, the motion for attorney fees should be denied.

### 1. The Illinois statutes and California's IPA both require two-party consent.

Like California's IPA, Illinois statutes require the consent of all parties to record telephone conversations. Section 14-2 of the Illinois Criminal Code provides:

> A person commits eavesdropping when he knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so with the consent of all of the parties to such conversations or electronic communications....

In 2014, the Illinois Supreme Court unanimously held that the Illinois eavesdropping laws are unconstitutional on their face. But the ruling in *American Civil Liberties Union v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) ("*ACLU v. Alvarez*") partially underlies those Supreme Court decisions, and so we turn first to that case.

### 2. The Seventh Circuit's decision in *ACLU v. Alvarez*.

The issue in *ACLU v. Alvarez* was whether the First Amendment prevents Illinois prosecutors from enforcing the eavesdropping statute against people who recorded police officers performing their official duties in public.

> The Illinois eavesdropping statute makes it a felony to audio record "all or any part of any conversation" unless all parties to the conversation give their consent. 720 Ill. Comp. Stat. 5/14-2(a)(1). The statute covers any oral communication regardless of whether the communication was intended to be private. Id. 5/14-1(d).

*American Civil Liberties Union v. Alvarez*, 679 F.3d 583, 585 (7th Cir. 2012). The Illinois eavesdropping statutes are broader than California's IPA:

> Unlike the federal wiretapping statute and the eavesdropping law of most other

> states, the gravamen of the Illinois eavesdropping offense is not the secret
> interception or surreptitious recording of a private communication. Instead, the
> statute sweeps much more broadly, banning all audio recording of any oral
> communications absent consent of the parties regardless of whether the
> communication is or was intended to be private. The expansive reach of this
> statue is hard to reconcile with basic speech and press freedoms. For reasons
> we will explain, the First Amendment limits the extent to which Illinois may
> restrict audio and audiovisual recording of utterances that occur in public.

*American Civil Liberties Union v. Alvarez,* 679 F.3d 583, 595 (7th Cir. 2012)

Illinois defended the eavesdropping statute as necessary to protect conversational privacy, which is an important governmental interest. But the Seventh Circuit noted, "Simply put, these privacy interests are not at issue here. The ACLU wants to openly audio record police officers performing their duties in public places and speaking at a volume audible to bystanders. Communications of this sort lack any 'reasonable expectation of privacy' for purposes of the Fourth Amendment." *American Civil Liberties Union v. Alvarez,* 679 F.3d 583, 605-606 (7th Cir. 2012). The court then held that the ACLU had shown a strong likelihood of success on its First Amendment claims, and remanded the case with instructions to enjoin Illinois prosecutors from enforcing the eavesdropping statutes against persons who recorded police officers performing their official duties in public.

As discussed below, the Illinois Supreme Court's 2014 cases about conversational privacy cited *ACLU v. Alvarez* for the principle that conversational privacy is an important governmental interest that is subject to intermediate constitutional scrutiny. We turn now to those cases, *People v. Melongo,* 379 Ill. Dec. 43, 6 N.E. 3d 120 (Ill. 2014), and *People v. Clark,* 379 Ill. Dec. 77, 6 N.E. 3d 154 (Ill. 2014).

### 3. The Illinois Supreme Court's constitutional analysis.

In *People v. Melongo*, 379 Ill. Dec. 43, 6 N.E.3d 120 (Ill. 2014) and in *People v. Clark,* 379 Ill. Dec. 77, 6 N.E. 3d 154 (Ill. 2014), the Illinois Supreme Court unanimously held that the

{00041201;1}
OPPOSITION TO MOTION FOR FINAL APPROVAL
-7-

Illinois eavesdropping statutes were unconstitutional on their face. This Section 3 of this brief outlines the facts of those cases, the history of the Illinois statutes, and the Illinois Supreme Court's constitutional analysis.

### A. The facts.

In *People v. Melongo*, 379 Ill. Dec. 43, 6 N.E.3d 120 (Ill. 2014), Annabel Melongo was charged with computer tampering. Her arraignment was scheduled for June 18, 2008. The court's docket stated that she did not appear for that arraignment, but the court reporter's transcript stated that she was present in court and arraigned on that date. The court reporter declined to change the transcript, and referred Ms. Melongo to her supervisor, Pamela Taylor. Ms. Melongo secretly recorded three telephone conversations with Ms. Taylor, and posted transcripts of those conversations on her website. The State of Illinois then charged Ms. Melongo with three counts of eavesdropping and three counts of using or divulging information obtained through the use of an eavesdropping device (720 ILCS 5/14-2(a)(3)).

In *People v. Clark,* 379 Ill. Dec. 77, 6 N.E. 3d 154 (Ill. 2014), DeForest Clark was involved in a dispute about child support. During that dispute, he secretly recorded one of his conversations with his opponent's lawyer Colleen Thomas, and he secretly recorded another conversation with Ms. Thomas and a judge. A grand jury then indicted Mr. Clark for two counts of violating the Illinois eavesdropping statute.

Defendants Melongo and Clark argued that the Illinois eavesdropping statute was unconstitutionally vague and over-broad, and violated their free speech and due process rights.

### B. Background and history of the Illinois statute.

The history of the Illinois eavesdropping statute, as explained by the Illinois Supreme Court, illuminates the constitutional deficiencies of California's IPA. Unless the IPA is narrowly construed to apply only to private conversations, the IPA is unconstitutionally vague and overly broad. And not every telephone conversation is private.

{00041201;1}

OPPOSITION TO MOTION FOR FINAL APPROVAL
-8-

First from the Illinois Supreme Court, this:

> In *People v. Beardsley*, 115 Ill. 2d 47, 104 Ill. Dec. 789, 503 N.E. 2d 346 (Ill. 1986), the defendant was convicted of eavesdropping for recording a conversation with a police officer after he was stopped for speeding. In this court, the defendant argued that he was improperly convicted because the conversation he recorded was not private or secret, as he was a party to it. He argued that under the common meaning of "eavesdropping," the conversation must have been intended to be private for the statute to apply. This court agreed with the defendant and held that the statute was based on the assumption that if parties to a conversation act under circumstances which entitle them to believe their conversation is private and cannot be heard by others who are acting in a lawful manner, then they should be protected in their privacy. This court found that the statute was intended to protect individuals from the surreptitious monitoring of their conversations by eavesdropping devices. *Id.* at 53, 104 Ill. Dec. 789, 503 N.E. 2d 346.

*People v. Clark, supra,* 6 N.E. 3d at 159. Second, this:

> The [Illinois] legislature amended the eavesdropping statute in 1994, Pub. Act 88-677, section 29 (eff. Dec. 15, 1994). Prior to that time, the statute did not define "conversation." The purpose of the 1994 amendments was to make clear, in contrast to *Beardsley's* interpretation, that the consent of all parties to recording a conversation is required, regardless of whether the parties intended their conversation to be private. See 88th Ill. Gen. Assem., Senate Proceedings Apr. 21, 1994, at 139 (statement of Senator Dillard). The statute now criminalizes recordings of all conversations except in limited circumstances specifically allowed by the statute. Thus the scope of the eavesdropping statute is quite broad.

*People v. Clark, supra,* 6 N.E. 3d at 159. Those 1994 amendments provide the crucial intersection between the Illinois eavesdropping statute and California's IPA. Does the IPA, like the Illinois

{00041201;1}

eavesdropping statute, prohibit recording of any and all conversations without two-party-consent? The IPA distinguishes between calls to land-line phones (section 632 has a confidentiality element) and calls to cell phones (section 632.7 lacks a confidentiality element), but that distinction seems lost in the proposed class settlement, which purports to pay everyone the same.

We now turn to the Illinois Supreme Court's constitutional analysis.

### C. The Illinois Supreme Court's constitutional analysis.

> We hold that section (a)(1)(A) of the eavesdropping statute is unconstitutional as violative of the overbreadth doctrine under the first amendment to the United States Constitution.

*People v. Clark*, 379 Ill. Dec. 77, 85, 6 N.E. 3d 154, 162 (Ill. 2014). The California Supreme Court has consistently held that the California Constitution confers broader speech protections than the federal constitution, and so unlike the Illinois Supreme Court, this court does not need to consider federal constitutional issues to decide this case and reject the proposed class settlement. Here is the Illinois Supreme Court's reasoning, which is set forth at length:

> Audio and audiovisual recordings are medias of expression commonly used for the preservation and dissemination of information and ideas and thus are included within the free speech and free press guarantees of the first and fourteenth amendments. *American Civil Liberties Union v. Alvarez*, 679 F.3d 583, 595 (7th Cir.2012). The act of making such a recording is necessarily included in the first amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording. *Id.* "[T]he eavesdropping statute operates at the front end of the speech process by restricting the use of a common, indeed ubiquitous, instrument of communication. Restricting the use of an audio or audiovisual recording device

suppresses speech just as effectively as restricting the dissemination of the resulting recording." *Id.* at 596.

The eavesdropping statute is content-neutral. It regulates speech without discrimination as to the messenger or the content of the message. See *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ("Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." (Emphasis and internal quotation marks omitted.)). As such, it is subject to intermediate scrutiny. *Holder v. Humanitarian Law Project,* 561 U.S. 1, 5–6, 130 S.Ct. 2705, 2723, 177 L.Ed.2d 355 (2010). A content-neutral regulation will be sustained under the first amendment if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests. *Turner Broadcasting System, Inc. v. Federal Communications Comm'n,* 520 U.S. 180, 189, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997); *United States v. O'Brien,* 391 U.S. 367, 376–77, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

We next consider the nature of the governmental interest the eavesdropping statute is intended to advance. In *Beardsley,* this court interpreted the purpose of the statute as protecting individuals from the surreptitious monitoring of their conversations by the use of eavesdropping devices. The court noted that the statute was based on the assumption that "if the parties to a conversation act under circumstances which entitle them to believe that the conversation is private and cannot be heard by others who are acting in a lawful manner, then they should be protected in their privacy." *Beardsley,* 115 Ill.2d at

53, 104 Ill.Dec. 789, 503 N.E.2d 346. Thus, consent of all parties to a conversation to the recording of that conversation was not required in instances where any party lacked an intent to keep the conversation private. The legislature sought to change that in the 1994 amendments by making clear that no recording could be made absent consent from all parties regardless of any lack of expectation of privacy. Thus, the statute now essentially deems all conversations to be private and not subject to recording even if the participants themselves have no expectation of privacy. The State and defendant agree that the purpose of the eavesdropping statute is to protect conversational privacy. Specifically, the State argues that, faced with the serious and everincreasing threat to conversational privacy posed by the widespread availability of mobile recording devices, the legislature opted for a solution that may be over-inclusive. However, the State contends, the alternative was to risk being under-inclusive by leaving unprotected from non-consensual recording a substantial universe of conversations that the parties in fact intended to be private. The State argues that this is a policy decision best left to the legislature. The question before this court is whether the means the legislature has chosen to further this interest in conversational privacy places a substantially greater burden on speech than is necessary to further the interest.

Individuals have a valid interest in the privacy of their communications and a legitimate expectation that their private conversations will not be recorded by those not privy to the conversation. In addition, the fear of having private conversations exposed to the public may have a chilling effect on private speech. *Bartnicki v. Vopper*, 532 U.S. 514, 532–33, 121 S.Ct. 1753, 149 L.Ed.2d

787 (2001). The eavesdropping statute thus legitimately criminalizes audio recordings in these instances. The purpose of the statute to protect private conversations is thus served. However, the statute does not stop there. It criminalizes a whole range of conduct involving the audio recording of conversations that cannot be deemed in any way private. For example, the statute prohibits recording (1) a loud argument on the street; (2) a political debate in a park; (3) the public interactions of police officers with citizens (if done by a member of the general public); and (4) any other conversation loud enough to be overheard by others whether in a private or public setting. None of these examples implicate privacy interests, yet the statute makes it a felony to audio record each one. Although the statute does contain several exemptions from the general prohibition (720 ILCS 5/14–3 (West 2010)), none of the examples above would come within any of those exemptions. Given the expansion of the statute's scope by the 1994 amendments, we are left with a general ban on audio recordings of any oral communication whatsoever, absent consent from all parties, except in limited circumstances that mostly apply to law enforcement authorities.

Audio recordings of truly private conversations are within the legitimate scope of the statute. The prohibition on those recordings serves the purpose of the statute to protect conversational privacy. However, the statute's blanket ban on audio recordings sweeps so broadly that it criminalizes a great deal of wholly innocent conduct, judged in relation to the statute's purpose and its legitimate scope. It matters not whether the recording was made openly or surreptitiously. The statute prohibits the recording in the absence of consent of all parties. And,

while the consent need not be express, any implied consent will become a factor only after an individual has been charged with a violation of the eavesdropping statute and raises implied consent in defense. See *People v. Ceja,* 204 Ill.2d 332, 349–50, 273 Ill. Dec. 796, 789 N.E.2d 1228 (2003) (consent under the eavesdropping statute may be express or implied, the latter being consent in fact, which is inferred from the surrounding circumstances indicating that the party knowingly agreed to the surveillance).

If another person overhears what we say, we cannot control to whom that person may repeat what we said. That person may write down what we say and publish it, and this is not a violation of the eavesdropping statute. Yet if that same person records our words with an audio recording device, even if it is not published in any way, a criminal act has been committed. The person taking notes may misquote us or misrepresent what we said, but an audio recording is the best evidence of our words. Yet, the eavesdropping statute bars it. Understandably, many people do not want their voices broadcast to others or on the Internet to be heard around the world. But, to a certain extent this is beyond our control, given the ubiquity of devices like smartphones, with their video and audio recording capabilities and the ability to post such recordings instantly to the Internet. Illinois' privacy statute goes too far in its effort to protect individuals' interest in the privacy of their communications. Indeed, by removing all semblance of privacy from the statute in the 1994 amendments, the legislature has "severed the link between the eavesdropping statute's means and its end." *Alvarez,* 679 F.3d at 606. The statute therefore burdens substantially more speech than is necessary to serve the interests the statute may legitimately

serve. Accordingly, the statute does not meet the requirements necessary to satisfy intermediate scrutiny. We hold that section (a)(1)(A) of the eavesdropping statute is overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.

*People v. Clark*, 379 Ill. Dec. 77, 82-85, 6 N.E. 3d 154, 159-162 (Ill. 2014).

Like the Illinois eavesdropping statute, California's IPA imposes criminal and civil penalties. See California *Penal Code* section 637.2. If the IPA generally, or section 632.7 in particular, really imposes criminal and civil penalties for recording *any* conversation without two-party consent, then California's statutes are unconstitutional for the reasons articulated by the Illinois Supreme Court in *People v. Clark, supra*.

We next turn to a narrow construction of the IPA which saves it from constitutional infirmities.

### 4. The IPA does not apply to non-private conversations.

Under the California Constitution, courts require that statutes that burden speech must comply with the state's narrow-tailoring test. *International Society for Krishna Consciousness of California, Inc. v. City of Los Angeles,* 48 Cal. 4th 446 (2010). The governmental interest in the IPA is protecting conversational privacy, and so the California Constitution requires the IPA to be narrowly-tailored to protect that interest.

In interpreting statutes, California courts presume that every word, phrase, and provision employed in a statute is intended to have meaning and to perform a useful function. *Merandette v. City & County of San Francisco*, 88 Cal. App. 3d 105, 113 (1979). "Privacy" is not defined by the IPA, but it is pervasive throughout the Act. See, e.g., Cal. Penal Code § 630 ("The Legislature by this chapter intends to protect the right of privacy of the people of this state"). To pass

constitutional muster and as a matter of statutory construction, invasion of privacy must be an essential element of Section 632.7 claims. *Cal. Penal Code* § 630; *Kearney v. Salomon Smith Barney Inc.* (2006) 39 Cal. 4th 95, 115-120. The IPA seeks only to preclude unlawful access to "private communications" (*Cal. Penal Code* § 630), and to impose IPA liability for the recording of *any* telephone communication without disclosure, regardless of the length, content, or nature of the communication renders the IPA fatally overbroad.

For example, people often call hotels to obtain room-rates and hotel-addresses. People are free to write information that hotels provide, but does the IPA really impose a $5,000.00 civil penalty on anyone who uses a smartphone to record that information? There is no way that such an interpretation of the IPA can pass constitutional muster. And importantly, the constitutional analysis cannot change if the recording is made by the hotel.

I have no quarrel with defendants who choose to settle class actions like this. Class-privacy cases are litigated on a treacherous legal landscape that is littered with conflicting trial court decisions, massive potential statutory damages, and little guidance from appellate courts. I intend to donate my monetary recovery, if any, to a non-profit organization that promotes financial literacy, such as ACA International's Education Fund.

In this case, the settlement class is vastly over-inclusive because it includes persons whose privacy-rights were never violated. The plaintiffs' IPA-theory is so broad that it tramples persons' free-speech-rights that are guaranteed by the California and federal Constitutions.

Only persons whose genuinely-private conversations were recorded, without their consent, have viable IPA claims.

The motion for final approval should be denied. The IPA is unconstitutional if it broadly applies to any and all telephone conversations. Plaintiffs' broad interpretation violates

California's narrow-tailoring test, and it violates the federal constitution for the reasons set forth by the Illinois Supreme Court in *People v. Clark, supra.*

If the IPA is narrowly construed to avoid constitutional infirmities, then the plaintiffs must ascertain the persons whose genuinely-private conversations were recorded by the defendant, without their consent.  Those are the only persons who may constitutionally recover statutory damages under the IPA.

5.   **Attendance at the February 3, 2016 hearing.**

Objector Charles R. Messer received a written Summary Notice of Class Action Settlement that was mailed to him at his home in El Segundo, California which includes, "Class Member ID: 308214BY1MWT4."

Mr. Messer submitted an on-line claim, and received an email that said, "Your claim has been successfully entered into our system for processing," and identified his claim as, "Claim Number: #17533557."

Please take notice that Objector Charles R. Messer plans to personally attend the February 3, 2016 hearing, and to argue the objections that are outlined in this brief.

DATED:  December 14, 2015            CARLSON & MESSER LLP

                                     By: _____
                                         Charles R. Messer
                                         Objector